IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ROME DIVISION

| | |
|---|---|
| A.H., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | CIVIL ACTION FILE |
| ) | NO. 4:24-CV-00224-WMR |
| CARSON LOOP ESM, LLC d/b/a ) | |
| BUDGETEL, and SRINIVAS ) | |
| BOLLEPALLI, ) | |
| ) | |
| Defendants. ) | |

**PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANTS' MOTION TO SET ASIDE DEFAULT**

COMES NOW Plaintiff and opposes Defendants' Motion to Set Aside Default as follows:

**INTRODUCTION AND FACTUAL BACKGROUND**

The Court should deny the Motion to Set Aside Default because Defendants are in default due to their own intentional disregard of the Court's process, and their argument for setting aside default is vague and bereft of details.

Defendants admit that Srinivas Bollepalli, individually and as owner of Carson Loop ESM, LLC d/b/a Budgetel, was served with this lawsuit on October 8, 2024. (Doc. 11-1, ¶ 2). Bollepalli notified his agent that he was served with lawsuit papers 2 days later, and Bollepalli's agent purportedly notified him that he

would forward the paperwork on "for processing", and that Defendants should "await further communications." (Doc. 11-1, ¶¶ 3, 4). Defendants then state that, "[a]fter several weeks", Defendants' agent notified Bollepalli that he had sent the documents to an unidentified "incorrect person(s) or entities" and the documents would have to be sent again. (Doc. 11-1, ¶¶ 5). Defendants then claim that despite Mr. Bollepalli's inquiries – with no citation to the record to support that Bollepalli followed up at all – he "was not advised further." (Doc. 11-1, ¶ 6).

Defendants' brief then states – without any support or citation to Bollepalli's Affidavit, that Bollepalli had "no knowledge of applicable legal deadlines." (Doc. 10-1, p. 3).[1] Finally, Defendants claim that Bollepalli became aware of the default on December 5, 2024, which is the day Plaintiff filed her request for entry of default. (Doc. 11-1, ¶ 7).

Puzzlingly, Defendants do not identify the "incorrect person(s) or entities" who received the lawsuit papers, or who the correct person(s) or entities are. They similarly don't tell the Court when defendants' agent was notified that the person or entity he delivered the paperwork to was the wrong recipient, when defendants' agent delivered the paperwork to the correct recipient, what mistake defendants'

---

[1] This statement is not true. Bollepalli knew at all times when a response to the lawsuit was due, as outlined below.

2

agent made that caused him to deliver the papers to the wrong person or entity, when the agent notified Bollepalli of these issues, and importantly, why Defendants would rely on someone else to respond to Plaintiff's Complaint without ever speaking with an attorney, or apparently anyone else. Nowhere in their Motion or Bollepalli's Affidavit do Defendants claim that their agent or anyone at any insurance company (or anyone else) told Bollepalli that he was relieved of complying with this Court's deadlines, or that an unknown third-party would be responding to Plaintiff's complaint for him.

In addition to containing virtually no details, the facts in Bollepalli's Affidavit are largely inaccurate or incomplete. After Bollepalli was served, he called Plaintiff's counsel on October 15, 2024 and left a message. (Ex. A, Declaration of D. Hoying, ¶ 3). Thereafter, the two were able to talk on the phone when Bollepalli called back on October 25, 2024. (Ex. A, Declaration of D. Hoying, ¶ 4). In that conversation, Bollepalli told Plaintiff's counsel that he had been served and asked Plaintiff's counsel what to do, because he knew that he only had 21 days to respond. (Ex. A, Declaration of D. Hoying, ¶ 5). This deadline is plainly stated on the summonses that Bollepalli received. (Docs. 4, 5). In response, Plaintiff's counsel told Bollepalli that she represented the Plaintiff and could not give him legal advice, but asked Bollepalli if he forwarded the lawsuit

3

papers to his insurance carrier, and Bollepalli said that he did. (Ex. A, Declaration of D. Hoying, ¶¶ 5, 6). Bollepalli then forwarded to Plaintiff's counsel a string of emails between him, his agent, and his insurance carrier. (Ex. A, Declaration of D. Hoying, ¶ 7; Ex. B, Emails). Bollepalli copied both his agent and his insurance carrier on the email to Plaintiff's counsel. (Ex. A, Declaration of D, Hoying, ¶ 8; Ex. B). In the emails, Bollepalli's agent plainly told Bollepalli on October 21, 2024 that the assigned insurance adjuster would "be in touch with you shortly". (Ex. B). No one ever told Bollepalli in any of these emails (all sent and received before defendants were in default) that he was relieved of complying with the Court's deadlines, or that someone else would respond to the lawsuit on defendants' behalf. (Ex. B).

