IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ROME DIVISION

| | |
|---|---|
| A.H.,<br><br>     Plaintiff,<br><br>v.<br><br>CARSON LOOP ESM, LLC d/b/a BUDGETEL, and SRINIVAS BOLLEPALLI,<br><br>     Defendants. | CIVIL ACTION FILE<br>NO. 4:24-cv-00224-WMR |

**REPLY IN SUPPORT OF DEFENDANTS' MOTION TO SET ASIDE DEFAULT**

COME NOW, **CARSON LOOP ESM, LLC d/b/a BUDGETEL** and **SRINIVAS BOLLEPALLI** ("Defendants"), and pursuant to Fed. R. Civ. P. 55(c) and N.D. Ga. LR 7.1(C) hereby submit their Reply in Support of their Motion to Set Aside the Clerk's Entry of Default, in support of which Defendants rely upon the accompanying Affidavits, Declaration, and all facts and pleadings of record, respectfully showing the following:

**INTRODUCTION**

This is not a case where a Defendant was served with process and did nothing. Quite the contrary; **within two days of service**, Defendant Srivinas Bollepalli (hereinafter "Bollepalli") did **what any reasonable non-attorney layperson would**

**do**: he turned over the suit documents to his insurance agent and asked for a claim to be opened. The resulting delay arose from confusion on the part of insurance agents, claims adjusters, and trying to determine just what policy applied to the claims against the Defendants—none of which was caused by Bollepalli.

In the days following Bollepalli's October 10, 2024 report of the claim, outside of Bollepalli's purview, the insurance claims process proceeded—or at least, without any indication to the contrary (as would come only later), that's what Bolepalli thought. Bollepalli's reasonable expectation that insurance would timely assign him legal counsel to advise him of further steps was first frustrated when—through no fault of Bollepalli's—the insurance agent sent the claim to the wrong carrier.

After the initial contact, because of the volume of documents which could not be electronically attached to communications, the agent then had to mail the original documents to that carrier, which resulted in the only readily accessible electronic form of suit documents being incomplete. After that mailing, on the very *eve* of what would later turn out to be the deadline to file an Answer, the agent would only then learn that Ategrity would not cover the claim. In response, the agent forwarded the suit to what was now established as the appropriate carrier, Western World. But again, given the limitations on electronic availability of the suit documents, Western World at this point would not get the entire Complaint. The Complaint and the suit documents would only come to Western World later, in November, since they had to be mailed from Ategrity. Then, once the documents were received and an adjuster

2

assigned, Western World would ultimately assign counsel to defend the suit in early December.

All this, of course, took place on the insurance side of the equation, above, beyond, and outside of Mr. Bollepalli's ken as a non-attorney layperson. Even given his lack of legal knowledge, however, Bollepalli was nevertheless active in trying to do the right thing. Having turned over the suit to his insurer, Bollepalli himself spoke with Plaintiff's counsel to try and make sense of his course of action; but of course, he received no direction from the other side of the "v," only a recommendation to contact a lawyer.

**In short: Bollepalli timely reported this suit to his insurance, in the anticipation of every reasonable person that counsel would be duly assigned and he would be advised further on what he needed to do; and while waiting, he took initiative to try to find out just what that was, by speaking to Plaintiff's counsel. That anticipation was ultimately not rewarded before the Answer deadline—not because of any callous disregard of deadlines by Bollepalli, but because of claims handling hurdles outside of his control.**

Bollepalli is undeserving of the severity of a ruinous default judgment, because of all the cast of players including himself, an insurance agent, and two insurance providers, he is the least culpable of all. The only consequence of opening default and permitting Mr. Bollepalli his day in court to address the merits of the allegations—which, as noted in his initial Brief, he can do with a meritorious

3

defense—is that Plaintiff will in fact have to litigate the lawsuit they filed, and meet the burden of proof that the law sets squarely upon them.

A detailed timeline of the claims handling, as Mr. Bollepalli has come to learn the facts, is provided below:

### TIMELINE OF SERVICE AND CLAIM PROCESSING

Mr. Bollepalli was served with the Summons and Complaint in this matter on October 8, 2024. (Affidavit of Srivinas Bollepalli dated December 11, 2024 ("Bollepalli Aff. I"), ¶ 2. A mere two days later, on October 10, 2024, Bollepalli tendered the Complaint documents to Kent Bates, who was the insurance agent for the policy providing coverage to the Defendants. (Affidavit of Kent Bates ("Bates Aff."), ¶¶ 2, 3). Bollepalli also requested to file a claim on the applicable policy. (Id., ¶ 3).

