## IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF GEORGIA
## ROME DIVISION

A.H.,

     Plaintiff,

v.

CARSON LOOP ESM, LLC d/b/a
BUDGETEL, and SRINIVAS
BOLLEPALLI,

     Defendants.

CIVIL ACTION FILE
NO. 4:24-cv-00224-WMR

## BRIEF IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

COME **NOW CARSON LOOP ESM, LLC d/b/a BUDGETEL, and SRINIVAS BOLLEPALLI**, Defendants in the above-styled matter, and pursuant to Fed. R. Civ. P. 56 and N.D. Ga. LR 7.1 submit this their Brief in Support of their Motion for Summary Judgment, in support of which the said Defendants rely upon the accompanying Statement of Undisputed Material Facts, Depositions, Exhibits, and all facts and pleadings of record, respectfully showing the Court the following:

## INTRODUCTION AND NATURE OF PLAINTIFFS' CLAIMS

This matter concerns allegations that Plaintiff AH (hereinafter "AH"), while employed as a housekeeper at a Budgetel (hereinafter "the motel/ the Budgetel") in

Cartersville, GA, was subjected to sex and labor trafficking by an agent of that motel who oversaw day-to-day operations, Shreesh Tiwari (hereinafter "Tiwari"). Following a raid on the motel, Tiwari was criminally prosecuted and entered a guilty plea only as to labor trafficking. AH seeks a civil remedy and to hold liable the business entity which owned the motel, Carson Loop ESM, LLC (hereinafter "Carson Loop") and one of Carson Loop's individual owners, Sri Bollepalli (hereinafter "Bollepalli"), for sex and labor trafficking pursuant to the Trafficking Victims Protection Reauthorization Act ("TVPRA"), 18 U.S.C.A. § 1595 (hereinafter "the statute"). The statute attaches liability only to those (other than the actual perpetrator) who "knowingly benefit, or attempt() or conspire() to benefit… from participation in a venture" which they "know or should have known has engaged in an act [of sex or labor trafficking]." 18 U.S.C.A. § 1595(a). AH also asserts a negligence claim on the theory that the Defendants knew or should have known that Tiwari posed this kind of risk to employees at the Budgetel and failed to warn AH or take appropriate steps to secure her safety.

The Defendants dispute that the underlying trafficking occurred, as neither AH nor anyone else ever reported any such occurring, and Bollepalli never observed anything of the sort. In fact, the undisputed facts show that the first Bollepalli learned of Tiwari's alleged actions was when the motel was raided. But even if the underlying trafficking occurred, the analytical link of knowingly benefitting from a

joint venture is absent, and does not connect Tiwari's actions to the Defendants. Although AH attempts to point to a history of generalized criminal activity on the premises as creating notice or a heightened duty on the Defendants' part, the facts are that they simply had no knowledge, nor even reason to know, that Tiwari's acts toward AH were allegedly occurring. According to AH herself, the complained-of acts only ever occurred when she and Tiwari were alone. Beyond this, the undisputed facts also establish that there was no benefit to Bollepalli or to the business entity, and indeed, there was no commercial transaction involved at all. Further, there was no joint venture in furtherance of Tiwari's alleged actions. In the absence of any facts from which a jury could conclude that Bollepalli individually, or the business entity Carson Loop, had knowledge of, benefitted from, *and* were engaged in a joint venture to further Tiwari's actions, the Defendants respectfully request that summary judgment be granted for the Defendants as to each of AH's claims.

**knowingly benefits**, or **attempts or conspires to benefit**, **financially** or **by receiving anything of value** from **participation in a venture** which that person **knew** or **should have known has engaged in an act in violation of this chapter**

The Defendants had no knowledge of Tiwari's alleged misconduct toward AH prior to the Department of Homeland Security's raid on the motel, which precipitated Tiwari's arrest.

