## IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF GEORGIA
## ROME DIVISION

|  |  |
|---|---|
| A.H., | |
| Plaintiff, | |
| v. | CIVIL ACTION FILE |
| CARSON LOOP ESM, LLC d/b/a BUDGETEL, and SRINIVAS BOLLEPALLI, | NO. 4:24-cv-00224-WMR |
| Defendants. | |

## STATEMENT OF UNDISPUTED MATERIAL FACTS IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

COME NOW, **CARSON LOOP ESM, LLC d/b/a BUDGETEL and SRINIVAS BOLLEPALLI**, Defendants in the above-styled matter, and pursuant to Fed. R. Civ. P. 56(c) and N.D. Ga. LR 7.1(B)(1) submit this their Statement of Undisputed Material Facts in Support of their Motion for Summary Judgment, in support of which the Defendants rely upon the accompanying Depositions, Exhibits, Affidavits, and all facts and pleadings of record, respectfully showing the Court the following:

## I.    The Budgetel And Its Operations

**1.**

Defendant Sri Bollepalli (hereinafter "Bollepalli") is one of two owners of Carson

Loop ESM, LLC (hereinafter "Carson Loop"). (Bollepalli Dep. At 13:15-22).

2.

Carson Loop, in turn, owns a Budgetel motel on Carson Loop Boulevard in

Cartersville, GA, which it has owned since 2016. (Bollepalli Dep. at 13:1-14).

3.

The purchase of the Budgetel in 2016 was Bollepalli's first time working in the hotel

business. (Bollepalli Dep. at 15:1-6).

4.

The previous owner provided Bollepalli with a training course on how to hire staff

and how to run the books of the motel. (Bollepalli Dep. at 17:18-24).

5.

The training materials were provided by Budgetel corporate. (Bollepalli Dep. at

18:3-5).

6.

The trafficking hotline notice required by O.C.G.A. § 16-5-47 was posted at the Budgetel on a board in the lobby. (Bollepalli Dep. At 73:12-74:24; Exhibit 5 to same).

7.

However, Budgetel did not provide any documents defining strict safety measures, nor qualifying what does or does not constitute a required safety measure. (Bollepalli Dep. at 130:13-19).

8.

Budgetel did not provide any kind of minimum security requirement, and it did not require Bollepalli to have security personnel on the premises. (Bollepalli Dep. at 130:20-25).

9.

Carson Loop hired Shreesh Tiwari in January 2020 to handle management duties, and Tiwari moved into an apartment behind the motel office. (Bollepalli Dep. at 2313-16; 24:3-14).

10.

Tiwari was hired as an independent contractor. (Bollepalli Dep. at 75:4-8, 131:1-12; Exhibit 6 to Bollepalli Dep.).

11.

Tiwari was recommended to Bollepalli by Neal Collins, a representative of Budgetel corporate who inspected the motel, and Collins said that Tiwari was a good candidate for hire. (Bollepalli Dep. at 58:20-59:3; 75:18-76:9).

12.

Collins never gave Bollepalli any information about Tiwari's criminal background. (Bollepalli Dep. at 137:22-25).

13.

Bollepalli had never heard of Tiwari prior to December 2019. (Bollepalli Dep. at 84:21-24).

14.

Bollepalli called Tiwari's employment references, and the references were positive, including that Tiwari had improved business at an apartment complex where he was previously employed as a manager. (Bollepalli Dep. at 76:25-77:13).

15.

In addition to Tiwari, the Budgetel employed housekeepers, maintenance personnel, and front desk staff. (Bollepalli Dep. at 53:16-25).

16.

The decision to hire and fire employees ultimately rested with Bollepalli; Tiwari could not hire or fire an employee without Bollepalli's approval. (Bollepalli Dep. at 86:13-24).

17.

AH came to work at the Budgetel after visiting her aunt there. (AH Dep. At 43:3-6).

18.

AH began working at the Budgetel in June 2020 and was there for approximately one year. (A.H. Dep. At 203:16-17).

