IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ROME DIVISION

A.H.,                                    )
                                         )
        Plaintiff,                       )
                                         )
v.                                       )    CIVIL ACTION FILE
                                         )    NO. 4:24-CV-00224-WMR
CARSON LOOP ESM, LLC d/b/a               )
BUDGETEL, and SRINIVAS                   )
BOLLEPALLI,                              )
                                         )
        Defendants.                      )

## PLAINTIFF'S BRIEF IN OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

COME NOW Plaintiff, by and through counsel, and Responds to Defendants' Motion for Summary Judgment, showing this Court as follows:

## INTRODUCTION

Defendants' motion is frivolous and misrepresents facts. Defendants ignore voluminous evidence, but only two sets of undeniable facts are necessary to reach the legal conclusion that a *jury question* exists on Plaintiff's claims.

**Fact Set 1:** Defendants employed Shreesh Tiwari to manage its Budgetel, acting at Defendants' direction to facilitate Defendants' profiting from the rental of rooms at the Budgetel. (Ex. A, Bollepalli Dep., 24:6-14; 39:8-10; 81:2-13; 146:10-23; Ex. B, Resp. to Requests for Admission, ¶¶ 23, 24).

**Fact Set 2:** Tiwari pled guilty to federal labor trafficking that included, among other violations, that Tiwari "knowingly recruited, harbored, transported, provided, or obtained [Plaintiff] for the purpose of obtaining labor or services by using force, fraud, and coercion to compel [Plaintiff] to perform sex acts upon [Tiwari] in exchange for a thing of value, to wit, her room at the Budgetel." (Ex. C, Guilty Plea at 8). In other words, the labor trafficking included sex trafficking. The Department of Homeland Security's investigation revealed that at least five to seven women were trafficked by Tiwari at the Budgetel, including Plaintiff. (Ex. D, Rives Dep., 29:16-30:10; Ex. C at 11; Ex. E, Affidavit).

**Conclusion:** If a person that you employ uses their job and the powers it confers to commit labor and sex trafficking violations at work *and* those violations make you money, there is *at least* a jury question as to whether the Defendants' actions and inactions violated the TVPRA,[1] were negligent, and whether allowing a sex trafficker to run rampant with one's business constitutes a nuisance.

That is all that is necessary for the Court to deny summary judgment.

Finally, Defendants make *no argument whatsoever* that they are not vicariously liable for their employee Tiwari. Because Defendants have not asked for summary judgment on vicarious liability, of which there is evidence for each of

---

[1] Trafficking Victim's Protection Reauthorization Act, 18 U.S.C. § 1590, et seq.

Plaintiff's claims, there is no need for Plaintiff to address the well-established law that employers (like Defendants) can be vicariously liable for the acts of their employee (like Tiwari).[2]

## STATEMENT OF MATERIAL FACTS

**1. Operation of the Motel and Defendants' Site Manager Shreesh Tiwari.**

Defendants Carson Loop ESM, LLC and Srinivas Bollepalli owned, operated, maintained, and controlled the Budgetel. (Ex. A, Bollepalli Dep., 13:1-14; 21:12-14; 136:1). Defendants benefitted financially and received financial compensation from room rentals at the Budgetel. (Ex. B, Resp, to Requests for Admission, ¶¶ 23, 24).

In January of 2020, Defendants hired Shreesh Tiwari to be Budgetel's onsite manager after he responded to a Facebook ad. (Ex. A, Bollepalli Dep., 24:6-14; 39:8-10). They called one reference but did no other background check, and provided Tiwari with no training apart from an eight-page presentation. (Ex. A, Bollepalli Dep., 82:8-24, 83:3-23). Defendants provided all the supplies for the motel and for Tiwari to do his job. (Ex. A, Bollepalli Dep., 40:15-41:7). Tiwari managed the motel around the clock and he was not allowed to work anywhere else. (Ex. A, Bollepalli Dep., 79:10-24). He had no decision-making authority and no authority to set rules

---

[2] Should the Court elect to sua sponte consider summary judgment on these claims, Plaintiff respectfully requests the opportunity to file an additional brief addressing these issues.

or policies and procedures for the motel – rather, he acted at Defendants' direction. (Ex. A, Bollepalli Dep., 81:2-13; 146:10-23). In addition to his other duties, Tiwari was empowered by Defendants to evict people from the motel. (Ex. A, Bollepalli Dep., 89:9-12). Everything at the motel was under Bollepalli's control and he was at the motel every other day. (Ex. D, Rives Dep., 21:7-14, Ex. A, Bollepalli Dep., 38:8-18; 39:5-7; 136:1). Tiwari was Bollepalli's mouthpiece; he communicated Bollepalli's instructions and wishes to the other motel employees, including Plaintiff. (Ex. F, A.H. Dep., 71:13-24; 208:21-24).

Everyone working at the Budgetel was employed by Carson Loop ESM, LLC, including all housekeepers, front desk and maintenance employees, and Tiwari, the manager. (Ex. A, Bollepalli Dep., 54:5-11). Prior to Tiwari's arrest for sex and labor trafficking in 2021, Bollepalli did not know anything about human trafficking and he provided no training to any of his employees, including Tiwari, on how to identify and prevent trafficking. (Ex. A, Bollepalli Dep., 85:8-86:4).

