# Audio Transcript

Case Number: 25-10816
Date: January 30, 2026

In the matter of:

# A.G., Appellant v Northbrook Industries, Inc.

**CERTIFIED COPY**

Reported by:
Katherine Lenti



Steno
Agency, Inc.

1100 Glendon Avenue
Suite 1850
Los Angeles, CA 90024
concierge@steno.com
(888) 707-8366

```
1
2                      AUDIO TRANSCRIPTION
3
4
5                        A.G., Appellant,
6                              v.
7                 Northbrook Industries, Inc.
8
9                    CASE ID:   25-10816
10
11
12        Audio File Labeled:   25-10816_01302026.mp3
13
14   SPEAKERS:
15   HON. PRYOR, Chief Judge
     HON. ABUDU
16   HON. CONWAY
17   MR. RORY WEEKS, ESQ.
     MR. CAMERON MOBLEY, ESQ.
18
19
20
21
22
23   Transcribed By:
24   Katherine Lenti
     CSR 084.004958
25   Concierge@steno.com
```

1          (Beginning of recording.)

2          HON. PRYOR:  With similar issues, A.G. versus

3    Northbrook Industries.

4          Mr. Weeks?

5          MR. WEEKS:  May it please the Court, my name

6    is Rory Weeks and I represent A.G. and G.W., two women

7    who as children were sold for sex to many men for many

8    days at the United Inn and Suites in Decatur, which is

9    about 10 miles from right where we stand.

10         Judge Pryor, I heard you say that you're not

11   convinced that renting hotel rooms to traffickers is

12   sufficient to meet the participation element.

13         HON. PRYOR:  Well, just -- just enough.  The

14   mere rental of a room standing alone, I don't think is

15   enough.  And I think maybe Red Roof settled that.

16         That does not mean, Mr. Weeks, that I don't

17   think you might have enough to go to a jury.

18         MR. WEEKS:  I think we do, but I would like to

19   take a couple minutes and maybe suggest some reasons

20   why I think it might be enough.

21         HON. PRYOR:  I would suggest that you try to

22   win the appeal.

23         MR. WEEKS:  Okay.  So if we thought that just

24   renting rooms wasn't an act that could be criminalized

25   under the statute, I think one of the ways to start

 1   thinking about whether there's participant liability is

 2   this.

 3

 4          HON. ABUDU:  Well, first, do you believe that

 5   the district court misapplied, misinterpreted the law,

 6   or misapplied the facts to the law.

 7          MR. WEEKS:  Both, Your Honor.  But I'll take

 8   just misapplied the facts and we win.  But I think they

 9   also misapply -- I think the district court also

10   misapplied the law.

11          I think that when you're talking about TVPRA

12   participant or beneficiary claims, what we're looking

13   at is, did the hotel do something that they knew they

14   shouldn't have done or that they shouldn't have done?

15          Or another way of thinking about this is, if

16   they did what they did with actual knowledge, would it

17   have been a crime?  It is a crime to harbor somebody

18   who's a minor who is going to be caused to have sex.

19   That's a crime.

20          Hotels, by their nature, basically harbor

21   people.  Right?  So if a hotel knows that there's a

22   child in there who's going to be caused to have sex,

23   whether she has it or not, it's not even required.  If

24   they just know that she's going to be caused, they're

25   criminals.  Right?

1          If they knew or should have known, they can be

2    held civilly liable.  That's what the -- that's what

3    the beneficiary part does.  It extends that liability.

4          We already have coverage in the first part of

5    1595A for perpetrators, right?  And perpetrators

6    include people who knowingly benefit from, say, aiding

7    and abetting trafficking.  Under 1591(A)(2), that's a

8    crime, or 1589(B) for labor trafficking.  That's

9    already a crime to knowingly benefit from that

10   activity.

11         The beneficiary liability in the civil

12   provision provides additional coverage for people who

13   make money off of sex trafficking, or labor

14   trafficking, or human trafficking, or shipping people

15   who are slaves, because part of Chapter 77 includes

16   that.  That's part of what the beneficiary liability

17   picks up.

18         And, here, I don't think there's any doubt

19   that if the hotel had absolutely known what was going

20   on in the rooms, that they would have been criminal.

21   But, you know, we don't have to prove that, of course,

22   to win something under the beneficiary claim.  We only

23   have to prove that they should have known.  And I

24   believe that there's much of evidence here to suggest

25   that they should have known what was going on, and

 1    that, in this way, that they participated.

 2            And so I want to talk about participation for

 3    a second.  If we think that the hotel has to do

 4    something involved with the traffickers to be a

 5    participant, that essentially -- the entity has to

 6    participate with the traffickers.

 7            HON. PRYOR:  It has to provide some kind of

 8    support.

 9            MR. WEEKS:  They have to provide some kind of

10    support.

11            HON. PRYOR:  Lend some kind of support.

12            MR. WEEKS:  Okay.

13            HON. PRYOR:  So what have you got here?

14            MR. WEEKS:  If that's what we're thinking has

15    to happen, then I think we have to think about what

16    they're doing in light of what they know.  And I think

17    this is because innocent actions can actually be not so

18    innocent when you know a lot of things about them.

19            Mr. Ramachandrappa (phonetic) was talking

20    about that, essentially, in his case.  When you know

21    all these background facts about a place, and then you

22    do certain actions, we have reason to think that.

23            So here's some background facts about the

24    United Inn.  It was a well-known commercial hotspot for

25    years in DeKalb County, according to the vice

```
 1   detectives.  From 2012 to 2016, there was at least
 2   seven incidents at the hotel involving commercial sex
 3   where the police responded.
 4           In June of 2017, the month in which A.G. and
 5   G.W. were starting to be sold for sex there, there was
 6   two incidents.  A man beat a woman, and the police
 7   responded because there was a dispute about money owed
 8   for sex.
 9           And then there was another dispute, a fight
10   between a prostitute and a pimp where the police
11   responded to at the hotel.  Hotel knows that it's a
12   problem.  So --
13           HON. PRYOR:  So there's some background
14   evidence of friendliness to sex trafficking?
15           MR. WEEKS:  Yes, sir.
16           HON. PRYOR:  Is your best evidence of the kind
17   of support I was talking about, the letting the girls
18   back in the room?
19           MR. WEEKS:  That is by far the best fact in
20   the case, is that when they were locked out of the
21   room, when they showed up in the front, first of all,
22   they didn't -- the hotel did not check their ID, but
23   somehow knew they didn't actually have to be in the
24   room.
25           They spoke with the traffickers, and then
```

1  after speaking with the traffickers, let them back into

2  the room.  And that is certainly our best fact to show

3  participation in that.

4         They're also selling them condoms, they're

5  selling them foodstuffs, they're seeing them walk

6  around the parking lot and talk to men.  One of the

7  things not to miss here is that there's 36 cameras on

8  the property.

9         HON. PRYOR:  You're saying there's evidence

10 that the hotel sold the girls condoms?

11        MR. WEEKS:  Yes, sir.

12        HON. PRYOR:  Okay.

13        MR. WEEKS:  There are --

14        HON. PRYOR:  Where do I find that?

15        MR. WEEKS:  Let me grab you a cite on my

16 response, for the exact cite.

17        But they did sell them condoms in the middle

18 of the night.  There was an -- there were -- you know,

19 during the time that they're there, two groups of five

20 men, or four to five men, have sex with A.G. and G.W.

21        After they have sex with them, there is a

22 commotion and a response and a disturbance in the

23 common area, right outside their door.  Relevant to

24 this is the fact that their hotel room, room 112, is

25 about 50 feet from the office.  That is on the same

1    side, on the same floor.  There's cameras on the

2    outside.  These are all things that they could have

3    known if they had wanted to know about it.

4          And it is in that context that they sell them

5    condoms.  It is in that context that they walk them

6    back to their room when they're in in the middle of the

7    night.

8          And while I'm on that, I want to make a small

9    brief aside to say something about the Georgia law

10   claim that we have here.  If opening the door and

11   letting you into a hotel room is not at least an

12   implied invitation to spend the night, I don't know

13   what is.  And spending the night in a hotel is

14   certainly lawful.  And so, I wanted to make that quick

15   point about --

16

17          HON. ABUDU:  Is that separate from the status?

18   Because I know we get into invitee versus licensing.

19   Is that related or separate.

20          MR. WEEKS:  What I think it does is establish

21   a minimum for that period, you're at least an invitee.

22          Now, when that ended, how far that extended,

23   all those are questions for the jury to decide.  But in

24   terms of your status being established at some point,

25   because the district court here said that there was

 1  never any point where they were an invitee, but they

 2  went to the front to buy things and -- that they were

 3  being sold, right?

 4          They were allowed to hang out in the parking

 5  lot and walk around.  They were let back into rooms,

 6  right?  That they were using and being sold for sex.

 7          And so, I think that that gives them at least

 8  at some point for some small period of time, maybe, it

 9  doesn't matter.  As long as there's any period where

10  they were invitees, I think that solves that.

11          But to answer your question, Chief Judge

12  Pryor, the absolute best evidence is that they were

13  participating was that.  But we have other inferential

14  evidence.

15          So one of our clients testified that her

16  trafficker would show up in the morning to collect the

17  money and then disappear for 15 to 20 minutes.  Her

18  inference from that is that he was going to pay the

19  money to rent the room for the next day.

20          And given his friendliness with the staff, it

21  makes sense that he had some knowledge about what was

22  going on there.  A jury could certainly find that.  And

23  it's in light of the context of how bad the hotel is,

24  how poorly they're doing on executing any of the sort

25  of things they're supposed to do.  And they don't do

1   any training about trafficking.  They don't post any

2   notices, which was required by Georgia law.

3          Like, they're showing themselves to be, come

4   here, because this is a place that you can get away

5   with this.  In fact, our client testified that G.W. was

6   --

7          HON. PRYOR:  There's evidence that the

8   traffickers prefer it as a location?

9          MR. WEEKS:  That's correct.  And that seems to

10  be evidence that they're doing something either

11  affirmatively or by refraining from doing something.

12         They don't call police.  They don't get them

13  involved.  They act like they don't know.  When things

14  go on outside your room, they just pretend like

15  nothing's happening.

16         If you get locked out and you're not even on

17  the room, we don't check to see your ID.  And so if you

18  get back in, we'll just go ahead and walk you back

19  down, as long as the person who's paying us tells us

20  it's okay.

21  All those things are signs of participating in it.

22         To the -- switching talk, just a few more

23  seconds about the negligence claim.  One of the things

24  that gets brought up in the briefing on appeal has to

25  do with the idea is that the injury has to occur at --

1    or sorry -- that you have to be an invitee at the time

2    of injury, which was not raised in the district court,

3    not considered by the district court, and it's also not

4    true.

5            And the reason it's not true is factually, the

6    entire trafficking period, the entire time that they're

7    there, these girls have been told that they're being

8    monitored, right?  They're being coerced into doing

9    this.  They've been tricked to get there.

10           When they go buy food at the front store, when

11   they go buy condoms, when they're at the hotel, these

12   are all things that are part of the trafficking.  And

13   if they're experiencing any harms, any of the sort of

14   physical or mental degradations that go associated with

15   being sex trafficked during that time, they are

16   suffering injury.

17           United acts as if the only injuries that they

18   ever suffered were the times when the guys came to the

19   room and paid money to have sex with these children.

20   But that's not the only times that they're injured

21   during this period, because sex trafficking isn't a

22   singular sort of event-specific crime.

23           So I wanted to address that argument, which

24   is --

25           HON. ABUDU:  Well, first clarify for me, did

AUDIO TRANSCRIPTION - JOB NO. 2404633                JANUARY 30, 2026
A.G., Appellant v Northbrook Industries, Inc.

1  at some point the district court state or suggest that

2  because they were there engaged in unlawful activity,

3  they couldn't be invitees?

4          MR. WEEKS:  That's correct, the district court

5  did say that.  And that's just an incorrect statement

6  as a matter of law.  I'll give you an example I think

7  that helps.

8          Suppose I got a wild hair and went to the

9  Walmart parking lot and decided I was going to do some

10  skateboarding, which is not allowed and they don't

11  permit.  But after a minute or two, because it won't

12  take very long for me to be tired, I get tired and

13  decide I want to go get a drink.  And so I walk inside

14  the store to go buy a soda.  And as I do, I slip and

15  fall, right?  I may have started off on the property as

16  not an invitee, but when I'm walking into the store to

17  buy something, surely I become an invitee under Georgia

18  law at that point, right?

19          So they could have come on the property,

20  perhaps, you know, assuming when you're brought to a

21  place that isn't your choice, you actually are making a

22  choice, but even if they started --

23          HON. PRYOR:  For an unlawful purpose.

24          MR. WEEKS:  Even if they started as --

25          HON. PRYOR:  But just renting a room is a

 1   lawful purpose.

 2          MR. WEEKS:  Correct, buying goods is a lawful

 3   purpose.  Anytime we transition to that, you become an

 4   invitee.  And the question of whether that switch is

 5   made or how far it extends is, under well-settled

 6   Georgia law, a question for the jury and should be also

 7   a question for the jury in federal court.

 8          And I'm going to cede back my last 40 seconds

 9   and see you on rebuttal.

10          HON. PRYOR:  All right.  We'll give you three

11   and a half on rebuttal.

12          Mr. Mobley?

13          MR. MOBLEY:  Morning, Your Honor.  May it

14   please the Court, my name is Cameron Mobley and I

15   represent the appellee, Northbrook Industries, Inc.,

16   who I'll be referring to simply as Northbrook for the

17   purposes of this argument.

18          I'd like to start with something that I know

19   everyone in this room can agree with, which is that

20   what happened to appellants A.G. and G.W. is absolutely

21   horrific.  Sex trafficking has no place in our society

22   and we as citizens benefit tremendously from the

23   enactment and the enforcement of the TVPRA.

24          But I must urge this Court not to allow the

25   disturbing facts of this case to lead to an

1   unreasonable interpretation of the TVPRA.  And make no

2   mistake, that's exactly what the appellants are asking

3   this Court to do here today.

