IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ROME DIVISION

| | |
|---|---|
| A.H., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | CIVIL ACTION FILE |
| ) | NO. 4:24-CV-00224-WMR |
| CARSON LOOP ESM, LLC d/b/a ) | |
| BUDGETEL, and SRINIVAS ) | |
| BOLLEPALLI, ) | |
| ) | |
| Defendants. ) | |

**PLAINTIFF'S STATEMENT OF MATERIAL FACTS IN OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

The following statements create material questions of fact regarding Defendants' Motion for Summary Judgment, and the Motion should be denied:

1.

Defendants employed Shreesh Tiwari to manage its Budgetel, acting at Defendants' direction to facilitate Defendants' profiting from the rental of rooms at the Budgetel. (Ex. A, Bollepalli Dep., 24:6-14; 39:8-10; 81:2-13; 146:10-23; Ex. B, Defendants' Responses to Requests for Admission, ¶¶ 23, 24).

2.

Tiwari pled guilty to federal labor trafficking that included, among other violations, that Tiwari "knowingly recruited, harbored, transported, provided, or

obtained [Plaintiff] for the purpose of obtaining labor or services by using force, fraud, and coercion to compel [Plaintiff] to perform sex acts upon [Tiwari] in exchange for a thing of value, to wit, her room at the Budgetel." (Ex. C, Guilty Plea at 8). In other words, the labor trafficking included sex trafficking.

3.

The Department of Homeland Security's investigation revealed that at least five to seven women were trafficked by Tiwari at the Budgetel, including Plaintiff. (Ex. D, Rives Dep., 29:16-30:10; Ex. C at 11; Ex. E, Affidavit).

4.

Defendants Carson Loop ESM, LLC and Srinivas Bollepalli owned, operated, maintained, and controlled the Budgetel. (Ex. A, Bollepalli Dep., 13:1-14; 21:12-14; 136:1).

5.

Defendants admit that they benefitted financially and received financial compensation from the renting of rooms at the subject Budgetel. (Ex. B, Defendants' Responses to Requests for Admission, ¶¶ 23, 24).

6.

In January of 2020, Defendants hired Shreesh Tiwari to be Budgetel's onsite manager after he responded to a Facebook ad. (Ex. A, Bollepalli Dep., 24:6-14;

39:8-10).

7.

They called one reference but did no other background check, and provided Tiwari with no training apart from an eight-page presentation. (Ex. A, Bollepalli Dep., 82:8-24, 83:3-23).

8.

Defendants provided all the supplies for the motel and for Tiwari to do his job. (Ex. A, Bollepalli Dep., 40:15-41:7).

9.

Tiwari managed the motel around the clock and he was not allowed to work anywhere else. (Ex. A, Bollepalli Dep., 79:10-24).

10.

He had no decision-making authority and no authority to set rules or policies and procedures for the motel – rather, he acted at Defendants' direction. (Ex. A, Bollepalli Dep., 81:2-13; 146:10-23).

11.

In addition to his other duties, Tiwari was empowered by Defendants to evict people from the motel. (Ex. A, Bollepalli Dep., 89:9-12).

12.

Everything at the motel was under Bollepalli's control and he was at the motel every other day. (Ex. D, Rives Dep., 21:7-14, Ex. A, Bollepalli Dep., 38:8-18; 39:5-7; 136:1).

13.

Tiwari was Bollepalli's mouthpiece; he communicated Bollepalli's instructions and wishes to the other motel employees, including Plaintiff. (Ex. F, A.H. Dep., 71:13-24; 208:21-24).

14.

Everyone working at the Budgetel was employed by Carson Loop ESM, LLC, including all housekeepers, front desk and maintenance employees, and Tiwari, the manager. (Ex. A, Bollepalli Dep., 54:5-11).

15.

Prior to Tiwari's arrest for sex and labor trafficking in 2021, Bollepalli did not know anything about human trafficking and he provided no training to any of his employees, including Tiwari, on how to identify and prevent trafficking. (Ex. A, Bollepalli Dep., 85:8-86:4).

