IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ROME DIVISION

| | | |
|---|---|---|
| A.H., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION FILE |
| | ) | NO. 4:24-CV-00224-WMR |
| CARSON LOOP ESM, LLC d/b/a | ) | |
| BUDGETEL, and SRINIVAS | ) | |
| BOLLEPALLI, | ) | |
| | ) | |
| Defendants. | ) | |

## **PLAINTIFF'S OPPOSITION TO DEFENDANTS' STATEMENT OF MATERIAL FACTS**

COMES NOW Plaintiff and responds to Defendants' Statement of Material Facts:

## **PRELIMINARY RESPONSE AND STATEMENT**

Plaintiff disputes Defendants' Statement of Material Facts in that it does not accurately state the facts in their entirety and does not establish that there are no material questions of fact as to the issues raised in Defendants' Motion for Summary Judgment. Any fact not addressed is denied.

1.

Defendant Sri Bollepalli (hereinafter "Bollepalli") is one of two owners of Carson Loop ESM, LLC (hereinafter "Carson Loop"). (Bollepalli Dep. At 13:15-

22).

RESPONSE: Denied.  At the time of the subject incident, and all times from 2016 until June 29, 2021, Bollepalli was the only member of Carson Loop ESM, LLC.  (Ex. A, Bollepalli Dep., 14:22-24).

2.

Carson Loop, in turn, owns a Budgetel motel on Carson Loop Boulevard in Cartersville, GA, which it has owned since 2016. (Bollepalli Dep. at 13:1-14).

RESPONSE: Denied.  Defendants Carson Loop ESM, LLC, Srinivas Bollepalli, and Bollepalli's wife own the Budgetel and have owned it at all times since 2016. (Ex. A, Bollepalli Dep., 13:1-14; 21:12-14; 136:1).

3.

The purchase of the Budgetel in 2016 was Bollepalli's first time working in the hotel business. (Bollepalli Dep. at 15:1-6).

RESPONSE: Denied that this is a material fact, but generally admitted that Bollepalli had no experience owning or running a motel prior to his purchase of the Budgetel.

4.

The previous owner provided Bollepalli with a training course on how to hire staff and how to run the books of the motel. (Bollepalli Dep. at 17:18-24).

RESPONSE: Denied that this is a material fact and denied that the prior owner provided the training. Budgetel corporate provided Bollepalli with training on hiring staff and running the books. (Ex. A, Bollepalli Dep., 17:14-18:18).

5.

The training materials were provided by Budgetel corporate. (Bollepalli Dep. at 18:3-5).

RESPONSE: Denied that this is a material fact, but generally admitted that the only training Bollepalli provides to employees, including Tiwari, was an eight page training that was created by Budgetel. (Ex. A, Bollepalli Dep., 19:19-24).

6.

The trafficking hotline notice required by O.C.G.A. § 16-5-47 was posted at the Budgetel on a board in the lobby. (Bollepalli Dep. At 73:12-74:24; Exhibit 5 to same).

RESPONSE: Denied. Bollepalli does not know if such a notice was ever posted at the Budgetel. (Ex. A, Bollepalli Dep., 74:1-25).  If it was, it was posted on a bulletin board where only the site manager, Bollepalli, and front desk employees were allowed to go. (Ex. A, Bollepalli Dep., 106:15-107:2). If it was ever posted at all, the notice was not posted where housekeeping staff, including Plaintiff, could see it. (Ex. A, Bollepalli Dep., 106:19-21).

3

7.

However, Budgetel did not provide any documents defining strict safety measures, nor qualifying what does or does not constitute a required safety measure. (Bollepalli Dep. at 130:13-19).

RESPONSE: Denied that this is a material fact.  Budgetel corporate provided Bollepalli with an eight page training that he provided to employees including Tiwari. (Ex. A, Bollepalli Dep., 19:19-24).

8.

Budgetel did not provide any kind of minimum security requirement, and it did not require Bollepalli to have security personnel on the premises. (Bollepalli Dep. at 130:20-25).

RESPONSE: Denied that this is a material fact, and denied as an incomplete statement. Bollepalli instituted a 10:00 p.m. curfew at the motel due to its known drug activity. (Ex. D, Rives Dep., 21:7-14). Despite the known and extensive crime problems at the Budgetel, Defendants never hired security. (Ex. A, Bollepalli Dep., 62:18-24). Other than surveillance cameras and locking the lobby from 10:00 p.m. until 6:00 a.m., Defendants did nothing to keep their invitees safe. (Ex. A, Bollepalli Dep., 62:18-63:11).

9.

Carson Loop hired Shreesh Tiwari in January 2020 to handle management duties, and Tiwari moved into an apartment behind the motel office. (Bollepalli Dep. at 2313-16; 24:3-14).

RESPONSE: Denied as an incomplete statement.  In January of 2020, Defendants hired Shreesh Tiwari to be Budgetel's onsite manager after he responded to a Facebook ad. (Ex. A, Bollepalli Dep., 24:6-14; 39:8-10). Defendants provided all the supplies for the motel, including everything Tiwari needed to do his job. (Ex. A, Bollepalli Dep., 40:15-41:7). Tiwari managed the motel around the clock, 7 days a week, and he was not allowed to work anywhere else. (Ex. A, Bollepalli Dep., 79:10-24). Tiwari had no decision-making authority and no authority to set rules or policies and procedures for the motel – rather, he acted at Defendants' direction. (Ex. A, Bollepalli Dep., 81:2-13; 146:10-23). In addition to his other duties, Tiwari was empowered by Defendants to evict people from the motel. (Ex. A, Bollepalli Dep., 89:9-12). Everything at the motel was under Bollepalli's control and he was at the motel every other day. (Ex. D, Rives Dep., 21:7-14, Ex. A, Bollepalli Dep., 38:8-18; 39:5-7; 136:1). Tiwari was Bollepalli's mouthpiece; he communicated Bollepalli's instructions and wishes to the other motel employees, including Plaintiff. (Ex. F, A.H. Dep., 71:13-24;

208:21-24).

10.

Tiwari was hired as an independent contractor. (Bollepalli Dep. at 75:4-8, 131:1-12; Exhibit 6 to Bollepalli Dep.).

RESPONSE: Denied. In January of 2020, Defendants hired Shreesh Tiwari to be Budgetel's onsite manager after he responded to a Facebook ad. (Ex. A, Bollepalli Dep., 24:6-14; 39:8-10). Defendants provided all the supplies for the motel, including everything Tiwari needed to do his job. (Ex. A, Bollepalli Dep., 40:15-41:7). Tiwari managed the motel around the clock, 7 days a week, and he was not allowed to work anywhere else. (Ex. A, Bollepalli Dep., 79:10-24). Tiwari had no decision-making authority and no authority to set rules or policies and procedures for the motel – rather, he acted at Defendants' direction. (Ex. A, Bollepalli Dep., 81:2-13; 146:10-23). In addition to his other duties, Tiwari was empowered by Defendants to evict people from the motel. (Ex. A, Bollepalli Dep., 89:9-12). Everything at the motel was under Bollepalli's control and he was at the motel every other day. (Ex. D, Rives Dep., 21:7-14, Ex. A, Bollepalli Dep., 38:8-18; 39:5-7; 136:1). Tiwari was Bollepalli's mouthpiece; he communicated Bollepalli's instructions and wishes to the other motel employees, including Plaintiff. (Ex. F, A.H. Dep., 71:13-24; 208:21-24).

11.

Tiwari was recommended to Bollepalli by Neal Collins, a representative of Budgetel corporate who inspected the motel, and Collins said that Tiwari was a good candidate for hire. (Bollepalli Dep. at 58:20-59:3; 75:18-76:9).

RESPONSE: Denied.  In January of 2020, Defendants hired Shreesh Tiwari to be Budgetel's onsite manager after he responded to a Facebook ad. (Ex. A, Bollepalli Depo., 24:6-14; 39:8-10). They called one reference but did no other background check, and provided Tiwari with no training apart from an eight-page presentation. (Ex. A, Bollepalli Depo., 82:8-24, 83:3-23).

12.

Collins never gave Bollepalli any information about Tiwari's criminal background. (Bollepalli Dep. at 137:22-25).

