IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ROME DIVISION

| | |
|---|---|
| A.H., <br><br> Plaintiff, <br><br> v. <br><br> CARSON LOOP ESM, LLC d/b/a BUDGETEL, and SRINIVAS BOLLEPALLI, <br><br> Defendants. | CIVIL ACTION FILE <br> NO. 4:24-cv-00224-WMR |

**REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**

COME NOW **CARSON LOOP ESM, LLC, d/b/a BUDGETEL, and SRINIVAS BOLLEPALLI,** Defendants in the above-styled matter, and pursuant to N.D. Ga. LR 7.1 submit this their Reply in Support of their Motion for Summary Judgment, in support of which the said Defendants rely upon the accompanying Response to Plaintiff's Statement of Additional Material Facts and all facts and pleadings of record, respectfully showing the Court the following:

**ARGUMENT AND CITATION OF AUTHORITY**

**I. Plaintiff's Cited Evidence Does Not Establish That Trafficking Occurred, Nor Precludes Defendants From Arguing That The Elements Of Sex Or Labor Trafficking Under The TVPRA Have Not Been Met**

1

A.H. argues in her response that it has been conclusively established that both sex and labor trafficking did occur within the definitions of the TVPRA, including the exchange of something of value—or at the very least, that a jury could find that they occurred—on four bases: (1) Tiwari's guilty plea to labor trafficking under the TVPRA's definition (Doc. 75, p. 12); (2) Tiwari's alleged threats that he would report A.H.'s drug use to authorities such that she would not get her child back (Id.); (3) that Tiwari pushed A.H. and that he and Bollepalli both yelled at and threated to fire her if she did not do her job (Id., p. 13); and (4) the DHS investigator opined that both sex and labor trafficking occurred (Id.). The Defendants address each of these in turn.

First, A.H.'s reliance on Tiwari's guilty plea, here and throughout her Response, is misplaced as to evidence against the Defendants in this civil action, neither of which is Tiwari himself. A.H.'s argument amounts to an assertion of estoppel—that because Tiwari, who is not a party to this suit, entered a criminal guilty plea to labor trafficking, the labor trafficking (and the sex trafficking, to which Tiwari did *not* plea guilty) must have occurred, and the Defendants here cannot dispute it. But "to invoke collateral estoppel [A.H.] must demonstrate four elements: (1) the issue at stake must be identical to the one involved in the prior litigation; (2) the issue must have been actually litigated in the prior suit; (3) the determination of the issue in the prior litigation must have been a critical and necessary part of the judgment in that action; and (4) the party against whom the earlier decision is asserted must have

2

had a full and fair opportunity to litigate the issue in the earlier proceeding." Matter of Stewart, 186 B.R. 322, 325 (Bankr. M.D. Ga. 1995) (citation and quotations omitted). The only common issue between this matter, and Tiwari's criminal trial, was the alleged labor trafficking of A.H.; no other claims arising in this case (i.e., sex trafficking or negligence/ premises liability) were litigated therein. Further, even if they had been, neither Bollepalli nor Carson Loop were parties to those proceedings and has no opportunity to litigate therein the issues before the Court now, such that they can be held to civil liability on the establishment, if any, of Tiwari's criminal liability.

Second, as for Tiwari's alleged threats that A.H. would not get her child back, A.H. cites no legal authority for the proposition that the relationship between A.H. and her child—or the prospective loss thereof—is a "thing of value" within the meaning of the TVPRA (as opposed to the emotional value of relationships common to all people), as opposed to, for example, money or goods. It was certainly not something that the Defendants herein gave or received, which is the requirement for liability to attached under the TVPRA, as discussed in the Defendants' principal brief.

Third, Tiwari allegedly pushing A.H., or Tiwari or Bollepalli yelling at her for not doing her job, is similarly not an "exchange" of anything. To the extent, if any, that Bollepalli yelled at A.H. for failing to change mattress covers or anything similar

3

(A.H. Dep. At 41:19-21), these were the job duties to which A.H. had indisputably already agreed when coming to work at the Budgetel. However improvident Bollepalli's tone might have been, there is nothing suggesting that Bollepalli's actions rose to the level of threat or force *to obtain* A.H.'s labor (as the TVPRA requires)—she had already agreed to provide that labor in exchange for her pay.