Bollepalli knew that Defendants' answers were due 21 days after service – as he plainly communicated to Plaintiff's counsel – and he was told by his agent on October 21, 2024 (8 days before defendants' answers were due ) that someone would "be in touch with you shortly". As a result, it is not a reasonable assumption by Bollepalli that the insurance company thereafter handled this matter within the 21-day deadline without ever calling, emailing, or otherwise reaching out to him again. Even if taken as true, Defendants' explanation for being in

4

default is unreasonable and amounts to an intentional disregard for the process of the Court.

Further, Bollepalli claims that he first became aware of the default in this case on December 5, 2024. This is not true either. On December 5, 2024, less than 90 minutes after the Request for Default was docketed, and without ever speaking to Bollepalli or entering an appearance in this case, Bollepalli's current counsel called Plaintiff's counsel and asked Plaintiff's counsel to open the default. (Ex. A, Declaration of D. Hoying, ¶ 10). Plaintiff's counsel asked how he became aware of the Request for Entry of Default so soon after its filing, since he was not counsel of record and would not have received electronic notice of its filing. (Ex. A, Declaration of D. Hoying, ¶ 11). Defense counsel responded that he checked the court's docket. (Ex. A, Declaration of D. Hoying, ¶ 11). Plaintiff's counsel then asked why the lawsuit was not timely answered, and counsel said he did not know and that he had not spoken to Bollepalli. (Ex. A, Declaration of D. Hoying, ¶ 12).

Defendants also don't tell the Court when counsel was first notified of this case, or for how long he checked the docket daily to see if a request for entry of default was filed. Was the strategy by defendants' insurer to leave defendants in default until it became clear that Plaintiff would assert her right to default

judgment under the rules, hoping that she would never make such a request, and the case would be cursorily dismissed? The answers to these questions are important to the Court's determination of whether defendants intentionally disregarded the Court's process, and are left unanswered by Defendants' Motion.

Four days after the call from defense counsel, on December 9, 2024, Bollepalli called Plaintiff's counsel again when he received a service copy of Plaintiff's Request for Clerk's Entry of Default via U.S. Mail, and told Plaintiff's counsel that he had not spoken to a lawyer in this matter. (Ex. A, Declaration of D. Hoying, ¶ 13). Based on the foregoing, including that Bollepalli's Affidavit contains multiple inaccuracies, there is no good cause to set aside default, and the motion should be denied.

Further, Defendants claimed meritorious defense to this case also appears to be false, asserted solely for the purposes of trying to convince this Court to open the default. When Bollepalli called Plaintiff's counsel on October 25, 2024, and when he notified his agent of the lawsuit, he claimed that he was sued by mistake because the sadistic manager who trafficked Plaintiff was not his employee but was instead an independent contractor. (Ex. A, Declaration of D. Hoying, ¶ 6; Ex. B). The manager ultimately pled guilty to trafficking Plaintiff, and the fact of Plaintiff's sex and labor trafficking is not in dispute. Now, faced with default,

Bollepalli claims something entirely different – he no longer claims that the acts described in the complaint were those of an independent contractor – but rather that he had no knowledge of his manager's activities. (Doc 11-1, ¶¶ 10-11). Plaintiff pled exactly the opposite in her Complaint, and in the default scenario, the factual allegations in Plaintiff's Complaint are taken as true and are admitted by Defendants. (Doc. 1, ¶ 24). The inaccuracies and/or misrepresentations in Defendants' Motion and in the supporting Affidavit further bolsters Plaintiff's position that Defendants have not shown good cause to open the default.

## ARGUMENT AND CITATION TO AUTHORITY

Under Fed. R. Civ. P. 55(c), the trial court "may set aside an entry of default for good cause." While "'[g]ood cause' is a mutable standard, varying from situation to situation[,] [i]t is also a liberal one—but not so elastic as to be devoid of substance." *Compania Interamericana Exp.-Imp., S.A. v. Compania Dominicana de Aviacion*, 88 F.3d 948, 951 (11th Cir. 1996) (quoting *Coon v. Grenier*, 867 F.2d 73, 76 (1st Cir.1989)). While there are some general guidelines that Courts follow in determining good cause—including "whether the default was culpable or willful,"—"if a party willfully defaults by displaying either an intentional or reckless disregard for the judicial proceedings, the court need make no other

findings in denying relief." *Savoia-McHugh v. Glass*, 95 F.4th 1337, 1342 (11th Cir. 2024).

Here, Defendants have intentionally or recklessly disregarded these proceedings. Defendants have offered only a very vague, cursory, factually inaccurate, and unreasonable explanation for why they failed to timely answer Plaintiff's Complaint. There is no question Defendants knew about the lawsuit when Bollepalli was served on October 8, 2024. They argue only that their default happened because, for reasons that they never tell the Court, they didn't timely respond, despite their actual knowledge of the deadline, as communicated to Plaintiff's counsel on October 25, 2024, and despite having an attorney checking the docket of this case during the Defendants' default.