On October 16, 2024, Bates reported the claim via email to Ategrity Insurance, with the expectation that Ategrity would assign counsel to handle the defense of the suit. (Id., ¶ 4). Because there was a large volume of documents related to the suit, the complete suit documents did not attach to this email, requiring the original documents to be mailed to Ategrity, which Bates subsequently did. (Id.). On October 21, 2024, Bates advised Bollepalli that Ategrity had created a claim number for the claim, and that a claims examiner had been assigned. (Id., ¶ 5). Based on Ategrity's response, Bates believed that Ategrity would assign defense counsel to respond to the claim. (Id.).

4

Meanwhile, although he had yet to hear from his insurer on further steps or representation—and **even as Plaintiff acknowledges—Bollepalli was not idle**. In fact, he himself spoke with Plaintiff's counsel by phone, forwarded his insurance information and adjuster contact at Ategrity along with the claim number, and advised that he would be traveling overseas the following three weeks. (See generally Declaration of Denise Hoying (Doc. 16-1) and supporting documents (Doc. 16-2); Affidavit of Srivinas Bollepalli dated January 6, 2024 ("Bollepalli Aff. II"), ¶ 2). When Bollepalli spoke with Ms. Hoying, Hoying did not advise him of applicable deadlines nor of the risk or consequences of default judgment; instead, she simply recommended that Bollepalli contact a lawyer. (Bollepalli Aff. II, ¶ 2).

On October 28, 2024, Ategrity advised Bates that the claim had been filed under the incorrect policy period, and that the claim would therefore be denied. (Id., ¶ 6). At the time, the applicable commercial liability policy for the Defendants, under which a legal defense is provided, was not issued by Ategrity; rather, the correct insurer was Western World Insurance Company ("Western World"). (Affidavit of Sara Kenney ("Kenney Aff."), ¶ 2. Following Ategrity advising Bates that coverage would be denied, Bates then first advised Western World of the claim on October 29, 2024. (Kenney Aff. ¶ 3; Bates Aff. ¶ 7). To be clear, at this point, neither Bates nor Western World had any knowledge of the date on which Bollepalli had been served nor of when the Answer was due. (Bates Aff. ¶ 12; Kenney Aff. ¶ 8). After Bates informed Bollepalli that the documents had been sent to the wrong entity, Bollepalli was not advised from him on any further action. (Bollepalli Aff. I ¶¶ 5-6).

5

Having previously mailed the complete suit documents Ategrity (which, it turned out, did not provide applicable coverage), Bates was no longer in possession of the full suit documents; and so, Western World's first notice of the claim did not include a copy of the Complaint, nor any information the date on which Mr. Bollepalli had been served. (Kenney Aff. ¶ 3; Bates Aff. ¶ 7).

On November 4, 2024, Western World assigned adjuster Sara Kenney to the claim. (Kenney Aff. ¶ 4). Over the next week, Kenney made multiple requests for further information regarding the claim, asked for a full copy of the Complaint, and asked to confirm any date of service of the Complaint. (Id.). On November 12, 2024, Bates emailed Ategrity and requested that a copy of the Complaint be sent to Wester World. (Bates Aff. ¶ 11). Later that day, Western World received a copy of the full Complaint from Ategrity. (Kenney Aff. ¶ 5). However, the documents contained no proof of service. (Id.).