## STATEMENT OF UNDISPUTED MATERIAL FACTS

Defendants hereby incorporate by reference as if fully restated herein their contemporaneously filed Statement of Undisputed Material Facts. In particular, Defendants emphasize the following:

AH was hired in June 2020 as a housekeeper at the Budgetel in Cartersville, Georgia and worked there for approximately one year. (AH Dep. At 203:16-17). The Budgetel was owned by Carson Loop; Carson Loop is owned, in part, by Sri Bollepalli. (Bollepalli Dep. At 13:1-14). The Budgetel also was served by Shreesh Tiwari, who was hired as an independent contractor. (Bollepalli Dep. at 75:4-8, 131:1-12; Exhibit 6 to Bollepalli Dep.). AH worked at the Budgetel for four or five months, until the conduct she complains of in this action allegedly began. (A.H. Dep. At 203:19-23). Like other employees, AH participated in a program where she lived at the Budgetel and received a discounted rate for her room, which was withheld from her paycheck and then she received the balance of her weekly pay. (Bollepalli Dep. At 137:8-21; AH Dep. At 44:17-22).

AH alleges that Tiwari compelled her to perform oral sex; touched her body; threatened to kick her out for drug use; threatened to call the police and withhold her possessions if AH did not engage in sex acts with him; and physically left bruises on her body. (AH Dep. At 66:20-67:17; Dep. At 21:17-9-19; 22:23-23:2; 21:25-22:2;

4

23:7-13;23:16-20; 26:14-22). However, Bollepalli never witnessed these alleged actions, and AH never reported Tiwari's alleged abuses to law enforcement or to Bollepalli. (AH Dep. At 23:23-24:2; 68:2-19; Bollepalli Dep. At 132:25-133:2). Bollepalli never observed extra money in the Budgetel's finances, and there was no exchange of money during Tiwari's and AH's sexual interactions. (Bollepalli Dep. At 135:23-136:4; AH Dep. At 26:11-14).

In June 2021, the Department of Homeland Security raided the motel, and Tiwari was arrested. (Bollepalli Dep. At 51:1-3). Bollepalli terminated the business relationship with Tiwari that day. (Id. at 116:3-6). Tiwari subsequently pled guilty to one charge of labor trafficking. (Exhibit 19 to AH Dep.).

## STANDARD ON SUMMARY JUDGMENT

On summary judgment, the movant bears the initial burden of showing that there is no disputed material fact as to a material element of a claim; and after the movant satisfies this initial burden, the nonmovant bears the burden of showing specific facts indicating summary judgment is improper because a material issue of fact does exist. G.W. v. Northbrook Indus., Inc., 739 F. Supp. 3d 1243, 1247 (N.D. Ga. 2024), reconsideration denied, No. 1:20-CV-05232-JPB, 2025 WL 494620 (N.D. Ga. Feb. 13, 2025). "A mere 'scintilla' of evidence supporting the opposing party's position will not suffice; there must be enough of a showing that the jury

could reasonably find for that party." <u>Walker v. Darby</u>, 911 F.2d 1573, 1577 (11th Cir. 1990) (citation omitted). In the same vein, " 'some metaphysical doubt as to the material facts' " is not sufficient to create a genuine dispute. <u>Garczynski v. Bradshaw</u>, 573 F.3d 1158, 1165 (11th Cir. 2009) (stating that "the non-moving party must produce substantial evidence in order to defeat a motion for summary judgment") (citation omitted). In sum, if the record taken as a whole cannot lead "a rational trier of fact to find for the non-moving party, there is 'no genuine issue for trial.' " <u>G.W.</u>, <u>supra</u>, 739 F.Supp.3d at 1247, <u>quoting</u> <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986) (citation omitted).

## ARGUMENT AND CITATION OF AUTHORITY

### I.    Overview Of Controlling Law

#### a.  Federal law

The civil remedy for sex and labor trafficking claims is provided for by the TVPRA at 18 U.S.C.A. § 1595(a) , which states: **"**An individual who is a victim of a violation of this chapter may bring a civil action against the perpetrator (or whoever **knowingly benefits**, or **attempts or conspires to benefit**, **financially or by receiving anything of value** from **participation in a venture which that person knew or should have known** has engaged in an act in violation of this chapter) in

an appropriate district court of the United States and may recover damages and reasonable attorneys fees." (emphasis supplied).