19.

Before AH was hired, her job duties that were discussed included housekeeping duties and some construction tasks. (A.H. Dep. At 42:12-21).

20.

AH agreed to come work at the Budgetel understanding these job duties. (A.H. Dep. At 42:22-24).

21.

Other personnel, including housekeeping and maintenance staff, lived on the property. (Bollepalli Dep. at 66:10-12).

22.

Those employees who chose to live on the property were provided a discounted room rate of $150.00/ week, compared to $300/ week rent to the general public. (Bollepalli Dep. at 66:24-67:21).

23.

Employees were paid weekly. (Bollepalli Dep. at 67:16-17).

24.

A.H. earned $300 per week. (Bollepalli Dep. at 136:24-137:21).

25.

Other employees beside A.H. also had the arrangement whereby money for their discounted rooms would be taken out of their paychecks, and they would then be paid the balance. (Bollepalli Dep. at 137:18-21).

26.

Budgetel was aware of the arrangement whereby employees could live on the premises in exchange for reduced rent, and Bollepalli discussed the arrangements in person with Collins several times. (Bollepalli Dep. at 136:9-21).

27.

The trafficking hotline notice required by O.C.G.A. § 16-5-47 was posted at the Budgetel on a board in the lobby. (Bollepalli Dep. At 73:12-74:24; Exhibit 5 to same).

28.

AH participated in the discounted room program, where the cost of the room was deducted from her weekly pay, thereby netting $150.00 per week. (A.H. Dep. At 44:17-22).

29.

AH was aware of other Budgetel employees who also participated in this arrangement. (A.H. Dep. At 45:15-17).

30.

Housekeepers were paid at an hourly rate. (Bollepalli Dep. at 69:22-24).

31.

AH received one raise, but never asked Bollepalli for any further raise. (A.H. Dep. At 88:8-89:11).

32.

Tiwari remained employed at the Budgetel until it was raided by the Department of Homeland Security in June 2021. (Id.).

33.

The raid occurred on June 29, 2021. (Bollepalli Dep. at 51:1-3).

34.

Bollepalli terminated the business relationship with Tiwari that same day and asked him to leave. (Bollepalli Dep. at 116:3-6).

35.

In October 2019, the Department of Public Health temporarily shut down the Budgetel for code violations including unapproved cooking equipment, not providing services on a weekly basis, finishings not being kept up, and an infestation of roaches and flies. (Bollepalli Dep. at 61:21-62:8).

36.

From January 2020 until the motel's reopening in May 2020, Tiwari's role was to assist with renovations by buying items and working with contractors. (Bollepalli Dep. at 39:18-22).

37.

The Budgetel remained unprofitable since its reopening. (Bollepalli Dep. at 43:17-22).

38.

Bollepalli would visit the Budgetel two to three days per week, from 9:00 AM to 5:00 PM. (Bollepalli Dep. at 27:4-8; 27:25-28:3).

39.

While at the Budgetel, Bollepalli would check the accounting, surveillance camera footage, and work with the contractors. (Bollepalli Dep. at 65:16-21).

40.

Bollepalli did not spend the night at the Budgetel. (Bollepalli Dep. at 27:22-24).

41.

Bollepalli himself never called the police to the Budgetel due to a safety or security concern. (Bollepalli Dep. at 29:20-23).

42.

Bollepalli would ask for police reports on any activity at the Budgetel once a year. (Bollepalli Dep. at 30:8-17).

43.

Bollepalli's review of the reports revealed that most of the calls for police were false calls for non-emergency complaints, such as a broken microwave or a toilet not working. (Bollepalli Dep. at 64:6-11).

44.

Bollepalli did not see reports of drug activity, drug sales, or prostitution in the reports he reviewed. (Bollepalli Dep. at 64:20-23).

45.

Bollepalli told all employees at the Budgetel that if they identified suspicious behavior, they should come to Bollepalli directly. (Bollepalli Dep. at 32:25-33:3).

46.