## 2. Defendants' Employee and Agent Trafficked Plaintiff for Labor and Sex at the Motel.

Defendants and Tiwari hired Plaintiff to work at the motel as a housekeeper in June of 2020. (Ex. C). In order to work there, she was required to live at the Budgetel. (Ex. F, A.H. Dep., 87:13-25). When she was hired, Plaintiff was paid $150/week for her work, and Defendants simultaneously charged her $150/week to

rent her room at the Budgetel. (Ex. C, Ex. F, A.H. Dep, 45:11-14).[3] Bollepalli set all

the salaries and room rates, including Plaintiff's. (Ex. A, Bollepalli Dep., 38:24-

39:2; 55:15-20). Plaintiff was forced to work at the Budgetel seven days per week

from 9:00 a.m. until at least 5:00 p.m., but she was frequently forced to continue

working until 10:00 or 11:00 p.m. (Ex. C). Her work included housekeeping and

construction labor. (Ex. F, A.H. Dep., 39:10-25). She complained directly to

Bollepalli that she wasn't being paid enough, and in response, he and Tiwari raised

Plaintiff's salary to $200/week and simultaneously raised her room rent to

$200/week. (Ex. F, A.H. Dep., 37:15-38:2). Several other employees also

complained directly to Bollepalli about the working conditions at the motel and

Tiwari's treatment of them. (Ex. F, A.H. Dep., 72:6-73:3). Tiwari and Bollepalli

routinely yelled and screamed at Plaintiff, Tiwari physically pushed Plaintiff over,

and they threatened to fire and evict her, rendering her homeless, if she did not do

the work that they instructed her to do. (Ex. F, A.H. Dep., 24:6-17; 40:23-41:6,

121:6-15). Defendants' manager also threatened that if Plaintiff left the motel, he

would report her drug use to the police and DFCS, she would go to jail and never

---

[3] Defendants' manager admitted that the United States government would prove
the facts in the guilty plea beyond a reasonable doubt, and both Plaintiff and DHS
Special Agent Rives testified that "victim one" is Plaintiff and that these facts
apply to her. (Ex. D, Rives Dep., 31:23-32:12; Ex. F, A.H. Dep., 213:3-19).

get her child back. (Ex. F, A.H. Dep., 67:16-68:21; 94:21-95:17). Defendants' manager discouraged Plaintiff from associating with her friends and family and told her that they didn't care about her, and that he was all that she had left. (Ex. C). He forbid her from talking to others, and yelled and threatened to evict her if she socialized with others. (Ex. C).

Plaintiff lived and worked at the motel for approximately 26 weeks in 2021, earning $200/week for a total of $5,200, all of which was then deducted as room rent and kept by Defendants. (Ex. A, Bollepalli Dep., 145:13-146:4; Ex. G, W2). Bollepalli paid all of his employees by payroll checks that he signed, but because Defendants knowingly kept her in a state of servitude, Bollepalli never wrote a single payroll check to Plaintiff. (Ex. A, Bollepalli Dep., 67:2-15; Ex. F, A.H. Dep., 206:12-25; Ex. H, all payroll checks produced, none written to Plaintiff). Tiwari occasionally sent Plaintiff money through CashApp. (Ex. F, A.H. Dep., 37:10-38:2).

A few months after her labor trafficking at the motel began, Tiwari began making sexual advances toward Plaintiff. (Ex. F, A.H. Dep., 203:8-204:3). He used his position as manager to threaten Plaintiff with eviction, rendering her homeless, if she did not perform oral sex on him, coercing Plaintiff to comply for his demands for sex. (Ex. F, A.H. Dep., 23:7-22). During these multiple forced sexual encounters,

Tiwari would slam Plaintiff's head down, strike her, and grab her arm with enough force to leave bruises. (Ex. F, A.H. Dep., 29:24-30:1, 66:25-67:20).

Tiwari also used his position as manager to enter Plaintiff's room without her permission to steal her ID, car title, insurance documents, and social security card, which he kept in the motel safe so that she could not leave, forcing her to continue working and providing him with oral sex. (Ex. F, A.H. Dep., 26:17-24; 90:16-91:20; 95:24-96:7). Tiwari kept a gun in the office and regularly walked the property with a baseball bat, threatening people. (Ex. F, A.H. Dep., 69:1-9; 70:24-71:2). Plaintiff was a victim of both sex and labor trafficking at Defendants' motel at the hands of their onsite manager Shreesh Tiwari. (Ex. D, Rives Dep., 33:25-34-16).

### 3. Tiwari's Trafficking and Abuse of Plaintiff and Others was Open and Obvious to Defendants.

As noted, Defendant Bollepalli was at the motel every other day. (Ex. D, Rives Dep., 21:7-14). Tiwari kept a gun and all the documents that he stole from Plaintiff's room in the motel safe that Bollepalli had access to. (Ex. A, Bollepalli Dep., 104:21-23, 113:4-25; Ex. F, A.H. Dep., 26:17-24; 90:16-91:20; 95:24-96:7). Tiwari also used Defendants' computers – that Bollepalli had full access to – to document his trafficking. (Ex. A, Bollepalli Dep., 119:21-120:10). Defendants' computers contained photographs and videos of victims performing oral sex on Tiwari, screen shots of sexually suggestive texts messages between Tiwari and a victim,

photographs of several trafficking victims, and payroll files, among other evidence that was readily available to Defendants. (Ex. I, DHS Report ROI DG15HR21DG0002-053). DHS's investigation revealed that at least five to seven women were trafficked by Tiwari at the Budgetel. (Ex. D, Rives Dep., 29:16-30:10; Ex. C at 11; Ex. E, Affidavit).