4          Because to adopt their analysis and adopt

5   their interpretation of the TVPRA would require this

6   Court to stray from both the Red Roof and K.H.

7   opinions, ignore or contort the text of the statute,

8   and ultimately create an affirmative duty on all

9   businesses to either prevent or intervene in sex

10  trafficking.

11         HON. PRYOR:  Yeah.  You know, it does seem to

12  me though that there's some background evidence here

13  about this particular property's friendliness and

14  awareness of sex trafficking.  Not posting the notice,

15  all the incidents, all the police visits, et cetera.

16         And evidence of particularly friendliness and

17  awareness of the particular traffickers here who would

18  spend 15 to 20 minutes talking with the hotel staff

19  each day.

20         And then -- and then there's this moment where

21  the girls want back in the room and the trafficker --

22  and the hotel staff contacts the traffickers to let

23  them back in.  That looks to me like a really bad fact

24  for you.

25         MR. MOBLEY:  Well, I won't say it's a good

1   fact, but what I'll tell you is this, all of the facts

2   that you're pointing to and all that my opposing

3   counsel pointed to only demonstrate an aspect of

4   negligence.

5         And what they're trying to do here is have the

6   constructive knowledge aspect of this statute consume

7   the entire statute.  But what the district court

8   decided this case on was participation.  And so I'll

9   take --

10        HON. PRYOR:  I mean, this is a fact that

11  concerns me as to participation.

12        MR. MOBLEY:  Understood, Your Honor.  With

13  regard to the spending the time, you know, paying for

14  the rooms, for example, I think the district court was

15  well within reason to exclude that fact based on

16  evidence rules.  That's rife speculation.

17        If we look back at the testimony from the

18  appellant on that issue, obviously she was not there.

19  She really didn't know where the trafficker was.  So to

20  the extent that that's even admissible evidence that

21  should have been considered on summary judgment is

22  arguably it should not have been considered.

23        But even if it is considered, Your Honor --

24        HON. CONWAY:  But didn't she testify that she

25  knew he hadn't left the property, at least not in his

```
 1   car?

 2          MR. MOBLEY:  I'm sorry, Your Honor.  I didn't

 3   hear you.

 4          HON. CONWAY:  Wasn't there evidence that she

 5   at least testified that he didn't leave the property in

 6   his car anyway?

 7          MR. MOBLEY:  Yes, Your Honor.  But again,

 8   what's being -- what the appellants are asking the

 9   district court and now this court to draw, the

10   inference they're asking them to draw from that fact is

11   that the trafficker had some sort of friendly

12   relationship with the operator of the hotel.

13          But this is an absence of evidence.  It's not

14   evidence of any fact because she's not aware of what's

15   going on during this time.  So can we draw the

16   inference that the trafficker didn't leave the property

17   because his car is still there?  Sure.

18          But to take the next step and say that there's

19   some kind of relationship beyond that of what a

20   relationship that would exist between a hotel operator

21   and any guest is going far beyond what the evidence

22   actually shows.

23          And because the Court spent some time talking

24   about the letting the girls back into the room, I want

25   to address that point as well.
```

AUDIO TRANSCRIPTION - JOB NO. 2404633                    JANUARY 30, 2026
A.G., Appellant v Northbrook Industries, Inc.

1        Your Honor, because the hotel operator

2   contacted the traffickers who were the ones in

3   contractual privity with the hotel, the unavoidable

4   implication of that is that if they had told them that

5   those young ladies were not permitted to enter that

6   room, they would not have given them access to that

7   room.

8        You see, this is nothing more than them

9   providing customer service to someone that has rented a

10  room from this property.

11       And now I understand that the facts of this

12  case make that seem more disturbing, but when you think

13  about it from the --

14       HON. PRYOR:  And when these 17-year-olds

15  who've been buying condoms from the hotel staff are

16  wanting back in and they call the traffickers, that

17  sounds like the sort of thing that they should have

18  known, what involved sex trafficking.

19       MR. MOBLEY:  Well, Your Honor, again, I think

20  these facts may go to constructive knowledge, but they

21  don't go to participation, which is the element that

22  the Court decided this case on.

23       HON. PRYOR:  Well, I mean, that's over and

24  beyond the support, isn't it?

25       MR. MOBLEY:  Well, no, Your Honor.  Because

1  when we look at the services that hotels offer to the

2  public generally, we have to expect that, of course,

3  they're going to provide access to the room.  Okay?

4  There's other aspects of customer service that are

5  going to be involved in that.

6          Letting them out when they -- letting them

7  back in when they've been locked out certainly fall

8  within the scope of that.  When we look at not only the

9  text of the statute --

10          HON. PRYOR:  Yeah.  Well, I mean, look, if

11  you've got the person you know who's been renting the

12  room, the person to whom you've given a key, the person

13  who's financially responsible, I understand, you know,

14  how a hotel's interaction with that person in and of

15  itself wouldn't mean participation.

16          But when you have 17-year-old girls who've

17  been hanging out, wearing provocative clothing, buying

18  condoms at the hotel, standing in the parking lot late

19  at night, and the individuals who've got the keys and

20  have been paying for the room who you've been talking

21  with each day, these men you know aren't there, you

22  contact them by phone to let these young girls in.  Now

23  it looks like you've gone a step further.

24          MR. MOBLEY:  Well, Your Honor, I would like to

25  turn back to the text of the statute, which, you know,

AUDIO TRANSCRIPTION - JOB NO. 2404633                    JANUARY 30, 2026
A.G., Appellant v Northbrook Industries, Inc.

1  participation in adventure, right?  That's what this

2  case is all about.

3          The way that this circuit has defined that --

4  well, I won't go in, we know how this Court defined it,

5  but what I want to point to is the sources that they

6  drew from to reach that definition.

7          So this Court relied on Black's Law Dictionary

8  and Oxford, the Oxford English Dictionary to describe

9  what a venture is.  Both of those definitions include

10 commercial speculation.  Okay, commercial speculation.

11         If we're talking about a joint venture between

12 two parties, there has to be some aspect of speculation

13 as to what may be derived from this venture.

14         HON. ABUDU:  And didn't DeKalb County, with

15 all of its inspections and investigations, answer that

16 question to some extent?

17         I mean, you started out your presentation

18 saying that a ruling for the other side suggests that

19 your client has an affirmative duty to stop, but that

20 may not be what the statute requires.  But for sure,

21 once they are on notice that there is criminal activity

22 happening, potentially involving minors, how is -- and

23 then you open the door for young girls to get into the

24 room, how is that not an extra step?

25         MR. MOBLEY:  Your Honor, again, I would turn

1  back to the fact that this is still what has been --

2  what the evidence demonstrated in this case never

3  showed that Northbrook took any steps beyond what would

4  be asked of a hotel in any typical hotel guest

5  circumstance.  And because the reason that I go back

6  to --

7          HON. ABUDU:  It also didn't take steps -- I

8  mean, again, if I understand the record, to address the

9  complaints that were brought to its attention.

10         For example, posting signs or other

11  information to tell people what does sex trafficking,

12  human trafficking look like.

13         MR. MOBLEY:  Of course, Your Honor.  And I

14  think that that is certainly relevant to the state law

15  negligence claim.

16         But considering the fact that we are

17  continuing on this path, I want to take a step back,

18  and let me preface this by saying I understand that the

19  Court is not in a position to supplant the

20  legislature's intent, okay?

21         So I'm not asking that the Court consider

22  these policy implications to step in and take

23  Congress's role.  But what I do think is if we play out

24  what appellants are suggesting here, and see what the

25  end of that looks like, it provides some context as to

1    why this statute was written the way it is.

2          Because I'll give you a perfect example.  I

3    can look at the allegations of the complaint, but the

4    appellants' counsel in the C.B. case just mentioned

5    that what should have put the operator on notice as to

6    sex trafficking was the presence of a young black girl

7    and a 48-year-old man, okay?

8          So if we look at that, if we're going to

9    accept that that is the type of evidence that should

10   provide constructive knowledge to a hotel, and we play

11   that out, this is going to put hotels in a position

12   where they have to profile and discriminate against

13   people based on how they look in order to avoid

14   liability under this statute.

15         HON. ABUDU:  Well, it wasn't just that you had

16   a young black girl with an older white man.  It was

17   also the way in which they were engaging, but that's

18   not your case.

19         Your case is here where you have police

20   investigations informing your client that there is

21   illegal activity happening.  And so perhaps they didn't

22   have the affirmative duty again, but now they know, and

23   they're not taking any steps to at least abide by the

24   advice, and the evidence suggests they're taking

25   affirmative steps in the participation.

```
 1            MR. MOBLEY:  Well, I would push back on taking

 2   affirmative steps in participation, because what the

 3   statute does not say is that defendants are under a

 4   duty to exercise reasonable care in ensuring that

 5   trafficking doesn't happen at the property, right?  It

 6   says that you cannot participate in that trafficking.

 7            And I think what the district court relied on

 8   in demonstrating --

 9            HON. PRYOR:  Can't be profiting by

10   participating in what you should have known -- it's

11   that knew or should have known was trafficking, right?

12            MR. MOBLEY:  Correct, Your Honor.  Here, what

13   we have, what Northbrook was profiting from was renting

14   rooms to individuals.

15            HON. PRYOR:  Yeah.  At some point, the room

16   rentals, the making the money from the room rentals,

17   when you know what's going on and you're assisting it

18   and customizing it, enabling it, at some point it does

19   become participation, doesn't it?

20            MR. MOBLEY:  Especially under the criminal

21   statute, Your Honor.  At some point, actually --

22            HON. PRYOR:  Let's talk about this step, this

23   aspect of it, the civil aspect of it.  You agree, don't

24   you, that at some point, a hotel operator can be

25   participating in the venture, right?
```

1          MR. MOBLEY:  Absolutely, Your Honor.

2          HON. PRYOR:  They can't just say, all we do is

3    rent rooms.

4          MR. MOBLEY:  No, and that's not what I'm

5    attempting to convey to the Court either.  I think the

6    allegations of this complaint of a police lookout

7    aiding the traffickers is the quintessential example of

8    how a hotel operator might participate in a trafficking

9    venture without having crossed the line into

10   perpetrator liability for the purpose of the --

11         HON. PRYOR:  Yeah.  I'll just come back to the

12   fact that really troubles me, the one that goes the

13   next step, is the letting those girls get back into

14   that room after calling the traffickers.

15         MR. MOBLEY:  Well, Your Honor, I understand

16   that the facts of this case are disturbing in many

17   ways, but at the end of the day, we're bound by the

18   text, and what the text says is participation in a

19   venture.

20         This is not participation in a venture by any

21   reasonable understanding of what a venture is.  What

22   this is is a transaction, and when we look at the way

23   that Black's law defines a transaction --

24         HON. PRYOR:  If you let the trafficked victims

25   back into the room, you are enabling what you should

 1  know is prostitution or is sex trafficking.  That's my

 2  concern -- and profiting from it.

 3          MR. MOBLEY:  Again, Your Honor, what I would

 4  turn back to is that this is precisely the type of

 5  service that is being offered to the public generally.

 6          The fact that criminals are taking advantage

 7  of this legitimate business is not what exposed it.

 8  That's not what the text --

 9          HON. ABUDU:  Well, that's the question, too.

10  Is it a legitimate business if it's engaged in this

11  kind of activity?

12          MR. MOBLEY:  Well, Your Honor, I understand.

13          That would be the question, were there a

14  perpetrator liability claim against the hotel, but

15  there's not.  There's a beneficiary claim, and in order

16  to be held liable as a beneficiary, you have to

17  participate in that trafficking.

18          HON. ABUDU:  Why is this on -- but this is a

19  summary -- we're here on summary judgment, right?

20          MS. MOBLEY:  Correct, Your Honor.

21          HON. ABUDU:  Why at least are there not

22  material questions, even given this colloquy, for a

23  jury?

24          I think to Judge Conway's question, perhaps in

25  the other case, why is this not at least right for a

 1   jury's consideration?

 2           MR. MOBLEY:  Well, Your Honor, all of the

 3   facts that we've really been harping on here really

 4   would only be relevant to the constructive knowledge

 5   aspect.  Because in order to participate, there has to

 6   be some act beyond -- for example, I'll take us back to

 7   the G.G. v. Salesforce case, right?

 8           Although they got there a different way, they

 9   ultimately kind of ruled the same way that this Court

10   ruled in Red Roof, which is that there has to be some

11   provision of some good or service beyond what is being

12   offered as the quote, off-the-shelf offering.

13           When you transpose that reasoning to our case,

14   the off-the-shelf offerings of a hotel necessarily

15   include access to the guest rooms, include access to

16   the common areas, and include customer service.  I

17   would even say the discretion, exercising the

18   discretion of where to place --

19           HON. ABUDU:  Okay, sorry.  I know you're

20   running out of time.  So does some of that speak to the

21   invitee versus licensee?  Are you now conceding they

22   were invitees?

23           MR. MOBLEY:  No, Your Honor.  No.  What I will

24   tell you is that, I know I'm running out of time, can I

25   just take a brief moment to speak to --

 1          HON. PRYOR:  You can respond to that question,

 2   then we're going to be done.

 3          MR. MOBLEY:  Okay.  No, I'm not conceding that

 4   they were invitees, Your Honor.  You see, under the

 5   law, they're required to be on the premises for a

 6   lawful purpose.

 7          Now, I understand appellant's argument saying

 8   that they transformed into invitees once they made

 9   these purchases in the lobby and whatnot.  But the fact

10   remains that the injury that's been alleged to have

11   approximately caused their damages is the sex

12   trafficking itself.

13          So to say that they're constantly being

14   injured from the point in which they're recruited into

15   sex trafficking until, I mean, I would imagine forever,

16   that's not the allegation of the injury that occurred

17   for the purposes of premises liability.  That occurred

18   inside the room, and they were never invitees to the

19   room.

20          HON. PRYOR:  I think we understand your point

21   about invitees.  Thank you, Mr. Mobley.

22          MR. MOBLEY:  Thank you, Your Honor.

23          HON. PRYOR:  Mr. Weeks?

24          MR. WEEKS:  The Seventh Amendment was added to

25   the Constitution to fix a problem that many believed

1   existed and that was almost derailed the impassment of

2   the Constitution in the first place, and that is the

3   role of civil juries in trials.  That's why we have

4   them.