16.

Defendants and Tiwari hired Plaintiff to work at the motel as a housekeeper

in June of 2020. (Ex. C).

17.

In order to work there, she was required to live at the Budgetel. (Ex. F, A.H. Dep., 87:13-25).

18.

When she was hired, Plaintiff was paid $150/week for her work, and Defendants simultaneously charged her $150/week to rent her room at the Budgetel. (Ex. C).

19.

Bollepalli set all the salaries and room rates, including Plaintiff's. (Ex. A, Bollepalli Dep., 38:24-39:2; 55:15-20).

20.

Plaintiff was forced to work at the Budgetel seven days per week from 9:00 a.m. until at least 5:00 p.m., but she was frequently forced to continue working until 10:00 or 11:00 p.m. (Ex. C).

21.

Her work included housekeeping and construction labor. (Ex. F, A.H. Dep., 39:10-25).

22.

She complained directly to Bollepalli that she wasn't being paid enough, and in response, he and Tiwari raised Plaintiff's salary to $200/week and simultaneously raised her room rent to $200/week. (Ex. F, A.H. Dep., 37:15-38:2).

23.

Several other employees also complained directly to Bollepalli about the working conditions at the motel and Tiwari's treatment of them. (Ex. F, A.H. Dep., 72:6-73:3).

24.

Tiwari and Bollepalli routinely yelled and screamed at Plaintiff, Tiwari physically pushed Plaintiff over, and they threatened to fire and evict her, rendering her homeless, if she did not do the work that they instructed her to do. (Ex. F, A.H. Dep., 24:6-17; 40:23-41:6, 121:6-15).

25.

Defendants' manager also threatened that if Plaintiff left the motel, he would report her drug use to the police and DFCS, she would go to jail and never get her child back. (Ex. F, A.H. Dep., 67:16-68:21; 94:21-95:17).

26.

Defendants' manager discouraged Plaintiff from associating with her friends

and family and told her that they didn't care about her, and that he was all that she had left. (Ex. C).

27.

He forbid her from talking to others, and yelled and threatened to evict her if she socialized with others. (Ex. C).

28.

Plaintiff lived and worked at the motel for approximately 26 weeks in 2021, earning $200/week for a total of $5,200, all of which was then deducted as room rent and kept by Defendants. (Ex. A, Bollepalli Dep., 145:13-146:4; Ex. G, W2).

29.

Bollepalli paid all of his employees by payroll checks that he signed, but because Defendants knowingly kept her in a state of servitude, Bollepalli never wrote a single payroll check to Plaintiff. (Ex. A, Bollepalli Dep., 67:2-15; Ex. F, A.H. Dep., 206:12-25; Ex. H, all payroll checks produced, none written to Plaintiff).

30.

Tiwari occasionally sent Plaintiff money through CashApp. (Ex. F, A.H. Dep., 37:10-38:2).

31.

A few months after her labor trafficking at the motel began, Tiwari began making sexual advances toward Plaintiff. (Ex. F, A.H. Dep., 203:8-204:3).

32.

He used his position as manager to threaten Plaintiff with eviction, rendering her homeless, if she did not perform oral sex on him, coercing Plaintiff to comply for his demands for sex. (Ex. F, A.H. Dep., 23:7-22).

33.

During these multiple forced sexual encounters, Tiwari would slam Plaintiff's head down, strike her, and grab her arm with enough force to leave bruises. (Ex. F, A.H. Dep., 29:24-30:1, 66:25-67:20).

34.

Tiwari also used his position as manager to enter Plaintiff's room without her permission to steal documents, including her ID, car title, insurance documents, and social security card, which he refused to return and kept in the motel safe so that she could not leave, forcing her to continue working and providing him with oral sex. (Ex. F, A.H. Dep., 26:17-24; 90:16-91:20; 95:24-96:7).