RESPONSE: Denied that this is a material fact and denied as an incomplete statement. In January of 2020, Defendants hired Shreesh Tiwari to be Budgetel's onsite manager after he responded to a Facebook ad. (Ex. A, Bollepalli Depo., 24:6-14; 39:8-10). They called one reference but did no other background check, and provided Tiwari with no training apart from an eight-page presentation.  (Ex. A, Bollepalli Depo., 82:8-24, 83:3-23).

13.

Bollepalli had never heard of Tiwari prior to December 2019. (Bollepalli

Dep. at 84:21-24).

RESPONSE: Denied that this is a material fact, but admit that in January of

2020, Defendants hired Shreesh Tiwari to be Budgetel's onsite manager after he

responded to a Facebook ad. (Ex. A, Bollepalli Depo., 24:6-14; 39:8-10).

14.

Bollepalli called Tiwari's employment references, and the references were

positive, including that Tiwari had improved business at an apartment complex

where he was previously employed as a manager. (Bollepalli Dep. at 76:25-77:13).

RESPONSE: Denied as stated. In January of 2020, Defendants hired

Shreesh Tiwari to be Budgetel's onsite manager after he responded to a Facebook

ad. (Ex. A, Bollepalli Depo., 24:6-14; 39:8-10). They called one reference but did

no other background check, and provided Tiwari with no training apart from an

eight-page presentation. (Ex. A, Bollepalli Depo., 82:8-24, 83:3-23).

15.

In addition to Tiwari, the Budgetel employed housekeepers, maintenance

personnel, and front desk staff. (Bollepalli Dep. at 53:16-25).

RESPONSE: Admitted.

8

16.

The decision to hire and fire employees ultimately rested with Bollepalli; Tiwari could not hire or fire an employee without Bollepalli's approval. (Bollepalli Dep. at 86:13-24).

RESPONSE: Admitted.

17.

AH came to work at the Budgetel after visiting her aunt there. (AH Dep. At 43:3-6).

RESPONSE: Denied as an incomplete statement. Defendants and Tiwari hired Plaintiff to work at the motel as a housekeeper in June of 2020. (Ex. C, Guilty Plea). In order to work there, she was required to live at the Budgetel. (Ex. F, A.H. Depo., 87:13-25).

18.

AH began working at the Budgetel in June 2020 and was there for approximately one year. (A.H. Dep. At 203:16-17).

RESPONSE: Admitted.

19.

Before AH was hired, her job duties that were discussed included housekeeping duties and some construction tasks. (A.H. Dep. At 42:12-21).

RESPONSE: Denied. Plaintiff was hired to be a housekeeper and was told she would do some cleaning in the construction area. (Ex. F, A.H. Depo., 42:3-21). She was not told that she would be doing any construction. *Id*.

20.

AH agreed to come work at the Budgetel understanding these job duties. (A.H. Dep. At 42:22-24).

RESPONSE: Denied. Plaintiff was hired to be a housekeeper and was told she would do some cleaning in the construction area. (Ex. F, A.H. Depo., 42:3-21). She was not told that she would be doing any construction. *Id*.

21.

Other personnel, including housekeeping and maintenance staff, lived on the property. (Bollepalli Dep. at 66:10-12).

RESPONSE: Denied that this is a material fact, admitted that in order to work at the motel, employees were required to live at the Budgetel. (Ex. F, A.H. Dep., 87:13-25).

22.

Those employees who chose to live on the property were provided a discounted room rate of $150.00/ week, compared to $300/ week rent to the general public. (Bollepalli Dep. at 66:24-67:21).

RESPONSE: Denied. In order to work at the motel, employees were required to live at the Budgetel. (Ex. F, A.H. Dep., 87:13-25). When she was hired, Plaintiff was paid $150/week for her work, and Defendants simultaneously charged her $150/week to rent her room at the Budgetel. (Ex. C, Guilty Plea). Bollepalli set all the salaries and room rates, including Plaintiff's. (Ex. A, Bollepalli Dep., 38:24-39:2; 55:15-20). Plaintiff was forced to work at the Budgetel seven days per week from 9:00 a.m. until at least 5:00 p.m., but she was frequently forced to continue working until 10:00 or 11:00 p.m. (Ex. C). Her work included housekeeping and construction labor. (Ex. F, A.H. Dep., 39:10-25). She complained directly to Bollepalli that she wasn't being paid enough, and in response, he and Tiwari raised Plaintiff's salary to $200/week and simultaneously raised her room rent to $200/week. (Ex. F, A.H. Dep., 37:15-38:2).

23.

Employees were paid weekly. (Ex. A, Bollepalli Dep. at 67:16-17).

RESPONSE: Denied. Plaintiff lived and worked at the motel for approximately 26 weeks in 2021, earning $200/week for a total of $5,200, all of which was then deducted as room rent and kept by Defendants. (Ex. A, Bollepalli Dep., 145:13-146:4; Ex. G, W2). Bollepalli paid all of his employees by payroll checks that he signed, but because Defendants knowingly kept her in a state of

11

servitude, Bollepalli never wrote a single payroll check to Plaintiff. (Ex. A, Bollepalli Dep., 67:2-15; Ex. F, A.H. Dep., 206:12-25; Ex. H, all payroll checks produced, none written to Plaintiff).

24.

A.H. earned $300 per week. (Bollepalli Dep. at 136:24-137:21).

RESPONSE: Denied. When she was hired, Plaintiff was paid $150/week for her work, and Defendants simultaneously charged her $150/week to rent her room at the Budgetel. (Ex. C, Guilty Plea). She complained directly to Bollepalli that she wasn't being paid enough, and in response, he and Tiwari raised Plaintiff's salary to $200/week and simultaneously raised her room rent to $200/week. (Ex. F, A.H. Dep., 37:15-38:2).

25.

Other employees beside A.H. also had the arrangement whereby money for their discounted rooms would be taken out of their paychecks, and they would then be paid the balance. (Bollepalli Dep. at 137:18-21).

RESPONSE: Denied. In order to work at the motel, employees were required to live at the Budgetel. (Ex. F, A.H. Dep., 87:13-25). When she was hired, Plaintiff was paid $150/week for her work, and Defendants simultaneously charged her $150/week to rent her room at the Budgetel. (Ex. C, Guilty Plea). She

12

complained directly to Bollepalli that she wasn't being paid enough, and in response, he and Tiwari raised Plaintiff's salary to $200/week and simultaneously raised her room rent to $200/week. (Ex. F, A.H. Dep., 37:15-38:2). Plaintiff lived and worked at the motel for approximately 26 weeks in 2021, earning $200/week for a total of $5,200, all of which was then deducted as room rent and kept by Defendants. (Ex. A, Bollepalli Dep., 145:13-146:4; Ex. G, W2). Bollepalli paid all of his employees by payroll checks that he signed, but because Defendants knowingly kept her in a state of servitude, Bollepalli never wrote a single payroll check to Plaintiff. (Ex. A, Bollepalli Dep., 67:2-15; Ex. F, A.H. Dep., 206:12-25; Ex. H, all payroll checks produced, none written to Plaintiff).

26.

Budgetel was aware of the arrangement whereby employees could live on the premises in exchange for reduced rent, and Bollepalli discussed the arrangements in person with Collins several times. (Bollepalli Dep. at 136:9-21).

RESPONSE: Denied that this is a material fact, and denied that there was an arrangement whereby employees could live on the premises. In order to work at the motel, employees were required to live at the Budgetel. (Ex. F, A.H. Dep., 87:13-25).

27.

The trafficking hotline notice required by O.C.G.A. § 16-5-47 was posted at the Budgetel on a board in the lobby. (Bollepalli Dep. At 73:12-74:24; Exhibit 5 to same).

RESPONSE: Denied. Bollepalli does not know if such a notice was ever posted at the Budgetel. (Ex. A, Bollepalli Dep., 74:1-25).  If it was, it was posted on a bulletin board where only the site manager, Bollepalli, and front desk employees were allowed to go. (Ex. A, Bollepalli Dep., 106:15-107:2). If it was ever posted at all, the notice was not posted where housekeeping staff, including Plaintiff, could see it. (Ex. A, Bollepalli Dep., 106:19-21).

28.

AH participated in the discounted room program, where the cost of the room was deducted from her weekly pay, thereby netting $150.00 per week. (A.H. Dep. At 44:17-22).