Fourth, the DHS investigator's conclusory opinions that A.H. was the victim of sex or labor trafficking is neither here nor there. It is inadmissible hearsay, since A.H. is offering it as an out of court statement to prove the truth of the matter asserted (that the trafficking did in fact occur). See Fed. R. Civ. P. 801. Moreover, the agent testified that his findings were based solely on what A.H. or others told him, making his report double hearsay. (Rives Dep. At 129:8-16). This does not establish the occurrence of the underlying events such that the Defendants here are prevented from disputing them.

## II. The Benefit Defendants Received Was From Mutually Agreed Paid Labor, Not Trafficking

A.H.'s sole identified "benefit" to the Defendants in this case is the receipt of her labor and income from her (discounted) rent. (Doc. 75, pp. 13-14).

First, A.H.'s assertion that her compensation and rent arrangement was a wash—such that A.H. netted *nothing* over the course of her employment—is incorrect; as her pay stubs show, she was paid $350/week, from which the $150 for her room was deducted, netting her some $200 per week. (See Exhibit, pay stubs

from February 2021). The Defendants received the benefit of her labor in an arms-length transaction from employer to employee, not through trafficking nor deploying any threats *by them* to get her to stay there. A.H.'s trafficking claims fail because the benefit of her labor, and income from her room rent, was not a benefit *as a consequence of* her being trafficked.

Notably, A.H. says nothing of any benefit inuring to the Defendants from the *sexual* encounters between Tiwari and A.H. There being no such benefit, clearly A.H.'s sex trafficking claims must fail on the "knowingly benefit" prong of the TVPRA analysis.

### III. The Mere Fact That The Defendants Participate In "A Venture" Of Running A Business, Without More, Does Not Meet The Joint Venture Requirement For Purposes Of The TVPRA Because It Was Not In Furtherance Of *Trafficking*

A.H. urges the Court that all she has to show to establish liability under the TVPRA is that (1) a joint venture, of any kind, existed; and (2) a participant, contractor, or employee in that venture himself engaged in trafficking—without any nexus between the individual gratification of the alleged trafficker and the otherwise unrelated, pre-existing business venture. (Doc. 75, pp. 14-15). But this is incorrect— the venture in question must be a *trafficking* venture. And no matter how much A.H. may dislike the binding precedent of the Eleventh Circuit's recent decision in K.H. v. Riti, Inc., No. 23-11682, 2024 WL 505063, at *3 (11th Cir. Feb. 9, 2024) (See Id.), the Eleventh Circuit has been clear that the mere fact that an agent of a business

5

profits from trafficking does not *ipso facto* establish a joint venture *with* that business *in the trafficking*, unless the business actually does something in furtherance of the *trafficking* enterprise. The Eleventh Circuit in Riti expressly rejected the very framework A.H. insists upon here: "Riti argues that we should use the framework the district court used to determine whether K.H. satisfies the second element. That test is whether K.H. alleged that Riti and Laye had (1) a "direct association" or (2) a "continuous business relationship." Because this test is not set out in the statute or described in our caselaw, we decline to follow it." K. H. v. Riti, Inc., No. 23-11682, 2024 WL 505063, at *2, n. (11th Cir. Feb. 9, 2024). The "continuous business relationship" between Tiwari and the Defendants, however characterized, does not in itself allow A.H.'s claims to survive summary judgment, because there is no evidence that the motel business or Bollepalli took part in the alleged trafficking activities of Tiwari.

Since Riti, this Court has at least twice reiterated the principles articulated by the Eleventh Circuit, granting summary judgment to TVPRA-claims defendants.