Importantly, Defendants make no allegation that anyone ever told them that a third-party was answering or otherwise responding to the lawsuit on their behalf, and it would be unreasonable for Defendants to assume that some unknown actor would have done so, especially without ever calling or reaching out to Bollepalli. Importantly, Bollepalli knew how to get in touch with all involved parties by both telephone and email, and could have, at any time, taken steps to determine whether a response would be filed on behalf of Defendants by any third-party, or whether he needed to retain counsel, to ask Plaintiff for an extension of time to answer, or

to ask any number of questions about next steps, yet he did none of these things. Bollepalli knew that he needed to respond to the lawsuit within 21 days, but intentionally disregarded the deadline. Thus, Defendants' default was caused by their own intentional and willful decision to disregard the Cout process. This does not create the "good cause" or "excusable neglect" necessary for opening default.

To the extent Defendants seek to avoid default judgment following the entry of default, many defendants (including these) have argued they should be allowed out of default for misrouting or sending the complaint to the wrong person or entity. In the Eleventh Circuit, that alone is not sufficient cause to lift default or avoid a default judgment. Instead, a defendant must show that it has established minimum procedural safeguards to ensure that the proper action is taken in response to a summons and complaint. *Gibbs v. Air Canada*, 810 F.2d 1529, 1537 (11th Cir. 1987); *see also, Davis v. Safeway Stores, Inc.,* 532 F.2d 489, 490 (5th Cir.1976) (fact defendant sent complaint to its insurance company in timely manner did not constitute excusable neglect when lack of communication between defendant and insurance company for three weeks after latter received copy of complaint indicated absence of minimum procedural safeguards); *Baez v. S.S. Kresge Co.,* 518 F.2d 349, 350 (5th Cir.1975), *cert. denied,* 425 U.S. 904, 96 S.Ct. 1495, 47 L.Ed.2d 754 (1976) (fact complaint received in timely manner by

defendant was lost in mail en route to counsel did not constitute excusable neglect because of failure to establish minimum procedural safeguards).

Indeed, delivering the complaint to the wrong recipient does not constitute good cause or excusable neglect sufficient to avoid default. In *Insurance Company of North America v. Morrison*, the court denied the defendant's motion to vacate a default judgment simply because the "complaint was misrouted from its legal department to the Commercial Loan Department" and bank had no internal controls to prevent such a mistake. 154 F.R.D. 278, 280 (M.D. Fla. 1994). The Eleventh Circuit has similarly held that "[d]efault that is caused by the movant's failure to establish minimum procedural safeguards for determining that action in response to a summons and complaint is being taken does not constitute default through excusable neglect." *Ins. Co. of N. Am. v. Morrison*, 154 F.R.D. 278, 280 (M.D. Fla. 1994).

Simply put, the scant and purposely vague information by Defendants beggars belief. The overly-coincidental timing in reaching out to Plaintiff's counsel for the first time less than 90 minutes after Plaintiff's request for clerk's entry of default was filed requires explanation before a ruling can be made. The Court should ask for answers to a number of factual questions to determine whether Defendants' default was intentional or reckless. For example:

10

- Who was the "incorrect person(s) or entities" the summons and complaint were sent to? (Doc. No. 10-2 at ¶ 5). How long did this person or entity have the summons and complaint, and when was defendants' agent notified that the first person or entity he sent the papers to was incorrect?

- Who was the correct person or entities and when were the summons and complaint sent to that person? Was it after Defendants were in default or before?

- For how long did the insurance companies know they placed Defendants in default before hiring counsel?

- When was defense counsel first communicated with regarding the case and when were they hired?

- What were the insurance company's instructions to counsel regarding the default and how to proceed?

- How long were Defendants represented while they were in default before an entry of appearance was finally entered on December 11, six days after defense counsel called Plaintiff's counsel?

As "[s]tatements by counsel in briefs are not evidence." *Taiariol v. MSC Crociere S.A.*, 677 Fed. Appx. 599, 602 (11th Cir. 2017) (quoting *Travaglio v. Am. Exp. Co.*, 735 F.3d 1266, 1270 (11th Cir. 2013)), there are a small number of

11

documents (emails) that will easily answer these questions, and show when and to whom (1) the summons and complaint were sent at various times; (2) when defendants' agent knew that the first person or entity he sent the documents to was wrong; (3) when counsel was contacted by the insurance company; and (3) any instructions or discussions regarding the default between counsel and the insurance carriers.  The Court should instruct Defendants to provide these easily-obtainable documents prior to the scheduled hearing on January 7, 2025.