On December 3, 2024, Western World then asked the Defendants' current counsel Hall Booth Smith, P.C. to provide a defense under the applicable policy. (Id., ¶ 6). Counsel acknowledged the assignment on December 4, 2024. (Id.). At this point, Western World still did not know whether service had been effectuated on the Defendants. (Id.). The following day, after reviewing the Docket, the undersigned Counsel reached out as a courtesy to Plaintiff's Counsel, Denise Hoying, to make introductions, inquire on the status of the suit, and discuss Plaintiff's Motion for Entry of Default, which happened to have been filed that day. (Declaration of Jacob Stalvey O'Neal ("JSO Declaration"), ¶ 5). Counsel spoke with Ms. Hoying and

6

advised that they were in the process of reaching out to Mr. Bollepalli, as well as asking if Plaintiff would consider withdrawing the Motion in light of the early procedural posture of the matter and a presumptively forthcoming Answer. (Id., ¶ 6). Ms. Hoying declined to withdraw the Motion. (Id.). Of note, at the time of this conversation, the Clerk's Entry of Default had not yet been entered (which would come the following day, December 6, 2024). (Id.; see also Docket).

After establishing contact and an attorney-client relationship with Mr. Bollepalli and verifying the date of service, Counsel entered an appearance and filed on the Defendants' behalf an Answer and Motion to Open Default on December 11, 2024. (JSO declaration, ¶ 7; see also Docket).

## ARGUMENT AND CITATION OF AUTHORITY

### I. The Balance Of Factors Considered For Good Cause To Open Default Falls Decidedly For The Defendants

Courts generally view defaults with disfavor due to the "strong policy of determining cases on their merits." In re Worldwide Web Sys., Inc., 328 F.3d 1291, 1295 (11th Cir. 2003).

As pointed out in the Defendants' initial Brief, the "good cause" inquiry in opening default does not end with determining whether a party knew or should have known of an Answer deadline, and establishing that he missed it. It is a multi-factor, holistic consideration that considers the balance of equities and the scope of potential injury from entering or lifting default in each respective case. Instead, it is "mutable" and "var[ies] from situation to situation." Compania Interamericana Export-Import,

S.A. v. Compania Dominicana de Aviacion, 88 F.3d 948, 951 (11th Cir. 1996) (citation and quotation omitted) (ultimately upholding District Court's entry of default only after corporate defendant for a matter of months repeatedly failed to timely respond to discovery requests and failed to obey court order to retain counsel).

In this case, Plaintiff's central argument boils down to this: Bollepalli received service of process and a summons, and therefore he himself knew of the Answer deadline and must be held to same *without* regard to the circumstances under which he ultimately, and inadvertently, missed it. And in support of this contention, Plaintiff cites to a string of precedent which—to the extent they discuss default—predate the applicable standard as articulated by the likes of Sherrard and McCullough (discussed below), and predate this civil action by no fewer than thirty (30) years. (See Doc. 16, pp. 8-12). But the mere fact that a party receives summons and "knows" a deadline exists does not, alone, establish willfulness in failing to timely Answer. See Sherrard, supra, 724 F.App'x at 738 (11th Cir. 2018) (affirming decision to set aside default where defendant was in fact served with process and missed deadline to file Answer, but counsel was not aware service had been effected).

Again, as this Court clarified just recently in October 2024, the pertinent factors to be considered include whether the defaulting party was culpable or willful; whether setting default aside would prejudice the adversary; whether the defaulting party presents a meritorious defense; whether there is significant financial loss to the defaulting part; and whether the defaulting party acted promptly to correct the

8

default." McCullough v. Sixt Rent a Car, LLC, No. 1:24-CV-01331-JPB, 2024 WL 4647932, at *1 (N.D. Ga. Oct. 30, 2024). The "good cause" analysis "does not require that each factor be satisfied… [I]nadvertent mistake, prompt action to correct [] default, and the lack of prejudice are sufficient to show good cause." Sherrard v. Macy's Sys. & Tech. Inc., 724 F. App'x 736, 739 (11th Cir. 2018) (upholding District Court's vacating entry of default on good cause shown, where counsel was not aware of service until a month after it had been effectuated and where prompt corrective action was taken in motion to set aside default was filed three days after Clerk's entry thereof).