The United States Court of Appeals for the Eleventh Circuit (hereinafter "the Eleventh Circuit") has announced four elements, each of which is required to be established in order to impose civil liability under 18 U.S.C.A. § 1595(a), which are that the defendant:

(1)    knowingly benefitted;
(2)    the benefit came from taking part in a common undertaking or enterprise involving risk and potential profit;
(3)    that the undertaking or enterprise in question itself violated the TVPRA as to the plaintiff; *and*
(4)    that the defendant had actual or constructive knowledge that the undertaking or enterprise violated the TVPRA as to the Plaintiff.

See Doe#1 v. Red Roof Inns, Inc., 21 F.4th 714 (11th Cir. 2021).

### i. Sex Trafficking

The TVPRA, by reference to the chapter in which it appears, codifies "sex trafficking" as occurring when a perpetrator "knowingly… **in or affecting interstate or foreign commerce**. recruits, entices harbors, transports, provides, obtains, advertises, maintains, patronizes, or solicits by any means a person; or benefits, financially or by receiving anything of value, from participation in a venture which has engaged in [an act described above], knowing, or (…) in reckless disregard of the fact, that means of force, threats of force, fraud, [or] coercion… will

7

be used to cause the person to engage in a **commercial sex act**." 18 U.S.C.A. § 1591(a) (emphasis supplied).

In turn, a "commercial sex act" is "any sex act, on account of which **anything of value is given to or received by any person**." 18 U.S.C.A. § 1595(e)(3) (emphasis supplied).

### ii. Labor Trafficking

Labor trafficking for purposes of the TVPRA occurs when a perpetrator "knowingly provides or obtains the labor or services of a person by any one of (…) the following means:

(1) by means of force, threats of force, physical restraint, or threats of physical restraint to that person or another person;
(2) (by means of serious harm or threats of serious harm to that person or another person;
(3) by means of the abuse or threatened abuse of law or legal process; or
(4) by means of any scheme, plan, or pattern intended to cause the person to believe that, if that person did not perform such labor or services, that person or another person would suffer serious harm or physical restraint."

18 U.S.C.A. § 1589(a).

### b. State Law

### i. Negligence Provisions

### 1. O.C.G.A. § 51-3-1 And General Allegations Of Failure To Warn Or Keep Premises Safe

8

O.C.G.A. § 51-3-1 provides that "[w]here an owner or occupier of land, by express or implied invitation, induces or leads others to come upon his premises for any lawful purpose, he is liable in damages to such persons for injuries caused by his failure to exercise ordinary care in keeping the premises and approaches safe."

### 2. O.C.G.A. § 41-1-1, Creating And Maintaining A Nuisance

A nuisance is anything that causes hurt, inconvenience, or damage to another and the fact that the act done may otherwise be lawful shall not keep it from being a nuisance. The inconvenience complained of shall not be fanciful, or such as would affect only one of fastidious taste, but it shall be such as would affect an ordinary, reasonable man. O.C.G.A. § 41-1-1.

### 3. O.C.G.A. § 16-5-47, Failure To Comply With Posting Notice

This provision requires hotels to post a model notice from the Georgia Bureau of Investigation providing information to access a human trafficking hotline. O.C.G.A. § 16-5-47(b), (c).

## II. The Undisputed Facts Show That No Sex Or Labor Trafficking Occurred Within The Statutory Definitions Of Same

The Defendants deny that the underlying conduct AH complains of by Tiwari occurred, as neither Bollepalli, nor anyone else except for Tiwari or AH, were in the

room to witness when the specific conduct AH alleges happened. (AH Dep. At 83:12-22).But even if the specific acts of which AH complains occurred, they do not amount to sex or labor trafficking under the meaning of the TVPRA.

Addressing the sex trafficking claims first: although AH alleges that Tiwari forced her to perform oral sex on him and that he touched her body in a sexual manner, she herself has testified that nothing of value was exchanged for the sex acts in question. There was no money transaction at any time in exchange for sexual activity between Tiwari and AH. (AH Dep. At 25:11-14). AH alleges that Tiwari threatened to kick her out of her room, call DFCS or the police, or withhold her belongs if she did not engage in sexual acts with Tiwari. (AH Dep. At 23:16-20, 26:14-22). But there is no indication that Tiwari charged money or otherwise profited from his interactions with her; and Tiwari never asked or forced AH to engage in sexual acts with others, for money or otherwise—the interactions AH describes happened between herself and Tiwari alone. (AH Dep. At 26:2-7). And of course, there is no evidence that Bollepalli or Carson Loop—who never learned of the accusations until after the motel was raided—received anything of value out of the interactions.