The Budgetel permitted pets on the premises until the arrival of COVID-19 in March 2020, at which point the policy changed to prohibit pets, which prohibition remained in place until June 2021. (Bollepalli Dep. at 35:3-17).

47.

An incident reporting policy was in place, whereby incidents or security breaches should be reported to management; and if it were a major incident that management could not handle, then the authorities would be called. (Bollepalli Dep. at 35:21-36:7).

48.

A GBI human trafficking notice was posted on a board at the Budgetel. (Bollepalli Dep. at 73:12-21; Exhibit 5; 11 to Bollepalli Dep.).

49.

The board was in a hallway that was accessible to all employees. (Bollepalli Dep. at 139:19-140:13).

50.

Budgetel did not provide Bollepalli with any training on identifying or preventing human trafficking. (Bollepalli Dep. at 85:3-7).

51.

Bollepalli never received any training on how to identify or prevent human trafficking. (Bollepalli Dep. at 85:8-10).

52.

Bollepalli had no knowledge about the signs of human trafficking prior to Tiwari's arrest. (Bollepalli Dep. at 85:22-25).

53.

Bollepalli had no knowledge about how to prevent human trafficking prior to Tiwari's arrest. (Bollepalli Dep. at 86:1-4).

54.

Bollepalli never saw any online reviews about crime, prostitution, or drugs at the motel premises. (Bollepalli Dep. at 121:25-122:2).

## II.    Lack Of Defendants' Knowledge Of Or Benefit From Any Violation

55.

When Bollepalli had conversations with A.H., A.H. would praise Tiwari and stated that Tiwari was doing a great job. (Bollepalli Dep. at 122:17-123:4).

56.

Staff at the Budgetel were permitted to bring unresolved problems to Bollepalli himself. (Bollepalli Dep. at 132:7-11).

57.

Staff could come directly to Bollepalli with issues; they were not required to take matters only to the manager before coming to Bollepalli. (Bollepalli Dep. at 132:21-23).

58.

If anyone had come to Bollepalli directly to report any labor or sex trafficking, or sexual harassment, Bollepalli would have taken action. (Bollepalli Dep. at 132:12-20).

59.

A.H. never complained to Bollepalli about Tiwari forcing A.H. to engage in any sexual conduct with Tiwari. (Bollepalli Dep. at 132:25-133:2).

60.

A.H. never complained to Bollepalli about Tiwari compelling her to use drugs. (Bollepalli Dep. at 133:4-6).

61.

A.H. never complained to Bollepalli about Tiwari forcing A.H. to perform any employment duties that A.H. thought were improper. (Bollepalli Dep. at 133:7-10).

62.

Prior to Tiwari's arrest, no one ever complained to Bollepalli about any sex or labor trafficking at the Budgetel. (Bollepalli Dep. at 133:18-22).

63.

Bollepalli does not know how any investigations into drug activity at the Budgetel turned out, and he does not know if anyone at the Budgetel was ever criminally convicted for using or possessing drugs. (Bollepalli Dep. at 134:19-21).

64.

Bollepalli never personally observed any drug paraphernalia on the premises. (Bollepalli Dep. at 134:25-135:2).

65.

Bollepalli does not know if anyone staying at the Budgetel was ever convicted of any violent crime. (Bollepalli Dep. at 134:22-24).

66.

The Budgetel did not turn a profit in the years 2019-2021. (Bollepalli Dep. at 135:2-12).

67.

When the Budgetel was visited by Budgetel's corporate representative, Neal Collins, Collins never complained to Bollepalli about the finances of the Budgetel or about the way the books were being kept. (Bollepalli Dep. at 135:13-22).

68.

Collins never complained to Bollepalli about what the employees were being paid, and the employees were paid on par with the industry standard. (Bollepalli Dep. at 136:5-8).

69.

When Bollepalli reviewed the Budgetel's finances, he never found extra or unaccounted for money. (Bollepalli Dep. at 135:23-136:4).

70.