### 4. Crime at the Budgetel was Foreseeable to Defendants.

Beginning in 2016, Bollepalli visited the police station each year and asked for all police reports for the Budgetel. (Ex. A, Bollepalli Dep., 30:8-31:22). The police gave him each year's reports and he read them. (Ex. A, Bollepalli Dep., 30:8-31:22). These reports reflected numerous calls for service for a variety of crimes, including but not limited to theft, narcotics, domestic violence, prostitution, and sexual harassment. (Ex. D, Rives Dep., 15:9-21; Ex. X, Families Face Uncertain Future Following Mass Motel Eviction, The Daily Tribune News (Oct. 16, 2019). DHS conducted numerous narcotics investigations at the Budgetel and it is located in a high crime area. (Ex. D, Rives Dep., 19:17-22, 88:13-18; 137:12-18).

Bollepalli also read the Google reviews of the Budgetel every month. (Ex. A, Bollepalli Dep., 121:17-21). There, prior to Plaintiff's trafficking, Bollepalli learned, among other things, that the motel was reportedly "not clean, and drug infested", "disgusting… [a]lmost everyone is a drug addict", "[t]he people here are bad people

and a big problem with drugs", "drug addicts and prostitutes", "[i]t looked like a cross between a crack house and a no-tell motel", "too much drug activity & just didn't feel safe sitting there", "[m]en coming and going in the room next to ours, all night", "knife mark's in the wall", "people fighting in the parking lot", "[t]his is the scariest place I've ever stayed!", and "if you need DRUG'S Budgetel is the place to go oh hell forgot the most important things WHORE'S -Homewreakin Female's and Male's all over the place." (Ex. L, Google Reviews).

That isn't all that Defendants knew. In 2019, almost 200 people were evicted from the motel after the Georgia Department of Public Health shut it down. The motel is "one of the most crime-ridden areas in the county." (Ex. K). In 2018 alone, it had more than 190 police incidents, and by October 2019, there had already been 177 police incidents. *Id*. Residents with outstanding warrants included one wanted for child pornography. *Id*. In 2019, Bartow County Commissioner Steve Taylor stated, "We've had dozens of arrests from drugs and prostitution out there, and the living conditions for those children are horrible. That's the reason for this action to take place now." *Id*. Taylor went on to say that no matter where the displaced children ended up, it would be an improvement over the Budgetel. *Id*.

Bollepalli instituted a 10:00 p.m. curfew at the motel due to its known drug activity. (Ex. D, Rives Dep., 21:7-14). Despite the known and extensive crime at the

Budgetel, Defendants never hired security. (Ex. A, Bollepalli Dep., 62:18-24). Other than surveillance cameras and locking the lobby overnight, Defendants did nothing to keep their invitees safe. (Ex. A, Bollepalli Dep., 62:18-63:11).

### 5. Defendants Failed to Post the Required Human Trafficking Notice.

Beginning in 2013, all motels were required to post a human trafficking notice "in a conspicuous place near the public entrance of the business or establishment or in another conspicuous location in clear view of the public and employees." O.C.G.A. § 16-5-47(b). Bollepalli does not know if such a notice was ever posted at the Budgetel. (Ex. A, Bollepalli Dep., 74:1-25).[4] If it was, it was posted on a bulletin board where only the site manager, Bollepalli, and front desk employees were allowed to go. (Ex. A, Bollepalli Dep., 106:15-107:2). If it was ever posted at all, the notice was not posted where housekeeping staff, including Plaintiff, could see it. (Ex. A, Bollepalli Dep., 106:19-21).

## ARGUMENT AND CITATION TO AUTHORITY

### I.    Summary Judgment Standard.

Summary judgment may be granted only where "the movant shows that there is no genuine dispute as to any material fact and [it] is entitled to judgment as a

---

[4] It is unlikely that such a notice was posted, since Bollepalli did not know what human trafficking was until the government raided the motel and arrested Defendants' manager for human trafficking. (Ex. A, Bollepalli Dep., 143:7-24).

matter of law." Fed. R. Civ. P. 56(a). This is not such a case. Defendants have not met their burden, questions of fact exist, and summary judgment should be denied.