5            And much of what we're talking about here,

6   whether this qualifies as participation, what you could

7   know, what you didn't know, all these are questions

8   that juries have traditionally, historically, and

9   should continue to sort out in these cases.

10           The statute that we're talking about today,

11  the TVPRA civil beneficiary portion is extremely broad,

12  as Chief Judge Pryor mentioned earlier.  It talks about

13  whoever knowingly benefits from participation in a

14  venture, and that venture only has to do an act, as

15  we've said, that is in violation.  And I would suggest

16  that that act itself isn't necessarily required to be a

17  violation.  An act in violation and a violation may not

18  be the same thing under the statute.

19           And lastly, that the person who's being

20  brought up has to know or should have known about what

21  the venture did.

22           Here, the hotel absolutely knew or should have

23  known that it was renting rooms to traffickers out of

24  which trafficking was happening.  A jury could

25  certainly conclude that.  And if they did that, they

AUDIO TRANSCRIPTION - JOB NO. 2404633                    JANUARY 30, 2026
A.G., Appellant v Northbrook Industries, Inc.

1    could absolutely hold them civilly liable and award

2    damages and attorney's fees.

3              HON. PRYOR:  I'm having a hard time

4    understanding how an act in violation is something

5    different from a violation.

6              MR. WEEKS:  There's -- so there's two

7    different phrases in the statute.  One time in the

8    perpetrator claims, it refers to a violation of this

9    chapter; and the next time it refers to an act in

10   violation of this chapter.  And the changer of --

11             HON. PRYOR:  So you've got an individual who's

12   a victim of a violation --

13             MR. WEEKS:  Correct.

14             HON. PRYOR:  -- that's one thing.  But in

15   terms of the participant liability should have known

16   has engaged in an act in violation.

17             MR. WEEKS:  If act in violation requires there

18   to be a criminal action itself by the venture, then we

19   run the same risk that they identified in Red Roof of

20   reading should have known out of the statute, right?

21             It has to be possible for what the defendant

22   did to only do that with -- to do that with not actual

23   knowledge, not reckless disregard, but simply just

24   should have known knowledge, constructive knowledge and

25   still be held civilly liable.

 1          HON. PRYOR:  Yeah, but still be should have

 2   known knowledge of a violation.

 3          MR. WEEKS:  If we read it that way, and the

 4   violation is the trafficking itself that can occur

 5   whether or not they were involved in itself.  I'm fine

 6   with that reasoning.

 7          At the end of the day, Congress decided that

 8   in 2008, it wanted to make people who profit off of sex

 9   trafficking and labor trafficking, other forms of human

10   suffering potentially liable, who knowingly benefit

11   from that.  And it passed a statute that did that.  And

12   we believe the facts here allow at least a jury to

13   decide whether United is responsible for that.

14          Thank you.

15          HON. PRYOR:  Okay, Counsel.  We -- I think we

16   understand your case.  We're going to move on to the

17   third one.

18                   (End of recording.)

19

20

21

22

23

24

25

AUDIO TRANSCRIPTION - JOB NO. 2404633                    JANUARY 30, 2026
A.G., Appellant v Northbrook Industries, Inc.

```
 1                    C E R T I F I C A T I O N

 2

 3         I, Katherine Lenti, Certified Shorthand Reporter and

 4    Notary Public for the State of Illinois, do hereby certify

 5    that the foregoing is a correct transcript of the

 6    digitally-recorded audio in the above-entitled matter.

 7         I further certify that I am not related to nor an

 8    employee of counsel or any of the parties to the action,

 9    nor am I in any way financially interested in the outcome

10    of this case.

11

12         Dated this day, February 9th, 2026.

13

14

15

16         _____

17         Katherine Lenti
           CSR No. 084.004958
18         Concierge@steno.com

19

20

21

22

23

24

25
```

AUDIO TRANSCRIPTION - JOB NO. 2404633                    JANUARY 30, 2026
A.G., Appellant v Northbrook Industries, Inc.

**1**

**10** 2:9
**112** 7:24
**15** 9:17 14:18
**1589(B)** 4:8
**1591(A)(2)** 4:7
**1595A** 4:5
**17-year-old** 18:16
**17-year-olds** 17:14

**2**

**20** 9:17 14:18
**2008** 29:8
**2012** 6:1
**2016** 6:1
**2017** 6:4

**3**

**36** 7:7

**4**

**40** 13:8
**48-year-old** 21:7

**5**

**50** 7:25

**7**

**77** 4:15

**A**

**A.G.** 2:2,6 6:4 7:20
13:20

**abetting** 4:7
**abide** 21:23
**absence** 16:13
**absolute** 9:12
**absolutely** 4:19
13:20 23:1 27:22 28:1
**ABUDU** 3:4 8:17
11:25 19:14 20:7 21:15
24:9,18,21 25:19
**accept** 21:9
**access** 17:6 18:3
25:15
**act** 2:24 10:13 25:6
27:14,16,17 28:4,9,16,
17
**action** 28:18
**actions** 5:17,22
**activity** 4:10 12:2
19:21 21:21 24:11
**acts** 11:17
**actual** 3:16 28:22
**added** 26:24
**additional** 4:12
**address** 11:23 16:25
20:8
**admissible** 15:20
**adopt** 14:4
**advantage** 24:6
**adventure** 19:1
**advice** 21:24
**affirmative** 14:8
19:19 21:22,25 22:2
**affirmatively** 10:11
**agree** 13:19 22:23
**ahead** 10:18
**aiding** 4:6 23:7
**allegation** 26:16
**allegations** 21:3
23:6
**alleged** 26:10

**allowed** 9:4 12:10
**Amendment** 26:24
**analysis** 14:4
**Anytime** 13:3
**appeal** 2:22 10:24
**appellant** 15:18
**appellant's** 26:7
**appellants** 13:20
14:2 16:8 20:24
**appellants'** 21:4
**appellee** 13:15
**approximately**
26:11
**area** 7:23
**areas** 25:16
**arguably** 15:22
**argument** 11:23
13:17 26:7
**aspect** 15:3,6 19:12
22:23 25:5
**aspects** 18:4
**assisting** 22:17
**assuming** 12:20
**attempting** 23:5
**attention** 20:9
**attorney's** 28:2
**avoid** 21:13
**award** 28:1
**aware** 16:14
**awareness** 14:14,17

**B**

**back** 6:18 7:1 8:6 9:5
10:18 13:8 14:21,23
15:17 16:24 17:16 18:7,
25 20:1,5,17 22:1
23:11,13,25 24:4 25:6
**background** 5:21,
23 6:13 14:12

**bad** 9:23 14:23
**based** 15:15 21:13
**basically** 3:20
**beat** 6:6
**beginning** 2:1
**believed** 26:25
**beneficiary** 3:12
4:3,11,16,22 24:15,16
27:11
**benefit** 4:6,9 13:22
29:10
**benefits** 27:13
**black** 21:6,16
**Black's** 19:7 23:23
**bound** 23:17
**briefing** 10:24
**broad** 27:11
**brought** 10:24 12:20
20:9 27:20
**business** 24:7,10
**businesses** 14:9
**buy** 9:2 11:10,11
12:14,17
**buying** 13:2 17:15
18:17

**C**

**C.B.** 21:4
**call** 10:12 17:16
**calling** 23:14
**cameras** 7:7 8:1
**Cameron** 13:14
**car** 16:1,6,17
**care** 22:4
**case** 5:20 6:20 13:25
15:8 17:12,22 19:2 20:2
21:4,18,19 23:16 24:25
25:7,13 29:16
**cases** 27:9

AUDIO TRANSCRIPTION - JOB NO. 2404633                          JANUARY 30, 2026
A.G., Appellant v Northbrook Industries, Inc.

**caused** 3:18,22,24 26:11

**cede** 13:8

**cetera** 14:15

**changer** 28:10

**chapter** 4:15 28:9,10

**check** 6:22 10:17

**Chief** 9:11 27:12

**child** 3:22

**children** 2:7 11:19

**choice** 12:21,22

**circuit** 19:3

**circumstance** 20:5

**cite** 7:15,16

**citizens** 13:22

**civil** 4:11 22:23 27:3, 11

**civilly** 4:2 28:1,25

**claim** 4:22 8:10 10:23 20:15 24:14,15

**claims** 3:12 28:8

**clarify** 11:25

**client** 10:5 19:19 21:20

**clients** 9:15

**clothing** 18:17

**coerced** 11:8

**collect** 9:16

**colloquy** 24:22

**commercial** 5:24 6:2 19:10

**common** 7:23 25:16

**commotion** 7:22

**complaint** 21:3 23:6

**complaints** 20:9

**conceding** 25:21 26:3

**concern** 24:2

**concerns** 15:11

**conclude** 27:25

**condoms** 7:4,10,17 8:5 11:11 17:15 18:18

**Congress** 29:7

**Congress's** 20:23

**consideration** 25:1

**considered** 11:3 15:21,22,23

**constantly** 26:13

**Constitution** 26:25 27:2

**constructive** 15:6 17:20 21:10 25:4 28:24

**consume** 15:6

**contact** 18:22

**contacted** 17:2

**contacts** 14:22

**context** 8:4,5 9:23 20:25

**continue** 27:9

**continuing** 20:17

**contort** 14:7

**contractual** 17:3

**convey** 23:5

**convinced** 2:11

**CONWAY** 15:24 16:4

**Conway's** 24:24

**correct** 10:9 12:4 13:2 22:12 14:20 28:13

**counsel** 15:3 21:4 29:15

**County** 5:25 19:14

**couple** 2:19

**court** 2:5 3:5,9 8:25 11:2,3 12:1,4 13:7,14, 24 14:3,6 15:7,14 16:9, 23 17:22 19:4,7 20:19, 21 22:7 23:5 25:9

**coverage** 4:4,12

**create** 14:8

**crime** 3:17,19 4:8,9 11:22

**criminal** 4:20 19:21 22:20 28:18

**criminalized** 2:24

**criminals** 3:25 24:6

**crossed** 23:9

**customer** 17:9 18:4 25:16

**customizing** 22:18

**D**

**damages** 26:11 28:2

**day** 9:19 14:19 18:21 23:17 29:7

**days** 2:8

**Decatur** 2:8

**decide** 8:23 12:13 29:13

**decided** 12:9 15:8 17:22 29:7

**defendant** 28:21

**defendants** 22:3

**defined** 19:3,4

**defines** 23:23

**definition** 19:6

**definitions** 19:9

**degradations** 11:14

**Dekalb** 5:25 19:14

**demonstrate** 15:3

**demonstrated** 20:2

**demonstrating** 22:8

**derailed** 27:1

**derived** 19:13

**describe** 19:8

**detectives** 6:1

**Dictionary** 19:7,8

**disappear** 9:17

**discretion** 25:17,18

**discriminate** 21:12

**dispute** 6:7,9

**disregard** 28:23

**district** 3:5,9 8:25 11:2,3 12:1,4 15:7,14 16:9 22:7

**disturbance** 7:22

**disturbing** 13:25 17:12 23:16

**door** 7:23 8:10 19:23

**doubt** 4:18

**draw** 16:9,10,15

**drew** 19:6

**drink** 12:13

**duty** 14:8 19:19 21:22 22:4

**E**

**earlier** 27:12

**element** 2:12 17:21

**enabling** 22:18 23:25

**enactment** 13:23

**end** 20:25 23:17 29:7, 18

**ended** 8:22

**enforcement** 13:23

**engaged** 12:2 24:10 28:16

**engaging** 21:17

**English** 19:8

**ensuring** 22:4

**enter** 17:5

**entire** 11:6 15:7

**entity** 5:5

**essentially** 5:5,20

**establish** 8:20

**established** 8:24

**event-specific** 11:22

**evidence** 4:24 6:14, 16 7:9 9:12,14 10:7,10 14:12,16 15:16,20 16:4, 13,14,21 20:2 21:9,24

**exact** 7:16

**exclude** 15:15

**executing** 9:24

**exercise** 22:4

**exercising** 25:17

**exist** 16:20

**existed** 27:1

**expect** 18:2

**experiencing** 11:13

**exposed** 24:7

**extended** 8:22

**extends** 4:3 13:5

**extent** 15:20 19:16

**extra** 19:24

**extremely** 27:11

---

**F**

---

**fact** 6:19 7:2,24 10:5 14:23 15:1,10,15 16:10, 14 20:1,16 23:12 24:6 26:9

**facts** 3:6,8 5:21,23 13:25 15:1 17:11,20 23:16 25:3 29:12

**factually** 11:5

**fall** 12:15 18:7

**federal** 13:7

**fees** 28:2

**feet** 7:25

**fight** 6:9

**financially** 18:13

**find** 7:14 9:22

**fine** 29:5

**fix** 26:25

**floor** 8:1

**food** 11:10

**foodstuffs** 7:5

**forever** 26:15

**forms** 29:9

**friendliness** 6:14 9:20 14:13,16

**friendly** 16:11

**front** 6:21 9:2 11:10

---

**G**

---

**G.G.** 25:7

**G.W.** 2:6 6:5 7:20 10:5 13:20

**generally** 18:2 24:5

**Georgia** 8:9 10:2 12:17 13:6

**girl** 21:6,16

**girls** 6:17 7:10 11:7 14:21 16:24 18:16,22 19:23 23:13

**give** 12:6 13:10 21:2

**good** 14:25 25:11

**goods** 13:2

**grab** 7:15

**groups** 7:19

**guest** 16:21 20:4 25:15

**guys** 11:18

---

**H**

---

**hair** 12:8

**half** 13:11

**hang** 9:4

**hanging** 18:17

**happen** 5:15 22:5

**happened** 13:20

**happening** 10:15 19:22 21:21 27:24

**harbor** 3:17,20

**hard** 28:3

**harms** 11:13

**harping** 25:3

**hear** 16:3

**heard** 2:10

**held** 4:2 24:16 28:25

**helps** 12:7

**historically** 27:8

**hold** 28:1

**HON** 2:2,13,21 3:4 5:7, 11,13 6:13,16 7:9,12,14 8:17 10:7 11:25 12:23, 25 13:10 14:11 15:10, 24 16:4 17:14,23 18:10 19:14 20:7 21:15 22:9, 15,22 23:2,11,24 24:9, 18,21 25:19 26:1,20,23 28:3,11,14 29:1,15