35.

Tiwari kept a gun in the office and regularly walked the property with a

baseball bat, threatening people. (Ex. F, A.H. Dep., 69:1-9; 70:24-71:2).

36.

As noted, Defendant Bollepalli was at the motel every other day. (Ex. D, Rives Dep., 21:7-14).

37.

Tiwari kept a gun and all the documents that he stole from Plaintiff's room in the motel safe that Bollepalli had access to. (Ex. A, Bollepalli Dep., 104:21-23, 113:4-25; Ex. F, A.H. Dep., 26:17-24; 90:16-91:20; 95:24-96:7).

38.

Tiwari also used Defendants' computers – that Bollepalli had full access to – to document his trafficking. (Ex. A, Bollepalli Dep., 119:21-120:10).

39.

Defendants' computers contained photographs and videos of victims performing oral sex on Tiwari, screen shots of sexually suggestive texts messages between Tiwari and a victim, photographs of several trafficking victims, and payroll files, among other evidence that was readily available to Defendants. (Ex. I, DHS Report ROI DG15HR21DG0002-053).

40.

DHS's investigation revealed that at least five to seven women were

trafficked by Tiwari at the Budgetel. (Ex. D, Rives Dep., 29:16-30:10; Ex. C at 11; Ex. E, Affidavit).

41.

Beginning in 2016, Bollepalli visited the police station each year and asked for all police reports for the Budgetel. (Ex. A, Bollepalli Dep., 30:8-31:22).

42.

The police gave him each year's reports and he read them. (Ex. A, Bollepalli Dep., 30:8-31:22).

43.

These reports reflected numerous calls for service for a variety of crimes, including but not limited to theft, narcotics, domestic violence, prostitution, and sexual harassment. (Ex. D, Rives Dep., 15:9-21; Ex. X, Families Face Uncertain Future Following Mass Motel Eviction, The Daily Tribune News (Oct. 16, 2019).

44.

DHS conducted numerous narcotics investigations at the Budgetel and it is located in a high crime area. (Ex. D, Rives Dep., 19:17-22, 88:13-18; 137:12-18).

45.

Bollepalli also read the Google reviews of the Budgetel every month. (Ex. A, Bollepalli Dep., 121:17-21).

46.

There, prior to Plaintiff's trafficking, Bollepalli learned, among other things, that the motel was reportedly "not clean, and drug infested", "disgusting… [a]lmost everyone is a drug addict", "[t]he people here are bad people and a big problem with drugs", "drug addicts and prostitutes", "[i]t looked like a cross between a crack house and a no-tell motel", "too much drug activity & just didn't feel safe sitting there", "[m]en coming and going in the room next to ours, all night", "knife mark's in the wall", "people fighting in the parking lot", "[t]his is the scariest place I've ever stayed!", and "if you need DRUG'S Budgetel is the place to go oh hell forgot the most important things WHORE'S -Homewreakin Female's and Male's all over the place." (Ex. L, Google Reviews).

47.

That isn't all that Defendants knew about. In 2019, almost 200 people were evicted from the motel after it was shut down by the Georgia Department of Public Health. The motel has a reputation with the local police forces as "one of the most crime-ridden areas in the county." (Ex. K).

48.

In 2018 alone, there were more than 190 police incidents there, and by the time it was shut down in October 2019, there had already been 177 police

incidents. (Ex. K).

49.

Residents with outstanding warrants included one wanted for child pornography. (Ex. K).

50.

In 2019, when the motel was shut down, Bartow County Commissioner Steve Taylor stated, "We've had dozens of arrests from drugs and prostitution out there, and the living conditions for those children are horrible. That's the reason for this action to take place now." (Ex. K).

51.

Taylor went on to say that no matter where the displaced children ended up, it would be an improvement over the Budgetel. (Ex. K).

52.

Bollepalli instituted a 10:00 p.m. curfew at the motel due to its known drug activity. (Ex. D, Rives Dep., 21:7-14).