RESPONSE: Denied. When she was hired, Plaintiff was paid $150/week for her work, and Defendants simultaneously charged her $150/week to rent her room at the Budgetel. (Ex. C, Guilty Plea). She complained directly to Bollepalli that she wasn't being paid enough, and in response, he and Tiwari raised Plaintiff's salary to $200/week and simultaneously raised her room rent to $200/week. (Ex. F, A.H.

Dep., 37:15-38:2). Plaintiff lived and worked at the motel for approximately 26 weeks in 2021, earning $200/week for a total of $5,200, all of which was then deducted as room rent and kept by Defendants. (Ex. A, Bollepalli Dep., 145:13-146:4; Ex. G, W2). Bollepalli paid all of his employees by payroll checks that he signed, but because Defendants knowingly kept her in a state of servitude, Bollepalli never wrote a single payroll check to Plaintiff. (Ex. A, Bollepalli Dep., 67:2-15; Ex. F, A.H. Dep., 206:12-25; Ex. H, all payroll checks produced, none written to Plaintiff).

29.

AH was aware of other Budgetel employees who also participated in this arrangement. (A.H. Dep. At 45:15-17).

RESPONSE: Denied. In order to work at the motel, employees were required to live at the Budgetel. (Ex. F, A.H. Dep., 87:13-25).

30.

Housekeepers were paid at an hourly rate. (Bollepalli Dep. at 69:22-24).

RESPONSE: Denied. When she was hired, Plaintiff was paid $150/week for her work, and Defendants simultaneously charged her $150/week to rent her room at the Budgetel. (Ex. C, Guilty Plea). She complained directly to Bollepalli that she wasn't being paid enough, and in response, he and Tiwari raised Plaintiff's salary

15

to $200/week and simultaneously raised her room rent to $200/week. (Ex. F, A.H.

Dep., 37:15-38:2).

31.

AH received one raise, but never asked Bollepalli for any further raise.

(A.H. Dep. At 88:8-89:11).

RESPONSE: Denied as stated. When she was hired, Plaintiff was paid

$150/week for her work, and Defendants simultaneously charged her $150/week to

rent her room at the Budgetel. (Ex. C, Guilty Plea). She complained directly to

Bollepalli that she wasn't being paid enough, and in response, he and Tiwari raised

Plaintiff's salary to $200/week and simultaneously raised her room rent to

$200/week. (Ex. F, A.H. Dep., 37:15-38:2).

32.

Tiwari remained employed at the Budgetel until it was raided by the

Department of Homeland Security in June 2021. (Id.).

RESPONSE: Admitted.

33.

The raid occurred on June 29, 2021. (Bollepalli Dep. at 51:1-3).

RESPONSE: Admitted.

34.

Bollepalli terminated the business relationship with Tiwari that same day and asked him to leave. (Bollepalli Dep. at 116:3-6).

RESPONSE: Admitted.

35.

In October 2019, the Department of Public Health temporarily shut down the Budgetel for code violations including unapproved cooking equipment, not providing services on a weekly basis, finishings not being kept up, and an infestation of roaches and flies. (Bollepalli Dep. at 61:21-62:8).

RESPONSE: Denied as stated and denied as an incomplete statement. The Budgetel has a reputation with the local police forces as "one of the most crime-ridden areas in the county." (Ex. K). In 2018 alone, there were more than 190 police incidents there, and by the time it was shut down in October 2019, there had already been 177 police incidents. *Id*. Residents with outstanding warrants included one wanted for child pornography. *Id*. In 2019, when the motel was shut down, Bartow County Commissioner Steve Taylor stated, "We've had dozens of arrests from drugs and prostitution out there, and the living conditions for those children are horrible. That's the reason for this action to take place now." *Id*.

Taylor went on to say that no matter where the displaced children ended up, it would be an improvement over the Budgetel. *Id*.

36.

From January 2020 until the motel's reopening in May 2020, Tiwari's role was to assist with renovations by buying items and working with contractors. (Bollepalli Dep. at 39:18-22).

RESPONSE: Denied. Tiwari would oversee the civil work and make recommendations on supplies that were needed, but he would not buy anything. (Bollepalli Dep., 42:3-21).

37.

The Budgetel remained unprofitable since its reopening. (Bollepalli Dep. at 43:17-22).

RESPONSE: Denied that this is a material fact and denied as an incomplete statement. Defendants benefitted financially and received financial compensation from the renting of rooms at the subject Budgetel. (Defendants' Responses to Requests for Admission, ¶¶ 23, 24).

38.

Bollepalli would visit the Budgetel two to three days per week, from 9:00 AM to 5:00 PM. (Bollepalli Dep. at 27:4-8; 27:25-28:3).

RESPONSE: Denied. Everything at the motel was under Bollepalli's control and he was at the motel every other day. (Ex. D, Rives Dep., 21:7-14, Ex. A, Bollepalli Dep., 38:8-18; 39:5-7; 136:1).

39.

While at the Budgetel, Bollepalli would check the accounting, surveillance camera footage, and work with the contractors. (Bollepalli Dep. at 65:16-21).

RESPONSE: Denied as an incomplete statement. Everything at the motel was under Bollepalli's control and he was at the motel every other day. (Ex. D, Rives Dep., 21:7-14, Ex. A, Bollepalli Dep., 38:8-18; 39:5-7; 136:1). Bollepalli had access to the safe, where Tiwari kept a gun and all the documents that he stole from Plaintiff's room, and he had access to his own computers, that Tiwari used to document his trafficking at the motel. (Ex. A, Bollepalli Dep., 104:21-23, 113:4-25; 119:21-120:10; Ex. F, A.H. Dep., 26:17-24; 90:16-91:20; 95:24-96:7). Bollepalli also worked with Plaintiff, and he and Tiwari routinely yelled and screamed at Plaintiff, Tiwari physically pushed Plaintiff over, and they threatened to fire and evict her, rendering her homeless, if she did not do the work that they instructed her to do. (Ex. F, A.H. Dep., 24:6-17; 40:23-41:6, 121:6-15).

40.

Bollepalli did not spend the night at the Budgetel. (Bollepalli Dep. at 27:22-

24).

RESPONSE: Admitted.

41.

Bollepalli himself never called the police to the Budgetel due to a safety or

security concern. (Bollepalli Dep. at 29:20-23).

RESPONSE: Denied as an incomplete statement. Plaintiff admits that

Bollepalli never called the police, and that Bollepalli instituted a 10:00 p.m. curfew

at the motel due to its known drug activity. (Ex. D, Rives Dep., 21:7-14). Despite

the known and extensive crime at the Budgetel, Defendants never hired security.

(Ex. A, Bollepalli Dep., 62:18-24). Other than surveillance cameras and locking

the lobby overnight, Defendants did nothing to keep their invitees safe. (Ex. A,

Bollepalli Dep., 62:18-63:11).

42.

Bollepalli would ask for police reports on any activity at the Budgetel once a

year. (Bollepalli Dep. at 30:8-17).

RESPONSE: Admitted.

43.

Bollepalli's review of the reports revealed that most of the calls for police

were false calls for non-emergency complaints, such as a broken microwave or a

toilet not working. (Bollepalli Dep. at 64:6-11).

RESPONSE: Denied. The reports reflected numerous calls for service for a variety of crimes, including but not limited to theft, narcotics, domestic violence, prostitution, and sexual harassment. (Ex. D, Rives Dep., 15:9-21; Ex. X, Families Face Uncertain Future Following Mass Motel Eviction, The Daily Tribune News (Oct. 16, 2019). DHS conducted numerous narcotics investigations at the Budgetel and it is located in a high crime area. (Ex. D, Rives Dep., 19:17-22, 88:13-18; 137:12-18).

44.

Bollepalli did not see reports of drug activity, drug sales, or prostitution in the reports he reviewed. (Bollepalli Dep. at 64:20-23).

RESPONSE: Denied. The police gave him each year's reports and he read them. (Ex. A, Bollepalli Dep., 30:8-31:22). These reports reflected numerous calls for service for a variety of crimes, including but not limited to theft, narcotics, domestic violence, prostitution, and sexual harassment. (Ex. D, Rives Dep., 15:9-21; Ex. X, Families Face Uncertain Future Following Mass Motel Eviction, The Daily Tribune News (Oct. 16, 2019). DHS conducted numerous narcotics investigations at the Budgetel and it is located in a high crime area. (Ex. D, Rives Dep., 19:17-22, 88:13-18; 137:12-18).

45.