In C.B. v. Naseeb Invs., Inc., 748 F. Supp. 3d 1338, 1361–62 (N.D. Ga. 2024), this Court considered a number of established facts, including that the alleged trafficker was known by his landlord as a sex offender and had been renting rooms for a long time, and that the Defendants' employees actually observed the plaintiff with persons who came to the property to engage in sexual activities as she was being

trafficked. Nevertheless, as required by established authority, this Court granted summary judgment. The Court laid out the facts, and its conclusions, thus:

> 1. Chappell was known by Defendant to be a sex offender, as evidenced by his parole notes, which indicated his parole officer called the front desk and was told he was staying there and his room number, as well as the fact that his room was moved to an area of the hotel consistent with where other sex offenders were placed;
> 2. Chappell requested a second room right next to his own room on a per-night basis and Defendant apparently heeded Chappell's instruction that its housekeeping staff not clean the second room;
> 3. On the same day that Chappell first rented the second room, a vehicle dropped Plaintiff off out front at night — in view of the front desk monitor — with Chappell, an older man of a different race who was a known sex offender;
> 4. Plaintiff's presence at the hotel with Chappell was conspicuous enough that someone called her room and asked if she was with a "white man" (Chappell) and if she was okay;
> 5. A housekeeper saw her with one of the "Johns" while she held open the door during his room search; and
> 6. Police came to Chappell's room at least twice on June 22, 2010, shortly after he had rented (and renewed the rental for) the second room.
>
> Plaintiff also notes that Chappell called her to scold her for making too much noise after John #1 came to her room, and that John #4 "got loud" with her, both of which suggest that a hotel employee could have heard what was going on in the room — just like the unknown person who called her room to inquire if she was okay. One of Plaintiff's experts, Alan Tallis, stated that in his view there were multiple red flags that were indicative of sex trafficking in Plaintiff's case, but he specifically identified Chappell's rental of the second room as a "Bright Red Flag." (Alan Tallis Rule 26 Report, Doc. 120-17 at 18). In Mr. Tallis's words, "You don't rent an adjoining room to a known sex offender without making appropriate inquiry for the reasons a second room was needed." (*Id.*). Mr. Amin himself admitted that his staff made a mistake renting a second room to a sex offender without inquiring as to the reason for the rental. (Vic Amin Dep., Doc. 144 at 89-90). Yet none of these facts, standing alone or in in combination, apparently warranted any attention from Defendant.

> But **even construing all of those pieces of evidence in the light most favorable to Plaintiff** (as the Court must as this stage), **the Court is unable, under the current Eleventh Circuit standard, to find that there is a genuine issue of material fact as to whether Defendant knew or should have known that this specific "venture" was proceeding in violation of the TVPRA with regard to her trafficking**. None of the evidence indicates that Defendant knew or should have known that Plaintiff was being trafficked in this short timeframe — absent consideration of the broader pattern of ongoing practices at the hotel.

C.B. v. Naseeb Invs., Inc., 748 F. Supp. 3d 1338, 1361–62 (N.D. Ga. 2024) (emphasis supplied).

In G.W. v. Northbrook, this Court just a year ago granted summary judgment under considerably more blatant evidence of the defendant's knowledge—including evidence that the defendant actually observed sex trafficking taking place. In that case, even though the defendant took steps to further the interests *of a hotel enterprise*, the Court held that was not enough—the enterprise in question had to be a *trafficking* enterprise to impose liability under the TVPRA's joint venture requirement. Said this Court in Northbrook:

> Plaintiff's allegations here boil down to a contention that United financially benefitted from renting rooms to Plaintiff's traffickers and that it had knowledge of and turned a blind eye to sex trafficking at the property.
>
> However… United's **observation of prostitution and sex trafficking at its property is not the same as United participating in it.** Plaintiff must demonstrate that United acted pursuant to the common goal **of the trafficking venture**…. [T]here is no evidence that United took steps *with* Plaintiff's traffickers to facilitate the traffickers' illicit activities. Instead, the record presented here shows that United **took actions that would be expected to**

> **further the interest of a hotel enterprise**. This included renting rooms, collecting payment for the rooms and providing additional towels to guests upon request**.... It is not enough for the purposes of the participation prong that United knew or should have known that sex trafficking was occurring at its property. For participation liability to attach under § 1595(a), Plaintiff must show *more* than United's knowledge of the illicit activity and its rental of rooms to Plaintiff's traffickers**... [T]he point is that Plaintiff must show at least some connection between United's and her traffickers' actions, and she must show that United took steps to advance the object of that relationship. She has failed to do so.