To be clear, Plaintiff's counsel has no interest in seeing communications between defense counsel and Defendants, their agents, or their insurers.  However, in order for the Court to make an informed decision as to whether the default here was intentional or reckless, the Court should examine these documents *in camera* in advance of the hearing so that the issue can be decided based upon facts and evidence rather than vague claims of mysterious and unidentified persons or entities and uncertain time frames.

"[T]he possibility of a default is a deterrent to those parties who choose delay as part of their litigative strategy."  *Washington Metro. Area Transit Comm'n v. Reliable Limousine Serv., LLC*, 776 F.3d 1, 6 (D.C. Cir. 2015) (quoting *H.F. Livermore Corp. v. Aktiengesellschaft Gebruder Loepfe*, 432 F.2d 689, 691 (D.C.Cir.1970)).  Here, it appears that Defendants' agents—their insurers—likely

chose delay as part of a litigation strategy. The above documents will allow the Court to make that determination.

## CONCLUSION

Defendants are in default due to their own intentional disregard of the Court's process. Defendants' explanation for the default is not reasonable and is plainly contradicted by Bollepalli's prior communications with Plaintiff's counsel, his agent, and his insurer. Defendants' Motion should be denied.

This 26th day of December, 2024.

Respectfully submitted,

**LAW & MORAN**

/s/ Denise D. Hoying
Peter A. Law
Georgia Bar No. 439655
pete@lawmoran.com
E. Michael Moran
Georgia Bar No. 521602
mike@lawmoran.com
Denise D. Hoying
Georgia Bar No. 236494
denise@lawmoran.com
Attorneys for Plaintiff

**LAW & MORAN**
563 Spring Street, NW
Atlanta, Georgia 30308
Phone: (404) 814-3700
Facsimile: (404) 842-7710

                                      **ANDERSEN, TATE & CARR, P.C.**

                                      /s/ Patrick J. McDonough
                                      Patrick J. McDonough
                                      Georgia Bar No. 489855
                                      pmcdonough@atclawfirm.com
                                      Jonathan S. Tonge
                                      Georgia Bar No. 303999
                                      jtonge@atclawfirm.com
                                      Attorneys for Plaintiff

**ANDERSEN, TATE & CARR, P.C.**
One Sugarloaf Centre
1960 Satellite Boulevard, Suite 4000
Duluth, Georgia 30097
Phone: (770) 822-0900
Facsimile: (770) 822-9680

## **CERTIFICATE OF COMPLIANCE**

This is to certify that the foregoing ***Plaintiff's Response in Opposition to Defendants' Motion to Set Aside Default*** has been prepared with one of the following font and point selections approved by the Court in LR 5.1., NDGA. Specifically, the above-mentioned pleading was prepared using Times New Roman font of 14 point size.

                                                              Respectfully submitted,

                                                              **LAW & MORAN**

                                                              <u>/s/ Denise D. Hoying</u>
                                                              Peter A. Law
                                                              Georgia Bar No. 439655
                                                              pete@lawmoran.com
                                                              E. Michael Moran
                                                              Georgia Bar No. 521602
                                                              mike@lawmoran.com
                                                              Denise D. Hoying
                                                              Georgia Bar No. 236494
                                                              denise@lawmoran.com
                                                              Attorneys for Plaintiff

**LAW & MORAN**
563 Spring Street, NW
Atlanta, Georgia 30308
Phone: (404) 814-3700
Facsimile: (404) 842-7710

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ROME DIVISION

| | |
|---|---|
| A.H., ) | |
| ) | |
|    Plaintiff, ) | |
| ) | |
| v. ) | CIVIL ACTION FILE |
| ) | NO. 4:24-CV-00224-WMR |
| CARSON LOOP ESM, LLC d/b/a ) | |
| BUDGETEL, and SRINIVAS ) | |
| BOLLEPALLI, ) | |
| ) | |
|    Defendants. ) | |

## CERTIFICATE OF SERVICE

This is to certify that I have this day served a true and correct copy of the foregoing ***Plaintiff's Response in Opposition to Defendants' Motion to Set Aside Default*** with the Clerk of Court using the CM/ECF system which will automatically send email notification of such filing to:

Phillip Friduss
Jacob O'Neal
Hall Booth Smith, P.C.
191 Peachtree Street, N.E.
Suite 2900
Atlanta, GA 30303

This 26th day of December, 2024.

16

                              **LAW & MORAN**

                              <u>/s/ Denise D. Hoying</u>
                              Denise D. Hoying
                              Georgia Bar No. 236494
                              denise@lawmoran.com
                              Attorney for Plaintiff

**LAW & MORAN**
563 Spring Street, NW
Atlanta, Georgia 30308
Phone: (404) 814-3700
Facsimile: (404) 842-7710