Moreover, Plaintiff's authorities are readily distinguishable from this matter. First, these authorities involved defaulting parties moving for relief at a much later stage of proceedings, *after* default *judgment* (as opposed to the Clerk's entry of default here) had been entered. See generally Gibbs v. Air Canada, 810 F.2d 1529 (11th Cir. 1987); Davis v. Safeway Stores, Inc., 532 F.2d 489 (5th Cir. 1976); Baez v. S.S. Kresge Co., 518 F.2d 349, 350 (5th Cir. 1975), cert. denied, 425 U.S. 904 (1976); Insurance Company of North America v. Morrison, 154 F.R.D. 278 (M.D. Fla. 1994). No judgment has been entered yet in this case, and unlike the movants in the foregoing cases who moved to set aside default *judgment* pursuant to Fed. R. Civ. P. 60(b), here, the Defendants have moved to set aside the Clerk's entry and to open default, pursuant to Fed. R. Civ. P. 55. The commonality of these cases—that no defense was mounted until after judgment was entered—does not apply here, where the Defendants have speedily moved to correct the default prior to judgment and made the applicable good cause showing.

Second, on the note of good cause, these case summarily approve denials of opening default under the "excusable neglect" standard, without any discussion of the multiplicity of factors expounded by this Court far more recently in McCullough. See generally Id., particularly Gibbs, supra, 810 F.2d 1529, 1537 (11th Cir. 1987) (examining only two factors: where there is "good reason" for default and "the existence of a meritorious defense").

And finally, these matters are factually distinguishable. In Gibbs, the failure was entirely internal to a corporate defendant, wherein the litigation administrator ultimately never received the complaint at all (810 F.2d at 1530)—as opposed to this case, where the breakdown in processing the claim occurred entirely *externally* to Mr. Bollapelli, through the handling of the insurance agent and insurers, despite his timely turning over suit to the agent.

In Davis, no explanation or excuse for the default was ever offered in the first place. 532 F.2d at 490. Unlike Davis, here, Bollapelli *has* offered an explanation— he timely alerted his insurance agent to the claim and even affirmatively reached out to Plaintiff's counsel for direction; but because the agent, having taken on the suit documents, initially sent them to an insurer who did not provide coverage during the applicable period, processing the claim was delayed, and ultimately corrected.

In Baez, the suit papers were lost in the mail, and there were no internal safeguards to correct or follow up on any issues processing the suit. Baez v. S. S. Kresge Co., 518 F.2d 349, 350 (5th Cir. 1975). In a tersely worded opinion, the Fifth Circuit in Baez essentially said that the defendant could have done better internally,

10

and could not fully blame the Post Office. Id. Here, however, there is no indication of what Bollepalli could have done to change anything in how his suit was handled once it was in the hands of his insurance agent. And in fact, the agent did not know the suit was sent to the wrong carrier, until that carrier informed him accordingly, the very day before the Answer was due—with the agent taking corrective action the following day. (See generally Bates Aff.) In short: the agent could not have done anything internally to correct the issue of sending the suit to the wrong carrier, unless and until he learned that this carrier was, in fact, the wrong one—and Mr. Bollepalli, of course, could himself do nothing at all about this.

Finally, like in Gibbs, Morrison dealt with failures that were completely internal to the corporate defendant—the defaulting party completely failed to read the complaint, and therefore sent it to the wrong department, after which the complaint failed to get returned to the *correct* department. Ins. Co. of N. Am. v. Morrison, 154 F.R.D. 278, 280 (M.D. Fla. 1994). Contrast to this case, where corrective action was in fact taken when the insurers and agent discovered it needed to be taken. For example, Bates (the agent), on learning that he had sent the suit to the wrong carrier, the very next day forwarded what he had to the correct carrier, Western World. And when Western World received what turned out to be less that the full suit documents, it followed up to the initial carrier to get them—but at this point, the deadline had run.

Precedent aside, Plaintiff's response all but concedes Bollepalli's lack of willful culpability, and the propriety of opening default under these circumstances,

in at least three (3) ways: (1) Plaintiff acknowledges that Bollepalli actively tried to figure out what to do with this lawsuit, while he awaited further instruction and assignment of counsel from his insurer, by Bollepalli's actions in talking to Plaintiff's counsel on October 25, 2024 (see generally Declaration of Denise Hoying, Doc. 16-1); (2) Plaintiff makes no argument whatsoever that they would be prejudiced by opening default—presumably, because their only incursion would be having to litigate the suit they filed, which is not "prejudice" (see, e.g., Connecticut State Dental Ass'n v. Anthem Health Plans, Inc., 591 F.3d 1337, 1357 (11th Cir. 2009); *and* (3) though they do so while making wild and unsupported speculation about the insurers' knowledge and motives, Plaintiff tacitly acknowledges that the insurers—not Bollepalli—were the prime movers during the period in which the Answer deadline expired. (See Response, Doc. 16, pp. 12-13 (making unsupported supposition contrary to the facts that "[Defendants'] *insurers*… likely chose delay….").