The mere fact that the Defendants were involved in running a motel business, which  itself involved money transactions, and that Tiwari was at some point

performing services for the motel for pay, does not in and of itself transfer the sex acts between Tiwari and AH into *commercial* sex acts in the absence of a commercial aspect in those specific acts. In other words, merely being or operating a commercial enterprise is not enough, even if the sex acts in question involve someone who happens to be an employee or agent thereof; there must be a commercial element— a transfer of something of value—connected to the sex acts themselves. See G.W. v. Northbrook Industries, Inc., N.D.Ga.2024, 739 F.Supp.3d 1243, reconsideration denied 2025 WL 494620 (merely being a commercial entity such as a hotel is not sufficient). By contrast to this case, matters where the courts have found that a commercial sex act *did* occur are of the kind where someone actually pays in order to engage in sexual conduct, and money changes hands, going to the facilitator of the act in exchange for giving access to the trafficked person. See, e.g., K. H. v. Riti, Inc., No. 23-11682, 2024 WL 505063, at *1 (11th Cir. Feb. 9, 2024) (Plaintiff was coerced to work as a prostitute by Defendant, who took the proceeds from payors in exchange for their sexually assaulting Plaintiff and then took a portion of the proceeds to book future lodging so as to continue the scheme).

Since there is no evidence of an exchange of anything of value as a component of the alleged sex acts to which AH was subjected-- however unfortunate and serious her actual experiences—the acts in question cannot amount to "commercial sex

acts," and therefore do not constitute "sex trafficking" under the TVPRA. Consequently, summary judgment should be granted on AH's sex trafficking claims.

By a similar token, the necessary elements of labor trafficking are not met under the facts in the record here. For labor trafficking to occur, the victim's labor must be obtained by some sort of compulsion—whether threats, force, threatening abuse of legal process, or the like. 18 U.S.C.A. § 1589(a). In this case, there is no evidence of threats *of the kind contemplated by the statute* being made to AH *to obtain her labor*.

AH alleges that Tiwari threatened her on various occasions by applying physical force, as well as threatening to withhold her belongings, to kick her out, and to interfere with her relationship with her son and/or DFCS. But AH's testimony is that Tiwari did this in order to get her to engage in sex acts—*not* to get her to work or otherwise obtain her labor. (AH Dep. At 23:16-20). In fact, AH's work at the Budgetel began four or five months before Tiwari's alleged actions began, and everything was "copacetic" at that time. (AH Dep. At 203:19-23). Thus, her labor there was already obtained before Tiwari allegedly began making threats. And ultimately, there is no evidence in the case that threats were made by Tiwari regarding AH's labor; and so, AH was not labor trafficked by Tiwari.

As for Bollepalli and his business entity, Carson Loop: AH came to work at the Budgetel of her own accord, after visiting her aunt there. (AH Dep. At 43:3-6).

AH alleges that Bollepalli once threatened to fire her for not changing mattress covers. (AH Dep. At 41:19-21). But housekeeping duties were part of part of her job duties for which she was hired, and she agreed to come work at the Budgetel understanding those duties. (AH Dep. At 42:12-24). A statement that an employee would be fired for refusing to do the job duties for which she was hired is not the sort of force, threat, or other compulsion to obtain labor contemplated by the TVPRA. Nor, for that matter, is the discount room/ rent withholding arrangement AH used with the Budgetel, along with other employees. Multiple employees— none of whom, other than AH, have brought trafficking claims according to the record—utilized this arrangement, whereby employees living on the premises would receive a discounted room rate of $150.00 per week, down from $300.00. (Bollepalli Dep. At 66:24-77:21; 136:24-137:21). Like other employees, AH participated in this program, and netted $150.00 per week for her $300.00 weekly pay. (AH Dep. At 44:17-22). While perhaps AH felt she was paid insufficiently, or that this was not a good deal, the arrangement is not a "threat" or other compulsion to get her to work at the Budgetel. Summary judgment should be granted to Defendants on the merits of AH's trafficking claims as well.