Bollepalli never saw A.H.'s credit card or ID being held at the front desk prior to Tiwari being arrested. (Bollepalli Dep. at 140:14-21).

71.

AH never told Bollepalli nor Tiwari that she was getting drugs on the premises of the Budgetel. (A.H. Dep. At 15:1-25; 19:4-6).

72.

AH never saw Bollepalli observe any drugs on the Budgetel premises. (A.H. Dep. At 19:25-20:2).

73.

AH never discussed drug use on the premises of the Budgetel at any point with Bollepalli. (A.H. Dep. At 20:11-13).

74,

AH never reported Tiwari's alleged theft of AH's car, car title, room key, or belongings to law enforcement, nor did AH ever file a civil action seeking to get the items returned. (A.H. Dep. At 26:25-27:5).

75.

AH never reported any of Tiwari's threats to law enforcement. (A.H. Dep. At 23:23-24:2).

76.

No one was in the room when AH allegedly performed oral sex on Tiwari, when Tiwari allegedly would touch AH's breasts or body, or when Tiwari allegedly left bruises on AH. (A.H. Dep. At 83:12-22).

77.

There was not any point in AH's interactions with Tiwari where there was an exchange of money for any sexual activity. (A.H. Dep. At26:11-14).

78.

AH does not recall any occasion where Bollepalli was physically present when Tiwari would allegedly make threats about reporting AH's drug use and call DTF on her. (A.H. Dep. At 68:2-19).

79.

AH never told any staff at the Budgetel, including Bollepalli, about her sexual contact with Tiwari. (A.H. Dep. At 31:20-23).

80.

AH never talked to any law enforcement about Tiwari before law enforcement raided the Budgetel. (A.H. Dep. At 32:2-4).

81.

AH does not recall any occasion where Bollepalli personally was present while Tiwari touched AH in any way. (A.H. Dep. At 24:18-20).

### III.    AH's Allegations

82.

AH alleges that Tiwari touched her in her room and in his office, including rubbing her breasts. (A.H. Dep. At 21:17-9-19; 22:23-23:2).

83.

AH alleges that Tiwari threatened to kick her out for her drug use. (A.H. Dep. At 21:25-22:2).

84.

AH alleges that Tiwari compelled her to perform oral sex on Tiwari at least four times. (A.H. Dep. At 23:7-13).

85.

AH alleges that Tiwari threatened to kick her out, call DFCS, or call the police  AH performed oral sex on Tiwari. (A.H. Dep. At 23:16-20).

86.

AH also alleges that Tiwari threatened to withhold her car, car title, room key, and belongings if AH did not engage in sexual acts with Tiwari. (A.H. Dep. At 26:14-22).

87.

AH alleges that Tiwari threatened to kick her out because AH had a dog on the premises. (A.H. Dep. At 33:17-18).

88.

Tiwari's stated reason for complaining about the dog was that Bollepalli prohibited dogs. (A.H. Dep. At 34:23-35:1).

89.

The Budgetel eventually kicked out all dogs and put up a sign saying "no pets allowed." (A.H. Dep. At 92:1-13; Exhibit 10 to same).

90.

Other than Tiwari's alleged touching of AH's breasts and compelling AH to perform

oral sex on Tiwari, AH does not recall any other sexual contact with Tiwari. (A.H.

Dep. At 24:21-25).

91.

Tiwari and AH never had penetrative vaginal sex. (A.H. Dep. At 25:1-3).

92.

Tiwari never penetrated any part of AH's body with his fingers or an object. (A.H.

Dep. At 25:14-19).

93.

Tiwari never asked AH to perform any sexual acts with others; according to AH, he

only ever asked AH to perform sexual acts with himself. (A.H. Dep. At 26:2-7).

94.

Tiwari never threatened AH for refusing to engage in a sexual act with anyone other

than himself. (A.H. Dep. At 26:8-10).

95.

96.

AH never reported any of Tiwari's threats to Bollepalli. (A.H. Dep. At 24:3-5).

97.