In cases where motel staff directly assisted traffickers, courts have uniformly upheld claims.[5] In this case, the motel manager did not assist a trafficker – *he is the trafficker*. Defendants forced all employees to live on the premises, including Plaintiff, leading to ongoing room rentals. The evidence in this case shows that the motel had actual knowledge of, and knowingly facilitated, Plaintiff's sex and labor trafficking in exchange for room revenue and her forced labor, as a housekeeper and in construction jobs at the motel. Though the analysis is repetitive,[6] Defendants'

---

[5] Plaintiffs' attorneys reviewed 328 civil sex-trafficking opinions under § 1595—believed to encompass *all* relevant opinions nationwide—and found no case holding that when an employee *is the trafficker*, that trafficking did not satisfy the elements of a § 1595(a) claim. *See, e.g.*, *A.G. v. Northbrook Indus., Inc.*, No. 1:20-cv-5231-JPB, 2022 WL 1644921 (N.D. Ga. May 24, 2022); *G.W. v. Northbrook Indus., Inc.,* No. 1:20-cv-5232-JPB, 2024 WL 3166083 (N.D. Ga. June 14, 2024); *Doe #1 v. Red Roof Inns, Inc.*, 21 F.4th 714 (11th Cir. 2021); *I.R. v. I Shri Khodiyar, LLC*, No. 1:22-cv-844-SEG, 2024 WL 1928755 (N.D. Ga. Mar. 18, 2024); *Does 1-4 v. Red Roof Inns, Inc.*, 688 F. Supp. 3d 1247 (N.D. Ga. 2023); *Doe (R.A.) v. Best W. Int'l*, No. 2:23-cv-3459, 2024 WL 3850958 (S.D. Ohio Aug. 16, 2024); *Doe (S.A.S.) v. ESA P Portfolio LLC*, No. 3:23-cv-6038, 2024 WL 3276417 (W.D. Wash. July 2, 2024); *A.M. v. Wyndham Hotels & Resorts, Inc.*, No. 2:22-cv-3797, 2024 WL 1347301 (S.D. Ohio Mar. 29, 2024); *S. Y. v. Best W. Int'l, Inc.*, No. 2:20-cv-616, 2021 WL 2315073 (M.D. Fla. June 7, 2021).

[6] In short, every reviewed opinion in the country agrees that the egregious fact of the employee being the trafficker satisfies the elements of § 1595. Which is unsurprising, given that such participation satisfies the higher perpetrator claim standard of actual knowledge. The disputes regarding the TVPRA have to do with

liability for each element is set forth below.

## II. There are Facts from Which a Jury Could Easily Find that Plaintiff was a Victim of Both Sex and Labor Trafficking at Defendants' Motel.

Surprisingly, Defendants do not concede Plaintiff was even *trafficked*, apparently believing in Tiwari's innocence, DHS investigation and guilty plea notwithstanding. Defendants claim that Plaintiff was not a victim of sex trafficking because "nothing of value was exchanged for the sex acts". [Doc. 72-1, p. 10]. This is patently false. Plaintiff was forced to perform oral sex on Tiwari (and work for 14 hours per day) or she would be evicted from the motel and rendered homeless, so the most obvious thing of value exchanged was Plaintiff's room at the Budgetel. This is confirmed by Tiwari's guilty plea, where he agreed that the government would prove beyond a reasonable doubt that he "knowingly recruited, harbored, transported, provided, or obtained [Plaintiff] for the purpose of obtaining labor or services by using force, fraud, and coercion to compel [Plaintiff] to perform sex acts upon [him] ***in exchange for a thing of value, to wit, her room at the Budgetel***." (Ex. C at 8)(emphasis added). Tiwari also threatened that he would call DFCS and report Plaintiff's drug use such that she would never get her child back, another thing of value exchanged by her compliance. In addition, because Plaintiff complied with

what *additional* activity is covered under the "should have known" standard applicable to other civil beneficiaries.

Tiwari's demands for oral sex and unpaid labor, she remained at the motel, paying rent to Defendants for her room and working essentially nonstop, directly benefitting and providing value to Defendants.

Defendants' arguments that they did not threaten Plaintiff or force her to perform work for them is also false. Tiwari and Bollepalli routinely yelled and screamed at Plaintiff, Tiwari physically pushed Plaintiff over, and they both threatened to fire Plaintiff and evict her, rendering her homeless, if she did not do the work that they instructed her to do. (Ex. F, A.H. Dep., 24:6-17; 40:23-41:6, 121:6-15). And of course, as noted, her labor was a benefit to Defendants.

Finally, Tiwari pled guilty to trafficking Plaintiff at the Budgetel. (Ex. C). DHS's investigation revealed that Plaintiff was a victim of both sex and labor trafficking. (Ex. D, Rives Dep., 33:25-34-16). Defendants' arguments that there is no evidence that Plaintiff was a victim of sex or labor trafficking are frivolous.

## III. The Indisputable Evidence in This Case Establishes Defendants' Liability Under the TVPRA.

### A. Defendants knowingly benefited from the hotel.

Defendants admit that they benefitted financially from Plaintiff's room rental at the Budgetel. Every court in the country to analyze this element "ha[s] found that the rental of a room constitutes a financial benefit from a relationship [] sufficient to meet this element of the § 1595(a) standard." *J.G. v. Northbrook Indus., Inc.*, 619 F.

Supp 3d 1228, 1234 (N.D. Ga. 2022) (collecting cases). But here, the financial benefit to Defendants goes even further, as they received a full year of Plaintiff's labor and never wrote a single payroll check to her. Thus, the uncontroverted evidence shows that Defendants knowingly benefitted financially by renting a room to Plaintiff and receiving her labor at the Budgetel, satisfying the first element of the TVPRA.