**Honor** 3:7 13:13 15:12,23 16:2,7 17:1, 19,25 18:24 19:25 20:13 22:12,21 23:1,15 24:3,12,20 25:2,23 26:4,22

**horrific** 13:21

**hotel** 2:11 3:13,21 4:19 5:3 6:2,11,22 7:10, 24 8:11,13 9:23 11:11 14:18,22 16:12,20 17:1, 3,15 18:18 20:4 21:10 22:24 23:8 24:14 25:14 27:22

**hotel's** 18:14

**hotels** 3:20 18:1 21:11

**hotspot** 5:24

**human** 4:14 20:12 29:9

---

**I**

---

**ID** 6:22 10:17

**idea** 10:25

**identified** 28:19

**ignore** 14:7

**illegal** 21:21

**imagine** 26:15

**impassment** 27:1

**implication** 17:4

**implications** 20:22

**implied** 8:12

**incidents** 6:2,6 14:15

**include** 4:6 19:9 25:15,16

**includes** 4:15

**incorrect** 12:5

**individual** 28:11

**individuals** 18:19 22:14

**Industries** 2:3 13:15

**inference** 9:18 16:10,16

**inferential** 9:13

**information** 20:11

**informing** 21:20

**injured** 11:20 26:14

**injuries** 11:17

**injury** 10:25 11:2,16 26:10,16

**Inn** 2:8 5:24

**innocent** 5:17,18

**inside** 12:13 26:18

**inspections** 19:15

**intent** 20:20

interaction 18:14

interpretation 14:1,5

intervene 14:9

investigations 19:15 21:20

invitation 8:12

invitee 8:18,21 9:1 11:1 12:16,17 13:4 25:21

invitees 9:10 12:3 25:22 26:4,8,18,21

involved 5:4 10:13 17:18 18:5 29:5

involving 6:2 19:22

issue 15:18

issues 2:2

**J**

joint 19:11

Judge 2:10 9:11 24:24 27:12

judgment 15:21 24:19

June 6:4

juries 27:3,8

jury 2:17 8:23 9:22 13:6,7 24:23 27:24 29:12

jury's 25:1

**K**

K.H. 14:6

key 18:12

keys 18:19

kind 5:7,9,11 6:16 16:19 24:11 25:9

knew 3:13 4:1 6:23 15:25 22:11 27:22

knowingly 4:6,9 27:13 29:10

knowledge 3:16 9:21 15:6 17:20 21:10 25:4 28:23,24 29:2

**L**

labor 4:8,13 29:9

ladies 17:5

lastly 27:19

late 18:18

law 3:5,6,10 8:9 10:2 12:6,18 13:6 19:7 20:14 23:23 26:5

lawful 8:14 13:1,2 26:6

lead 13:25

leave 16:5,16

left 15:25

legislature's 20:20

legitimate 24:7,10

Lend 5:11

letting 6:17 8:11 16:24 18:6 23:13

liability 3:1 4:3,11,16 21:14 23:10 24:14 26:17 28:15

liable 4:2 24:16 28:1, 25 29:10

licensee 25:21

licensing 8:18

light 5:16 9:23

lobby 26:9

location 10:8

locked 6:20 10:16 18:7

long 9:9 10:19 12:12

lookout 23:6

lot 5:18 7:6 9:5 12:9 18:18

**M**

made 13:5 26:8

make 4:13 8:8,14 14:1 17:12 29:8

makes 9:21

making 12:21 22:16

man 6:6 21:7,16

material 24:22

matter 9:9 12:6

meet 2:12

men 2:7 7:6,20 18:21

mental 11:14

mentioned 21:4 27:12

mere 2:14

middle 7:17 8:6

miles 2:9

minimum 8:21

minor 3:18

minors 19:22

minute 12:11

minutes 2:19 9:17 14:18

misapplied 3:5,6,8, 10

misapply 3:9

misinterpreted 3:5

mistake 14:2

Mobley 13:12,13,14 14:25 15:12 16:2,7 17:19,25 18:24 19:25 20:13 22:1,12,20 23:1, 4,15 24:3,12,20 25:2,23 26:3,21,22

moment 14:20 25:25

money 4:13 6:7 9:17, 19 11:19 22:16

monitored 11:8

month 6:4

morning 9:16 13:13

move 29:16

**N**

nature 3:20

necessarily 25:14 27:16

negligence 10:23 15:4 20:15

night 7:18 8:7,12,13 18:19

Northbrook 2:3 13:15,16 20:3 22:13

nothing's 10:15

notice 14:14 19:21 21:5

notices 10:2

**O**

occur 10:25 29:4

occurred 26:16,17

off-the-shelf 25:12, 14

offer 18:1

offered 24:5 25:12

offering 25:12

offerings 25:14

office 7:25

older 21:16

open 19:23

opening 8:10

operator 16:12,20 17:1 21:5 22:24 23:8

opinions 14:7

opposing 15:2

order 21:13 24:15 25:5

AUDIO TRANSCRIPTION - JOB NO. 2404633                                    JANUARY 30, 2026
A.G., Appellant v Northbrook Industries, Inc.

owed 6:7

Oxford 19:8

---

**P**

paid 11:19

parking 7:6 9:4 12:9
18:18

part 4:3,4,15,16 11:12

participant 3:1,12
5:5 28:15

participate 5:6 22:6
23:8 24:17 25:5

participated 5:1

participating 9:13
10:21 22:10,25

participation 2:12
5:2 7:3 15:8,11 17:21
18:15 19:1 21:25 22:2,
19 23:18,20 27:6,13

parties 19:12

passed 29:11

path 20:17

pay 9:18

paying 10:19 15:13
18:20

people 3:21 4:6,12,14
20:11 21:13 29:8

perfect 21:2

period 8:21 9:8,9
11:6,21

permit 12:11

permitted 17:5

perpetrator 23:10
24:14 28:8

perpetrators 4:5

person 10:19 18:11,
12,14 27:19

phone 18:22

phonetic 5:19

phrases 28:7

physical 11:14

picks 4:17

pimp 6:10

place 5:21 10:4 12:21
13:21 25:18 27:2

play 20:23 21:10

point 8:15,24 9:1,8
12:1,18 16:25 19:5
22:15,18,21,24 26:14,
20

pointed 15:3

pointing 15:2

police 6:3,6,10 10:12
14:15 21:19 23:6

policy 20:22

poorly 9:24

portion 27:11

position 20:19 21:11

post 10:1

posting 14:14 20:10

potentially 19:22
29:10

precisely 24:4

preface 20:18

prefer 10:8

premises 26:5,17

presence 21:6

presentation 19:17

pretend 10:14

prevent 14:9

privity 17:3

problem 6:12 26:25

profile 21:12

profit 29:8

profiting 22:9,13
24:2

property 7:8 12:15,
19 15:25 16:5,16 17:10
22:5

property's 14:13

prostitute 6:10

prostitution 24:1

prove 4:21,23

provide 5:7,9 18:3
21:10

providing 17:9

provision 4:12 25:11

provocative 18:17

Pryor 2:2,10,13,21
5:7,11,13 6:13,16 7:9,
12,14 9:12 10:7 12:23,
25 13:10 14:11 15:10
17:14,23 18:10 22:9,15,
22 23:2,11,24 26:1,20,
23 27:12 28:3,11,14
29:1,15

public 18:2 24:5

purchases 26:9

purpose 12:23 13:1,
3 23:10 26:6

purposes 13:17
26:17

push 22:1

put 21:5,11

---

**Q**

qualifies 27:6

question 9:11 13:4,
6,7 19:16 24:9,13,24
26:1

questions 8:23
24:22 27:7

quick 8:14

quintessential
23:7

quote 25:12

---

**R**

raised 11:2

Ramachandrappa
5:19

reach 19:6

read 29:3

reading 28:20

reason 5:22 11:5
15:15 20:5

reasonable 22:4
23:21

reasoning 25:13
29:6

reasons 2:19

rebuttal 13:9,11

reckless 28:23

record 20:8

recording 2:1 29:18

recruited 26:14

Red 2:15 14:6 25:10
28:19

referring 13:16

refers 28:8,9

refraining 10:11

regard 15:13

related 8:19

relationship 16:12,
19,20

relevant 7:23 20:14
25:4

relied 19:7 22:7

remains 26:10

rent 9:19 23:3

rental 2:14

rentals 22:16

rented 17:9

renting 2:11,24 12:25
18:11 22:13 27:23

represent 2:6 13:15

require 14:5

required 3:23 10:2
26:5 27:16

AUDIO TRANSCRIPTION - JOB NO. 2404633                                    JANUARY 30, 2026
A.G., Appellant v Northbrook Industries, Inc.

requires 19:20 28:17

respond 26:1

responded 6:3,7,11

response 7:16,22

responsible 18:13
  29:13

rife 15:16

risk 28:19

role 20:23 27:3

Roof 2:15 14:6 25:10
  28:19

room 2:14 6:18,21,24
  7:2,24 8:6,11 9:19
  10:14,17 11:19 12:25
  13:19 14:21 16:24 17:6,
  7,10 18:3,12,20 19:24
  22:15,16 23:14,25
  26:18,19

rooms 2:11,24 4:20
  9:5 15:14 22:14 23:3
  25:15 27:23

Rory 2:6

ruled 25:9,10

rules 15:16

ruling 19:18

run 28:19

running 25:20,24

                S

Salesforce 25:7

scope 18:8

seconds 10:23 13:8

sell 7:17 8:4

selling 7:4,5

sense 9:21

separate 8:17,19

service 17:9 18:4
  24:5 25:11,16

services 18:1

settled 2:15

Seventh 26:24

sex 2:7 3:18,22 4:13
  6:2,5,8,14 7:20,21 9:6
  11:15,19,21 13:21 14:9,
  14 17:18 20:11 21:6
  24:1 26:11,15 29:8

shipping 4:14

show 7:2 9:16

showed 6:21 20:3

showing 10:3

shows 16:22

side 8:1 19:18

signs 10:21 20:10

similar 2:2

simply 13:16 28:23

singular 11:22

sir 6:15 7:11

skateboarding
  12:10

slaves 4:15

slip 12:14

small 8:8 9:8

society 13:21

soda 12:14

sold 2:7 6:5 7:10 9:3,6

solves 9:10

sort 9:24 11:13,22
  16:11 17:17 27:9

sounds 17:17

sources 19:5

speak 25:20,25

speaking 7:1

speculation 15:16
  19:10,12

spend 8:12 14:18

spending 8:13 15:13

spent 16:23

spoke 6:25

staff 9:20 14:18,22
  17:15

stand 2:9

standing 2:14 18:18

start 2:25 13:18

started 12:15,22,24
  19:17

starting 6:5

state 12:1 20:14

statement 12:5

status 8:17,24

statute 2:25 14:7
  15:6,7 18:9,25 19:20
  21:1,14 22:3,21 27:10,
  18 28:7,20 29:11

step 16:18 18:23
  19:24 20:17,22 22:22
  23:13

steps 20:3,7 21:23,25
  22:2

stop 19:19

store 11:10 12:14,16

stray 14:6

suffered 11:18

suffering 11:16
  29:10

sufficient 2:12

suggest 2:19,21 4:24
  12:1 27:15

suggesting 20:24

suggests 19:18
  21:24

Suites 2:8

summary 15:21
  24:19

supplant 20:19

support 5:8,10,11
  6:17 17:24

Suppose 12:8

supposed 9:25

surely 12:17

switch 13:4

switching 10:22

                T

taking 21:23,24 22:1
  24:6

talk 5:2 7:6 10:22
  22:22

talking 3:11 5:19 6:17
  14:18 16:23 18:20
  19:11 27:5,10

talks 27:12

tells 10:19

terms 8:24 28:15

testified 9:15 10:5
  16:5

testify 15:24

testimony 15:17

text 14:7 18:9,25 23:18
  24:8

thing 17:17 27:18
  28:14

things 5:18 7:7 8:2
  9:2,25 10:13,21,23
  11:12

thinking 3:1,15 5:14

thought 2:23

time 7:19 9:8 11:1,6,
  15 15:13 16:15,23
  25:20,24 28:3,7,9

times 11:18,20

tired 12:12

today 14:3 27:10

told 11:7 17:4

traditionally 27:8

trafficked 11:15
  23:24

trafficker 9:16 14:21
  15:19 16:11,16

traffickers 2:11 5:4,
  6 6:25 7:1 10:8 14:17,
  22 17:2,16 23:7,14
  27:23

AUDIO TRANSCRIPTION - JOB NO. 2404633                    JANUARY 30, 2026
A.G., Appellant v Northbrook Industries, Inc.