53.

Despite the known and extensive crime at the Budgetel, Defendants never hired security. (Ex. A, Bollepalli Dep., 62:18-24).

54.

Other than surveillance cameras and locking the lobby overnight, Defendants did nothing to keep their invitees safe. (Ex. A, Bollepalli Dep., 62:18-63:11).

55.

Beginning in 2013, all motels were required to post a human trafficking notice "in a conspicuous place near the public entrance of the business or establishment or in another conspicuous location in clear view of the public and employees." O.C.G.A. § 16-5-47(b).

56.

Bollepalli does not know if a human trafficking notice was ever posted at the Budgetel. (Ex. A, Bollepalli Dep., 74:1-25).

57.

If a human trafficking notice was posted, it was posted on a bulletin board where only the site manager, Bollepalli, and front desk employees were allowed to go. (Ex. A, Bollepalli Dep., 106:15-107:2).

58.

If a human trafficking notice was ever posted at all, the notice was not posted where housekeeping staff, including Plaintiff, could see it. (Ex. A,

Bollepalli Dep., 106:19-21).

This 20th day of February, 2026.

                                            Respectfully submitted,

                                            **LAW & MORAN**

                                            */s/ Denise D. Hoying*
                                            Peter A. Law
                                            Georgia Bar No. 439655
                                            E. Michael Moran
                                            Georgia Bar No. 521602
                                            Denise D. Hoying
                                            Georgia Bar No. 236494
                                            *Attorneys for Plaintiff*

563 Spring Street, NW
Atlanta, Georgia 30308
Phone: (404) 814-3700
Facsimile: (404) 842-7710
Pete@lawmoran.com
Mike@lawmoran.com
Denise@lawmoran.com

                                            **ANDERSEN, TATE & CARR, P.C.**

                                            */s/ Patrick J. McDonough*
                                            Patrick J. McDonough
                                            Georgia Bar No. 489855
                                            Jonathan S. Tonge
                                            Georgia Bar No. 303999
                                            *Attorneys for Plaintiff*

One Sugarloaf Centre
1960 Satellite Boulevard, Suite 4000
Duluth, Georgia 30097
Phone: (770) 822-0900
Facsimile: (770) 822-9680
pmcdonough@atclawfirm.com
jtonge@atclawfirm.com

## **CERTIFICATE OF COMPLIANCE**

This is to certify that the foregoing ***PLAINTIFF'S STATEMENT OF MATERIAL FACTS IN OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT*** has been prepared with one of the following font and point selections approved by the Court in L.R. 5.1. Specifically, the above-mentioned pleading was prepared using Times New Roman font of 14 point size.

            Respectfully submitted,

            **LAW & MORAN**

            */s/ Denise D. Hoying*
            Denise D. Hoying
            Georgia Bar No. 236494
            Attorney for Plaintiff

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ROME DIVISION

| | |
|---|---|
| A.H., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | CIVIL ACTION FILE |
| ) | NO. 4:24-CV-00224-WMR |
| CARSON LOOP ESM, LLC d/b/a ) | |
| BUDGETEL, and SRINIVAS ) | |
| BOLLEPALLI, ) | |
| ) | |
| Defendants. ) | |

# CERTIFICATE OF SERVICE

This is to certify that I have this day served a true and correct copy of the foregoing ***PLAINTIFF'S STATEMENT OF MATERIAL FACTS IN OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT*** with the Clerk of Court using the CM/ECF system which will automatically send email notification of such filing to:

Phillip Friduss
Jacob O'Neal
Hall Booth Smith, P.C.
191 Peachtree Street, N.E.
Suite 2900
Atlanta, GA 30303

This 20th day of February, 2026.

16

**LAW & MORAN**

*/s/ Denise D. Hoying*
Denise D. Hoying
Georgia Bar No. 236494
Attorney for Plaintiff

563 Spring Street, NW
Atlanta, GA 30308
(404) 814-3700