Bollepalli told all employees at the Budgetel that if they identified

suspicious behavior, they should come to Bollepalli directly. (Bollepalli Dep. at

32:25-33:3).

RESPONSE: Denied. Bollepalli's instructions to the other employees were

to go to the site manager, Tiwari, for issues. (Bolleaplli Dep, 33:16-18).

46.

The Budgetel permitted pets on the premises until the arrival of COVID-19

in March 2020, at which point the policy changed to prohibit pets, which

prohibition remained in place until June 2021. (Bollepalli Dep. at 35:3-17).

RESPONSE: Denied. Pets were allowed at the motel for a $50 fee, despite a

sign in the lobby saying no pets allowed. (Ex. O, DHS Report ROI

DG15HR21DG0002-009).

47.

An incident reporting policy was in place, whereby incidents or security

breaches should be reported to management; and if it were a major incident that

management could not handle, then the authorities would be called. (Bollepalli

Dep. at 35:21-36:7).

RESPONSE: Denied. Bollepalli's instructions to the other employees were

22

to go to the site manager, Tiwari, for issues. (Bolleaplli Dep, 33:16-18).

48.

A GBI human trafficking notice was posted on a board at the Budgetel. (Bollepalli Dep. at 73:12-21; Exhibit 5; 11 to Bollepalli Dep.).

RESPONSE: Denied. Bollepalli does not know if such a notice was ever posted at the Budgetel. (Ex. A, Bollepalli Dep., 74:1-25).  If it was, it was posted on a bulletin board where only the site manager, Bollepalli, and front desk employees were allowed to go. (Ex. A, Bollepalli Dep., 106:15-107:2). If it was ever posted at all, the notice was not posted where housekeeping staff, including Plaintiff, could see it. (Ex. A, Bollepalli Dep., 106:19-21).

49.

The board was in a hallway that was accessible to all employees. (Bollepalli Dep. at 139:19-140:13).

RESPONSE: Denied. Bollepalli does not know if such a notice was ever posted at the Budgetel. (Ex. A, Bollepalli Dep., 74:1-25).  If it was, it was posted on a bulletin board where only the site manager, Bollepalli, and front desk employees were allowed to go. (Ex. A, Bollepalli Dep., 106:15-107:2). If it was ever posted at all, the notice was not posted where housekeeping staff, including Plaintiff, could see it. (Ex. A, Bollepalli Dep., 106:19-21).

50.

Budgetel did not provide Bollepalli with any training on identifying or preventing human trafficking. (Bollepalli Dep. at 85:3-7).

RESPONSE: Denied that this is a material fact, but admitted that Bollepalli did not know what sex or labor trafficking was until the raid on June 29, 2021. (Bollepalli Dep., 143:7-24).

51.

Bollepalli never received any training on how to identify or prevent human trafficking. (Bollepalli Dep. at 85:8-10).

RESPONSE: Denied as an incomplete statement. Bollepalli did not know what sex or labor trafficking was until the raid on June 29, 2021. (Bollepalli Dep., 143:7-24).

52.

Bollepalli had no knowledge about the signs of human trafficking prior to Tiwari's arrest. (Bollepalli Dep. at 85:22-25).

RESPONSE: Denied as an incomplete statement. Bollepalli did not know what sex or labor trafficking was until the raid on June 29, 2021. (Bollepalli Dep., 143:7-24).

53.

Bollepalli had no knowledge about how to prevent human trafficking prior to Tiwari's arrest. (Bollepalli Dep. at 86:1-4).

RESPONSE: Denied as an incomplete statement. Bollepalli did not know what sex or labor trafficking was until the raid on June 29, 2021. (Bollepalli Dep., 143:7-24).

54.

Bollepalli never saw any online reviews about crime, prostitution, or drugs at the motel premises. (Bollepalli Dep. at 121:25-122:2).

RESPONSE: Denied. Bollepalli read the Google reviews of the Budgetel every month. (Ex. A, Bollepalli Dep., 121:17-21). There, prior to Plaintiff's trafficking, Bollepalli learned, among other things, that the motel was reportedly "not clean, and drug infested", "disgusting… [a]lmost everyone is a drug addict", "[t]he people here are bad people and a big problem with drugs", "drug addicts and prostitutes", "[i]t looked like a cross between a crack house and a no-tell motel", "too much drug activity & just didn't feel safe sitting there", "[m]en coming and going in the room next to ours, all night", "knife mark's in the wall", "people fighting in the parking lot", "[t]his is the scariest place I've ever stayed!", and "if you need DRUG'S Budgetel is the place to go oh hell forgot the most important things

25

WHORE'S -Homewreakin Female's and Male's all over the place." (Ex. L, Google Reviews).

55.

When Bollepalli had conversations with A.H., A.H. would praise Tiwari and stated that Tiwari was doing a great job. (Bollepalli Dep. at 122:17-123:4).

RESPONSE: Denied. Tiwari and Bollepalli routinely yelled and screamed at Plaintiff, Tiwari physically pushed Plaintiff over, and they threatened to fire and evict her, rendering her homeless, if she did not do the work that they instructed her to do. (Ex. F, A.H. Dep., 24:6-17; 40:23-41:6, 121:6-15). Bollepalli was not approachable, and Plaintiff was scared of him.  He would scream and yell at her, and Tiwari was Bollepalli's mouthpiece.  (Ex. F, A.H. Depo., 208:16-23).

56.

Staff at the Budgetel were permitted to bring unresolved problems to Bollepalli himself. (Bollepalli Dep. at 132:7-11).

RESPONSE: Denied. Bollepalli's instructions to the other employees were to go to the site manager, Tiwari, for issues. (Bolleaplli Dep, 33:16-18). Bollepalli was not approachable, and Plaintiff was scared of him.  He would scream and yell at her, and Tiwari was Bollepalli's mouthpiece.  (Ex. F, A.H. Depo., 208:16-23).

26

57.

Staff could come directly to Bollepalli with issues; they were not required to take matters only to the manager before coming to Bollepalli. (Bollepalli Dep. at 132:21-23).

RESPONSE: Denied. Bollepalli's instructions to the other employees were to go to the site manager, Tiwari, for issues. (Ex. A, Bollepalli Dep, 33:16-18). Bollepalli was not approachable, and Plaintiff was scared of him.  He would scream and yell at her, and Tiwari was Bollepalli's mouthpiece.  (Ex. F, A.H. Depo., 208:16-23).

58.

If anyone had come to Bollepalli directly to report any labor or sex trafficking, or sexual harassment, Bollepalli would have taken action. (Bollepalli Dep. at 132:12-20).

RESPONSE: Denied. Bollepalli did not know what sex or labor trafficking was until the raid on June 29, 2021. (Ex. A, Bollepalli Dep., 143:7-24).  Further, Bollepalli was an active participant in Plaintiff's labor trafficking. Defendants and Tiwari hired Plaintiff to work at the motel as a housekeeper in June of 2020. When she was hired, Plaintiff was paid $150/week for her work, and Defendants simultaneously charged her $150/week to rent her room at the Budgetel. (Ex. C).

Bollepalli set all the salaries and room rates, including Plaintiff's. (Ex. A, Bollepalli Dep., 38:24-39:2; 55:15-20). Plaintiff was forced to work at the Budgetel seven days per week from 9:00 a.m. until at least 5:00 p.m., but she was frequently forced to continue working until 10:00 or 11:00 p.m. (Ex. C). Her work included housekeeping and construction labor. (Ex. F, A.H. Dep., 39:10-25). She complained directly to Bollepalli that she wasn't being paid enough, and in response, he and Tiwari raised Plaintiff's salary to $200/week and simultaneously raised her room rent to $200/week. (Ex. F, A.H. Dep., 37:15-38:2). Several other employees also complained directly to Bollepalli about the working conditions at the motel and Tiwari's treatment of them. (Ex. F, A.H. Dep., 72:6-73:3).

Tiwari and Bollepalli routinely yelled and screamed at Plaintiff, Tiwari physically pushed Plaintiff over, and they threatened to fire and evict her, rendering her homeless, if she did not do the work that they instructed her to do. (Ex. F, A.H. Dep., 24:6-17; 40:23-41:6, 121:6-15).