G.W. v. Northbrook Indus., Inc., 739 F. Supp. 3d 1243, 1250–51 (N.D. Ga. 2024), reconsideration denied, No. 1:20-CV-05232-JPB, 2025 WL 494620 (N.D. Ga. Feb. 13, 2025) (emphasis supplied).

In sum, the mere fact that Tiwari was involved in the operation *of the Budgetel* with the Defendants, does NOT ipso facto meet the TVPRA's joint venture requirement. A.H.'s claims fail this critical element on the undisputed facts, and summary judgment on the TVPRA sex and labor trafficking claims is warranted.

**IV. There Is No Evidence Of Defendants Having "Knowingly Facilitated" The Alleged Trafficking**

A.H. argues in conclusory fashion that the Defendants knowingly harbored her as an employee and, without citation to the record, "knowingly benefitted" from Tiwari's actions. (Doc. 75, pp. 17-19). A.H. reiterates her reliance on Tiwari's guilty plea, and the Special Agent's affidavit in support of prosecuting Tiwari wherein he opined that A.H. was trafficked in exchanged for a thing of value—namely, a room at the Budgetel. (Id.). But for the reasons laid out in more detail above, Tiwari's guilty plea does not establish civil liability for the Defendants, and the Agent's knowledge

9

is hearsay, based only on what he was told by others. Moreover, the cited portion of the Agent's affidavit that the government "would prove" that Tiwari recruited A.H. for the purpose of obtaining her labor through force in exchange for a room at the Budgetel is an ultimate legal conclusion—and a merely anticipated one at that—which is not admissible to create a fact issue on summary judgment. See generally, e.g., Ojeda v. Louisville Ladder, Inc., 410 Fed. Appx. 213 (11th Cir. 2010).

There being no admissible evidence of knowing facilitation of A.H.'s alleged trafficking *by these Defendants*, summary judgment is proper.

## V. Defendants Lacked Actual Or Constructive Knowledge That Any Violation Of The TVPRA Occurred

A.H. argues that Tiwari indisputably trafficked her, based on his guilty plea; and that his knowledge (under Georgia law) is automatically imputed to the Defendants, since Tiwari was an agent of Carson Loop. (Doc. 75, pp. 18-19). She further argues that the Defendants had independent, constructive knowledge of trafficking, because Bollepalli had the opportunity—if he had gone looking—to view photos and videos of oral sex on the hotel's computers and various paraphernalia that Tiwari stashed in the motel safe. (Id., pp. 19-20). She also repeats her allegations that Bollepalli yelled at her and that he observed Tiwari push her. (Id.).

As a first matter, the imputation of liability under Georgia tort law for negligence claims does not apply to the particularized federal statutory framework of the TVPRA, which has an independent body of precedent addressing the "knowing"

element for sex trafficking claims and is discussed throughout here and in Defendants' initial brief. Further regarding the substance of A.H.'s argument:

Tiwari's guilty plea, the yelling, and the pushing are addressed above, and the Defendants reincorporate their arguments—that is, that the guilty plea does not conclusively establish the knowledge of the Defendants, and that there is no connection between the yelling/ pushing and *trafficking*, as opposed to an unpleasant or abrasive workplace (and, perhaps, battery on Tiwari's part).