In all: the Defendants have provided a factual explanation for why delay was had, shown how they have acted promptly to correct that delay, demonstrated that their delay was not willful or in reckless disregard of deadlines, and that Plaintiff will suffer no prejudice from setting aside default. Respectfully, the Defendants' Motion should be granted.

## II.   Nothing In Plaintiff's Showings Negate The Defendants' Attestations

Despite Plaintiff's efforts to muddy the waters, there is nothing untrue or contradictory in Bollepalli's attestation, and the fuller picture from the statements

filed herewith bear this out. Much of Plaintiff's discussion comprises conclusory accusations—that it was unreasonable for Bollepalli to assume counsel would be assigned or that he need not respond within 21 days of service pending further instruction from his insurers. (See Doc. 15, pp. 8-9). But Plaintiff fails to consider: Bollepalli is a layperson, without legal training (Bollepalli Aff. I, ¶ 12). He did what any reasonable, private lay citizen would do in his situation: alerted his insurance of the claim. And—it bears repeating—he did not stop there. Of his own accord, he spoke with Plaintiff's counsel to try to figure out what to do, to no avail.

Plaintiff's various protestations about inconstancy, when Bollepalli learned of the default, and how Counsel became involved come to naught. Bollepalli attests that he first learned of the default on December 5, 2024, which Plaintiff tries to dispute by pointing to current Counsel contacting Plaintiff's counsel (Ms. Hoying) that same date. (Doc. 16, p. 5). It's unclear what analytical link Plaintiff is trying to draw here; a conversation between counsel on one date, has no bearing on whether Bollepalli became aware of default on that same date. In any event, this does not create any dispute as to Bollepalli's statement.

As for Counsel becoming aware of Plaintiff's default motion and reaching out to Plaintiff's counsel on that same day: naturally. On the day after (December 5, 2024) accepting assignment of the case (December 4, 2024), but before talking to Bollepalli, Counsel checked the docket to determine the matter's procedural posture, and reached out as a courtesy to Plaintiff's Counsel—and in that conversation, Plaintiff's counsel ultimately declined withdrawing the Motion, at a point where the

13

Clerk had not yet entered default. (See Declaration of Jacob Stalvey O'Neal, ¶¶ 5-6. Due diligence by newly retained counsel, investigating a new claim, is not skullduggery, as Plaintiff would apparently have it.

Plaintiff also seems to hang their hat upon Bollapelli's attestation of lacking knowledge of the sex trafficking suspect's activities, prior to his arrest. Plaintiff first attests that Bollepalli verbally told Plaintiff's counsel that the suspect was an independent contractor. (Doc. 16, pp. 6-7; Doc. 16-1, ¶ 6). Plaintiff then suggests that, somehow, Bollepalli's affidavit somehow undercuts this by his attestations that he had no knowledge of the suspect's—Shreesh Tiwari—alleged actions prior to his arrest. (Id., citing Doc. 11-1, ¶¶ 10-11). Plaintiff is grasping at straws—whether Tiwari was an independent contractor has no bearing on whether or not Bollepalli had knowledge of his supposed actions; and in fact, Bollepalli's affidavit does nothing to contradict his assertion that Tiwari was an independent contractor.

These matters addressed, as Plaintiff's response requested, the Defendants respectfully request that default be set aside.

## CONCLUSION

The overall mosaic of "good cause" factors obviously weigh in favor of opening default. Bollepalli acknowledges that he was served on October 8th, and that he missed the Answer deadline of October 29th. But as pointed out in the "Timeline" above and supported by sworn statements, this was not done *willfully*, since it resulted from the insurance handling beyond his control which, in turn, was done without knowledge of the service date and confusion abound about the applicable

policy and the full scope of the suit *until after the Answer deadline had already expired*. There is no prejudice to the Plaintiff in having to actually litigate and meet the burden of proof (which Plaintiff notably does not contest). There is a meritorious defense—namely, the Defendants' lack of knowledge of the alleged sex trafficking occurring before the suspect allegedly involved was arrested (See generally Bollepalli Aff. I). The Defendants acted promptly to correct the default, filing a their Motion to set aside default within five days of the Clerk's entry thereof. And, the injury of default judgment and the prospect of significant damages (if Plaintiff ultimately proves them) obviously poses a catastrophic financial loss to the defaulting parties if default is not opened.