### III. The Undisputed Facts Show That AH Cannot Establish The Requisite Elements To Hold Defendants Liable Under The TVPRA

#### a. There Is No Evidence The Defendants Benefitted, Knowingly Or Otherwise, From Any TVPRA Violation

It is not enough for the "benefit" portion of the "knowingly benefit" prong that a defendant was somehow made better off in the abstract through the sex or labor trafficking acts taking place; there must be some direct benefit profiting a defendant in order to meet this element. The Eleventh Circuit expounded upon this in Bridges v. Poe, 155 F.4th 1302 (11th Cir. 2025). In that case, the plaintiffs contended they were sex trafficked when jailers and inmates together orchestrated a complicated scheme whereby inmates were given trustee status in exchange for sex with jailers, and that they were victims of labor trafficking when they provided the municipality with free labor performing jobs around the jail. Bridges, 155 F.4th at 1320. The Eleventh Circuit disagreed, stating that "even if we were to accept that female trustees conferred some kind of financial benefit on the City by cutting costs, that would not be enough." Id. The Court went on to address the "knowing" aspect, holding that "[t]here is zero evidence that the City *knowingly* benefited from the program, or that its officials had constructive or actual knowledge that the undertaking or enterprise violated the TVPRA as to the plaintiff[s][,]" and granting summary judgment to the defendants. Id. (emphasis in original) (citation and quotation omitted).

Here, there is no evidence that Bollepalli or Carson Loop benefitted, knowingly or otherwise, from Tiwari's alleged actions. AH was paid for her labor, and used the same room discount program as other employees, so there was nothing

14

specific to the circumstances of her compensation whereby AH was uniquely underpaid as part of a trafficking scheme and the business profited from her labor in ways it did not from others. (AH Dep. At 44:17-22). And there is no evidence of any direct benefit to the business or to Bollepalli of any kind, whether from AH's labor or from Tiwari's alleged sexual misconduct toward her. For example, when Bollepalli reviewed the Budgetel's finances, he never found extra or unaccounted for money. (Bollepalli Dep. at 135:23-136:4). Whatever Tiwari did, it inured to gratify Tiwari himself—not benefit Carson Loop or Bollepalli. On the undisputed facts, no jury could find that the Defendants "knowingly benefitted" from any act violating the TVPRA, and therefore AH's federal claims fail this prong, and Defendants are entitled to summary judgment.

### b. There Is No Evidence Of A Common Undertaking *In Furtherance Of* Sex Or Labor Trafficking, i.e., Where Such An Undertaking Was In Fact In Violation Of The TPRA

To meet the second and third elements of the Eleventh Circuit's TVPRA violation formula, simply being involved in *a* joint venture—like operating a motel—is not enough. To be liable, the venture or common undertaking in which a defendant is engaged must be the "common undertaking **of** […] trafficking." Doe #1 v. Red Roof Inns, Inc., 21 F.4th 714, 727 (11th Cir. 2021) (emphasis supplied). And even awareness of trafficking, where it occurs (which Defendants do not admit happened here) does not attach liability without some proactive action toward the

object of trafficking; "observing something is not the same as participating in it." <u>Id.</u> In <u>Doe</u>, the plaintiff alleged that a hotel franchisor sent inspectors to the premises where they would have seen signs of sex trafficking, and that they received reviews mentioning sex work occurring at the hotels. 21 F.4th at 727. The Eleventh Circuit made the finding above and dismissed those claims, holding that the TVPRA beneficiary claims must fail.

This Court, too, has emphasized that a joint venture must be in furtherance, or to the purpose, of the trafficking—in other words, that trafficking occurs in the course of some other venture *with some other object* (such as running a motel) does not meet these elements. In <u>G.W. v. Northbrook Industries, Inc.</u>, there was evidence that rented rooms at the hotel for 11 nights over 3 months, for the purpose of sex trafficking; and that the hotel benefitted from the income of renting the rooms; even that the hotel *knew* and turned a blind eye to trafficking and prostitution on the property. <u>739 F.Supp.3d 1243</u> (N.D. Ga. 2024). This Court held that "[i[t is not enough for the purposes of the participation prong that [the hotel] knew or should have known that sex trafficking was occurring at its property. For participation liability to attach under § 1595(a), [a plaintiff] must show *more* than [the hotel's] knowledge of the illicit activity and its rental of rooms to Plaintiff's traffickers.(…) [A plaintiff] must show at least some connection between [the hotel's] and her

traffickers' actions, and she must show that [the hotel] **took steps to advance the object** of that relationship." Id. at 1251 (emphasis supplied).