AH never reported Tiwari's alleged theft of her belongings to Bollepalli. (A.H. Dep. At 27:6-8).

98.

AH alleges that Tiwari left bruising and fingerprints on her body, but she never reported this to anyone. (A.H. Dep. At 66:20-67:17).

99.

Tiwari never struck AH with any objects. (A.H. Dep. At 68:22-23).

100.

Tiwari never forced AH to take drugs. (A.H. Dep. At 192:8-9).

101.

AH alleges that Bollepalli threatened to fire her for refusing to change mattress covers. (A.H. Dep. At 41:19-21).

102.

Bollepalli never threatened to fire her for refusing to do sanding or gluing work. (A.H. Dep. At 41:22-42:2).

103.

Tiwari allegedly told AH that she was required to live on the premises as a term of AH's employment, but AH never discussed that term of employment with Bollepalli. (A.H. Dep. At 88:1-7).

104.

Bollepalli never engaged in any of the acts of which AH accuses Tiwari. (A.H. Dep. At 203:2-4).

105.

The actions of Tiwari that AH complains of did not begin until after the first four or five months AH had been working at the Budgetel. (A.H. Dep. At203:19-23).

106.

Tiwari was criminally prosecuted for labor trafficking and entered a guilty plea for labor trafficking only. (Exhibit 19 to AH Dep.)

107.

AH was denominated "Victim 1" in Tiwari's guilty plea. (A.H. Dep. At 213:3-19).

108.

Bollepalli was never charged. (A.H. Dep. At205:17-19).

Respectfully submitted this 30th day of January, 2026.

**HALL BOOTH SMITH, P.C.**

*/s/ Jacob Stalvey O'Neal*
PHILLIP E. FRIDUSS
Georgia Bar No. 277220
JACOB STALVEY O'NEAL
Georgia Bar No. 877316

*Counsel for Defendants*

191 Peachtree Street, N.E.
Suite 2900
Atlanta, GA 30303-1775
Tel:  404-954-5000
Fax:  404-954-5020
Email:  pfriduss@hallboothsmith.com
Email:  joneal@hallboothsmith.com

# IN THE UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF GEORGIA
# ROME DIVISION

A.H.,

     Plaintiff,

v.

CARSON LOOP ESM, LLC D/B/A
BUDGETEL, and SRINIVAS
BOLLEPALLI,

     Defendants.

CIVIL ACTION FILE
NO. 4:24-cv-00224-WMR

## CERTIFICATE OF SERVICE

I hereby certify that I have this day served the following counsel of record in this case with a true and correct copy of the foregoing **Statement of Undisputed Material Facts** upon all parties to this matter by depositing a true copy of same in the U.S. Mail, proper postage prepaid, addressed to counsel of record as follows and/or filing said document with the CM/ECF system which will automatically send electronic notification to the following:

Peter A. Law, Esq.
E. Michael Moran, Esq.
Denise D. Hoying, Esq.
Law & Moran
563 Spring Street, N.W.
Atlanta, GA 30308
*pete@lawmoran.com*
*mike@lawmoran.com*
*denise@lawmoran.com*

Patrick J. McDonough, Esq.
Jonathan S. Tonge, Esq.
Andersen, Tate & Carr, P.C.
One Sugarloaf Centre
1960 Satellite Boulevard
Suite 400
Duluth, GA 30097
*pmcdonough@atclawfirm.com*
*jtonge@atclawfirm.com*

Respectfully submitted this 30th day of January, 2026.

**HALL BOOTH SMITH, P.C.**

*/s/ Jacob Stalvey O'Neal*
PHILLIP E. FRIDUSS
Georgia Bar No. 277220
JACOB STALVEY O'NEAL
Georgia Bar No. 877316

*Counsel for Defendants*

191 Peachtree Street, N.E.
Suite 2900
Atlanta, GA 30303-1775
Tel:  404-954-5000
Fax:  404-954-5020
Email:  pfriduss@hallboothsmith.com
Email:  joneal@hallboothsmith.com