## B. Defendants participated in a venture under the TVPRA.

Defendants did more than accidentally a rent room to someone they should have known was the victim of human trafficking. Defendants actually trafficked Plaintiff for labor and knowingly facilitated Plaintiff's sex trafficking.[7]

"Participation in a venture" means "taking part in a common undertaking or enterprise involving risk and potential profit." *Doe #1 v. Red Roof Inns, Inc*., 21 F.4th 714, 724 (11th Cir. 2021). That is all. This element does not require a defendant to be in a "trafficking venture" or a "joint venture" with Plaintiff's trafficker.[8] For

---

[7] This, of course, is also a criminal violation of § 1591(a)(1) and (2) because the motel is knowingly harboring under (a)(1) and knowingly benefitting under (a)(2), and a criminal violation of § 1589(a) because Defendants knowingly obtained Plaintiff's labor by force, threats of force, and by a scheme, plan, or pattern intended to cause Plaintiff to believe that she would suffer serious harm (i.e. – eviction and homelessness) if she did not perform the tasks they required.

[8] While *Doe #1* talks at times about connecting the defendant and the traffickers, the Eleventh Circuit did so only because the plaintiffs pleaded that the defendants (hotel franchisors) were in a "sex trafficking venture" with the plaintiffs'

this reason, *Doe #1*'s definition of "participation in a venture" is broad and encompasses more than just knowing or intentional criminal conduct. Yet even if "participation in a venture" meant something other than what *Doe #1* held it meant, as some cases have erroneously said (*e.g.*, *K.H. v. Riti, Inc.,* No. 23-11682, 2024 WL 505063 (11th Cir. Feb. 9, 2024)),[9] the evidence here meets that higher standard as well. No opinion reviewed in the country has ever held otherwise, and in this case, Defendants participated in a motel venture with Tiwari, and a trafficking venture with Tiwari.[10]

---

traffickers. In doing so, *Doe #1* was doing nothing more than applying the general definition of "participation in a venture" to the specific facts of that particular case.

[9] *Doe #1* is the only binding authority for this Court. 21 F.4th 714 (11th Cir. 2021). *Riti* misapplied *Doe #1*, committing significant and consequential errors. *First*, the Eleventh Circuit made it clear that "participation in a venture" for TVPRA civil-liability purposes requires only that the defendant "take part in a common undertaking involving risk or profit." *Id.* at 727. Importantly, that common undertaking does not need to be a sex trafficking venture. *Id.* at 730 (Jordan, J., concurring). In *Doe #1*, the Plaintiffs only pled that the ventures at issue were sex trafficking ventures, so the Court analyzed the law within the framework of the Complaint. *Second*, *Riti* incorrectly dismissed the distinction between franchisors and companies that own and operate hotels (like Defendants), finding it immaterial. 2024 WL 505063, at *3. This is a fundamental misreading of *Doe #1*, which concerned "claims against *franchisors that do not operate or manage the hotels* where sex trafficking allegedly occurred." 21 F.4th at 727 (Jordan, J., concurring) (emphasis added). Even so, Defendants' actions here go beyond observation – Defendants' manager was Plaintiff's trafficker. *Riti* also appears likely to be overturned, given the 11th Circuit oral argument cited in note 12, infra. Transcripts of those arguments are attached as Exhibit M.

[10] Every case cited by Defendants agrees that motel employees acting as lookouts for traffickers, thereby facilitating the trafficking, is sufficient participation under

Defendants and their manager participated together in running the motel as detailed extensively above, and trafficked Plaintiff for labor and sex at the motel. Defendants' manager isolated Plaintiff and refused to let her socialize with others, threatening to evict and fire her if she did, and discouraged her from reaching out to friends and family, convincing her that he was all she had left. As to labor trafficking specifically, Defendants and Tiwari knowingly paid Plaintiff the exact amount for her labor that they charged her in rent, forcing her to work essentially around the clock while yelling, screaming, physically shoving her, and threatening to evict her if she did not complete the labor that they demanded. When Plaintiff complained directly to Defendant Bollepalli, he increased her salary by $50/week and simultaneously raised her rent by $50/week. Defendants knew that they were labor trafficking Plaintiff – Bollepalli never wrote Plaintiff a single payroll check.

Specific to sex trafficking, Defendants' manager trafficked Plaintiff for sex by leveraging his power and position as the motel manager. Defendants' manager threatened to evict Plaintiff, rendering her homeless, if she did not comply with his repeated demands for oral sex.[11] Defendants' manager pled guilty to trafficking

_____

this element. But in this case, Defendants' employee *is the trafficker*, making Defendants' participation even more clear than all the cases they cite.

[11] "If the employees engaged in commercial sex at the hotel, they, of course, knew that commercial sex was occurring there. Their knowledge can be imputed to their

Plaintiff and admitted to the facts as outlined above. The uncontroverted evidence in this case not only raises a triable issue of fact but is so overwhelming that it frankly warrants summary judgment in favor of Plaintiff. The participation described herein more than satisfies the second element of a TVPRA claim. *J.G. v. Northbrook Indus., Inc.*, 619 F. Supp. 3d 1228 (N.D. Ga. 2022).

### C.    Defendants' venture violated the TVPRA as to Plaintiff.[12]

The venture in which Defendants participated and from which they knowingly benefited violated the TVPRA as to Plaintiff. See, *Doe #1 v. Red Roof Inns, Inc.*, 21 F.4th 714, 725 (11th Cir. 2021). First, Plaintiff's trafficker – Defendants' manager – pled guilty to trafficking her at the motel. He agreed that the United States would prove beyond a reasonable doubt that he "knowingly recruited, harbored, transported, provided, or obtained [Plaintiff] for the purpose of obtaining labor or

---

employer." *I.R. v. I Shri Khodiyar, LLC*, 723 F. Supp. 3d 1327, 1343 (N.D. Ga. 2024).