**trafficking** 4:7,8,13,
14 6:14 10:1 11:6,12,21
13:21 14:10,14 17:18
20:11,12 21:6 22:5,6,11
23:8 24:1,17 26:12,15
27:24 29:4,9

**training** 10:1

**transaction** 23:22,
23

**transformed** 26:8

**transition** 13:3

**transpose** 25:13

**tremendously**
13:22

**trials** 27:3

**tricked** 11:9

**troubles** 23:12

**true** 11:4,5

**turn** 18:25 19:25 24:4

**TVPRA** 3:11 13:23
14:1,5 27:11

**type** 21:9 24:4

**typical** 20:4

------

### U

**ultimately** 14:8 25:9

**unavoidable** 17:3

**understand** 17:11
18:13 20:8,18 23:15
24:12 26:7,20 29:16

**understanding**
23:21 28:4

**Understood** 15:12

**United** 2:8 5:24 11:17
29:13

**unlawful** 12:2,23

**unreasonable** 14:1

**urge** 13:24

------

### V

**venture** 19:9,11,13
22:25 23:9,19,20,21
27:14,21 28:18

**versus** 2:2 8:18 25:21

**vice** 5:25

**victim** 28:12

**victims** 23:24

**violation** 27:15,17
28:4,5,8,10,12,16,17
29:2,4

**visits** 14:15

------

### W

**walk** 7:5 8:5 9:5 10:18
12:13

**walking** 12:16

**Walmart** 12:9

**wanted** 8:3,14 11:23
29:8

**wanting** 17:16

**ways** 2:25 23:17

**wearing** 18:17

**Weeks** 2:4,5,6,16,18,
23 3:7 5:9,12,14 6:15,
19 7:11,13,15 8:20 10:9
12:4,24 13:2 26:23,24
28:6,13,17 29:3

**well-known** 5:24

**well-settled** 13:5

**whatnot** 26:9

**white** 21:16

**who've** 17:15 18:16,
19

**wild** 12:8

**win** 2:22 3:8 4:22

**woman** 6:6

**women** 2:6

**written** 21:1

------

### Y

**years** 5:25

**young** 17:5 18:22
19:23 21:6,16

------

# Audio Transcript

Case Number: 0:24-usc-13294
Date: January 30, 2026

In the matter of:

# C.B. v Naseeb Investments, Inc.

# 24-13294_01302026.mp3

**CERTIFIED COPY**

Reported by:
Terri Nestore



Steno
Agency, Inc.

1100 Glendon Avenue
Suite 1850
Los Angeles, CA 90024
concierge@steno.com
(888) 707-8366

1                    UNITED STATES COURT OF APPEALS

2                         for the Eleventh Circuit

3

4   C.B.,

5          Appellant-Plaintiff,

6   vs.                                Case No. 0:24-usc-13294

7   NASEEB INVESTMENTS, INC.,
    doing business as The
8   Hilltop Inn, also known as
    Econo Lodge, and Econo Lodge,

9          Appellee-Defendant.

10

11

12

13          TRANSCRIPT OF AUDIO-RECORDED ORAL ARGUMENT

14                              Before

15   Chief Judge William H. Pryor, Jr.; Judge Nancy G. Abudu;

16                      Judge Anne C. Conway

17                   Friday, January 30, 2026

18

19

20

21

22   STENO
    concierge@steno.com
23   (888) 707-8366

24

25

1    APPEARANCES:

2    On behalf of Appellant-Plaintiff C.B.:

3         BONDURANT MIXSON & ELMORE LLP
          NAVEEN RAMACHANDRAPPA, ESQ.
4         1201 West Peachtree Street NW, Suite 3900
          Atlanta, Georgia 30309
5         404.881.4151
          ramachandrappa@bmelaw.com

6
          THE STODDARD FIRM
7         MATTHEW STODDARD, ESQ.
          1534 N Decatur Road
8         Atlanta, Georgia 30307
          470.467.2200

9

10   On behalf of Appellee-Defendant Naseeb Investments:

11        WEBB DANIEL FRIEDLANDER
          LAURIE WEBB DANIEL, ESQ.
12        75 14th Street, Suite 2450
          Atlanta, Georgia 30309
13        678.935.0144
          laurie.daniel@webbdaniel.law

14

15

16

17

18

19

20

21

22

23

24

25

1           JUDGE PRYOR:  Good morning.  Thank God it's

2    Friday.  It's -- it's been a long week.

3           We've got five more cases that we need to talk

4    about.  Judge Abudu and I are pleased to welcome our

5    colleague, Judge Anne Conway, from the Middle District of

6    Florida.  It's not the first time that she's assisted us

7    with our oral argument calendar, but we really benefit

8    from her experience and wisdom and very much appreciate

9    her doing that.  Senior judges are an essential part of

10   the federal judiciary.  They shoulder about 20 percent of

11   the workload of the federal judiciary and, you know,

12   they're entitled to just go home and collect the check,

13   but they work for free.  So they're a great bargain for

14   the taxpayers, and the federal judiciary would really be

15   in a lot of trouble if they weren't here to help us.

16           So whenever we can get a senior judge to help us,

17   we really appreciate it.

18           Counsel, we're familiar with your cases.  We've

19   read your briefs, the authorities cited in your briefs, so

20   you don't have a lot of time this morning, but please feel

21   free to get straight to the heart of your argument.  We're

22   probably going to have some questions, but be mindful of

23   our traffic lights.  When the red light shines, it is time

24   to end.  If you're answering a question, though, from us,

25   you'll be on our time and if you have rebuttal, you won't

1  lose it.  But do be respectful of our time.

2        We're going to begin with the CB vs. Naseeb

3  Investments case.  Counsel, are you ready?

4        MR. RAMACHANDRAPPA:  Yes.  May it please the

5  court, Naveen Ramachandrappa, along with my co-counsel,

6  Matt Stoddard.  We are here on behalf of appellant C.B.

7        I plan to discuss the knowledge element first,

8  then the participation element.  I do want to very briefly

9  touch on one important piece of evidence.  This is a

10 statement that Jig Amin, the hotel operator and owner,

11 said to a housekeeper, "We need the money.  The only way

12 you're going to make some money, you gotta get these girls

13 back up here, working."

14       And that sentiment, that we gotta get the girls

15 back up and working to make money, informs both the

16 knowledge and participation element.

17       So let's start with knowledge.

18       Now, in our briefs we've said that knowledge of

19 the specific victim is not required.  We think that's the

20 law, but frankly, the court doesn't need to reach that.

21       JUDGE PRYOR:  Yes.

22       MR. RAMACHANDRAPPA:  We think the evidence in

23 this case allows a jury to find that the hotel operator

24 here should have known that Chappell was trafficking C.B.

25 specifically.

AUDIO TRANSCRIPTION - JOB NO. 2405212                      JANUARY 30, 2026
C.B. vs Naseeb Investments, Inc.                        24-13294_01302026.mp3

1          JUDGE PRYOR:  Yes, Red Roof seemed to say

2    otherwise, but I'm not sure that that was holding.

3          MR. RAMACHANDRAPPA:  I agree, Your Honor, yeah.

4          JUDGE PRYOR:  I think that was probably dicta,

5    but I'm not sure we need to decide it either.

6          MR. RAMACHANDRAPPA:  I also agree.

7          JUDGE PRYOR:  So let's go.

8          JUDGE ABUDU:  Does that mean that you disagree

9    with the District Court's position that it was constrained

10   by Red Roof?

11         MR. RAMACHANDRAPPA:  Yes, I do.  I do think if

12   the court needed to reach the issue that the language in

13   Red Roof that requires knowledge of a specific victim is

14   dicta, and wasn't required to be followed.

15         JUDGE PRYOR:  Yes.  As I take it, your position

16   is the knowledge element, based on the text of the

17   statute, is really knowledge of a violation; that the

18   victim has to be part of the same sex trafficking about

19   which you know, the hotel would have knowledge, but not

20   particularly knowledge about that particular victim, if

21   you read the text.

22         MR. RAMACHANDRAPPA:  That's right.

23         And in fact, I think if we're emphasizing the

24   text, it's an act in violation of the TVPRA.

25         JUDGE PRYOR:  An act, right.

```
 1            MR. RAMACHANDRAPPA:  So in this case, the
 2   evidence --
 3            JUDGE PRYOR:  Let's talk about the evidence.
 4            MR. RAMACHANDRAPPA:  Sure, yeah.
 5            The evidence that would allow the jury to find
 6   that Naseeb should have known that Chappell was
 7   trafficking C.B. starts with the fact that Naseeb knew or
 8   should have known that Chappell was a sex offender on
 9   probation; that he had rented weekly a room for himself
10   for about six weeks, and then he rents a second room
11   nightly, pays for cash, and he tells them --
12            JUDGE PRYOR:  And it's a property that has weekly
13   rentals, right?
14            MR. RAMACHANDRAPPA:  Weekly and nightly.
15            JUDGE PRYOR:  Well, okay, weekly and nightly.
16            My under -- I had thought that the nightly
17   practice was an aberration; is that right?
18            MR. RAMACHANDRAPPA:  It is, for -- particularly
19   for Mr. Chappell, who had been staying weekly.
20            And the aberration, to the extent that it is --
21   it is an aberration.  It's unusual.  For example, one of
22   the housekeepers testified that they even had people
23   paying basically for like 30 minutes, which is a clear
24   indication of prostitution and sex trafficking.
25            So you've got Chappell saying:  I want to rent
```

1  this room, this additional room right next to my room.

2  Housekeepers, don't come in.

3          JUDGE PRYOR:  Adjoining room?

4          MR. RAMACHANDRAPPA:  Exactly.  Well, I think

5  they're right next to each other.  I don't think it's one

6  of those where you can kind of go in between.

7          JUDGE PRYOR:  Okay.

8          MR. RAMACHANDRAPPA:  I think you actually have to

9  go outside.

10          JUDGE PRYOR:  Okay.

11          MR. RAMACHANDRAPPA:  And that -- that matters,

12  because the fact that he is in this very suspicious,

13  unusual circumstance, our expert, Mr. Tallis, says that

14  that should have been a bright red flag to monitor.

15          And so part of that monitoring would have been

16  seeing Mr. Chappell go in and out of the room, four

17  different johns going in through the room.  So that

18  happens over a two-day period.

19          There, you know, the circumstances are, it's a

20  15-year-old girl, a black female, and Chappell, who's a

21  48-year-old man.  Those are very suspicious circumstances,

22  so much so --

23          JUDGE PRYOR:  Well, tell me -- tell me what we're

24  to make of the placement of all the sex offenders in the

25  same area, and the direction to clean the rooms of sex

AUDIO TRANSCRIPTION - JOB NO. 2405212                    JANUARY 30, 2026
C.B. vs Naseeb Investments, Inc.                          24-13294_01302026.mp3

1  offenders and prostitutes only once a week, report

2  prostitution only to Amin and not to the police.

3          MR. RAMACHANDRAPPA:  Yeah.  All -- all of that

4  goes to show knowledge and constructive knowledge.

5          So they know that -- that the sex offenders

6  present this risk.  In fact, many of the housekeepers and

7  front desk people would tell guests if they were staying

8  on the sex offender wing of the property -- and it also

9  goes to show participation.  I'm going to get to the

10 participation element -- and maybe I should just

11 transition there -- in a moment, but that also shows that

12 it's more than just room rentals; that they're actually

13 assisting and facilitating.

14         And the district court judge in this case used

15 the word "enabling"; that they have these practices that

16 make that.

17         So when Chappell asked for these things and then

18 they deliver it, those are all ways that they should have

19 known that C.B. was a specific trafficking victim, and had

20 they used reasonable care, they would have found out.

21         So let me transition now to the participation

22 element.  Again, a very similar thing you're going to hear

23 from me.  We stated our position in the briefs that a

24 hotel renting rooms directly to the traffickers is enough

25 to satisfy the participation element.  I don't think the

AUDIO TRANSCRIPTION - JOB NO. 2405212                    JANUARY 30, 2026
C.B. vs Naseeb Investments, Inc.                         24-13294_01302026.mp3

1  court needs to reach that question in this case.

2       JUDGE PRYOR:  Yes, I'm not so sure about that.

3       MR. RAMACHANDRAPPA:  Okay.  Well, in any event,

4  that issue doesn't need to be reached by this court

5  because as Your Honor has just outlined, some of the

6  evidence that's included in this case is the assigning the

7  sex offenders and the prostitutes to one area of the

8  property, directing housekeepers not to enter.

9       And then in this specific instance, Chappell said

10 don't clean the room, and they complied with that.

11      And the quotation that I led with, it's the

12 important one.  They -- they -- this is not just the hotel

13 operator saying, you know, these things are happening,

14 and, you know, this is -- we're just -- we're doing our

15 best and we can't fix it.

16      The jury's entitled to find that the reason that

17 they were turning a blind eye is because they knew, you

18 gotta get these girls back up here and working.  We need

19 the money.  That is affirmative participation in the

20 venture.

21      And I think the District Court's conclusion that

22 there weren't these steps, that that's exactly what we

23 have here.  We have more than enough evidence for the jury

24 to find that the participation element is satisfied in

25 this case.

AUDIO TRANSCRIPTION - JOB NO. 2405212
C.B. vs Naseeb Investments, Inc.

JANUARY 30, 2026
24-13294_01302026.mp3

1        And that distinguishes this case from the Doe vs.

2   Red Roof case, where the court was dealing only with the

3   franchisors, and not with the hotel operators

4   specifically.

5        JUDGE ABUDU:  Well, that was really my question.

6        I mean, in Red Roof, Judge Jordan, in his

7   concurrence, I think makes an effort to make that

8   distinction, in terms of who is the defendant.

9        But again, the District Court, as far as I

10  interpret the decision, still felt that it was limited, in

11  terms of what constitutes participation.

12       So again, is it your position that there's no

13  need to address the interpretation or is it that there is?

14       MR. RAMACHANDRAPPA:  Well, I think it should be

15  addressed, to give clarity to other district courts that

16  it was just wrong.  I mean, just as a matter of the facts

17  presented in Red Roof, there were no claims in that appeal

18  against the hotel operators directly, which is why I think

19  Judge Jordan said that in his concurrence, to emphasize

20  that it would be different if they did.

21       And I think in the opinion that Judge Brasher

22  wrote on behalf of the court, he also -- or the opinion

23  also cites to district court cases in other circuits where

24  it was directly involving the hotel operators.

25       The Seventh Circuit, for example, has described

1  that if a hotel operator is directly providing the rooms,

2  that that's, quote, direct participation, and that's not

3  even required.

4          So disagree with the District Court's conclusion

5  that it was bound.  We don't think it constitutes

6  precedent, but we also do think it's important to give

7  that direction, that they are not bound by that -- that

8  that wasn't the holding of the case, and that they are

9  free to consider these, based on the facts of the case.

10         So unless there's any other questions, I'll

11 reserve the remainder.

12         JUDGE PRYOR:  So I want to make sure I understand

13 one thing.  You said you didn't think we had to decide

14 whether the hotel would have had knowledge of this

15 particular victim.

16         Is your best evidence for their at least

17 constructive knowledge of this particular victim -- what?