Plaintiff lived and worked at the motel for approximately 26 weeks in 2021, earning $200/week for a total of $5,200, all of which was then deducted as room rent and kept by Defendants. (Ex. A, Bollepalli Dep., 145:13-146:4; Ex. G, W2). Bollepalli paid all of his employees by payroll checks that he signed, but because Defendants knowingly kept her in a state of servitude, Bollepalli never wrote a

single payroll check to Plaintiff. (Ex. A, Bollepalli Dep., 67:2-15; Ex. F, A.H.

Dep., 206:12-25; Ex. H, all payroll checks produced, none written to Plaintiff).

59.

A.H. never complained to Bollepalli about Tiwari forcing A.H. to engage in

any sexual conduct with Tiwari. (Bollepalli Dep. at 132:25-133:2).

RESPONSE: Denied that this is a material fact, but Plaintiff admits that

Bollepalli was not approachable, and Plaintiff was scared of him.  He would

scream and yell at her, and Tiwari was Bollepalli's mouthpiece.  (Ex. F, A.H.

Depo., 208:16-23).

60.

A.H. never complained to Bollepalli about Tiwari compelling her to use

drugs. (Bollepalli Dep. at 133:4-6).

RESPONSE: Denied that this is a material fact, but generally admitted that

Bollepalli was not approachable, and Plaintiff was scared of him.  He would

scream and yell at her, and Tiwari was Bollepalli's mouthpiece.  (Ex. F, A.H.

Depo., 208:16-23).

61.

A.H. never complained to Bollepalli about Tiwari forcing A.H. to perform

any employment duties that A.H. thought were improper. (Bollepalli Dep. at

133:7-10).

RESPONSE: Denied. Plaintiff complained directly to Bollepalli that she wasn't being paid enough, and in response, he and Tiwari raised Plaintiff's salary to $200/week and simultaneously raised her room rent to $200/week. (Ex. F, A.H. Dep., 37:15-38:2). Several other employees also complained directly to Bollepalli about the working conditions at the motel and Tiwari's treatment of them. (Ex. F, A.H. Dep., 72:6-73:3).

62.

Prior to Tiwari's arrest, no one ever complained to Bollepalli about any sex or labor trafficking at the Budgetel. (Bollepalli Dep. at 133:18-22).

RESPONSE: Denied. Bollepalli did not know what sex or labor trafficking was until the raid on June 29, 2021. (Bollepalli Dep., 143:7-24).  Further, Bollepalli was an active participant in Plaintiff's labor trafficking. Defendants and Tiwari hired Plaintiff to work at the motel as a housekeeper in June of 2020. When she was hired, Plaintiff was paid $150/week for her work, and Defendants simultaneously charged her $150/week to rent her room at the Budgetel. (Ex. C). Bollepalli set all the salaries and room rates, including Plaintiff's. (Ex. A, Bollepalli Dep., 38:24-39:2; 55:15-20). Plaintiff was forced to work at the Budgetel seven days per week from 9:00 a.m. until at least 5:00 p.m., but she was

frequently forced to continue working until 10:00 or 11:00 p.m. (Ex. C). Her work included housekeeping and construction labor. (Ex. F, A.H. Dep., 39:10-25). She complained directly to Bollepalli that she wasn't being paid enough, and in response, he and Tiwari raised Plaintiff's salary to $200/week and simultaneously raised her room rent to $200/week. (Ex. F, A.H. Dep., 37:15-38:2). Several other employees also complained directly to Bollepalli about the working conditions at the motel and Tiwari's treatment of them. (Ex. F, A.H. Dep., 72:6-73:3).

Tiwari and Bollepalli routinely yelled and screamed at Plaintiff, Tiwari physically pushed Plaintiff over, and they threatened to fire and evict her, rendering her homeless, if she did not do the work that they instructed her to do. (Ex. F, A.H. Dep., 24:6-17; 40:23-41:6, 121:6-15).

Plaintiff lived and worked at the motel for approximately 26 weeks in 2021, earning $200/week for a total of $5,200, all of which was then deducted as room rent and kept by Defendants. (Ex. A, Bollepalli Dep., 145:13-146:4; Ex. G, W2). Bollepalli paid all of his employees by payroll checks that he signed, but because Defendants knowingly kept her in a state of servitude, Bollepalli never wrote a single payroll check to Plaintiff. (Ex. A, Bollepalli Dep., 67:2-15; Ex. F, A.H. Dep., 206:12-25; Ex. H, all payroll checks produced, none written to Plaintiff).

63.

Bollepalli does not know how any investigations into drug activity at the Budgetel turned out, and he does not know if anyone at the Budgetel was ever criminally convicted for using or possessing drugs. (Bollepalli Dep. at 134:19-21).

RESPONSE: Denied. In 2019, almost 200 people were evicted from the motel after it was shut down by the Georgia Department of Public Health. The motel has a reputation with the local police forces as "one of the most crime-ridden areas in the county." (Ex. K). In 2018 alone, there were more than 190 police incidents there, and by the time it was shut down in October 2019, there had already been 177 police incidents. *Id*. Residents with outstanding warrants included one wanted for child pornography. *Id*. In 2019, when the motel was shut down, Bartow County Commissioner Steve Taylor stated, "We've had dozens of arrests from drugs and prostitution out there, and the living conditions for those children are horrible. That's the reason for this action to take place now." *Id*. Taylor went on to say that no matter where the displaced children ended up, it would be an improvement over the Budgetel. *Id*.

Bollepalli instituted a 10:00 p.m. curfew at the motel due to its known drug activity. (Ex. D, Rives Dep., 21:7-14). Despite the known and extensive crime at the Budgetel, Defendants never hired security. (Ex. A, Bollepalli Dep., 62:18-24). Other

than surveillance cameras and locking the lobby overnight, Defendants did nothing to keep their invitees safe. (Ex. A, Bollepalli Dep., 62:18-63:11).

64.

Bollepalli never personally observed any drug paraphernalia on the premises. (Bollepalli Dep. at 134:25-135:2).

RESPONSE: Denied as an incomplete statement. Drug paraphernalia was stored in the lobby where Bollepalli either saw or should have seen it. (Ex. O, DHS Report ROI DG15HR21DG0002-009).

65.

Bollepalli does not know if anyone staying at the Budgetel was ever convicted of any violent crime. (Bollepalli Dep. at 134:22-24).

RESPONSE: Denied. Denied. In 2019, almost 200 people were evicted from the motel after it was shut down by the Georgia Department of Public Health. The motel has a reputation with the local police forces as "one of the most crime-ridden areas in the county." (Ex. K). In 2018 alone, there were more than 190 police incidents there, and by the time it was shut down in October 2019, there had already been 177 police incidents. *Id*. Residents with outstanding warrants included one wanted for child pornography. *Id*. In 2019, when the motel was shut down, Bartow County Commissioner Steve Taylor stated, "We've had dozens of arrests from drugs

33

and prostitution out there, and the living conditions for those children are horrible. That's the reason for this action to take place now." *Id*. Taylor went on to say that no matter where the displaced children ended up, it would be an improvement over the Budgetel. *Id*.

Bollepalli instituted a 10:00 p.m. curfew at the motel due to its known drug activity. (Ex. D, Rives Dep., 21:7-14). Despite the known and extensive crime at the Budgetel, Defendants never hired security. (Ex. A, Bollepalli Dep., 62:18-24). Other than surveillance cameras and locking the lobby overnight, Defendants did nothing to keep their invitees safe. (Ex. A, Bollepalli Dep., 62:18-63:11).

66.

The Budgetel did not turn a profit in the years 2019-2021. (Bollepalli Dep. at 135:2-12).

RESPONSE: Denied that this is a material fact. Plaintiff admits that Defendants benefitted financially and received financial compensation from the renting of rooms at the subject Budgetel. (Ex. B, Defendants' Responses to Requests for Admission, ¶¶ 23, 24).

67.

When the Budgetel was visited by Budgetel's corporate representative, Neal Collins, Collins never complained to Bollepalli about the finances of the Budgetel

or about the way the books were being kept. (Bollepalli Dep. at 135:13-22).

RESPONSE: Denied that this is a material fact.  Plaintiff admits that Bollepalli claims Budgetel corporate had no complaints about his finances.

68.

Collins never complained to Bollepalli about what the employees were being paid, and the employees were paid on par with the industry standard. (Bollepalli Dep. at 136:5-8).