As for the alleged paraphernalia, photos, and videos: there is no evidence in the record that the files on the computer were readily visible to anyone using the computer, let alone Bollepalli. Nor, for that matter, is there any evidence that Bollepalli actually viewed them, or that, if he had, he was compelled to conclude that they depicted evidence of *trafficking*, as opposed to (for example) collections of pornography or otherwise consensual private acts. There is no evidence that he ever discussed them or was informed about them by Tiwari or anyone else. There is also no evidence that Bollepalli had any reason to access the safe where Tiwari allegedly stored paraphernalia. And even if there were, there is no evidence that Bollepalli as a layperson would know, or should know, that they pointed to sex or labor trafficking. A.H. cannot point to a disputed issue of fact to establish constructive, let alone actual, notice *of trafficking* on the Defendants' parts. See Riti, No. 1:22-CV-3404-MHC, 2023 WL 3644224, at *3 (N.D. Ga. Apr. 17, 2023) (requiring "direct association" in

11

order for knowledge to be imputed). A.H.'s claims fail the "knowing" element of the TVPRA, whether actual or constructive, as well.

## V. The Evidence Of Prior Generalized Criminal Activity On The Premises Cannot Establish That Tiwari's Actions Were Reasonably Foreseeable To The Defendants

A.H. asserts that Tiwari's alleged actions—forcing her to perform oral sex on him, and trafficking her labor through various threats—were reasonably foreseeable to the Defendants based on Georgia law precedent that (1) the fact that security measures are taken by a proprietor are, alone, enough for a jury to infer risks to invitees; and (2) that general prior knowledge of other criminal acts under the totality of the circumstances makes a further, particular criminal act foreseeable. (Doc. 75, pp. 20-22).

What A.H.'s argument ignores is that there a specific carve-out for criminal acts of a third party in Georgia law, which requires a higher showing to establish notice. The proprietor is insulated from liability, *unless* he has sufficient reason to anticipate "**the** criminal act" ultimately at issue. Georgia CVS Pharmacy, LLC v. Carmichael, 316 Ga. 718, 711 (2023) (emphasis supplied). And this reason he can only acquire from prior criminal acts, if they are "substantially similar" to the act at issue. Id. There is no evidence here that Bollepalli actually knew of any prior criminal acts which were "substantially similar" to either the alleged coerced sexual acts between Tiwari or A.H., nor any forced labor or other form of labor trafficking—in

12

fact, quite the opposite; the undisputed fact is that, although Bollepalli reviewed some prior police reports, he never saw reports of drug activity, drug sales, or prostitution in the reports he actually reviewed. (Bollepalli Dep. At 64:20-23). Since the undisputed facts show that Bollepalli in fact did not know of any substantially similar prior criminal acts, the Defendants are entitled to summary judgment.

### VI. Plaintiff's Nuisance Claims Based On A Theory Of Defendants' Control Of The Premises Do Not Survive

Though lengthy, A.H.'s argument here boils down to: "Defendants controlled the premises, and the trafficking happened there by the acts of their agent, therefore those acts are the Defendants' acts." (Doc. 75, pp. 22-25). She relies on the assumption that the Budgetel here was in fact a "lewd house" and therefore a nuisance per se—which by definition is one where prostitution or sex trafficking occur, thereby burying her conclusion (that the underlying trafficking occurred and the Defendants knew it) within her premise. (Id.). But in all of this, A.H. ignores the requirement that, for liability to attach to a proprietor, he must be the *cause or concurrent cause* of the nuisance. Sumitomo Corp. of America v. Deal, 256 Ga.App. 703 (2002). There is no evidence in this case that Bollepalli or Carson Loop, for example, *instructed* Tiwari to force A.H. into any sexual act, nor to threaten her. Although such matters may be left to a jury *when the facts are disputed*, there is no disputed material fact from which a reasonable jury could infer causation in this case—there is nothing to which a link between the actions or instructions of Bollepalli or Carson Loop, and

13

the alleged acts of Tiwari, could be established—and summary judgment is appropriate.