Having been at the mercy of claims handling beyond his control; having taken active steps in trying to navigate a litigation landscape thrust upon him as a non-lawyer layperson to the best of his ability; having promptly acted to open default; there being no prejudice to the Plaintiff; and given the balance of all facts considered, Bollepalli and Budgetel respectfully pray that their Motion to Set Aside Default be GRANTED.

Respectfully submitted this 7th day of January, 2025.

                                      **HALL BOOTH SMITH, P.C.**

                                      */s/ Jacob Stalvey O'Neal*
                                      PHILLIP E. FRIDUSS
                                      Georgia Bar No. 277220
                                      JACOB STALVEY O'NEAL
                                      Georgia Bar No. 877316

                                      *Counsel for Defendants*

191 Peachtree Street, N.E.
Suite 2900
Atlanta, GA 30303-1775
Tel:  404-954-5000
Fax:  404-954-5020
Email:  pfriduss@hallboothsmith.com
Email:  joneal@hallboothsmith.com

## LOCAL RULE 7.1(D) CERTIFICATION

      Pursuant to  N.D. Ga. LR 7.1(D), the undersigned hereby certifies that this Brief complies with the page limitations and type specification of N.D. Ga. LR 5.1.

      **HALL BOOTH SMITH, P.C.**

      */s/ Jacob Stalvey O'Neal*
      PHILLIP E. FRIDUSS
      Georgia Bar No. 277220
      JACOB STALVEY O'NEAL
      Georgia Bar No. 877316

      *Counsel for Defendants*

191 Peachtree Street, N.E.
Suite 2900
Atlanta, GA 30303-1775
Tel:  404-954-5000
Fax:  404-954-5020
Email:  pfriduss@hallboothsmith.com
Email:  joneal@hallboothsmith.com

# IN THE UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF GEORGIA
# ROME DIVISION

| | |
|---|---|
| A.H.,<br><br>    Plaintiff,<br><br>v.<br><br>CARSON LOOP ESM, LLC D/B/A BUDGETEL, and SRINIVAS BOLLEPALLI,<br><br>    Defendants. | CIVIL ACTION FILE<br>NO. 4:24-cv-00224-WMR |

## CERTIFICATE OF SERVICE

I hereby certify that I have this day served the following counsel of record in this case with a true and correct copy of the foregoing **Reply in Support of Defendants' Motion to Open Default** upon all parties to this matter by depositing a true copy of same in the U.S. Mail, proper postage prepaid, addressed to counsel of record as follows and/or filing said document with the CM/ECF system which will automatically send electronic notification to the following:

<table>
<tr><td>

Peter A. Law, Esq.  
E. Michael Moran, Esq.  
Denise D. Hoying, Esq.  
Law & Moran  
563 Spring Street, N.W.  
Atlanta, GA 30308  
*pete@lawmoran.com*  
*mike@lawmoran.com*  
*denise@lawmoran.com*

</td><td>

Patrick J. McDonough, Esq.  
Jonathan S. Tonge, Esq.  
Andersen, Tate & Carr, P.C.  
One Sugarloaf Centre  
1960 Satellite Boulevard  
Suite 400  
Duluth, GA 30097  
*pmcdonough@atclawfirm.com*  
*jtonge@atclawfirm.com*

</td></tr>
</table>

Respectfully submitted this 7th day of January, 2024.

            **HALL BOOTH SMITH, P.C.**

            */s/ Jacob Stalvey O'Neal*
            PHILLIP E. FRIDUSS
            Georgia Bar No. 277220
            JACOB STALVEY O'NEAL
            Georgia Bar No. 877316

            *Counsel for Defendants*

191 Peachtree Street, N.E.
Suite 2900
Atlanta, GA 30303-1775
Tel:  404-954-5000
Fax:  404-954-5020
Email:  pfriduss@hallboothsmith.com
Email:  joneal@hallboothsmith.com