This case does not even approach the evidentiary weight of G.W. Unlike G.W., there is no evidence that Bollepalli or the business entity knew that the sexual actions of Tiwari of which AH complains took place until after the Homeland Security raid, and AH never complained to Bollepalli about Tiwari whether concerning her employment duties or the alleged sexual misconduct. (Bollepalli Dep. at 133:7-10; AH Dep. At 24:3-5). There is no evidence that Bollepalli individually, or Carson Loop the business entity, affirmatively *did* anything—like keeping a lookout, or restraining AH, etc.—to further AH's alleged *trafficking*. In the absence of such evidence, these elements cannot be satisfied, and summary judgment is warranted on all federal claims.

### c. There Is No Evidence Of Defendants Having Actual Or Constructive Knowledge Of Tiwari's Complained-Of Activities

There is no evidence of any actual knowledge of Tiwari's alleged actions toward AH on the part of Bollepalli or Carson Loop; for AH's claims to survive summary judgment, then, there must be facts from which a jury could conclude the Defendants had *constructive* knowledge. But there are no such sufficient facts here.

Observation of common behaviors associated with sex trafficking on the premises is not sufficient to constitute constructive knowledge of the trafficking

17

itself. See K.H. v. Riti, No. 1:22-CV-3404-MHC, 2023 WL 3644224, at *3 (N.D. Ga. Apr. 17, 2023). In K.H., the plaintiff alleged a long list of behaviors associated with sex trafficking as outlined by various federal authorities. Id. at 4. This Court dismissed the Complaint, holding that there had to be a "direct association" between the employer and the alleged trafficker vis-à-vis the trafficking, in order for knowledge to be imputed to the employer. Id. The Court went on to distinguish K.H. from cases where alleged evidence did support a direct association, and therefore constructive knowledge, including matters where employees alleged actively aided the trafficker by alerting him to heavy foot traffic, or where defendants acted as lookouts for the trafficker. Id. Sister Courts have also held that general knowledge of sex trafficking in the hotel industry—even particular to a hotel brand—and crime statistics are not enough to establish constructive knowledge. See, e.g., Doe (L.M.) v. 42 Hotel Raleigh, LLC, 717 F. Supp. 3d 464, 473 (E.D.N.C. 2024) (General knowledge of prevalence of sex trafficking in hotel industry, including brand of hotels run by hotel operator, did not impute constructive knowledge of sex trafficking by force or fraud to operator and hotel chain franchisor, which was required element for alleged sex trafficking victim to state claim (TVPRA)).

In this case, there is no evidence that the Defendants had constructive knowledge. Although there is some evidence of prior law enforcement calls to the premises, Bollepalli would review police reports, and he never saw reports of, for

example, prostitution in the reports he reviewed. (Bollepalli Dep. At 64:20-23). In fact, Bollepalli told all employees at the Budgetel that if they identified suspicious behavior, they should come to Bollepalli directly. (Bollepalli Dep. at 32:25-33:3). In the absence of evidence of constructive or actual knowledge, then, AH's TVPRA claims fail on this element as well, and summary judgment is warranted.

## IV.    All Federal Claims Being Ripe For Summary Judgment For Defendants, The Court Should Decline To Exercise Supplemental Jurisdiction Over AH's Remaining State Law Claims

Since AH's federal sex and labor trafficking claims fail on summary judgment for the reasons shown above, Defendants respectfully request the Court decline supplemental jurisdiction over the remaining Georgia law negligence claims. See, e.g., Bruce v. U.S. Bank National Association, 770 Fed.Appx. 960 (11th Cir. 2019).