[12] For purposes of a civil-beneficiary claim, the TVPRA civil-liability statute requires proof only of "an act in violation of this chapter." 18 U.S.C. § 1595(a). The Eleventh Circuit recently heard oral argument on two trafficking cases and Chief Judge Pryor strongly suggested in oral argument that the "as to Plaintiff" language in *Doe #1* is dicta, not the holding. *C.B. v. Naseeb Investments, Inc.*, 24-13294 (11th Cir. Jan. 30, 2026) (Ex. M, transcript at 4:5, "JUDGE PRYOR: I think that was probably dicta[.]"). https://www.ca11.uscourts.gov/oral-argument-recordings?title=&field_oar_case_name_value=&field_oral_argument_date_value%5Bmin%5D=2026-01-30&field_oral_argument_date_value%5Bmax%5D=2026-01-30.

services by using force, fraud, and coercion to compel [her] to perform sex acts upon [him] in exchange for a thing of value, to wit, her room at the Budgetel." (Ex. C at 8). Further, as outlined repeatedly above, he used force, fraud, and coercion to obtain commercial sex acts and her labor at the Budgetel.

As discussed above, Defendants' knowing facilitation of Plaintiff's sex trafficking independently violated the TVPRA (§ 1591(a)(1) and (2)) because Defendants knowingly harbored Plaintiff under (a)(1) and knowingly benefitted under (a)(2). Defendants also independently violated the TVPRA (§ 1589(a)) because Defendants knowingly obtained Plaintiff's labor services by force, threats of force, and by means of a scheme, plan, or pattern intended to cause Plaintiff to believe that, if she did not perform such labor services, she would suffer serious harm. Thus, Plaintiff has satisfied her burden on the TVPRA's third element.

### D. Defendants had actual and constructive knowledge that the venture violated the TVPRA as to Plaintiff.

The uncontroverted evidence proves that Defendants had actual and constructive knowledge of Plaintiff's trafficking at their motel. Defendants' manager trafficked Plaintiff, and his knowledge of her trafficking is imputed to Defendants. *See, Roylston v. Bank of Am., N.A.*, 290 Ga. App. 556 (2008) ("The law imputes to the principal, and charges him with, all notice or knowledge relating to the subject-matter of the agency which the agent acquires or obtains while acting as such agent

and within the scope of his authority[.]"); *Certain Underwriters at Lloyd's London v. Witham*, 139 F. Supp. 3d 1367, 1375 (M.D. Ga. 2015) ("Where an agency relationship does exist, an agent's knowledge is imputed to the principal pursuant to Georgia law."). This alone demonstrates Defendants' actual knowledge of Plaintiff's trafficking at the motel.

But even independent of their manager's knowledge, Defendants knew of Plaintiff's labor trafficking, and should have known of her sex trafficking. Bollepalli witnessed his manager shoving Plaintiff over to force her to work, and he himself threatened to fire and evict Plaintiff if she did not perform the labor tasks he demanded. He and his manager screamed and yelled at Plaintiff, and he never paid her, apart from the room rent that he kept for himself. Further, Bollepalli had ample opportunity to view the sexually suggestive texts and the photos and videos saved on his computers of women performing oral sex on his manager, among other evidence. The manager's gun and Plaintiff's documents, stolen to coerce Plaintiff to remain at the motel and provide labor and commercial sex acts on demand, were in the motel safe for Bollepalli to see at the motel.

Because the uncontroverted evidence proves that Defendants knew or should have known that Plaintiff was being trafficked at the motel, no genuine issue of material fact remains. As a result, Plaintiff is entitled to summary judgment on

Defendants' civil liability under the TVPRA. The Court should deny Defendants' motion for summary judgment and grant summary judgment in favor of Plaintiff.

## IV. Criminal Activity, Including Plaintiff's Trafficking and Assault, Was Reasonably Foreseeable to Defendants.

Under longstanding Georgia law, an owner or occupier of real property owes a duty to its invitees to exercise ordinary care in keeping its premises safe, including from reasonably foreseeable third-party criminal acts. *See* O.C.G.A. § 51–3–1; *Bishop v. Mangal Bhai Enterprises, Inc.*, 194 Ga. App. 874 (1990). "If the proprietor has reason to anticipate a criminal act, he or she then has a 'duty to exercise ordinary care to guard against injury from dangerous characters.'" *Wade v. Findlay Management, Inc.*, 253 Ga. App. 688, 689 (2002). *See also*, *Sturbridge Partners, Ltd. v. Walker*, 267 Ga. 785, 786 (1997), *Woodall v. Rivermont Apts. P'ship*, 239 Ga. App. 36, 520 S.E.2d 741 (1999).

> [T]he relevant question ... is ... whether the totality of the circumstances establish[es] reasonable foreseeability such that the proprietor has a duty to guard against that criminal activity. While evidence of substantially similar prior crimes — crimes with a likeness, proximity, or other relationship to the criminal act at issue that give a proprietor reason to anticipate such an act occurring on the premises — may often be one of the most probative considerations in answering that question, it is not a required consideration, and other circumstances may be relevant, too. And unless the court determines that no rational juror could disagree on the answer, that question is one for the jury.