18         The don't clean that room?

19         MR. RAMACHANDRAPPA:  No.  It's the if they had

20 been.  So our expert, Alan Tallis, has said that all these

21 huge red flags, you should have had someone monitoring,

22 and that would include looking at the cameras -- they have

23 surveillance cameras -- so they would see people coming in

24 and out of the rooms, multiple johns.

25         There was a housekeeper that made direct eye

 1  contact, according to our client, with C.B.  And so if she

 2  had not gotten the message that, you know, just let the

 3  girls work, and instead noticed and said, this is a

 4  15-year-old girl -- just turned 15 -- with a 48-year-old

 5  man, that maybe somebody needed to call the police.

 6          And in fact, there was a probation officer that

 7  came that day or the next day at 4:00 o'clock and found an

 8  image of C.B. on the computer of Mr. Chappell.

 9          And if someone had told the probation officer,

10  hey, this person rented another room, the probation

11  officer and the police could have easily checked that.

12          So all the troubling signs that we've talked

13  about are all evidence that a jury could conclude:  Had

14  you been investigating, you would have learned that C.B.

15  was being trafficked, and that would satisfy the

16  requirement in this case.

17          JUDGE PRYOR:  Any questions?

18          JUDGE CONWAY:  No.

19          JUDGE PRYOR:  Okay.

20          MR. RAMACHANDRAPPA:  Thank you.

21          JUDGE PRYOR:  Thank you.  Ms. Daniel.

22          MS. DANIEL:  May it please the court, Laurie Webb

23  Daniel representing defendant Naseeb.

24          To be clear, sex trafficking is a horror,

25  particularly if it involves a minor, but with the TVPRA,

1  Congress did enact some criminal penalties and a remedy,

2  but it's in a very specific statutory scheme.

3          This is not a general tort law.  It requires

4  predicate violations.  Here, the predicate violations are

5  the sex -- Section 1591, sex trafficking of a minor and

6  Section 1589, forced labor.

7          The TVPRA liability, civil liability, is not

8  triggered by prostitution.

9          JUDGE PRYOR:  Right.

10         MS. DANIEL:  It's not what it says.

11         JUDGE ABUDU:  Well, you already had a criminal

12 conviction here for sex trafficking, so why isn't that

13 element just satisfied?  Why are you dedicating some time

14 to that issue?

15         MS. DANIEL:  Well, the conviction was -- was the

16 trafficker.

17         JUDGE ABUDU:  Yes.

18         MS. DANIEL:  Not the -- not the hotel.

19         JUDGE ABUDU:  Right, but in terms of the

20 commission or the person, the plaintiff, being subjected

21 to this kind of criminal behavior and therefore, the

22 statutory violation, has been established.

23         MS. DANIEL:  There's no dispute about that, Your

24 Honor.  What the question is participant liability.

25         JUDGE ABUDU:  Yes.

AUDIO TRANSCRIPTION - JOB NO. 2405212                    JANUARY 30, 2026
C.B. vs Naseeb Investments, Inc.                         24-13294_01302026.mp3

1           MS. DANIEL:  Not perpetrator liability.  And

2    that, you -- you look to what's happened.

3           JUDGE PRYOR:  Ms. Daniel, it seems to me that, I

4    mean, this is pretty broad language, in a sense:  Whoever

5    knowingly benefits financially or by receiving anything of

6    value from participation in a venture which that person

7    knew or should have known, has engaged in an act in

8    violation of the -- of this chapter.

9           So this really turns, does it not, on

10   participation and knowledge?

11          MS. DANIEL:  Factors 2 and factors 4 of Red Roof,

12   the participation requires some joint action.  The key

13   takeaway from Red Roof on that --

14          JUDGE PRYOR:  You agree with me that it really

15   turns on those two issues, participation and knowledge?

16          MS. DANIEL:  And knowledge.  I do.  I'm with you,

17   Your Honor.  That -- that's exactly right.

18          My key takeaway that you should focus on in

19   Red Roof, on that second factor, the participation,

20   knowledge does not equal participation.  Okay?

21          And this is not just Red Roof.  The Seventh

22   Circuit majority opinion in what I call Salesforce -- it's

23   G.G. -- also had a note:  Passive nonfeasance is not

24   enough to trigger liability.  That is --

25          JUDGE ABUDU:  But that's -- but they alleged more

1  than that.  They alleged more than just you were aware,

2  but that rooms were being cleaned on a time basis so that

3  more activities could occur; that there -- I mean, so it

4  seems like it's not just they were aware, but that there

5  were some affirmative steps taken to advance the venture.

6          MS. DANIEL:  Well, let me address some of that.

7          Tallis, the expert that plaintiff has relied on,

8  says sex offenders.  That does not equate to sex

9  trafficking.  It's a different thing.  Housing a sex

10  offender is not prohibited by the TVPRA.

11          JUDGE ABUDU:  But that wasn't -- I think, again,

12  I know that some of the cases and issues have been

13  consolidated.  My recollection for this case is that there

14  was actually testimony from the employees that they didn't

15  have an issue with the registered sex offenders.  It was

16  those who were engaged in trafficking that were posing the

17  problem.

18          MS. DANIEL:  Well, there was -- there's -- there

19  wasn't any specific.  And let me just suggest to you also,

20  I mean, on the participation, a vertical relationship

21  where you're just paying for normal off-the-shelf

22  services, like renting a room --

23          JUDGE CONWAY:  So renting a room next door for

24  the day, when you're weekly, is normal participation in

25  hotel management?

1           MS. DANIEL:  So it's not -- it's not the type of

2    action that is liable -- liability under the TVPRA.

3           JUDGE PRYOR:  I thought Amin testified that that

4    was -- admitted that that was a mistake, that the second

5    room was a mistake.

6           MS. DANIEL:  Well, maybe for best practices it

7    would be, but we've got to look at the statute, and it's

8    particular, and let me speak also to the specific victim

9    requirement.

10          Now, I thought Judge Brasher did a great job

11   tracking the -- the statute, the -- the flow of an

12   underlying act.  But let -- let me say something -- again,

13   I'm going back -- I'm going to tell you about the Seventh

14   Circuit case, because that's their main one -- it also

15   noted that where you have a single -- alleged single

16   victim and you've got to show an act, you've got to show

17   constructive knowledge as to that person.  Okay?

18          JUDGE PRYOR:  Yes.  I mean, I'm reading the

19   statute, though, Ms. Daniel, and first of all, I don't

20   think Judge -- I think there's -- everything that's

21   decided in Red Roof binds us.  Every holding of Red Roof

22   binds us.  I don't quarrel with that -- and frankly, think

23   got it right on every -- on every holding.  Doesn't matter

24   if I think it's right or not, but I do think it's right.

25          But I don't think this was holding, when it said

AUDIO TRANSCRIPTION - JOB NO. 2405212                    JANUARY 30, 2026
C.B. vs Naseeb Investments, Inc.                         24-13294_01302026.mp3

1   knowledge of this particular victim.

2          And here's what the statute says:  The statute

3   says that they knew or should have known, has engaged in

4   an act in violation of this chapter.

5          MS. DANIEL:  Exactly, Your Honor.  And let me --

6          JUDGE PRYOR:  It doesn't say --

7          MS. DANIEL:  No.

8          JUDGE PRYOR:  -- that -- that's general acts.

9          They know there's sex trafficking going on.

10         MS. DANIEL:  There -- there --

11         JUDGE PRYOR:  And their participation in it may

12  have to be specific with respect to this particular

13  victim, but knowledge of this particular victim?

14         I'm not so sure.

15         MS. DANIEL:  No, of the sex trafficking.

16         So the venture, as specified here in this

17  complaint, is renting a room to this guy Chappell.

18         That's the venture.  Okay.

19         So the requirement for constructive knowledge

20  requires at least constructive knowledge that the venture

21  has engaged in a violation -- has engaged in a violation

22  of the chapter, here sex trafficking of a minor or forced

23  labor.  Okay.

24         So the act for this venture of renting a room to

25  Chappell would have to be sex trafficking.

AUDIO TRANSCRIPTION - JOB NO. 2405212
C.B. vs Naseeb Investments, Inc.

JANUARY 30, 2026
24-13294_01302026.mp3

1           And -- and Your Honors, it also uses the phrase

2    "has engaged."  These rooms were rented before C.B. ever

3    came to the property.  Even -- even that -- that -- that

4    second room.  The horrible violations of the statute did

5    not occur until after there had been payment of cash for

6    these rooms.  So it doesn't fit.  It just doesn't fit

7    this -- this box.

8           And also, the probation officer was there that

9    day twice.  Didn't pick up on it.  They're the ones who

10   were supposed to investigate and enforce things.

11          The -- the evidence is that when Mario -- when --

12   when Amin was told Mario was doing this sex trafficking,

13   he was kicked out immediately.  That's not a joint venture

14   to profit from -- from sex trafficking.

15          The girl.  When the hotel found out that girl,

16   that runaway girl, you know, was there with this -- this

17   guy, you know, high, naked --

18          JUDGE ABUDU:  No, not the hotel.  One of the

19   employees, who had already told the owner that this was

20   happening, and who didn't do anything.  It was the

21   employee, the same employees who testified against your

22   client to say that there was actual knowledge, not just

23   constructive.  I think that's an important distinction.

24          MS. DANIEL:  Well, Your Honor, the manager of the

25   hotel did not have knowledge.  There was no evidence to

1  show he had knowledge.  So we're talking about

2  constructive knowledge.

3          This quote that my colleague on the other side of

4  the v gave, it's referring to prostitution, but

5  prostitution is not the same thing as minor sex

6  trafficking.

7          And so what it comes down to, their -- really

8  their best evidence of -- to tie this -- the hotel in with

9  C.B. -- and keep in mind, she was there 24 hours.  She

10  came at night.  There's nothing to show that they saw her,

11  that any employee of the hotel saw her.  We've got a

12  couple of seconds of eye contact when C.B. was holding the

13  door open for a john to clean -- to -- to check out the

14  room.  Apparently both fully clothed, because there's

15  absolutely no allegation that there was anything like that

16  other girl.

17          JUDGE ABUDU:  Well --

18          MS. DANIEL:  Two seconds.

19          JUDGE ABUDU:  -- then it may be worth going

20  through the facts, but again, I interpreted the District

21  Court's decision as concluding that there were sufficient

22  facts generally to show that there was some kind of bad

23  act, but that the Red Roof decision constrained the court,

24  in terms of as a matter of law.

25          And now it appears that if indeed that

1  constraining belief was based on dicta, then it seems that

2  summary judgment was improper.

3          MS. DANIEL:  Well, let me -- let me suggest this:

4  I -- I -- I want to suggest what -- if you adopt the

5  plaintiff's position, how it could lead to some bizarre

6  results.

7          Now, let's just say there was a pizza shop at the

8  corner, run -- mom and pop pizza shop, and they're asked

9  to deliver pizza and they do it regularly.  Mom makes the

10 pizza, pop delivers it.  Door is opened, inside clear --

11 not what we have here -- but I'm just saying, you know,

12 maybe a bunch of johns clearly -- clearly, you know, a

13 child, they deliver the pizza, get a tip, go back, can

14 they be liable under the TVPRA?

15         JUDGE ABUDU:  So, I'm sorry.  You're saying

16 you're equating feeding perpetrators with housing,

17 cleaning, selling products so that you can engage in the

18 behavior?  Is that the analogy?

19         MS. DANIEL:  The analogy is renting a room, and

20 renting a room to a sex offender does not give rise to

21 inference of their sex trafficking.

22         Generally -- there's no such thing as a

23 generalized violation of the TVPRA.  It is a very specific

24 statute.  And the predicate acts also are very specific.

25         Now, I want to mention -- because my time's

AUDIO TRANSCRIPTION - JOB NO. 2405212                    JANUARY 30, 2026
C.B. vs Naseeb Investments, Inc.                         24-13294_01302026.mp3

1  getting short here -- going back to victim-specific

2  knowledge and why Red Roof's factor 4 on that

3  victim-specific is correct, and it's matter of statutory

4  interpretation.

5          Parenthetical -- the participant liability is in

6  a parenthetical.  A parenthetical on -- with regard to

7  statutory construction.  There's a helpful recent case out

8  of this court, Glover v -- I think it's Ocwen Loan,

9  127 F. 4th 1278 at 1289, Judge Wilson addresses

10 parentheticals.  They are -- they tend to be illustrative

11 of the word preceding.  So the statutory interpretation,

12 the amicus brief.

13         JUDGE PRYOR:  They may tend to be, but this -- I

14 mean, these -- these parentheses seem to me to be

15 performing more in the nature of what commas would, and

16 separating another kind of defendant, other than the

17 actual perpetrator.

18         MS. DANIEL:  Right.

19         JUDGE PRYOR:  That is, one who knowingly benefits

20 financially or by receiving anything of value from

21 participation in a venture.  Everything that I read

22 earlier.  I mean, that's not illustrative.

23         MS. DANIEL:  Well, let me refer Your Honor to

24 other sections.  The amicus brief is helpful to this, but

25 1595(c)(2) has a statute of limitations that's tied to the

1  age of the victim.  There's also 1595(b), which will

2  stay -- requires staying of the civil action if there's a

3  pending criminal case.

4          So these are -- the statute, read as a whole,

5  shows a lot of victim-specific information.

6          But again, I think that Judge Totenberg was

7  concerned about would there ever be a way you could have

8  constructive knowledge liability.  Okay?

9          But there are -- there are scenarios -- and I

10 hate -- you know, it -- it's good that there are remedies

11 for these scenarios, but the scenarios are pretty

12 horrible.

13         The Ricchio case is one example where, you know,

14 the high-fives, there'd been a actual -- more of a

15 horizontal venture, an actual venture that was

16 established, that had been established.

17         JUDGE ABUDU:  Well, I mean, some could say -- I

18 think the word an "aberration" was used.  That might be.

19 I mean, I think Congress's findings included that this

20 behavior happens surreptitiously.  It happens in secret.

21         And so to rely on the more obvious or conspicuous

22 behavior, I'm not sure that that's the way to go, in terms

23 of making sure that this statute has any real effect.