RESPONSE: Denied. In order to work at the motel, employees were required to live at the Budgetel. (Ex. F, A.H. Dep., 87:13-25). When she was hired, Plaintiff was paid $150/week for her work, and Defendants simultaneously charged her $150/week to rent her room at the Budgetel. (Ex. C, Guilty Plea). She complained directly to Bollepalli that she wasn't being paid enough, and in response, he and Tiwari raised Plaintiff's salary to $200/week and simultaneously raised her room rent to $200/week. (Ex. F, A.H. Dep., 37:15-38:2). Plaintiff lived and worked at the motel for approximately 26 weeks in 2021, earning $200/week for a total of $5,200, all of which was then deducted as room rent and kept by Defendants. (Ex. A, Bollepalli Dep., 145:13-146:4; Ex. G, W2). Bollepalli paid all of his employees by payroll checks that he signed, but because Defendants knowingly kept her in a state of servitude, Bollepalli never wrote a single payroll

check to Plaintiff. (Ex. A, Bollepalli Dep., 67:2-15; Ex. F, A.H. Dep., 206:12-25;

Ex. H, all payroll checks produced, none written to Plaintiff).

69.

When Bollepalli reviewed the Budgetel's finances, he never found extra or

unaccounted for money. (Bollepalli Dep. at 135:23-136:4).

RESPONSE: Denied that this is a material fact and denied as an incomplete

statement. When she was hired, Plaintiff was paid $150/week for her work, and

Defendants simultaneously charged her $150/week to rent her room at the

Budgetel. (Ex. C, Guilty Plea). She complained directly to Bollepalli that she

wasn't being paid enough, and in response, he and Tiwari raised Plaintiff's salary

to $200/week and simultaneously raised her room rent to $200/week. (Ex. F, A.H.

Dep., 37:15-38:2). Plaintiff lived and worked at the motel for approximately 26

weeks in 2021, earning $200/week for a total of $5,200, all of which was then

deducted as room rent and kept by Defendants. (Ex. A, Bollepalli Dep., 145:13-

146:4; Ex. G, W2). Bollepalli paid all of his employees by payroll checks that he

signed, but because Defendants knowingly kept her in a state of servitude,

Bollepalli never wrote a single payroll check to Plaintiff. (Ex. A, Bollepalli Dep.,

67:2-15; Ex. F, A.H. Dep., 206:12-25; Ex. H, all payroll checks produced, none

written to Plaintiff).

36

70.

Bollepalli never saw A.H.'s credit card or ID being held at the front desk prior to Tiwari being arrested. (Bollepalli Dep. at 140:14-21).

RESPONSE: Denied as an incomplete statement. Tiwari also used his position as manager to enter Plaintiff's room without her permission to steal documents, including her ID, car title, insurance documents, and social security card, which he refused to return and kept in the motel safe so that she could not leave, forcing her to continue working and providing him with oral sex. (Ex. F, A.H. Dep., 26:17-24; 90:16-91:20; 95:24-96:7). Tiwari kept a gun and all the documents that he stole from Plaintiff's room in the motel safe that Bollepalli had access to. (Ex. A, Bollepalli Dep., 104:21-23, 113:4-25; Ex. F, A.H. Dep., 26:17-24; 90:16-91:20; 95:24-96:7).

71.

AH never told Bollepalli nor Tiwari that she was getting drugs on the premises of the Budgetel. (A.H. Dep. At 15:1-25; 19:4-6).

RESPONSE: Denied that this is a material fact. Plaintiff admits that Bollepalli instituted a 10:00 p.m. curfew at the motel due to its known drug activity. (Ex. D, Rives Dep., 21:7-14). Despite the known and extensive crime problems at the Budgetel, Defendants never hired security. (Ex. A, Bollepalli Dep.,

62:18-24). Other than surveillance cameras and locking the lobby from 10:00 p.m. until 6:00 a.m., Defendants did nothing to keep their invitees safe. (Ex. A, Bollepalli Dep., 62:18-63:11).

72.

AH never saw Bollepalli observe any drugs on the Budgetel premises. (A.H. Dep. At 19:25-20:2).

RESPONSE: Denied as an incomplete statement. Bollepalli instituted a 10:00 p.m. curfew at the motel due to its known drug activity. (Ex. D, Rives Dep., 21:7-14). Despite the known and extensive crime problems at the Budgetel, Defendants never hired security. (Ex. A, Bollepalli Dep., 62:18-24). Other than surveillance cameras and locking the lobby from 10:00 p.m. until 6:00 a.m., Defendants did nothing to keep their invitees safe. (Ex. A, Bollepalli Dep., 62:18-63:11).

73.

AH never discussed drug use on the premises of the Budgetel at any point with Bollepalli. (A.H. Dep. At 20:11-13).

RESPONSE: Denied that this is a material fact and denied as an incomplete statement. Bollepalli instituted a 10:00 p.m. curfew at the motel due to its known drug activity. (Ex. D, Rives Dep., 21:7-14). Despite the known and extensive crime

problems at the Budgetel, Defendants never hired security. (Ex. A, Bollepalli Dep., 62:18-24). Other than surveillance cameras and locking the lobby from 10:00 p.m. until 6:00 a.m., Defendants did nothing to keep their invitees safe. (Ex. A, Bollepalli Dep., 62:18-63:11).

74.

AH never reported Tiwari's alleged theft of AH's car, car title, room key, or belongings to law enforcement, nor did AH ever file a civil action seeking to get the items returned. (A.H. Dep. At 26:25-27:5).

RESPONSE: Denied as an incomplete statement. Tiwari used his position as manager to enter Plaintiff's room without her permission to steal documents, including her ID, car title, insurance documents, and social security card, which he refused to return and kept in the motel safe so that she could not leave, forcing her to continue working and providing him with oral sex. (Ex. F, A.H. Dep., 26:17-24; 90:16-91:20; 95:24-96:7).

75.

AH never reported any of Tiwari's threats to law enforcement. (A.H. Dep. At 23:23-24:2).

RESPONSE: Denied. Plaintiff was extensively interviewed by law enforcement and reported Tiwari's threats. (Ex. P, DHS Reports ROIs DG15H

R21DG0002-038; DG15HR21DG0002-029).

76.

No one was in the room when AH allegedly performed oral sex on Tiwari, when Tiwari allegedly would touch AH's breasts or body, or when Tiwari allegedly left bruises on AH. (A.H. Dep. At 83:12-22).

RESPONSE: Denied as an incomplete statement.  Plaintiff admits that no one other than Plaintiff and Tiwari were in the room when Tiwari had forced sexual contact with Plaintiff.  Tiwari and Bollepalli routinely yelled and screamed at Plaintiff, Tiwari physically pushed Plaintiff over, and they both threatened to fire Plaintiff and evict her, rendering her homeless, if she did not do the work that they instructed her to do. (Ex. F, A.H. Dep., 24:6-17; 40:23-41:6, 121:6-15).

77.

There was not any point in AH's interactions with Tiwari where there was an exchange of money for any sexual activity. (A.H. Dep. At26:11-14).

RESPONSE: Denied as an incomplete statement. Plaintiff was forced to perform oral sex on Tiwari (and work for 14 hours per day) or she would be evicted from the motel and rendered homeless, so Plaintiff's room at the Budgetel was exchanged for sexual activity. This is confirmed by Tiwari's guilty plea, where he agreed that the government would prove beyond a reasonable doubt that he

"knowingly recruited, harbored, transported, provided, or obtained [Plaintiff] for the purpose of obtaining labor or services by using force, fraud, and coercion to compel [Plaintiff] to perform sex acts upon [him] ***in exchange for a thing of value, to wit, her room at the Budgetel***." (Ex. C at 8)(emphasis added). Tiwari also threatened that he would call DFCS and report Plaintiff's drug use such that she would never get her child back, another thing of value exchanged by her compliance. (Ex. F, A.H. Dep., 67:16-68:21; 94:21-95:17). In addition, because Plaintiff complied with Tiwari's demands for oral sex and unpaid labor, she remained at the motel, paying rent to Defendants for her room and working essentially nonstop, directly benefitting and providing value to Defendants.

78.

AH does not recall any occasion where Bollepalli was physically present when Tiwari would allegedly make threats about reporting AH's drug use and call DTF on her. (A.H. Dep. At 68:2-19).