## VII. There Are No Facts Supporting Punitive Damages Or Fees, Because Defendants' Arguments Are Made In Good Faith And Reasonably Supported By Law

A.H. argues, without citation to any applicable legal precedent containing analogous facts, arguments, or procedure to those of this case, that a jury could award her attorney's fees and punitive damages. (Doc. 75, p. 25). A.H. is incorrect. All she has had to do is proffer argument and respond to the Defendants' motion for summary judgment. And that motion argues in good faith, at its core, that under the *analytical framework* for trafficking claims under the TVPRA, on the facts of this case (including that A.H. never reported any complaints to the Defendants), the undisputed facts show that one or more *required elements* of A.H.'s claims cannot be established at trial. See generally Doc. 72-1. A.H. cannot establish that she is entitled to punitive damages or attorney's fees from these Defendants, and summary judgment should be granted.

## CONCLUSION

For the foregoing reasons and those outlined in the Defendants' initial brief, the Defendants respectfully request that their Motion for Summary Judgment be GRANTED as to each and every claim asserted against them in this civil action.

## CERTIFICATE OF TYPE SIZE AND STYLE

The undersigned hereby certifies that the foregoing was prepared in Times New Roman 14-point font and complies with the page limitations of this Court's Local Rules.

Respectfully submitted this 13th day of March, 2026.

                                          **HALL BOOTH SMITH, P.C.**

                                          */s/ Jacob Stalvey O'Neal*
                                          PHILLIP E. FRIDUSS
                                          Georgia Bar No. 277220
                                          JACOB STALVEY O'NEAL
                                          Georgia Bar No. 877316

                                          *Counsel for Defendants*

191 Peachtree Street, N.E.
Suite 2900
Atlanta, GA 30303-1775
Tel: 404-954-5000
Fax: 404-954-5020
Email: pfriduss@hallboothsmith.com
Email: joneal@hallboothsmith.com

# IN THE UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF GEORGIA
# ROME DIVISION

| | |
|---|---|
| A.H., <br><br> Plaintiff, <br><br> v. <br><br> CARSON LOOP ESM, LLC D/B/A BUDGETEL, and SRINIVAS BOLLEPALLI, <br><br> Defendants. | CIVIL ACTION FILE <br> NO. 4:24-cv-00224-WMR |

## CERTIFICATE OF SERVICE

I hereby certify that I have this day served the following counsel of record in this case with a true and correct copy of the foregoing **Reply in Support of Defendants' Motion for Summary Judgment** upon all parties to this matter by depositing a true copy of same in the U.S. Mail, proper postage prepaid, addressed to counsel of record as follows and/or filing said document with the CM/ECF system which will automatically send electronic notification to the following:

| | |
|---|---|
| Peter A. Law, Esq. | Patrick J. McDonough, Esq. |
| E. Michael Moran, Esq. | Jonathan S. Tonge, Esq. |
| Denise D. Hoying, Esq. | Andersen, Tate & Carr, P.C. |
| Law & Moran | One Sugarloaf Centre |
| 563 Spring Street, N.W. | 1960 Satellite Boulevard |
| Atlanta, GA 30308 | Suite 400 |
| pete@lawmoran.com | Duluth, GA 30097 |
| mike@lawmoran.com | pmcdonough@atclawfirm.com |
| denise@lawmoran.com | jtonge@atclawfirm.com |

Michael C. Kendall, II
**KENDALL LEGAL, LLC**
3152 Golf Ridge Drive
Suite 201
Douglasville, GA 30135
michael@kendall-legal.com
*Co-Counsel for Defendants*

Respectfully submitted this 13th day of March, 2026.

**HALL BOOTH SMITH, P.C.**

*/s/ Jacob Stalvey O'Neal*
PHILLIP E. FRIDUSS
Georgia Bar No. 277220
JACOB STALVEY O'NEAL
Georgia Bar No. 877316

*Counsel for Defendants*

191 Peachtree Street, N.E.
Suite 2900
Atlanta, GA 30303-1775
Tel: 404-954-5000
Fax: 404-954-5020
Email: pfriduss@hallboothsmith.com
Email: joneal@hallboothsmith.com