## V.    There Is No Evidence From Which A Jury Could Find The Defendants Negligent

### A. O.C.G.A. § 51-3-1 And General Allegations Of Failure To Warn Or Keep Premises Safe

O.C.G.A. § 51-3-1 provides that "[w]here an owner or occupier of land, by express or implied invitation, induces or leads others to come upon his premises for any lawful purpose, he is liable in damages to such persons for injuries caused by his failure to exercise ordinary care in keeping the premises and approaches safe."

In addition to this provision, AH attempts to hold Defendants liable for general premises liability, including failure to provide adequate lighting and security; failure to warn invitees of known hazards; failure to keep the property safe; failure to prevent and remove loiterers and trespassers; failure to properly hire, train, and supervise employees; general negligent security; and failure to properly inspect and maintain the premises. (Doc. 1, p. 21-22).

Georgia law requires premises owners to exercise ordinary care to keep the premises safe, which is the degree of care exercised by ordinarily prudent individuals under the same or similar circumstances. See, e.g., Mullinax et al. v. Pilgrim's Pride corp., 354 Ga. App. 186 (2020); accord O.C.G.A. § 51-3-1. AH has the burden to show that Defendants had actual or constructive knowledge of an unsafe condition (i.e., in this case, sex or labor trafficking at the hands of Tiwari) and that AH lacked the same knowledge despite her own exercise of ordinary care. See, e.g., Camelot club  Condominium Assoc., Inc. v. Afari-Opoku, 340 Ga. App. 618 (2017).

Where an invitee is injured by a third party's intervening criminal act, the proprietor is generally insulated from liability. See, e.g., Martin v. Six Flags Over Georgia (II), LP, 301 Ga. 323, 328 (II), 801 S.E.2d 24 (2017). The exception arises where the proprietor had sufficient reason to anticipate the criminal conduct in question. Id. "[T]he **foreseeability of *the criminal act*** informs whether the

proprietor's duty of ordinary care... encompasses the duty to keep invitees safe from third-party criminal conduct." Georgia CVS Pharmacy, LLC v. Carmichael, 316 Ga. 718, 722, 890 S.E.2d 209, 219 (2023) (emphasis supplied). But, "without foreseeability that a criminal act will occur, **no duty** on the part of the proprietor to exercise ordinary care to prevent that act arises." Id. (emphasis supplied). "The existence of a legal duty... is a question of law for the court." Maynard v. Snapchat, Inc., 313 Ga. 533, 535-36(2), 870 S.E.2d 739 (2022).

The reasonable foreseeability of a third-party criminal act is determined from the totality of the circumstances; and "evidence of **substantially similar** prior criminal activity is typically central to the inquiry." Georgia CVS, supra, 316 Ga. at 727 (2023). The Georgia Supreme Court in Georgia CVS has instructed the following:

> Whether knowledge of such past crimes in fact gave the proprietor reason to anticipate the criminal act in question — i.e., whether the act was reasonably foreseeable — depends on the "location, nature and extent of the prior criminal activities and their **\*728** likeness, proximity or other relationship to the crime in question." Id.[8] This makes good sense: if the past crimes in question (1) happened closer in proximity to the subject premises, (2) happened closer in time to the criminal conduct at issue, (3) happened more frequently, and (4) were more similar to the act that is the subject of the litigation, then all else equal, a proprietor will ordinarily have better and stronger reasons to anticipate that the particular
> criminal        act        could        occur        on        the        premises.
>
> Georgia CVS Pharmacy, LLC v. Carmichael, 316 Ga. 718, 727-28, 890 S.E.2d 209, 223 (2023).

There is no evidence in this case that Bollepalli or Carson Loop had prior notice that Tiwari posed a risk of being a sex or labor trafficker. Bollepalli checked Tiwari's references, and had no knowledge of any prior criminal history. (Bollepalli Dep. At 76:25-77:13). Absent evidence of prior knowledge of the kind of harms AH allegedly suffered at Tiwari's behest, negligence cannot attach to the Defendants, and summary judgment—if the Court addresses the Georgia law claims—is warranted.