*Ga. CVS Pharm., LLC v. Carmichael*, 316 Ga. 718, 719 (2023).  Here, there are a

multitude of jury questions under the totality of the circumstances.

Georgia law recognizes that Plaintiff can show reasonable foreseeability through evidence that the property owner provided for security. For example, in *Wade*, the Court of Appeals held that, because the proprietor had "provided security" on weekend nights, "the voluntary undertaking to provide security on weekend nights could be construed by the jury to be evidence of foreseeability of criminal conduct." 253 Ga. App. at 690. *See also, Six Flags Over Ga. II, L.P. v. Martin*, 335 Ga.App. 350, 362 n.41 (2015), *Bethany Grp., LLC v. Grobman*, 315 Ga. App. 298, 302 (2012). Evidence that the motel was located in a high crime area is also relevant to foreseeability. *Double View Ventures, LLC v. Polite,* 326 Ga. App. 555, 560-61 (2014); *Shoney's, Inc. v. Hudson*, 218 Ga. App. 171, 174 (1995). When security is provided, the sufficiency of the security is a jury question. *Bishop v. Mangal Bhai Enterprises, Inc.*, 194 Ga. App. 874 (1990).

Here, Defendants knew of a multitude of substantially similar prior criminal acts, including prostitution, drug dealing, multiple narcotics investigations, thefts, and sexual harassment. Further, Defendants knew that invitees reported rampant prostitution, drug dealing, and an unsafe environment in online reviews. They instituted a 10:00 p.m. curfew and locked the lobby overnight because crime was foreseeable to them, and the motel was located in a high crime area. These issues

demonstrate reasonable foreseeability and summary judgment should be denied. Further, the adequacy of Defendants' security measures – instituting a 10:00 p.m. curfew and protecting the lobby, but nothing else, is a question of fact for the jury.

## V.    There are Questions of Fact on Plaintiff's Claims of Nuisance.

Defendants make a single nuisance argument, relying on a case about water runoff to argue they could not be a concurrent cause of the nuisance. Again, Defendants ignore the fact that Tiwari was their agent, and that his actions and knowledge are *their* actions and knowledge. *Roylston*, 290 Ga. App. 556.

Thus far, every court in Georgia to consider whether the owners of a motel caused or created the public nuisance of trafficking on their property have uniformly held that causation and control were jury questions. *E.M. v. Tucker Inn Inc.*, 1:22-CV-02559-WMR, 2024 WL 4005218, at *7 (N.D. Ga. July 15, 2024) ("Plaintiff has also produced evidence that "by reason of its location or by reason of the improper or negligent manner in which it [was] conducted," the operation of the hotel "cause[d] hurt, inconvenience, or damage" to Plaintiff.); *I.R. v. I Shri Khodiyar, LLC*, 723 F. Supp. 3d at 1346 ("there is ample evidence from which a jury could find that Defendant fostered an environment that permitted sex trafficking, prostitution, and other criminal activity to repeatedly occur on its premises."); *D.H. v. Tucker Inn Inc.*, 689 F. Supp. 3d 1304, 1311 (N.D. Ga. 2023) ("Plaintiff has

alleged facts sufficient to demonstrate that Defendant's management of the Hotel in a way which allowed for the widespread commission of sex crimes created a market and beds for sex traffickers to operate."). And in none of those cases were Defendant's employees the actual trafficker, as Tiwari is here.

Defendants' operation of the motel, putting the fox in charge of the henhouse, allowing Tiwari to traffic Plaintiff for labor and sex for many months, caused and created a public nuisance. This is particularly true of a place with hundreds of criminal incidents each year and which have a reputation with the local police as "one of the most crime-ridden areas in the county."

A "lewd house" is one in which sex crimes like prostitution and sex trafficking occur. *Coleman v. State*, 5 Ga. App. 766 (1909). And "[a] lewd house is per se a 'public nuisance.'" *Brindle v. Copeland*, 145 Ga. 398 (1916). A *single act* of prostitution at a hotel—even one committed *without* the Defendant's actual knowledge—is sufficient to sustain a conviction for maintaining a lewd house at a motel that also provides legal food and lodging. *Fitzgerald v. State*, 10 Ga. App. 70 (1911).[13] As above, Plaintiff has adduced evidence that Defendants owned, operated,

---

[13] "Only one act of sexual intercourse was directly proved, and it was not shown that the defendant personally knew of this act. The house in question was operated by the accused as a restaurant and lodging house, or a cheaper form of hotel. The proof showed that some good people lodged there from time to time, and that some

and maintained the Budgetel and that Plaintiff's sex and labor trafficking happened there with Defendants' actual and constructive knowledge.