24         MS. DANIEL:  Well, Your Honor, there could be

25 other -- what I'm saying is there could be victims who are

1   not identified, where you would have the kind of

2   circumstances that you would have here.

3           Your Honor, may I finish?

4           JUDGE PRYOR:  Yes, of course.

5           MS. DANIEL:  Yeah.  Okay, yeah.

6           It's just here, it just falls short.  I mean, the

7   24 hours -- I -- just to use an example; I mean, I

8   sometimes have "Do Not Disturb" for more than a day when

9   I'm working, preparing for an oral argument, for example.

10          There are -- every one of these other facts that

11  they're pointing to, it just falls short in this case.

12          This is --

13          JUDGE CONWAY:  Well, shouldn't a jury decide

14  that?

15          MS. DANIEL:  No, Your Honor, I -- I think the

16  evidence just doesn't rise to the level of a jury

17  question, you know, for the reasons I said; it's a

18  vertical relationship.  The -- the -- what they're

19  pointing to is -- does not show a -- a violation of the

20  act, with respect to this venture.  To this venture.

21          It has to be this venture.

22          JUDGE PRYOR:  But this language, you would -- you

23  would agree, would you not, Ms. Daniel, that this

24  language, the statutory language that's in the

25  parenthetical about someone who is financially benefiting

1  from participation in the venture, clearly contemplates

2  some who would be in a vertical relationship?

3          MS. DANIEL:  Yes.  Salesforce stressed -- and

4  that is their best case -- stressed that --

5          JUDGE PRYOR:  I mean, I just wanted a "yes" or

6  "no."  Yes, you concede that, right?

7          MS. DANIEL:  Yes, but it has to be a

8  customized -- something that's not renting a -- a hotel

9  room.  That's just not enough.

10         JUDGE PRYOR:  Yes, I don't know that renting a

11 hotel room is enough.  The real question is whether

12 there's a lot more here.  I don't think we have any more

13 questions.  You've been on our time.  So your --

14         MS. DANIEL:  Thank you, Your Honor.

15         JUDGE PRYOR:  Thank you.  Your friend on the

16 other side saved three minutes for rebuttal.

17         MR. RAMACHANDRAPPA:  Just three brief points.

18         On the statutory question, I think if you look at

19 the 2008 amendment, you'll see that everything that's in

20 the, quote, parentheses, that's the entire amendment.

21         So it would render the 2008 amendment useless if

22 we just said parentheses don't count there.

23         Number two --

24         JUDGE PRYOR:  I don't know how I could read that

25 as illustrative.

```
 1          MR. RAMACHANDRAPPA:  Yeah, I -- I just wanted to
 2  be clear about the legislative history, in terms of the
 3  statute changes.
 4          Number two, my good friend Laurie Webb Daniel is
 5  not a registered sex offender.  When she puts a "Do Not
 6  Disturb" sign on her door, that's much different than a
 7  registered sex offender -- that they knew or should have
 8  known was a sex offender -- renting a second room, getting
 9  customized service in, "I don't want anybody coming in my
10  room."
11          JUDGE PRYOR:  At a nightly rate, "Don't clean the
12  room."
13          MR. RAMACHANDRAPPA:  Exactly right.
14          So third point is there was an attempted
15  distinction between prostitution and trafficking under the
16  statute.  This clearly involves a minor, and so any
17  commercial sex with a minor is enough.
18          There's more than enough evidence a jury could
19  conclude that Naseeb should have known she was a minor.
20          One of the johns actually didn't have sex with
21  her because he wanted to see some ID, and you know who
22  doesn't have an ID?  Someone who just turned 15 and didn't
23  even have a learner's permit.
24          And there was a later incident at a different
25  hotel where another john, again wouldn't have sex with her
```

AUDIO TRANSCRIPTION - JOB NO. 2405212                          JANUARY 30, 2026
C.B. vs Naseeb Investments, Inc.                          24-13294_01302026.mp3

1  because she was underage.  So, I mean, it's just open your

2  eyes and you see it.  Thank you, Your Honor.

3         JUDGE PRYOR:  Thank you.  We understand your

4  case.  We're going to move to our second case.

5         (End of recording.)

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

```
 1                  C E R T I F I C A T E

 2

 3

 4         I, TERRI NESTORE, Certified Shorthand Reporter/

 5   Transcriptionist, do hereby certify that I was authorized

 6   to transcribe the foregoing recorded proceeding, and that

 7   the transcript is a true and accurate transcription, to

 8   the best of my ability, taken while listening to the

 9   provided recording.

10         I further certify that I am not of counsel or

11   attorney for either or any of the parties to said

12   proceedings, nor in any way interested in the events of

13   this cause, and that I am not related to any of the

14   parties thereto.

15

16

17   Dated this 6th day of February, 2026.

18

19                              Terri Nestore

20                        _____
                          TERRI NESTORE, CSR 5614, RPR, CRR

21

22

23

24

25
```

AUDIO TRANSCRIPTION - JOB NO. 2405212
C.B. vs Naseeb Investments, Inc.

JANUARY 30, 2026
24-13294_01302026.mp3

## 1

**127** 21:9
**1278** 21:9
**1289** 21:9
**15** 12:4 25:22
**15-year-old** 7:20
12:4
**1589** 13:6
**1591** 13:5
**1595(b)** 22:1
**1595(c)(2)** 21:25

## 2

**2** 14:11
**20** 3:10
**2008** 24:19,21
**24** 19:9 23:7

## 3

**30** 6:23

## 4

**4** 14:11 21:2
**48-year-old** 7:21
12:4
**4:00** 12:7
**4th** 21:9

## A

**aberration** 6:17,20,
21 22:18
**absolutely** 19:15
**Abudu** 3:4 5:8 10:5
13:11,17,19,25 14:25
15:11 18:18 19:17,19
20:15 22:17

**act** 5:24,25 14:7 16:12,
16 17:4,24 19:23 23:20
**action** 14:12 16:2
22:2
**activities** 15:3
**acts** 17:8 20:24
**actual** 18:22 21:17
22:14,15
**additional** 7:1
**address** 10:13 15:6
**addressed** 10:15
**addresses** 21:9
**Adjoining** 7:3
**admitted** 16:4
**adopt** 20:4
**advance** 15:5
**affirmative** 9:19
15:5
**age** 22:1
**agree** 5:3,6 14:14
23:23
**Alan** 11:20
**allegation** 19:15
**alleged** 14:25 15:1
16:15
**amendment** 24:19,
20,21
**amicus** 21:12,24
**Amin** 4:10 8:2 16:3
18:12
**analogy** 20:18,19
**Anne** 3:5
**answering** 3:24
**Apparently** 19:14
**appeal** 10:17
**appears** 19:25
**appellant** 4:6
**area** 7:25 9:7
**argument** 3:7,21
23:9

**assigning** 9:6
**assisted** 3:6
**assisting** 8:13
**attempted** 25:14
**authorities** 3:19
**aware** 15:1,4

## B

**back** 4:13,15 9:18
16:13 20:13 21:1
**bad** 19:22
**bargain** 3:13
**based** 5:16 11:9 20:1
**basically** 6:23
**basis** 15:2
**begin** 4:2
**behalf** 4:6 10:22
**behavior** 13:21
20:18 22:20,22
**belief** 20:1
**benefit** 3:7
**benefiting** 23:25
**benefits** 14:5 21:19
**binds** 16:21,22
**bizarre** 20:5
**black** 7:20
**blind** 9:17
**bound** 11:5,7
**box** 18:7
**Brasher** 10:21 16:10
**briefly** 4:8
**briefs** 3:19 4:18 8:23
**bright** 7:14
**broad** 14:4
**bunch** 20:12

## C

**C.B.** 4:6,24 6:7 8:19
12:1,8,14 18:2 19:9,12
**calendar** 3:7
**call** 12:5 14:22
**cameras** 11:22,23
**care** 8:20
**case** 4:3,23 6:1 8:14
9:1,6,25 10:1,2 11:8,9
12:16 15:13 16:14 21:7
22:3,13 23:11 24:4 26:4
**cases** 3:3,18 10:23
15:12
**cash** 6:11 18:5
**CB** 4:2
**Chappell** 4:24 6:6,8,
19,25 7:16,20 8:17 9:9
12:8 17:17,25
**chapter** 14:8 17:4,22
**check** 3:12 19:13
**checked** 12:11
**child** 20:13
**Circuit** 10:25 14:22
16:14
**circuits** 10:23
**circumstance** 7:13
**circumstances**
7:19,21 23:2
**cited** 3:19
**cites** 10:23
**civil** 13:7 22:2
**claims** 10:17
**clarity** 10:15
**clean** 7:25 9:10 11:18
19:13 25:11
**cleaned** 15:2
**cleaning** 20:17
**clear** 6:23 12:24 20:10
25:2

AUDIO TRANSCRIPTION - JOB NO. 2405212                                    JANUARY 30, 2026
C.B. vs Naseeb Investments, Inc.                                        24-13294_01302026.mp3

**client** 12:1 18:22

**clothed** 19:14

**co-counsel** 4:5

**colleague** 3:5 19:3

**collect** 3:12

**commas** 21:15

**commercial** 25:17

**commission** 13:20

**complaint** 17:17

**complied** 9:10

**computer** 12:8

**concede** 24:6

**concerned** 22:7

**conclude** 12:13 25:19

**concluding** 19:21

**conclusion** 9:21 11:4

**concurrence** 10:7, 19

**Congress** 13:1

**Congress's** 22:19

**consolidated** 15:13

**conspicuous** 22:21

**constitutes** 10:11 11:5

**constrained** 5:9 19:23

**constraining** 20:1

**construction** 21:7

**constructive** 8:4 11:17 16:17 17:19,20 18:23 19:2 22:8

**contact** 12:1 19:12

**contemplates** 24:1

**conviction** 13:12,15

**Conway** 3:5 12:18 15:23 23:13

**corner** 20:8

**correct** 21:3

**Counsel** 3:18 4:3

**count** 24:22

**couple** 19:12

**court** 4:5,20 5:12 8:14 9:1,4 10:2,9,22,23 12:22 19:23 21:8

**Court's** 5:9 9:21 11:4 19:21

**courts** 10:15

**criminal** 13:1,11,21 22:3

**customized** 24:8 25:9

### D

**Daniel** 12:21,22,23 13:10,15,18,23 14:1,3, 11,16 15:6,18 16:1,6,19 17:5,7,10,15 18:24 19:18 20:3,19 21:18,23 22:24 23:5,15,23 24:3, 7,14 25:4

**day** 12:7 15:24 18:9 23:8

**dealing** 10:2

**decide** 5:5 11:13 23:13

**decided** 16:21

**decision** 10:10 19:21,23

**dedicating** 13:13

**defendant** 10:8 12:23 21:16

**deliver** 8:18 20:9,13

**delivers** 20:10

**desk** 8:7

**dicta** 5:4,14 20:1

**direct** 11:2,25

**directing** 9:8

**direction** 7:25 11:7

**directly** 8:24 10:18, 24 11:1

**disagree** 5:8 11:4

**discuss** 4:7

**dispute** 13:23

**distinction** 10:8 18:23 25:15

**distinguishes** 10:1

**district** 3:5 5:9 8:14 9:21 10:9,15,23 11:4 19:20

**Disturb** 23:8 25:6

**Doe** 10:1

**door** 15:23 19:13 20:10 25:6

### E

**earlier** 21:22

**easily** 12:11

**effect** 22:23

**effort** 10:7

**element** 4:7,8,16 5:16 8:10,22,25 9:24 13:13

**emphasize** 10:19

**emphasizing** 5:23

**employee** 18:21 19:11

**employees** 15:14 18:19,21

**enabling** 8:15

**enact** 13:1

**end** 3:24 26:5

**enforce** 18:10

**engage** 20:17

**engaged** 14:7 15:16 17:3,21 18:2

**enter** 9:8

**entire** 24:20

**entitled** 3:12 9:16

**equal** 14:20

**equate** 15:8

**equating** 20:16

**essential** 3:9

**established** 13:22 22:16

**event** 9:3

**evidence** 4:9,22 6:2, 3,5 9:6,23 11:16 12:13 18:11,25 19:8 23:16 25:18

**experience** 3:8

**expert** 7:13 11:20 15:7

**extent** 6:20

**eye** 9:17 11:25 19:12

**eyes** 26:2

### F

**facilitating** 8:13

**fact** 5:23 6:7 7:12 8:6 12:6

**factor** 14:19 21:2

**factors** 14:11

**facts** 10:16 11:9 19:20,22 23:10

**falls** 23:6,11

**familiar** 3:18

**federal** 3:10,11,14

**feeding** 20:16

**feel** 3:20

**felt** 10:10

**female** 7:20

**financially** 14:5 21:20 23:25

**find** 4:23 6:5 9:16,24

**findings** 22:19

**finish** 23:3

AUDIO TRANSCRIPTION - JOB NO. 2405212
C.B. vs Naseeb Investments, Inc.