RESPONSE: Denied as an incomplete statement. Tiwari and Bollepalli routinely yelled and screamed at Plaintiff, Tiwari physically pushed Plaintiff over, and they both threatened to fire Plaintiff and evict her, rendering her homeless, if she did not do the work that they instructed her to do. (Ex. F, A.H. Dep., 24:6-17; 40:23-41:6, 121:6-15).

79.

AH never told any staff at the Budgetel, including Bollepalli, about her

sexual contact with Tiwari. (A.H. Dep. At 31:20-23).

RESPONSE: Denied as an incomplete statement. Tiwari used Defendants'

computers – that Bollepalli had full access to – to document his trafficking. (Ex. A,

Bollepalli Dep., 119:21-120:10). Defendants' computers contained photographs

and videos of victims performing oral sex on Tiwari, screen shots of sexually

suggestive texts messages between Tiwari and a victim, photographs of several

trafficking victims, and payroll files, among other evidence that was readily

available to Defendants. (Ex. I, DHS Report ROI DG15HR21DG0002-053).

DHS's investigation revealed that at least five to seven women were trafficked by

Tiwari at the Budgetel. (Ex. D, Rives Dep., 29:16-30:10; Ex. C at 11; Ex. E,

Affidavit).

80.

AH never talked to any law enforcement about Tiwari before law

enforcement raided the Budgetel. (A.H. Dep. At 32:2-4).

RESPONSE: Admitted.

81.

AH does not recall any occasion where Bollepalli personally was present

while Tiwari touched AH in any way. (A.H. Dep. At 24:18-20).

RESPONSE: Denied. Bollepalli was physically present when Tiwari would scream and yell at Plaintiff and push her over, and Bollepalli was right there screaming at her too. (A.H. Dep., 24:15-17).

82.

AH alleges that Tiwari touched her in her room and in his office, including rubbing her breasts. (A.H. Dep. At 21:17-9-19; 22:23-23:2).

RESPONSE: Denied as an incomplete statement. Defendants' manager used his position as manager to threaten Plaintiff with eviction, rendering her homeless, if she did not perform oral sex on him, coercing Plaintiff to comply for his demands for sex. (Ex. F, A.H. Dep., 23:7-22). During these multiple forced sexual encounters, Tiwari would slam Plaintiff's head down, slap her, strike her, and grab her arm with enough force to leave bruises. (Ex. F, A.H. Dep., 29:24-30:1, 66:25-67:20, 190:23-191:15).

83.

AH alleges that Tiwari threatened to kick her out for her drug use. (A.H. Dep. At 21:25-22:2).

RESPONSE: Denied as stated. Tiwari stole drugs out of Plaintiff's room, then would show them to her and threaten to call DFCS and DTF if she left the

motel. (Ex. F, A.H. Dep., 95:6-17).

84.

AH alleges that Tiwari compelled her to perform oral sex on Tiwari at least four times. (A.H. Dep. At 23:7-13).

RESPONSE: Denied as an incomplete statement. Tiwari made Plaintiff perform oral sex on him "a lot of times, multiple times. More than four." (Ex. F, A.H. Dep., 23:7-13).

85.

AH alleges that Tiwari threatened to kick her out, call DFCS, or call the police AH performed oral sex on Tiwari. (A.H. Dep. At 23:16-20).

RESPONSE: Denied as an incomplete statement. Tiwari threatened to kick Plaintiff out, call DFCS so that she would never get her son back, or call the police to compel Plaintiff to have oral sex with him. (Ex. F, A.H. Dep., 23:16-20; 67:16-68:21; 94:21-95:17). Tiwari would slam Plaintiff's head down, strike her, slap her, and grab her arm with enough force to leave bruises. (Ex. F, A.H. Dep., 29:24-30:1, 66:25-67:20, 190:23-191:15).

86.

AH also alleges that Tiwari threatened to withhold her car, car title, room key, and belongings if AH did not engage in sexual acts with Tiwari. (A.H. Dep.

At 26:14-22).

RESPONSE: Denied as stated and as an incomplete statement. Tiwari used his position as manager to enter Plaintiff's room without her permission to steal documents, including her ID, car title, insurance documents, and social security card, which he refused to return and kept in the motel safe so that she could not leave, forcing her to continue working and providing him with oral sex. (Ex. F, A.H. Dep., 26:17-24; 90:16-91:20; 95:24-96:7).

87.

AH alleges that Tiwari threatened to kick her out because AH had a dog on the premises. (A.H. Dep. At 33:17-18).

RESPONSE: Admitted that Tiwari and Bollepalli refused to allow Plaintiff to keep her dog after several months of living there and threatened to kick her out. Plaintiff further admits that pets were allowed at the motel for a $50 fee, despite a sign in the lobby saying no pets allowed. (Ex. O, DHS Report ROI DG15HR21DG0002-009).

88.

Tiwari's stated reason for complaining about the dog was that Bollepalli prohibited dogs. (A.H. Dep. At 34:23-35:1).

RESPONSE: Denied as an incomplete statement. Plaintiff admits that pets

were allowed at the motel for a $50 fee, despite a sign in the lobby saying no pets

allowed. (Ex. O, DHS Report ROI DG15HR21DG0002-009).

89.

The Budgetel eventually kicked out all dogs and put up a sign saying "no

pets allowed." (A.H. Dep. At 92:1-13; Exhibit 10 to same).

RESPONSE: Denied. Pets were allowed at the motel for a $50 fee, despite a

sign in the lobby saying no pets allowed. (Ex. O, DHS Report ROI

DG15HR21DG0002-009).

90.

Other than Tiwari's alleged touching of AH's breasts and compelling AH to

perform oral sex on Tiwari, AH does not recall any other sexual contact with

Tiwari. (A.H. Dep. At 24:21-25).

RESPONSE: Denied. Tiwari forced Plaintiff to perform oral sex on him,

grabbed her breasts, grabbed her vagina, and attempt to sexually stimulate

Plaintiff's body with his hands. (Ex. F, A.H. Depo., 28:8-21).

91.

Tiwari and AH never had penetrative vaginal sex. (A.H. Dep. At 25:1-3).

RESPONSE: Denied that this is a material fact but otherwise admitted.

46

92.

Tiwari never penetrated any part of AH's body with his fingers or an object. (A.H. Dep. At 25:14-19).

RESPONSE: Denied as an incomplete statement. Tiwari forced Plaintiff to perform oral sex on him, grabbed her breasts, grabbed her vagina, and attempt to sexually stimulate Plaintiff's body with his hands. (Ex. F, A.H. Depo., 28:8-21).

93.

Tiwari never asked AH to perform any sexual acts with others; according to AH, he only ever asked AH to perform sexual acts with himself. (A.H. Dep. At 26:2-7).

RESPONSE: Denied as stated. Defendants' manager used his position as manager to threaten Plaintiff with eviction, rendering her homeless, if she did not perform oral sex on him, coercing Plaintiff to comply for his demands for sex. (Ex. F, A.H. Dep., 23:7-22). During these multiple forced sexual encounters, Tiwari would slam Plaintiff's head down, strike her, and grab her arm with enough force to leave bruises. (Ex. F, A.H. Dep., 29:24-30:1, 66:25-67:20).

94.

Tiwari never threatened AH for refusing to engage in a sexual act with anyone other than himself. (A.H. Dep. At 26:8-10).

47

RESPONSE: Admitted.

95.

Defendants' Statement of Facts Does Not Contain a Fact Number 95.

96.

AH never reported any of Tiwari's threats to Bollepalli. (A.H. Dep. At 24:3-5).

RESPONSE: Denied. Bollepalli was physically present when Tiwari would scream and yell at Plaintiff and push her over, and Bollepalli was right there screaming at her too. (A.H. Dep., 24:15-17). Tiwari and Bollepalli threatened to fire and evict her, rendering her homeless, if she did not do the work that they instructed her to do. (Ex. F, A.H. Dep., 24:6-17; 40:23-41:6, 121:6-15).

97.

AH never reported Tiwari's alleged theft of her belongings to Bollepalli. (A.H. Dep. At 27:6-8).

RESPONSE: Denied as an incomplete statement. Everything at the motel was under Bollepalli's control and he was at the motel every other day. (Ex. D, Rives Dep., 21:7-14, Ex. A, Bollepalli Dep., 38:8-18; 39:5-7; 136:1). Bollepalli had access to the safe, where Tiwari kept a gun and all the documents that he stole from Plaintiff's room, and he had access to his own computers, that Tiwari used to

48

document his trafficking at the motel. (Ex. A, Bollepalli Dep., 104:21-23, 113:4-25; 119:21-120:10; Ex. F, A.H. Dep., 26:17-24; 90:16-91:20; 95:24-96:7).