### B. O.C.G.A. § 41-1-1, Creating And Maintaining A Nuisance

To be liable for nuisance, the tortfeasor must be either the cause or a concurrent cause of the creation, continuance, or maintenance of the nuisance. Sumitomo Corp. of America v. Deal, 256 Ga.App. 703, 569 S.E.2d 608 (2002), certiorari denied. In this case, neither Bollepalli himself, nor Carson Loop, "caused" Tiwari to engage in the alleged sex acts with AH, to make any of his alleged threats, or any other action of which AH complains. And there is no evidence that they knew of any such, prior to the motel being raided; therefore, they cannot be said to have caused the continuance of any such nuisance posed by Tiwari. Summary judgment on AH's nuisance claim should be granted.

### C. O.C.G.A. § 16-5-47 Notice Requirements Were Observed

This provision requires hotels to post a model notice from the Georgia Bureau of Investigation providing information to access a human trafficking hotline. O.C.G.A. § 16-5-47(b), (c). The trafficking hotline notice required by O.C.G.A. § 16-5-47 was in fact posted at the Budgetel (Bollepalli Dep. At 73:12-74:24; Exhibit 5 to same). Therefore, Defendants are entitled to summary judgment.

## VI.    AH Is Not Entitled To Punitive Damages Or Attorney's Fees

There being no surviving claims on summary judgment, and there being no evidence that the Defendants have been stubbornly litigious, vexatious, or wanton, AH is not entitled to punitive damages or attorney's fees, and all such claims should be dismissed on summary judgment.

## CONCLUSION

For the foregoing reasons, Defendants respectfully request that summary judgment be GRANTED as to each and every one of AH's claims.

Respectfully submitted this 30th day of January, 2026.

**HALL BOOTH SMITH, P.C.**

*/s/ Jacob Stalvey O'Neal*
PHILLIP E. FRIDUSS
Georgia Bar No. 277220
JACOB STALVEY O'NEAL
Georgia Bar No. 877316

*Counsel for Defendants*

191 Peachtree Street, N.E.
Suite 2900
Atlanta, GA 30303-1775
Tel:  404-954-5000
Fax:  404-954-5020
Email:  pfriduss@hallboothsmith.com
Email:  joneal@hallboothsmith.com

## IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF GEORGIA
## ROME DIVISION

| | |
|---|---|
| A.H.,<br><br>     Plaintiff,<br><br>v.<br><br>CARSON LOOP ESM, LLC D/B/A<br>BUDGETEL, and SRINIVAS<br>BOLLEPALLI,<br><br>     Defendants. | CIVIL ACTION FILE<br>NO. 4:24-cv-00224-WMR |

## CERTIFICATE OF SERVICE

I hereby certify that I have this day served the following counsel of record in this case with a true and correct copy of the foregoing **Brief in Support of Defendants' Motion for Summary Judgment** upon all parties to this matter by depositing a true copy of same in the U.S. Mail, proper postage prepaid, addressed to counsel of record as follows and/or filing said document with the CM/ECF system which will automatically send electronic notification to the following:

Peter A. Law, Esq.
E. Michael Moran, Esq.
Denise D. Hoying, Esq.
Law & Moran
563 Spring Street, N.W.
Atlanta, GA 30308
pete@lawmoran.com
mike@lawmoran.com
denise@lawmoran.com

Patrick J. McDonough, Esq.
Jonathan S. Tonge, Esq.
Andersen, Tate & Carr, P.C.
One Sugarloaf Centre
1960 Satellite Boulevard
Suite 400
Duluth, GA 30097
pmcdonough@atclawfirm.com
jtonge@atclawfirm.com

Michael C. Kendall, II
**KENDALL LEGAL, LLC**
3152 Golf Ridge Drive
Suite 201
Douglasville, GA 30135
michael@kendall-legal.com
*Co-Counsel for Defendants*

Respectfully submitted this 30th day of January, 2026.

**HALL BOOTH SMITH, P.C.**

*/s/ Jacob Stalvey O'Neal*
PHILLIP E. FRIDUSS
Georgia Bar No. 277220
JACOB STALVEY O'NEAL
Georgia Bar No. 877316

*Counsel for Defendants*

191 Peachtree Street, N.E.
Suite 2900
Atlanta, GA 30303-1775
Tel: 404-954-5000
Fax: 404-954-5020
Email: pfriduss@hallboothsmith.com
Email: joneal@hallboothsmith.com