The best and most comprehensive analysis of public nuisance in this scenario in the last 100 years is the recent opinion by Judge Mike Jacobs in the State Court of Dekalb County. (Ex. N, *Jane Doe v. Suresh & Durga, Inc.*, No. 20-A-83795-5 (Dekalb Cnty. May 8, 2024). After giving an extensive history of public and private nuisance law and the law surrounding lewd houses as nuisances, Judge Jacobs addressed the same "control" argument Defendants make in this case:

> The record contains sufficient competent evidence, recited in Section I of this Order, *supra*, for a jury to conclude that acts of prostitution or other unlawful sexual activities were practiced in the Motel over some time with, at minimum, constructive knowledge and tacit approval of the Defendant. See *Cotton* [*v. City of Atlanta*, 10 Ga. App. 397, 399 (1912)]; *Birdwell* [*v. State*, 112 Ga. App. 836, 836-37 (1965)]; *Fitzgerald*, 10 Ga. App. at 72-75. The Court finds that whether Defendant kept or maintained a disorderly house or a lewd house is in genuine dispute. Because such disorderly houses and lewd houses are public nuisances per se, the Court can deduce the existence of a genuine issue of material fact as to all issues raised regarding Plaintiff's common law public nuisance claim save the issue of proximate cause.

*Suresh & Durga,* No. 20-A-83795-5, at *10–11; *see also E.M. v. Tucker Inn Inc*., 1:22-cv-2559, 2024 WL 4005218, at *6 (N.D. Ga. July 15, 2024) (Ray, J.) ("In addition to producing evidence that the hotel is a nuisance per se . . . Plaintiff has

---

lewd women stayed there at periods of greater or less duration. The defendant and his son personally conducted the house and looked after the comfort of the guests."

also produced evidence that 'by reason of its location or by reason of the improper or negligent manner in which it [was] conducted,' the operation of the hotel 'cause[d] hurt, inconvenience, or damage" to Plaintiff.'"). Because Defendants controlled the motel and their employee, the trafficker Tiwari, there are jury questions as to Plaintiff's public nuisance claims.

## VI.    A Reasonable Jury could find that Plaintiffs are Entitled to Attorneys' Fees and Punitive Damages.

Defendants' only argument that summary judgment is warranted as to Plaintiff's claims for attorneys' fees and punitive damages is their disingenuous argument that all of Plaintiff's underlying claims are subject to summary judgment, and that therefore, her attorneys' fees and punitive damages claims fail too. As shown herein, Defendants are wrong, and Plaintiff's attorneys' fees and punitive damages claims also survive. Defendants' Motion is properly denied in full.

## <u>CONCLUSION</u>

For the foregoing reasons, Plaintiff respectfully asks that this Court deny Defendants' Motion for Summary Judgment in its entirety.

This 20th day of February, 2026.

Respectfully submitted,

**LAW & MORAN**

*/s/ Denise D. Hoying*
Peter A. Law
Georgia Bar No. 439655
E. Michael Moran
Georgia Bar No. 521602
Denise D. Hoying
Georgia Bar No. 236494
*Attorneys for Plaintiff*

563 Spring Street, NW
Atlanta, Georgia 30308
Phone: (404) 814-3700
Facsimile: (404) 842-7710
Pete@lawmoran.com
Mike@lawmoran.com
Denise@lawmoran.com

**ANDERSEN, TATE & CARR, P.C.**

*/s/ Patrick J. McDonough*
Patrick J. McDonough
Georgia Bar No. 489855
Jonathan S. Tonge
Georgia Bar No. 303999
*Attorneys for Plaintiff*

One Sugarloaf Centre
1960 Satellite Boulevard, Suite 4000
Duluth, Georgia 30097
Phone: (770) 822-0900
Facsimile: (770) 822-9680
pmcdonough@atclawfirm.com
jtonge@atclawfirm.com

## <u>CERTIFICATE OF COMPLIANCE</u>

This is to certify that the foregoing ***Brief in Opposition to Defendants'***

***Motion for Summary Judgment*** has been prepared with one of the following font

and point selections approved by the Court in L.R. 5.1.  Specifically, the above

mentioned pleading was prepared using Times New Roman font of 14 point size.

Respectfully submitted,

**LAW & MORAN**

*/s/ Denise D. Hoying*
Denise D. Hoying
Georgia Bar No. 236494
*Attorney for Plaintiff*

**LAW & MORAN**
563 Spring Street, NW
Atlanta, Georgia 30308
Phone: (404) 814-3700
Facsimile: (404) 842-7710
Denise@lawmoran.com

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ROME DIVISION

| | | |
|---|---|---|
| A.H., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION FILE |
| | ) | NO. 4:24-CV-00224-WMR |
| CARSON LOOP ESM, LLC d/b/a | ) | |
| BUDGETEL, and SRINIVAS | ) | |
| BOLLEPALLI, | ) | |
| | ) | |
| Defendants. | ) | |

## <u>CERTIFICATE OF SERVICE</u>

This is to certify that I have this day served a true and correct copy of the

foregoing ***Brief in Opposition to Defendants' Motion for Summary Judgment***

with the Clerk of Court using the CM/ECF system which will automatically send

email notification of such filing to:

Phillip Friduss
Jacob O'Neal
Hall Booth Smith, P.C.
191 Peachtree Street, N.E.
Suite 2900
Atlanta, GA 30303

This 20th day of February, 2026.

**LAW & MORAN**

*/s/ Denise D. Hoying*
Denise D. Hoying
Georgia Bar No. 236494
Attorney for Plaintiff

**LAW & MORAN**
563 Spring Street, NW
Atlanta, Georgia 30308
Phone: (404) 814-3700
Facsimile: (404) 842-7710
Denise@lawmoran.com