JANUARY 30, 2026
24-13294_01302026.mp3

fit 18:6
fix 9:15
flag 7:14
flags 11:21
Florida 3:6
flow 16:11
focus 14:18
forced 13:6 17:22
found 8:20 12:7 18:15
franchisors 10:3
frankly 4:20 16:22
free 3:13,21 11:9
Friday 3:2
friend 24:15 25:4
front 8:7
fully 19:14

**G**

G.G. 14:23
gave 19:4
general 13:3 17:8
generalized 20:23
generally 19:22 20:22
girl 7:20 12:4 18:15,16 19:16
girls 4:12,14 9:18 12:3
give 10:15 11:6 20:20
Glover 21:8
God 3:1
good 3:1 22:10 25:4
gotta 4:12,14 9:18
great 3:13 16:10
guests 8:7
guy 17:17 18:17

**H**

happened 14:2
happening 9:13 18:20
hate 22:10
hear 8:22
heart 3:21
helpful 21:7,24
hey 12:10
high 18:17
high-fives 22:14
history 25:2
holding 5:2 11:8 16:21,23,25 19:12
home 3:12
Honor 5:3 9:5 13:24 14:17 17:5 18:24 21:23 22:24 23:3,15 24:14 26:2
Honors 18:1
horizontal 22:15
horrible 18:4 22:12
horror 12:24
hotel 4:10,23 5:19 8:24 9:12 10:3,18,24 11:1,14 13:18 15:25 18:15,18,25 19:8,11 24:8,11 25:25
hours 19:9 23:7
housekeeper 4:11 11:25
housekeepers 6:22 7:2 8:6 9:8
housing 15:9 20:16
huge 11:21

**I**

ID 25:21,22

identified 23:1
illustrative 21:10,22 24:25
image 12:8
immediately 18:13
important 4:9 9:12 11:6 18:23
improper 20:2
incident 25:24
include 11:22
included 9:6 22:19
indication 6:24
inference 20:21
information 22:5
informs 4:15
inside 20:10
instance 9:9
interpret 10:10
interpretation 10:13 21:4,11
interpreted 19:20
investigate 18:10
investigating 12:14
Investments 4:3
involves 12:25 25:16
involving 10:24
issue 5:12 9:4 13:14 15:15
issues 14:15 15:12

**J**

Jig 4:10
job 16:10
john 19:13 25:25
johns 7:17 11:24 20:12 25:20
joint 14:12 18:13
Jordan 10:6,19

judge 3:1,4,5,16 4:21 5:1,4,7,8,15,25 6:3,12, 15 7:3,7,10,23 8:14 9:2 10:5,6,19,21 11:12 12:17,18,19,21 13:9,11, 17,19,25 14:3,14,25 15:11,23 16:3,10,18,20 17:6,8,11 18:18 19:17, 19 20:15 21:9,13,19 22:6,17 23:4,13,22 24:5,10,15,24 25:11 26:3
judges 3:9
judgment 20:2
judiciary 3:10,11,14
jury 4:23 6:5 9:23 12:13 23:13,16 25:18
jury's 9:16

**K**

key 14:12,18
kicked 18:13
kind 7:6 13:21 19:22 21:16 23:1
knew 6:7 9:17 14:7 17:3 25:7
knowingly 14:5 21:19
knowledge 4:7,16, 17,18 5:13,16,17,19,20 8:4 11:14,17 14:10,15, 16,20 16:17 17:1,13,19, 20 18:22,25 19:1,2 21:2 22:8

**L**

labor 13:6 17:23
language 5:12 14:4 23:22,24
Laurie 12:22 25:4
law 4:20 13:3 19:24
lead 20:5
learned 12:14

AUDIO TRANSCRIPTION - JOB NO. 2405212
C.B. vs Naseeb Investments, Inc.

JANUARY 30, 2026
24-13294_01302026.mp3

**learner's** 25:23
**led** 9:11
**legislative** 25:2
**level** 23:16
**liability** 13:7,24 14:1, 24 16:2 21:5 22:8
**liable** 16:2 20:14
**light** 3:23
**lights** 3:23
**limitations** 21:25
**limited** 10:10
**Loan** 21:8
**long** 3:2
**lose** 4:1
**lot** 3:15,20 22:5 24:12

**M**

**made** 11:25
**main** 16:14
**majority** 14:22
**make** 4:12,15 7:24 8:16 10:7 11:12
**makes** 10:7 20:9
**making** 22:23
**man** 7:21 12:5
**management** 15:25
**manager** 18:24
**Mario** 18:11,12
**Matt** 4:6
**matter** 10:16 16:23 19:24 21:3
**matters** 7:11
**mention** 20:25
**message** 12:2
**Middle** 3:5
**mind** 19:9
**mindful** 3:22

**minor** 12:25 13:5 17:22 19:5 25:16,17,19
**minutes** 6:23 24:16
**mistake** 16:4,5
**mom** 20:8,9
**moment** 8:11
**money** 4:11,12,15 9:19
**monitor** 7:14
**monitoring** 7:15 11:21
**morning** 3:1,20
**move** 26:4
**multiple** 11:24

**N**

**naked** 18:17
**Naseeb** 4:2 6:6,7 12:23 25:19
**nature** 21:15
**Naveen** 4:5
**needed** 5:12 12:5
**night** 19:10
**nightly** 6:11,14,15,16 25:11
**nonfeasance** 14:23
**normal** 15:21,24
**note** 14:23
**noted** 16:15
**noticed** 12:3
**Number** 24:23 25:4

**O**

**obvious** 22:21
**occur** 15:3 18:5
**Ocwen** 21:8
**off-the-shelf** 15:21

**offender** 6:8 8:8 15:10 20:20 25:5,7,8
**offenders** 7:24 8:1,5 9:7 15:8,15
**officer** 12:6,9,11 18:8
**open** 19:13 26:1
**opened** 20:10
**operator** 4:10,23 9:13 11:1
**operators** 10:3,18, 24
**opinion** 10:21,22 14:22
**oral** 3:7 23:9
**outlined** 9:5
**owner** 4:10 18:19

**P**

**parentheses** 21:14 24:20,22
**parenthetical** 21:5, 6 23:25
**parentheticals** 21:10
**part** 3:9 5:18 7:15
**participant** 13:24 21:5
**participation** 4:8, 16 8:9,10,21,25 9:19,24 10:11 11:2 14:6,10,12, 15,19,20 15:20,24 17:11 21:21 24:1
**Passive** 14:23
**paying** 6:23 15:21
**payment** 18:5
**pays** 6:11
**penalties** 13:1
**pending** 22:3
**people** 6:22 8:7 11:23
**percent** 3:10

**performing** 21:15
**period** 7:18
**permit** 25:23
**perpetrator** 14:1 21:17
**perpetrators** 20:16
**person** 12:10 13:20 14:6 16:17
**phrase** 18:1
**pick** 18:9
**piece** 4:9
**pizza** 20:7,8,9,10,13
**placement** 7:24
**plaintiff** 13:20 15:7
**plaintiff's** 20:5
**plan** 4:7
**pleased** 3:4
**point** 25:14
**pointing** 23:11,19
**points** 24:17
**police** 8:2 12:5,11
**pop** 20:8,10
**posing** 15:16
**position** 5:9,15 8:23 10:12 20:5
**practice** 6:17
**practices** 8:15 16:6
**precedent** 11:6
**preceding** 21:11
**predicate** 13:4 20:24
**preparing** 23:9
**present** 8:6
**presented** 10:17
**pretty** 14:4 22:11
**probation** 6:9 12:6, 9,10 18:8
**problem** 15:17
**products** 20:17

AUDIO TRANSCRIPTION - JOB NO. 2405212
C.B. vs Naseeb Investments, Inc.

JANUARY 30, 2026
24-13294_01302026.mp3

**profit** 18:14

**prohibited** 15:10

**property** 6:12 8:8 9:8
18:3

**prostitutes** 8:1 9:7

**prostitution** 6:24
8:2 13:8 19:4,5 25:15

**providing** 11:1

**PRYOR** 3:1 4:21 5:1,
4,7,15,25 6:3,12,15 7:3,
7,10,23 9:2 11:12
12:17,19,21 13:9 14:3,
14 16:3,18 17:6,8,11
21:13,19 23:4,22 24:5,
10,15,24 25:11 26:3

**puts** 25:5

_____

**Q**

**quarrel** 16:22

**question** 3:24 9:1
10:5 13:24 23:17 24:11,
18

**questions** 3:22
11:10 12:17 24:13

**quotation** 9:11

**quote** 11:2 19:3 24:20

_____

**R**

**Ramachandrappa**
4:4,5,22 5:3,6,11,22
6:1,4,14,18 7:4,8,11 8:3
9:3 10:14 11:19 12:20
24:17 25:1,13

**rate** 25:11

**reach** 4:20 5:12 9:1

**reached** 9:4

**read** 3:19 5:21 21:21
22:4 24:24

**reading** 16:18

**ready** 4:3

**real** 22:23 24:11

**reason** 9:16

**reasonable** 8:20

**reasons** 23:17

**rebuttal** 3:25 24:16

**receiving** 14:5 21:20

**recent** 21:7

**recollection** 15:13

**recording** 26:5

**red** 3:23 5:1,10,13 7:14
10:2,6,17 11:21 14:11,
13,19,21 16:21 19:23
21:2

**refer** 21:23

**referring** 19:4

**regard** 21:6

**registered** 15:15
25:5,7

**regularly** 20:9

**relationship** 15:20
23:18 24:2

**relied** 15:7

**rely** 22:21

**remainder** 11:11

**remedies** 22:10

**remedy** 13:1

**render** 24:21

**rent** 6:25

**rentals** 6:13 8:12

**rented** 6:9 12:10 18:2

**renting** 8:24 15:22,23
17:17,24 20:19,20 24:8,
10 25:8

**rents** 6:10

**report** 8:1

**representing** 12:23

**required** 4:19 5:14
11:3

**requirement** 12:16
16:9 17:19

**requires** 5:13 13:3
14:12 17:20 22:2

**reserve** 11:11

**respect** 17:12 23:20

**respectful** 4:1

**results** 20:6

**Ricchio** 22:13

**rise** 20:20 23:16

**risk** 8:6

**Roof** 5:1,10,13 10:2,6,
17 14:11,13,19,21
16:21 19:23

**Roof's** 21:2

**room** 6:9,10 7:1,3,16,
17 8:12 9:10 11:18
12:10 15:22,23 16:5
17:17,24 18:4 19:14
20:19,20 24:9,11 25:8,
10,12

**rooms** 7:25 8:24 11:1,
24 15:2 18:2,6

**run** 20:8

**runaway** 18:16

_____

**S**

**Salesforce** 14:22
24:3

**satisfied** 9:24 13:13

**satisfy** 8:25 12:15

**saved** 24:16

**scenarios** 22:9,11

**scheme** 13:2

**seconds** 19:12,18

**secret** 22:20

**Section** 13:5,6

**sections** 21:24

**selling** 20:17

**senior** 3:9,16

**sense** 14:4

**sentiment** 4:14

**separating** 21:16

**service** 25:9

**services** 15:22

**Seventh** 10:25 14:21
16:13

**sex** 5:18 6:8,24 7:24,
25 8:5,8 9:7 12:24 13:5,
12 15:8,9,15 17:9,15,
22,25 18:12,14 19:5
20:20,21 25:5,7,8,17,
20,25

**shines** 3:23

**shop** 20:7,8

**short** 21:1 23:6,11

**shoulder** 3:10

**show** 8:4,9 16:16
19:1,10,22 23:19

**shows** 8:11 22:5

**side** 19:3 24:16

**sign** 25:6

**signs** 12:12

**similar** 8:22

**single** 16:15

**speak** 16:8

**specific** 4:19 5:13
8:19 9:9 13:2 15:19
16:8 17:12 20:23,24

**specifically** 4:25
10:4

**start** 4:17

**starts** 6:7

**stated** 8:23

**statement** 4:10

**statute** 5:17 16:7,11,
19 17:2 18:4 20:24
21:25 22:4,23 25:3,16

**statutory** 13:2,22
21:3,7,11 23:24 24:18

**stay** 22:2

**staying** 6:19 8:7 22:2

AUDIO TRANSCRIPTION - JOB NO. 2405212
C.B. vs Naseeb Investments, Inc.

JANUARY 30, 2026
24-13294_01302026.mp3

**steps** 9:22 15:5

**Stoddard** 4:6

**straight** 3:21

**stressed** 24:3,4

**subjected** 13:20

**sufficient** 19:21

**suggest** 15:19 20:3,4

**summary** 20:2

**supposed** 18:10

**surreptitiously** 22:20

**surveillance** 11:23

**suspicious** 7:12,21

---

**T**

**takeaway** 14:13,18

**talk** 3:3 6:3

**talked** 12:12

**talking** 19:1

**Tallis** 7:13 11:20 15:7

**taxpayers** 3:14

**tells** 6:11

**tend** 21:10,13

**terms** 10:8,11 13:19 19:24 22:22 25:2

**testified** 6:22 16:3 18:21

**testimony** 15:14

**text** 5:16,21,24

**there'd** 22:14

**thing** 8:22 11:13 15:9 19:5 20:22

**things** 8:17 9:13 18:10

**thought** 6:16 16:3,10

**tie** 19:8

**tied** 21:25

**time** 3:6,20,23,25 4:1 13:13 15:2 24:13

**time's** 20:25

**tip** 20:13

**told** 12:9 18:12,19

**tort** 13:3

**Totenberg** 22:6

**touch** 4:9

**tracking** 16:11

**traffic** 3:23

**trafficked** 12:15

**trafficker** 13:16

**traffickers** 8:24

**trafficking** 4:24 5:18 6:7,24 8:19 12:24 13:5, 12 15:9,16 17:9,15,22, 25 18:12,14 19:6 20:21 25:15

**transition** 8:11,21

**trigger** 14:24

**triggered** 13:8

**trouble** 3:15

**troubling** 12:12

**turned** 12:4 25:22

**turning** 9:17

**turns** 14:9,15

**TVPRA** 5:24 12:25 13:7 15:10 16:2 20:14, 23

**two-day** 7:18

**type** 16:1

---

**U**

**underage** 26:1

**underlying** 16:12

**understand** 11:12 26:3

**unusual** 6:21 7:13

**useless** 24:21

---

**V**

**venture** 9:20 14:6 15:5 17:16,18,20,24 18:13 21:21 22:15 23:20,21 24:1

**vertical** 15:20 23:18 24:2

**victim** 4:19 5:13,18, 20 8:19 11:15,17 16:8, 16 17:1,13 22:1

**victim-specific** 21:1,3 22:5

**victims** 22:25

**violation** 5:17,24 13:22 14:8 17:4,21 20:23 23:19

**violations** 13:4 18:4

---

**W**

**wanted** 24:5 25:1,21

**ways** 8:18

**Webb** 12:22 25:4

**week** 3:2 8:1

**weekly** 6:9,12,14,15, 19 15:24

**weeks** 6:10

**Wilson** 21:9

**wing** 8:8

**wisdom** 3:8

**word** 8:15 21:11 22:18

**work** 3:13 12:3

**working** 4:13,15 9:18 23:9

**workload** 3:11

**worth** 19:19

**wrong** 10:16

**wrote** 10:22