98.

AH alleges that Tiwari left bruising and fingerprints on her body, but she never reported this to anyone. (A.H. Dep. At 66:20-67:17).

RESPONSE: Denied. Plaintiff testified extensively about Tiwari's violent and aggressive nature. (Ex. F, A.H. Dep., 22:20-22; 66:20-67:17).

99.

Tiwari never struck AH with any objects. (A.H. Dep. At 68:22-23).

RESPONSE: Denied as stated. During forced sexual encounters, Tiwari would slam Plaintiff's head down, strike her, slap her, and grab her arm with enough force to leave bruises. (Ex. F, A.H. Dep., 29:24-30:1, 66:25-67:20, 190:23-191:15).

100.

Tiwari never forced AH to take drugs. (A.H. Dep. At 192:8-9).

RESPONSE: Denied that this is a material fact but otherwise admitted. Plaintiff further admits that Tiwari slapped Plaintiff and forced her to perform oral sex on him and she would use drugs to help cope with it. (Ex. F, A.H. Dep., 190:23-191:15).

101.

AH alleges that Bollepalli threatened to fire her for refusing to change mattress covers. (A.H. Dep. At 41:19-21).

RESPONSE: Denied as an incomplete statement. Tiwari and Bollepalli routinely yelled and screamed at Plaintiff, Tiwari physically pushed Plaintiff over, and they threatened to fire and evict her, rendering her homeless, if she did not do the work that they instructed her to do. (Ex. F, A.H. Dep., 24:6-17; 40:23-41:6, 121:6-15).

102.

Bollepalli never threatened to fire her for refusing to do sanding or gluing work. (A.H. Dep. At 41:22-42:2).

RESPONSE: Admitted.

103.

Tiwari allegedly told AH that she was required to live on the premises as a term of AH's employment, but AH never discussed that term of employment with Bollepalli. (A.H. Dep. At 88:1-7).

RESPONSE: Denied as stated. In order to work there, she was required to live at the Budgetel. (Ex. F, A.H. Dep., 87:13-25).

104.

Bollepalli never engaged in any of the acts of which AH accuses Tiwari.

(A.H. Dep. At 203:2-4).

RESPOSNE: Denied. Tiwari and Bollepalli routinely yelled and screamed at

Plaintiff, Tiwari physically pushed Plaintiff over, and they threatened to fire and

evict her, rendering her homeless, if she did not do the work that they instructed

her to do. (Ex. F, A.H. Dep., 24:6-17; 40:23-41:6, 121:6-15).

When she was hired, Plaintiff was paid $150/week for her work, and

Defendants simultaneously charged her $150/week to rent her room at the

Budgetel. (Ex. C, Guilty Plea). Bollepalli set all the salaries and room rates,

including Plaintiff's. (Ex. A, Bollepalli Dep., 38:24-39:2; 55:15-20). Plaintiff was

forced to work at the Budgetel seven days per week from 9:00 a.m. until at least

5:00 p.m., but she was frequently forced to continue working until 10:00 or 11:00

p.m. (Ex. C). Her work included housekeeping and construction labor. (Ex. F, A.H.

Dep., 39:10-25). She complained directly to Bollepalli that she wasn't being paid

enough, and in response, he and Tiwari raised Plaintiff's salary to $200/week and

simultaneously raised her room rent to $200/week. (Ex. F, A.H. Dep., 37:15-38:2).

Plaintiff lived and worked at the motel for approximately 26 weeks in 2021,

earning $200/week for a total of $5,200, all of which was then deducted as room

rent and kept by Defendants. (Ex. A, Bollepalli Dep., 145:13-146:4; Ex. G, W2).

Bollepalli paid all of his employees by payroll checks that he signed, but because

Defendants knowingly kept her in a state of servitude, Bollepalli never wrote a

single payroll check to Plaintiff. (Ex. A, Bollepalli Dep., 67:2-15; Ex. F, A.H.

Dep., 206:12-25; Ex. H, all payroll checks produced, none written to Plaintiff).

105.

The actions of Tiwari that AH complains of did not begin until after the first

four or five months AH had been working at the Budgetel. (A.H. Dep. At203:19-

23).

RESPONSE: Denied. The labor trafficking began immediately, but the

commercial sex acts did not begin until a few months after she arrived and then it

got ugly pretty fast.  (Ex. F, A.H. Dep., 203:8-204:3).

106.

Tiwari was criminally prosecuted for labor trafficking and entered a guilty

plea for labor trafficking only. (Exhibit 19 to AH Dep.)

RESPONSE: Denied. Plaintiff was a victim of both sex and labor trafficking

at Defendants' motel at the hands of their onsite manager Shreesh Tiwari. (Rives

Dep., 33:25-34:16).

107.

AH was denominated "Victim 1" in Tiwari's guilty plea. (A.H. Dep. At 213:3-19).

RESPONSE: Admitted.

108.

Bollepalli was never charged. (A.H. Dep. At205:17-19).

RESPONSE: Denied that this is a material fact, but Plaintiff admits that Bollepalli did not face criminal prosecution for his actions at the Budgetel.

This 20th day of February, 2026.

Respectfully submitted,

**LAW & MORAN**

*/s/ Denise D. Hoying*
Peter A. Law
Georgia Bar No. 439655
E. Michael Moran
Georgia Bar No. 521602
Denise D. Hoying
Georgia Bar No. 236494
*Attorneys for Plaintiff*

563 Spring Street, NW
Atlanta, Georgia 30308
Phone: (404) 814-3700
Facsimile: (404) 842-7710
Pete@lawmoran.com
Mike@lawmoran.com
Denise@lawmoran.com

**ANDERSEN, TATE & CARR, P.C.**

*/s/ Patrick J. McDonough*
Patrick J. McDonough
Georgia Bar No. 489855
Jonathan S. Tonge
Georgia Bar No. 303999
*Attorneys for Plaintiff*

One Sugarloaf Centre
1960 Satellite Boulevard, Suite 4000
Duluth, Georgia 30097
Phone: (770) 822-0900
Facsimile: (770) 822-9680
pmcdonough@atclawfirm.com
jtonge@atclawfirm.com

## <u>CERTIFICATE OF COMPLIANCE</u>

This is to certify that the foregoing ***PLAINTIFF'S OPPOSITION TO DEFENDANTS' STATEMENT OF MATERIAL FACTS*** has been prepared with one of the following font and point selections approved by the Court in L.R. 5.1. Specifically, the above-mentioned pleading was prepared using Times New Roman font of 14 point size.

Respectfully submitted,

**LAW & MORAN**

<u>*/s/ Denise D. Hoying*</u>
Denise D. Hoying
Georgia Bar No. 236494
*Attorney for Plaintiff*

**LAW & MORAN**
563 Spring Street, NW
Atlanta, Georgia 30308
Phone: (404) 814-3700
Facsimile: (404) 842-7710
Denise@lawmoran.com

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ROME DIVISION

A.H.,                                    )
                                         )
        Plaintiff,                       )
                                         )
v.                                       )    CIVIL ACTION FILE
                                         )    NO. 4:24-CV-00224-WMR
CARSON LOOP ESM, LLC d/b/a               )
BUDGETEL, and SRINIVAS                   )
BOLLEPALLI,                              )
                                         )
        Defendants.                      )

## <u>CERTIFICATE OF SERVICE</u>

This is to certify that I have this day served a true and correct copy of the

foregoing ***PLAINTIF'S OPPOSITION TO DEFENDANTS' STATEMENT OF***

***MATERIAL FACTS*** with the Clerk of Court using the CM/ECF system which

will automatically send email notification of such filing to:

Phillip Friduss
Jacob O'Neal
Hall Booth Smith, P.C.
191 Peachtree Street, N.E.
Suite 2900
Atlanta, GA 30303

This 20th day of February, 2026.

**LAW & MORAN**

*/s/ Denise D. Hoying*
Denise D. Hoying
Georgia Bar No. 236494
Attorney for Plaintiff

**LAW & MORAN**
563 Spring Street, NW
Atlanta, Georgia 30308
Phone: (404) 814-3700
Facsimile: (404) 842-7710
Denise@lawmoran.com