IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ROME DIVISION

| | | |
|---|---|---|
| A.H., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION FILE |
| | ) | NO. 4:24-CV-00224-WMR |
| CARSON LOOP ESM, LLC d/b/a BUDGETEL, and SRINIVAS BOLLEPALLI, | ) | |
| | ) | |
| Defendants. | ) | |

**CONSOLIDATED PRETRIAL ORDER**

1.

There are no motions or other matters pending for consideration by the court except as noted:

**Plaintiff: Plaintiff anticipates filing Motions *in limine* and/or *Daubert* motions (to be filed 14 days before the pre-trial conference).**

**Defendants: Defendants: Defendants anticipate filing and serving a subpoena to the United States Department of Corrections, as well as any requisite motions, to secure appearance for trial as a witness Shreesh Tiwari, who is currently in custody of the Department, once a trial date is set.**

**Defendants will file motions in limine and/or Daubert motions 14 days prior to the pretrial conference as indicated in the Court's Standing Order.**

2.

All discovery has been completed, unless otherwise noted, and the court will not consider any further motions to compel discovery. (Refer to LR 37.1B). Provided there is no resulting delay in readiness for trial, the parties shall, however, be permitted to take the depositions of any persons for the preservation of evidence and for use at trial.

**Discovery is complete. The parties will cooperate in scheduling trial depositions, if any.**

3.

Unless otherwise noted, the names of the parties as shown in the caption to this Order and the capacity in which they appear are correct and complete, and there is no question by any party as to the misjoinder or non-joinder of any parties.

**There are no issues regarding the names of the parties and joinder.**

4.

Unless otherwise noted, there is no question as to the jurisdiction of the court; jurisdiction is based upon the following code sections. (When there are multiple claims, list each claim and its jurisdictional basis separately.)

**This Court has subject matter jurisdiction over this lawsuit pursuant to 28 U.S.C. § 1331 because Plaintiff asserts claims arising under 18 U.S.C. § 1595, and pursuant to 28 U.S.C. § 1367 because Plaintiff's state law claims form part of the same case or controversy as Plaintiff's federal law claims. There is no dispute as to jurisdiction.**

5.

The following individually-named attorneys are hereby designated as lead counsel for the parties:

**Plaintiff:**

**Peter A. Law**
**Law & Moran**
**563 Spring Street, NW**
**Atlanta, Georgia 30308**
**Phone: (404) 814-6960**
**Fax: (404) 842-7710**
**Pete@LawMoran.com**

**Mike Moran, Denise Hoying, Pat McDonough, and Jon Tonge will also participate substantially in the trial of this matter.**

**Mike@LawMoran.com**
**Denise@LawMoran.com**
**Pmcdonough@atclawfirm.com**
**Jtonge@atclawfirm.com**

**Defendants:**

**Jacob Stalvey O'Neal**
**Hall Booth Smith, P.C.**
**191 Peachtree St. NE**
**Suite 2900**
**Atlanta, GA 30303**
**Phone: (404) 954-5000**

joneal@hallboothsmith.com

**John E. Hall II of Hall Booth Smith, P.C. may also participate substantially in the trial of this matter.**

**Pamela Lee and Taylor Orgeron of Swift, Currie, McGhee & Hiers, LLP, will also participate substantially in the trial of this matter.**

**Pamela Lee**
**Tayor Orgeron**
**Swift, Currie, McGhee & Hiers, LLP**
**1420 Peachtree St. NE, # 800**
**Atlanta, GA 30309**
**(404) 874-8800**
**Pamela.Lee@swiftcurrie.com**
**Taylor.Orgeron@swiftcurrie.com**

6.

Normally, the plaintiff is entitled to open and close arguments to the jury. (Refer to LR39.3(B)(2)(b)). State below the reasons, if any, why the plaintiff should not be permitted to open arguments to the jury.

**There is no reason to deviate from the normal practice.**

7.

The captioned case shall be tried (__**X**__) to a jury or (_____) to the court without a jury, or (_____) the right to trial by jury is disputed.

8.

State whether the parties request that the trial to a jury be bifurcated, i.e. that the same jury consider separately issues such as liability and damages. State briefly the reasons why trial should or should not be bifurcated.

**Plaintiff: The availability of punitive damages is a matter of substantive Georgia law under O.C.G.A. § 51-12-5.1 but bifurcation is a procedural mechanism, so Fed.R.Civ.P. 42(b) controls and bifurcation is not mandatory.**

**The trial of this matter should not be bifurcated pursuant to Fed.R.Civ.P. 42(b) as bifurcation would cause unnecessary delay. The same or similar evidence will be presented as to liability, compensatory damages, and punitive damages, so there is no reason to bifurcate the issue of punitive damages in this case.**

**Defendants: Defendants request bifurcation on the issue of punitive damages. Fed. R. Civ. P. 42(b); Lariscy v. Coleman Co., Inc., No. 4:08-CV-0123-HLM, 2010 WL 11598167, at *5 (N.D. Ga. Feb. 23, 2010) (holding trial bifurcation into liability and punitive damages phases is appropriate and precluding plaintiff from mentioning punitive damages during opening statements or until the court concludes that plaintiff has presented sufficient evidence to support such claim).**

9.

Attached hereto as Attachment "A" and made a part of this order by reference are the questions which the parties request that the court propound to the jurors concerning their legal qualifications to serve.

**<u>Plaintiff</u>: See Plaintiff's Attachment A, which includes qualifications of Defendants' insurers. *See, e.g., Mack Trucks, Inc. v. Arrow Aluminum Castings Co.*, 510 F.2d 1029, 1034 (5th Cir. 1975)[1] ("Under the Georgia rule, the jury must be qualified as to an insurer if the company has a 'pecuniary interest' in the outcome.").**

**<u>Defendants</u>: See Defendants' Attachment A.**

10.

Attached hereto as Attachment "B-1" are the general questions which plaintiff wishes to be propounded to the jurors on voir dire examination.

Attached hereto as Attachment "B-2" are the general questions which defendants wish to be propounded to the jurors on voir dire examination.

---

[1] *See Bonner v. City of Prichard*, 661 F.2d 1206, 1207 (11th Cir. 1981) (en banc) (holding that all decisions of the "old Fifth" Circuit handed down prior to the close of business on September 30, 1981, are binding precedent in the Eleventh Circuit).

Attached hereto as Attachment "B-3", "B-4", etc. are the general questions which the remaining parties, if any, wish to be propounded to the jurors on voir dire examination.

The court shall question the prospective jurors as to their address and occupation and as to the occupation of a spouse, if any. Counsel may be permitted to ask follow-up questions on these matters. It shall not, therefore, be necessary for counsel to submit questions regarding these matters. The determination of whether the judge or counsel will propound general voir dire questions is a matter of courtroom policy which shall be established by each judge.

11.

State any objections to Plaintiff's voir dire questions:

**Defendants join Plaintiff's request for leave to submit specific objections to voir dire questions 60 days in advance of trial. Subject to the foregoing, Defendants object to the following:**

- **Plaintiff's "non-argumentative statement of the case." This statement to the jury is inappropriate, assumes the A.H. is entitled to damages before the same has been proven, references "assault" which is not a claim brought in this case, references medical damages of which there**

**are none, references punitive damages before the same has been proven, and is otherwise cumulative of the instructions and charges to be given to the jury.**

- **Question 1. This question is improper because it assumes that the alleged actions and injuries occurred, but does not specify that they are "alleged" and have not yet been proven. Moreover, any reference to "assault" is irrelevant and highly prejudicial, as there is no claim for "assault" in this case and "assault" is not an element of any claim Plaintiff must prove.**

- **Question 13. This question is vague on the measurement and definition of "vulnerable", assumes an ultimate issue of causation Plaintiff has not proved, and is designed to inflame or impassion the jury.**

- **Question 18 This question is improper because there is no evidentiary or other link between the referenced "nationally known cases" and is designed to inflame or impassion the jury.**

- **Question 20. This question is improper because there is no relevant link between the referenced Department of Health shutdown and the claims made by Plaintiff in this case.**

- **Question 21. This question is improper because there is no relevant link between the referenced Department of Health shutdown and the claims made by Plaintiff in this case.**

- **Question 22. This question is improper because there is no relevant link between the referenced Department of Health shutdown, or any other shutdown, and the claims made by Plaintiff in this case. Moreover, general shutdowns of hotels "for any reason" is irrelevant to the issues in this case.**

State any objections to Defendants' voir dire questions:

**Plaintiff requests leave to submit specific objections to voir dire questions 60 days in advance of trial. Subject to the foregoing, Plaintiff objects to Defendants' voir dire questions as largely unnecessary and irrelevant, and that the questions submitted by Defendants are designed to waste the Court and jury's time in an effort to manufacture strikes based on questions that**

**every sane person on earth would answer yes to. For example: "Do you believe that sex trafficking is a danger to the community?" Is anyone going to say no? And if not, is that cause to strike? For this reason, Plaintiff objects.**

**Further, Plaintiff objects to Defendants' proposed voir dire question 25 and any reference to Plaintiff's conviction for drugs. This question is entirely irrelevant to this case, as it occurred after the events at issue. Moreover, this question is highly prejudicial and Plaintiff intends to file a Motion in Limine to that effect in accordance with the Court's instructions.**

**Plaintiff does not object to Defendants' proposed voir dire questions 18 and 27 so long as it is clear that Defendants are the ones asking those questions.**

State any objections to the voir dire questions of the other parties, if any:

**Not Applicable.**

12.

All civil cases to be tried wholly or in part by jury shall be tried before a jury consisting of not less than six (6) members, unless the parties stipulate otherwise. The parties must state in the space provided below the basis for any requests for additional strikes. Unless otherwise directed herein, each side as a group will be

allowed the number of peremptory challenges as provided by 28 U.S.C. § 1870. See Fed.R.Civ.P. 47(b).

**Plaintiff: Plaintiff requests a six (6) person jury. Plaintiff does not require an alternate and will proceed with fewer than six jurors, if necessary, but one alternate should be sufficient if Defendants require it. Plaintiff does not request additional strikes.**

**Defendants: Defendants request trial by a full jury of twelve (12) and requests sufficient alternates to seat a full jury of twelve (12) for trial. Defendant objects to proceeding with a jury of fewer than twelve (12). Defendants do not request any additional strikes.**

13.

State whether there is any pending related litigation. Describe briefly, including style and civil action number.

**There is no pending related litigation.**

14.

Attached hereto as Attachment "C" is plaintiff's outline of the case which includes a succinct factual summary of plaintiff's cause of action and which shall be neither argumentative nor recite evidence. All relevant rules, regulations, statutes, ordinances, and illustrative case law creating a specific legal duty relied

upon by plaintiff shall be listed under a separate heading. In negligence cases, each and every act of negligence relied upon shall be separately listed. For each item of damage claimed, plaintiff shall separately provide the following information: (a) a brief description of the item claimed, for example, pain and suffering; (b) the dollar amount claimed; and (c) a citation to the law, rule, regulation, or any decision authorizing a recovery for that particular item of damage. Items of damage not identified in this manner shall not be recoverable.

**See Attachment C.**

15.

Attached hereto as Attachment "D" is the defendant's outline of the case which includes a succinct factual summary of all general, special, and affirmative defenses relied upon and which shall be neither argumentative nor recite evidence. All relevant rules, regulations, statutes, ordinances, and illustrative case law relied upon as creating a defense shall be listed under a separate heading. For any counterclaim, the defendant shall separately provide the following information for each item of damage claimed: (a) a brief description of the item claimed; (b) the dollar amount claimed; and (c) a citation to the law, rule, regulation, or any decision authorizing a recovery for that particular item of damage. Items of damage not identified in this manner shall not be recoverable.

**See Attachment D.**

16.

Attached hereto as Attachment "E" are the facts stipulated by the parties. No further evidence will be required as to the facts contained in the stipulation and the stipulation may be read into evidence at the beginning of the trial or at such other time as is appropriate in the trial of the case. It is the duty of counsel to cooperate fully with each other to identify all undisputed facts. A refusal to do so may result in the imposition of sanctions upon the noncooperating counsel.

**See Attachment E.**

17.

The legal issues to be tried are as follows:

**Plaintiff:**

**(1) Whether Defendants are liable to Plaintiff under the TVPRA, 18 U.S.C. § 1595 for sex trafficking;**

**(2) Whether Defendants are liable to Plaintiff under the TVPRA, 18 U.S.C. § 1595 for labor trafficking;**

**(3) Whether Defendants were negligent in violating O.C.G.A. § 51-3-1 by failing to use ordinary care to keep the premises safe;**

**(4) Whether Defendants were negligent in failing to properly inspect and maintain the premises;**

**(5) Whether Defendants were negligent in failing to warn of known hazards on the premises;**

**(6) Whether Defendant was negligent in failing to properly train and supervise employees in regard to the care of said premises;**

**(7) Whether Defendants were negligent in hiring, training, retaining, and supervising their employees, including but not limited to their onsite manager Shreesh Tiwari;**

**(8) Whether Defendants were negligent in entrusting the subject premises to their onsite manager Shreesh Tiwari;**

**(9) Whether Defendants are liable to Plaintiff for false imprisonment under Georgia law and O.C.G.A. § 51-7-20;**

**(10) Whether Defendants are liable to Plaintiff for negligent infliction of emotional distress under Georgia law;**

**(11) Whether Defendants are liable to Plaintiff for intentional infliction of emotional distress under Georgia law;**

**(12) Whether the Defendants are liable to Plaintiff for creating a public nuisance and/or a nuisance per se, in violation of O.C.G.A. §§ 41-1-1, 41-1-2, and 41-1-3;**

**(13) Whether Defendants were negligent in failing to comply with the notice provisions of O.C.G.A. § 16-5-47;**

**(14) Whether Defendants were willful or wanton in their failure to exercise ordinary care;**

**(15) Whether Defendants' actions and inactions reflect a conscious indifference to the consequences;**

**(16) The types and amounts of damages Plaintiff is entitled to recover, including all past, present and future compensatory, general and special damages, physical and mental pain and suffering, past, present, and future, and all general, consequential, compensatory, special damages, and any other damages permitted under the law and in the enlightened conscience of the jury;**

**(17) Whether and to what amount Plaintiff is entitled to punitive damages pursuant to O.C.G.A. 51-12-5.1; and**

**(18) Whether and to what amount Defendants are liable to Plaintiff for costs, expenses and reasonable attorneys' fees pursuant to the O.C.G.A. §§ 13-6-11, 9-l 1-68(e), 9-15-14, 18 U.S.C. § 1595, or any other applicable statute.**

**Defendants:**

**(1) Whether the actions of Shreesh Tiwari constituted labor trafficking of AH under 18 U.S.C.A. § 1589(a).**

**(2) Whether the actions of Shreesh Tiwari constituted sex trafficking of AH under 18 U.S.C.A. § 1595(a).**

**(3) Whether Defendant Carson Loop ESM LLC knowingly benefitted from the acts of Shreesh Tiwari so as to be liable for labor trafficking under 18 U.S.C.A. § 1589(a).**

**(4) Whether Defendant Srinivas Bollepalli knowingly benefitted from the acts of Shreesh Tiwari so as to be liable for labor trafficking 18 U.S.C.A. § 1589(a).**

**(5) Whether Defendant Carson Loop ESM LLC knowingly benefitted from the acts of Shreesh Tiwari so as to be liable for sex trafficking of AH under 18 U.S.C.A. § 1595(a).**

**(6) Whether Defendant Srinivas Bollepalli knowingly benefitted from the acts of Shreesh Tiwari so as to be liable for sex trafficking of AH under 18 U.S.C.A. § 1595(a).**

**(7) Whether Defendant Carson Loop ESM, LLC is liable for failure to keep premises safe under O.C.G.A. § 51-3-1.**

**(8) Whether Defendant Carson Loop ESM, LLC is liable for creating and maintaining a nuisance under O.C.G.A. § 41-1-1.**

**(9) Whether Defendant Carson Loop ESM, LLC is liable for failure to comply with the trafficking notice requirement of O.C.G.A. § 16-5-47.**

**(10) Whether Defendant Srinivas Bollepalli is liable for failure to keep premises safe under O.C.G.A. § 51-3-1.**

**(11) Whether Defendant Srinivas Bollepalli is liable for creating and maintaining a nuisance under O.C.G.A. § 41-1-1.**

**(12) Whether Defendant Srinivas Bollepalli is liable for failure to comply with the trafficking notice requirement of O.C.G.A. § 16-5-47.**

18.

Attached hereto as Attachment “F-1" for the plaintiff, Attachment “F-2" for the defendant, and Attachment “F-3", etc. for all other parties is a list of all the witnesses and their addresses for each party. The list must designate the witnesses whom the party will have present at trial and those witnesses whom the party may have present at trial. Expert (any witness who might express an opinion under Rule 702), impeachment and rebuttal witnesses whose use as a witness can be

reasonably anticipated must be included. Each party shall also attach to the list a reasonable specific summary of the expected testimony of each expert witness.

All of the other parties may rely upon a representation by a designated party that a witness will be present unless notice to the contrary is given ten (10) days prior to trial to allow the other party(s) to subpoena the witness or to obtain the witness' testimony by other means. Witnesses who are not included on the witness list (including expert, impeachment and rebuttal witnesses whose use should have been reasonably anticipated) will not be permitted to testify, unless expressly authorized by court order based upon a showing that the failure to comply was justified.

**The parties have conferred in good faith and attempted to identify all witnesses who might be called at trial. In the event either party seeks to call a witness not listed herein, the parties agree to identify all such witnesses as soon as possible and work with opposing counsel in good faith to avoid prejudice to any party.**

**See Attachment F-1 from Plaintiff.**

**See Attachment F-2 from Defendants.**

19.

Attached hereto as Attachment "G-1" for the plaintiff, "G-2" for the defendant, and "G3", etc. for all other parties are the typed lists of all documentary and physical evidence that will be tendered at trial. Learned treatises which are expected to be used at trial shall not be admitted as exhibits. Counsel are required, however, to identify all such treatises under a separate heading on the party's exhibit list.

Each party's exhibits shall be numbered serially, beginning with 1, and without the inclusion of any alphabetical or numerical subparts. Adequate space must be left on the left margin of each party's exhibit list for court stamping purposes. A courtesy copy of each party's list must be submitted for use by the judge.

Prior to trial, counsel shall mark the exhibits as numbered on the attached lists by affixing numbered yellow stickers to plaintiff's exhibits, numbered blue stickers to defendant's exhibits, and numbered white stickers to joint exhibits. When there are multiple plaintiffs or defendants, the surname of the particular plaintiff or defendant shall be shown above the number on the stickers for that party's exhibits.

Specific objections to another party's exhibits must be typed on a separate page and must be attached to the exhibit list of the party against whom the objections are raised. Objections as to authenticity, privilege, competency, and, to the extent possible, relevancy of the exhibits shall be included. Any listed document to which an objection is not raised shall be deemed to have been stipulated as to authenticity by the parties and shall be admitted at trial without further proof of authenticity.

Unless otherwise noted, copies rather than originals of documentary evidence may be used at trial. Documentary or physical exhibits may not be submitted by counsel after filing of the pretrial order, except upon consent of all the parties or permission of the court. Exhibits so admitted must be numbered, inspected by counsel, and marked with stickers prior to trial.

Counsel shall familiarize themselves with all exhibits (and the numbering thereof) prior to trial. Counsel will not be afforded time during trial to examine exhibits that are or should have been listed.

See Attachment G-1 from Plaintiff.

See Attachment G-2 from Defendants.

**Plaintiff requests leave to submit objections to exhibits 60 days in advance of trial, and objects to Defendants introducing any exhibits which**

**have not been produced in this case, including Plaintiff's employment records from Worskmart, Inc. and any Contract with Shreesh Tiwari.**

**Defendants join Plaintiff's request for leave to submit objections to exhibits 60 days in advance of trial, and object to Plaintiff introducing any exhibits which have not been produced in this case, including News Articles (No. 64) and any medical records concerning Plaintiff's treatment.**

20.

The following designated portions of the testimony of the persons listed below may be introduced by deposition:

**The parties have not yet decided which witnesses' testimony will need to be introduced by deposition because a trial date has not been set and the parties do not know which witnesses will be available to testify live at trial. Subject to the foregoing, see below.**

**<u>Plaintiff</u>: Plaintiff may introduce deposition testimony of any witness who may be unavailable to testify live at trial. In the event any witnesses are unavailable to testify at trial, counsel for Plaintiff will work with Defense counsel to designate portions of the witnesses' deposition testimony so the portions can be played or read at trial.**

**Further, the parties may take use-in-evidence depositions for any witnesses determined to be unavailable at trial and will designate portions of these depositions to be introduced at trial promptly upon receiving the deposition transcripts.**

**In further response and in an abundance of caution, Plaintiff identifies the following depositions taken to date, and note that they will remove all nonessential colloquy, comments by counsel, etc., in the event any portions of the depositions are played or read at trial:**

- **A.H. Volume I (pp. 6:20-213:20);**
- **A.H. Volume II (pp. 222:3-270:17);**
- **S.T. (pp. 6:19-285:18);**
- **Srinivas Bollepalli (pp. 6:7-149:3);**
- **Special Agent James Rives (pp. 7:18-145:13).**

**Defendants: Defendants may introduce deposition testimony of any witness who may be unavailable to testify live at trial. In the event any witnesses are unavailable to testify at trial, counsel for Defendants will work with Plaintiff's counsel to designate portions of the witnesses' deposition testimony so the portions can be played or read at trial.**

**Further, the parties may take use-in-evidence depositions for any witnesses determined to be unavailable at trial and will designate portions of these depositions to be introduced at trial promptly upon receiving the deposition transcripts.**

**In further response and in an abundance of caution, Defendants identify the following depositions taken to date, and note that they will remove all nonessential colloquy, comments by counsel, etc., in the event any portions of the depositions are played or read at trial:**

- **A.H. Volume I (pp. 6:20-213:20);**
- **A.H. Volume II (pp. 222:3-270:17);**
- **S.T. (pp. 6:19-285:18);**
- **Srinivas Bollepalli (pp. 6:7-149:3);**
- **Special Agent James Rives (pp. 7:18-145:13).**

Any objections to the depositions of the foregoing persons or to any questions or answers in the depositions shall be filed in writing no later than the day the case is first scheduled for trial. Objections not perfected in this manner will be deemed waived or abandoned. All depositions shall be reviewed by counsel and all extraneous and unnecessary matter, including non-essential colloquy of counsel,

shall be deleted. Depositions, whether preserved by stenographic means or videotape, shall not go out with the jury.

21.

Attached hereto as Attachments “H-1" for the plaintiff, “H-2" for the defendant, and “H-3", etc. for other parties, are any trial briefs which counsel may wish to file containing citations to legal authority concerning evidentiary questions and any other legal issues which counsel anticipate will arise during the trial of the case. Limitations, if any, regarding the format and length of trial briefs is a matter of individual practice which shall be established by each judge.

**The parties will submit trial briefs, if any, to the Court at least fourteen (14) days before the start of trial, and request permission to file trial briefs as necessary throughout the trial as additional evidentiary or legal questions arise.**

22.

In the event this is a case designated for trial to the court with a jury, requests for charge must be submitted no later than 9:30 a.m. on the date on which the case is calendared (or specially set) for trial. Requests which are not timely filed and which are not otherwise in compliance with LR 51.1, will not be considered. In addition, each party should attach to the requests to charge a short

(not more than one (1) page) statement of that party's contentions, covering both claims and defenses, which the court may use in its charge to the jury.

Counsel are directed to refer to the latest edition of the Eleventh Circuit District Judges Association's Pattern Jury Instructions and Devitt and Blackmar's Federal Jury Practice and Instructions in preparing the requests to charge. For those issues not covered by the Pattern Instructions or Devitt and Blackmar, counsel are directed to extract the applicable legal principle (with minimum verbiage) from each cited authority.

23.

If counsel desire for the case to be submitted to the jury in a manner other than upon a general verdict, the form of submission agreed to by all counsel shall be shown in Attachment "I" to this Pretrial Order. If counsel cannot agree on a special form of submission, parties will propose their separate forms for the consideration of the court.

**Plaintiff: A general verdict form will be sufficient, and Plaintiff attaches a proposed verdict form for the Court's review. Plaintiff objects to Defendants proposed verdict form as inconsistent with the law, and unnecessarily long, confusing, and prejudicial.**

**Defendants: Defendants submit the attached proposed verdict form and respectfully show that the same is necessary because (1) there are multiple defendants whose liability, if any, may be found independently of each other, and (2) there are multiple State and federal claims with separate, distinct elements which Plaintiff must prove.**

24.

Unless otherwise authorized by the court, arguments in all jury cases shall be limited to one-half hour for each side. Should any party desire any additional time for argument, the request should be noted (and explained) herein.

**Plaintiff: Plaintiff requests up to one hour in total for closing argument, as the injuries and losses are very significant. Plaintiff does not object to Defendants having an equal amount of time for closing arguments.**

**Defendants: Defendants likewise request up to one hour in total for closing argument, and/or an equal amount to that provided to Plaintiff in the Court's determination.**

25.

If the case is designated for trial to the court without a jury, counsel are directed to submit proposed finding of fact and conclusions of law not later than the opening of trial.

**Not applicable.**

26.

Pursuant to LR 16.3, lead counsel and persons possessing settlement authority to bind the parties met on __________, to discuss in good faith the possibility of settlement of this case. The court (_____) has or (__X__) has not discussed settlement of this case with counsel. It appears at this time that there is:

(_____) A good possibility of settlement.

(____) Some possibility of settlement.

(__X__) Little possibility of settlement.

(_____) No possibility of settlement.

27.

Unless otherwise noted, the court will not consider this case for a special setting, and it will be scheduled by the clerk in accordance with the normal practice of the court.

28.

**For Plaintiff: Plaintiff estimates that she will require 2 days to present her evidence. Plaintiff estimates total trial time is 3-4 days.**

**For Defendants: Defendants estimate that they will require 2 days to present their evidence. Defendants also estimate total trial time of 3-4 days.**

29.

IT IS HEREBY ORDERED that the above constitutes the pretrial order for the above captioned case (__**X**__) submitted by stipulation of the parties or (______) approved by the court after conference with the parties.

IT IS FURTHER ORDERED that the foregoing, including the attachments thereto, constitutes the pretrial order in the above case and that it supersedes the pleadings which are hereby amended to conform hereto and that this pretrial order shall not be amended except by Order of the court to prevent manifest injustice. Any attempt to reserve a right to amend or add to any part of the pretrial order after the pretrial order has been filed shall be invalid and of no effect and shall not be binding upon any party or the court, unless specifically authorized in writing by the court.

IT IS SO ORDERED this _______________ day of ______________________, 2026.

_____________________________________________
UNITED STATES DISTRICT JUDGE

Each of the undersigned counsel for the parties hereby consents to entry of the foregoing pretrial order, which has been prepared in accordance with the form pretrial order adopted by this court.

Respectfully submitted,

**LAW & MORAN**

*/s/ Denise D. Hoying*
Peter A. Law
Georgia Bar No. 439655
E. Michael Moran
Georgia Bar No. 521602
Denise D. Hoying
Georgia Bar No. 236494
*Attorneys for Plaintiff*

563 Spring Street, NW
Atlanta, Georgia 30308
Phone: (404) 814-3700
Facsimile: (404) 842-7710
Pete@lawmoran.com
Mike@lawmoran.com
Denise@lawmoran.com

**ANDERSEN, TATE & CARR, P.C.**

*/s/ Patrick J. McDonough*
Patrick J. McDonough
Georgia Bar No. 489855
Jonathan S. Tonge
Georgia Bar No. 303999
*Attorneys for Plaintiff*

One Sugarloaf Centre
1960 Satellite Boulevard, Suite 4000
Duluth, Georgia 30097
Phone: (770) 822-0900
Facsimile: (770) 822-9680
pmcdonough@atclawfirm.com
jtonge@atclawfirm.com

**HALL BOOTH SMITH, P.C.**

*/s/ Jacob Stalvey O'Neal*
Phillip E. Friduss
Georgia Bar No. 277220
Jacob Stalvey O'Neal
Georgia Bar No. 877316
*Attorneys for Defendants*

191 Peachtree Street, N.E.
Suite 2900
Atlanta, GA 30303
Phone: (404) 954-5000
Facsimile: (404) 954-5020
pfriduss@hallboothsmith.com
joneal@hallboothsmith.com

# ATTACHMENT "A"

The jury shall be qualified as to the following:

**Plaintiff:**

1. Does any member of the panel know or are you related to the Plaintiff's attorneys: Pete Law, Mike Moran, Denise Hoying, Pat McDonough, Jon Tonge, or Jennifer Webster?
2. Does any member of the panel know any employees of, or has any member of the panel or their immediate family worked for or been represented by the law firms of Law & Moran or Andersen, Tate & Carr?
3. Does any member of the panel know or are you related to the Defendants' attorneys: John Hall, Phil Friduss, Jacob O'Neal, Dana Woodall, Pamela Lee, Taylor Orgeron, Michael C. Kendall, or Michael C. Kendall, II?
4. Does any member of the panel know any employees of, or has any member of the panel or their immediate family worked for or been represented by the law firms of Hall, Booth, Smith, P.C., Swift, Currie, McGhee & Hiers, LLP, or Kendall Legal, LLC?
5. Are any of you an officer, director, employee, or shareholder of Western World Insurance Company?

6. Are any of you related to by blood or marriage to an officer, director, employee, or shareholder of Western World Insurance Company?
7. Does anyone know or are you related to Plaintiff A.H. in the case?
8. Does anyone know or are you related to Defendant Srinivas Bollepalli in the case?
9. Does anyone know of or ever worked with Defendant Carson Loops ESM, LLC d/b/a Budgetel in this case?
10. Does anyone know any of the following individuals who may be witnesses in this case? [Witnesses listed]
11. Does anyone believe you know anything about this case or that you have heard anything about this case before coming to Court today?
12. Is there any member of the panel who would not accept the law as I give it to you in my instructions even if you disagree with the law?
13. Is there any member of the panel who has any special disability that would make serving as a member of this jury difficult or impossible?
14. Does any juror hold any belief, religious or otherwise, which discourages or prevents jury service?

Plaintiff requests that their counsel be given the opportunity to conduct initial and follow-up voir dire, if this acceptable with the Court.

**Defendants:**

1. Is anyone not a citizen of the United States?

2. Is anyone under 18 years of age?

3. Have all of you resided in this judicial district for at least one (1) year?

4. Are all of you able to speak, read, write and understand the English language?

5. Do any of you suffer from any mental or physical infirmities which might prevent you from satisfactorily carrying out your duties as a juror?

6. Have any criminal charges been brought against you which are still pending in any state or federal court which carry a potential sentence of more than one year imprisonment?

7. Have any of you ever been convicted of a crime punishable by imprisonment for more than one year for which your civil rights have not been fully restored (e.g. are you still on probation or still due to serve prison time)?

8. Is any prospective juror an elected representative, officer, employee or former employee of Carson Loop ESM, LLC, Budgetel, Hall Booth Smith, P.C., Law & Moran, Andersen, Tate & Carr, P.C., Swift, Currie McGhee & Hiers, LLP, or Kendall Legal, LLC?

9. Is any prospective juror related by blood or marriage to anyone who currently

works or formerly worked for Carson Loop ESM, LLC, Budgetel, Hall Booth Smith, P.C., Law & Moran, Andersen, Tate & Carr, P.C., Swift, Currie McGhee & Hiers, LLP, or Kendall Legal, LLC?

10. Is any prospective juror related by blood or marriage to John Hall, Philip Friduss, or Jacob O'Neal with Hall Booth Smith, P.C.?

11. Is any prospective juror related by blood or marriage to Denise Hoying, F. Michael Moran, or Peter A. Law of Law & Moran?

12. Is any prospective juror related by blood or marriage to Jonathan Tonge, Patrick J. McDonough, or Jennifer Webster of Andersen, Tate & Carr, PC?

13. Is any prospective juror related by blood or marriage to Michael C. Kendall II with Kendall Legal, LLC?

14. Is any prospective juror related by blood or marriage to Pamela Lee or taylor Orgeron of Swift, Currie McGhee & Hiers, LLP?

15. Are any of you related by blood or marriage to the following people:

a. A.H. (full name to be read out to jury)

b. Srinivas Bollepalli

c. Shreesh Tiwari

d. READ WITNESS LISTS ATTACHED TO PRETRIAL ORDER

## ATTACHMENT "B-1"

**PLAINTIFF'S VOIR DIRE:**

In order to give context, Plaintiff requests the opportunity to give the following non-argumentative statement of the case:

This is a sex trafficking, labor trafficking, and negligence case brought by Plaintiff A.H., who alleges that Defendants' onsite motel manager trafficked, assaulted, and abused her while she lived and worked at Defendants' Budgetel in Cartersville from June 2020 until June 2021. You are being asked to determine who is liable for A.H.'s injuries and damages, and the value of her damages, including her pain and suffering, medical expenses, lost wages and income, emotional distress, mental anguish, punitive damages, and attorneys' fees.

**Voir Dire Questions:**

1. This case involves sex trafficking, labor trafficking, sexual assault, and abuse at Defendants' Budgetel hotel located 35 Carson Loop NW, Cartersville, Georgia. Is any member of the panel familiar with this hotel?
2. This Budgetel has been rebranded as the Heritage Inn – is anyone familiar with that hotel?
3. Has anyone here ever managed a hotel, or have any close friends or family members who have managed a hotel?

4. Has anyone here ever worked at a hotel or have any close friends or family members who have worked at a hotel?
5. In this case, Plaintiff A.H. alleges that Defendants' onsite hotel manager forced her to work long hours for no or very little pay. Have any of you ever been in a similar situation or know anybody who has?
6. In this case, Plaintiff A.H. alleges that Defendants' onsite hotel manager forced her to have unwanted sexual contact with him by manipulating her, threatening her, and physically abusing her. Have any of you ever been the victim of unwanted sexual contact or know anyone who has?
7. Is anyone here familiar with the term, issues presented, or concept of sex trafficking?
8. Does anyone know someone – either friend or family – who has been the victim of sex trafficking or labor trafficking?
9. Does anyone here know of anyone they have met who was were made to perform commercial sex through the use of force, fraud, or coercion?
10. Does anyone know someone who was targeted by another using violence, threats, lies, false promises or other forms of control or manipulation to keep victims performing labor or commercial sex?

11. Has anyone ever seen an establishment such as a hotel, brothel, massage parlor, strip club or truck stop that they believed were being used for sex or labor trafficking?
12. Have any of you or any of your close friends or family members had someone in a position of power use their position to get what they want?
13. Does anyone know a friend or family member who were so vulnerable that they had not choice but to comply with labor or sex trafficking demands?
14. Does anyone know a friend or family member that had an addiction or dependency such that other people could take advantage of, and exploit, such addiction or dependency?
15. Has anyone here been threatened with custody of their children if they did not perform or act a certain way, to include sexual acts or labor requirements?
16. Have any of you or any of your close friends or family members ever been the victim of psychological manipulation or isolation?
17. Has anyone ever been extorted by a person in a position of power?
18. Did anyone here follow the nationally known cases of Jeffrey Epstein, Harvey Weinstein or other powerful men accused of exploiting young vulnerable women?
19. Has anyone here ever lived at the place where you worked?

20. Has anyone ever stayed at a hotel that was shut down by the Department of Public Health for any reason?

21. Has anyone read any of the news articles about this specific Budgetel hotel being shut down by the Department of Public Health?

22. Have any of you ever stayed at a hotel that the city or county decided to shut down for whatever reason?

23. Have any of you ever been the victim of a crime?

24. Have any of you or any of your close friends or family members ever suffered from addiction?

25. Have any of you or any of your close friends or family members ever experienced homelessness?

26. Have any of you or any of your close friends or family members ever had to struggle and work hard to get back on your feet after challenging period in life?

27. Has anyone here ever worked at a place where their boss was abusive to multiple employees?

28. Has anyone here ever worked at a place where they felt like they couldn't leave for whatever reason, even though they wanted to?

29. Has anyone here, or perhaps have a close family member, who has self-medicated, whether it be Advil, Tylenol or something stronger for mental or physical conditions that they suffer from?
30. Is anyone a lawyer, or have a family member who is a lawyer?
31. Does anyone have any kind of legal background or have a family member with a legal background?
32. Is anyone here a counselor, or have a family member who is a counselor?
33. Has anyone or their immediate family members ever worked in the insurance industry?
34. Has anyone or their immediate family members ever served as a claims adjustor on cases?
35. Does anyone or their immediate family members work in the medical field or have any medical training?
36. Does anyone, as part of their job, have to set policies and procedures for safety of the company?
37. Have any of you had any safety training for any reason?
38. Is anyone responsible for training people underneath them?
39. Is anyone responsible for hiring employees at their company?

40. Has anyone heard anything so far that they think they may not be a fair and impartial juror?

41. The length of the trial is expected to be three to four days. Anyone have a conflict, like a plane ticket or something that they can't reschedule?

42. Does anyone disagree with the jury or court system in America?

43. Have any of you been involved in a lawsuit, whether as a Defendant or Plaintiff?

44. Is there any member of the jury panel who has any prejudice or feeling against these types of lawsuits?

45. Is there anyone who feels they could not listen to the evidence, listen to Judge Ray's instructions on the law, and deliberate in good faith?

46. Is there anyone who could not be fair and impartial for any reason?

Plaintiff requests the opportunity to ask any follow-up questions as appropriate due to the response to any question. Plaintiff also respectfully requests to submit a few additional voir dire questions as she prepares for trial.

**ATTACHMENT "B-2"**
**Defendants' Questions for Voir Dire**

1. Have you, or a family member, ever resigned from a position of employment?

2. Have you, or a family member, ever had an adverse employment action taken against you?

3. Have you, or a family member, ever been accused of misusing the resources of your employer?

4. Have you, or a family member, ever been accused of workplace misconduct?

5. Have you, or a family member, ever been disciplined for workplace misconduct?

6. Have you, or a family member, ever been the subject of an investigation for workplace misconduct?

7. Have you, or a family member, ever made a complaint of sexual harassment or sexual misconduct in the workplace?

8. Have you, or a family member, ever made a complaint regarding the conditions of your work environment?

9. Have you, or a family member, ever made a complaint regarding your compensation for employment?

10. Have you, or a family member, ever been self-employed?

11. Are you personally acquainted with anyone who has made a claim of sex trafficking?

12. Are you personally acquainted with anyone who has made a claim of labor trafficking?

13. Have you or a family member ever been employed in the hotel/ motel/ hospitality industry?

14. Have you ever used illegal drugs?

15. Have you or a family member ever been in custody of social services, such as the Department of Children and Family Services (DFACS)?

16. Have you or a family member ever lived in what you consider to be a high-crime area?

17. Have you or a family member ever stayed in a Budgetel motel?

18. Do you hold any racial biases?

19. Do you hold any views on the trustworthiness of alleged trafficking victims?

20. Do you hold any views on the trustworthiness of persons accused of trafficking?

21. Do you consider corporate entities or employers to be inherently biased

against the interest of employees?

22. Do you hold any views about the Budgetel brand of motels?

23. Do you hold any views about motels in general, as opposed to other forms of temporary lodging?

24. Have you or a family member ever spent time in an addiction recovery service?

25. Have you or a family member ever been convicted of possession of drugs?

26. Have you or a family member ever sought faith-based counseling services, other than from your local place of worship?

27. Do you have any sex or gender-based biases?

28. Does anyone or their family members or close friends work for a law firm?

    a. Which one(s)?

    b. In what role?

29. Have you or any member of your family owned a business?

    a. What kind of business?

    b. Where was it located?

    c. How many employees?

30. Have you ever managed a business?

    a. What kind of business?

    b. Where was it located?

    c. How many employees?

31. Do you use social media?

    a. Which ones?

    b. For what purpose?

32. Who relies on television news programs as their major source of news and information?

    a. What news outlet(s)?

33. Who relies on social media outlets as their major source of news and information?

    b. What online outlet(s)?

34. Do any of you know any other member of the jury panel?

35. Have any of you ever been disqualified from serving on a jury before?

36. Is there anything about the anticipated length or daily schedule or trial that presents a problem, whether it be personal, business, or health, that is significant enough that you feel the need to be excused from service on this jury?

37. Has anyone, or someone close to you, experienced significant financial hardship recently?

38. Have you or anyone in your family ever been employed by Budgetel?

    a. When?

    b. For how long?

    c. In what capacity?

    d. Why did you leave your employment?

    e. Were you satisfied with your experience there?

39. Has anyone ever stayed at a budget hotel, which is a small or midsize hotel that offers basic facilities and services for a low price?

    a. How was your experience?

40. Has anyone ever stayed at a Budgetel?

    a. How was your experience?

41. Have you ever had an experience (positive or negative) at a hotel or motel that would prevent you from being fair in this case?

    a. If so, please explain your experience.

42. Have you ever felt unsafe at a hotel/motel?

    a. If so, please explain.

43. Have you or anyone in your family ever worked in the hospitality industry,

such as restaurants, airlines, events?

a. When?

b. For how long?

c. In what capacity?

44. Have you ever posted an online review about a motel or hotel stay?

45. Have you ever relied on online reviews when choosing a motel or hotel stay?

46. Do you believe online reviews are typically accurate ways to evaluate a hotel or motel?

47. Do you have a negative perception of hotels and motels that allow customers to pay in cash for the room?

48. Do you or any of the members of your immediate family have any legal training?

a. Who?

b. What type?

49. Have you or anyone in your family ever been employed at a property management or security company?

50. Have you or anyone in your family ever worked in law enforcement?

a. Who?

b. Where?

c. What role?

51. Do you or any of the members of your immediate family have any training, experience, or certifications related to security in general or providing security for a business?

a. Describe training.

52. Do you or any of the members of your immediate family have any expertise or training in psychology, psychiatry, or counseling?

a. Who?

b. What?

53. Have you or any of the members of your immediate family ever worked for a Department of Family and Child Services?

54. Do you or any of the members of your immediate family volunteer, work with, or donate to victims of crime or trauma?

a. Types of crime?

b. Who?

c. What role?

55. Do you or any of the members of your immediate family volunteer, work with, or donate to troubled youth?

a. Who?

b. Where?

56. Does anyone feel they cannot be fair and impartial in a case involving sex trafficking?

57. Have you watched any documentary, TV shows, or movies or seen any news coverage that involved sex trafficking?

a. What?

b. When?

58. Who knows what sex trafficking is?

59. Who believes that prostitution and sex trafficking are the same?

60. Does anyone feel they cannot be fair and impartial in a case involving testimony and evidence related to sex, nudity, and commercial sex?

61. Have you or any members of your immediate family been the victim of a crime?

a. When?

b. What?

c. Where?

d. Resolution?

62. Have you or any members of your immediate family ever witnessed a crime?

a. What kind?

b. Testimony?

63. Have you or a family member or close friend had an encounter with law enforcement that was negative?

a. What happened?

64. Who believes people should follow the guideline, "If you see something, say something?"

65. Who has been in a situation where they saw something that seemed suspicious or out of the ordinary, but did not say anything or report it?

66. Who believes that a business should call the police anytime there is suspected or real criminal activity on its premises?

67. Who believes that the existence of one type of crime at a premises automatically leads to a higher likelihood of other kinds of a crime occurring at the same premises?

68. Do any of you believe that just because Plaintiff filed a lawsuit that she is entitled to recover from the Defendants?

69. Do any of you believe that because Plaintiff filed a lawsuit that Defendants must have done something wrong?

70. Is there anyone who feels that they will be unable to remain neutral for the Plaintiff or Defendants until all of the evidence is presented?

71. Is there anyone who would not be comfortable sending the Plaintiff home with no money if she does not meet her burden of proof?
72. Who has a negative opinion of corporations?
73. Under the law, corporations and individuals must be treated equally in a lawsuit. Would you have any difficulty following this law?
74. Do any of you have a bias or strong negative feelings about the Defendant because it is a corporation?
75. Does anyone believe that corporations put profits over customer safety? Why?
76. Is there anyone on the panel who believes he or she cannot judge fairly the testimony of any individual who testifies in English as a non-native speaker?
77. Does anybody think they may have difficulty putting aside feelings of sympathy for the Plaintiff?
78. Is there anyone on the panel that thinks that if someone had a bad childhood they are destined to have a bad life as an adult as well?
79. Is there anything that you have seen or heard today that you think will make it hard for you to judge my clients the same as you judge the Plaintiff?
80. Do any of you have any ethical, religious, moral, political, philosophical or other beliefs that would prevent you from applying the law to the evidence in this case?

81. Is there anyone that feels like the amount of money juries award is generally too low?

    a. Why?

82. Does anyone believe they cannot be fair and impartial focusing on the evidence related to the Defendant's premises when reaching a verdict, rather than unrelated hardships the Plaintiff may have experienced?

83. Is there anything on your mind that may impact your view of this case that I have not asked you about?

84. Are you, or a family member, related to :

a) A.H. (read out full name)

b) Srinivas Bollepalli

c) Shreesh Tiwari

d) READ OUT WITNESS LIST

85. Do you know any of the following individuals:

a) A.H. (read out full name)

b) Srinivas Bollepalli

c) Shreesh Tiwari

d) READ OUT WITNESS LIST

**SENSITIVE QUESTIONS AND TOPICS**

Given the nature of the allegations and claims asserted in this case, the Defendant has additional questions that would be better suited for private voir due to the sensitive nature of the questions and privacy concerns. These are as follows:

1. Have you or someone close to you been involved in the commercial sex trade?
    a. Who?
    b. When?
    c. Where?
2. Do you believe that sex trafficking is a danger to the community?
3. Have you or anyone from your immediate family or a close friend experienced a sexual assault of any kind?
    a. Who?
    b. What kind?
    c. Any criminal or civil claims asserted?
4. Have you or any member of your family or a close friend been in an abusive relationship?
    a. Who?
    b. What happened?

c. Type of abuse?

5. Have you or any member of your family or a close friend lived in one or more hotels for an extended amount of time?
6. Have you or any member of your family or a close friend been homeless?
7. Were you, or has anyone close to you, been abused as a child?
   a. Who?
   b. What happened?
8. Are you aware of anything that would prevent you from concentrating and paying attention to the evidence presented throughout the entire trial?
9. Have you or someone close to you been diagnosed with anxiety or depression?
   a. Who?
   b. When?
   c. How does person deal with it?
10. Has anyone had anything happen to them or to a loved one that would make them more likely to identify with the Plaintiff in this case?
    a. Who?
    b. What happened?
    c. Why?
11. Are you or any family members or close friends members of any organization

related to assisting victims of sex trafficking?

12. Are you or any family members or close friends members of any organization advocating for victim compensation of any kind?

13. Ever been arrested for a crime?

14. Ever encountered someone that you thought was a prostitute?

    a. How did it make you feel?

15. Who has ever heard of the following websites:

    a. Backpage.com

    b. ListCrawler.com

**Attachment "C": Plaintiff's Outline of the Case**

Plaintiff A.H. alleges injuries and damages arising from her sex trafficking, labor trafficking, sexual assault, and false imprisonment at the Budgetel located at 35 Carson Loop NW, Cartersville, Georgia (the "Budgetel" or the "hotel" or the "property"). In 2020 and 2021, A.H. lived and worked at the Budgetel as a housekeeper. Defendants Carson Loop ESM, LLC d/b/a Budgetel and Srinivas Bollepalli ("Defendants") have owned, operated, and managed the Budgetel since October of 2016. At all times relevant to this case, Defendants owned, operated, managed, supervised, and controlled the operation of and rental of the rooms at the Budgetel, from which they benefited financially.

In 2019, the Budgetel was shut down by the Georgia Department of Public Health, and at that time, the hotel had a reputation with the authorities as one of the most crime-ridden areas in the county. In January of 2020, when the Budgetel reopened, Defendants hired Shreesh Tiwari to be their onsite manager at the Budgetel. Tiwari lived at the Budgetel, and was expected to be present at the Budgetel and working on Defendants' behalf around the clock as needed. Tiwari was empowered by Defendants to rent rooms at the Budgetel, evict hotel residents, and manage the hotel staff on behalf of Defendants.

Based on evidence to be introduced at trial and not set forth herein, Plaintiff asserts that Defendants violated the Trafficking Victims Protection Reauthorization Act, 18 U.S.C. § 1595(a) ("TVPRA"), by knowingly benefiting, or attempting or conspiring to benefit, financially or by receiving anything of value from taking part in a common undertaking or enterprise involving risk and potential profit which Defendants knew or should have known involved the sex and labor trafficking of A.H. at the Budgetel. Plaintiff has suffered substantial harm, including but not limited to physical, emotional, and psychological harm, as a direct, cause-in-fact, foreseeable, and proximate result of Defendants' violations of §1595(a). Defendants' acts or omissions directly contributed to and were interrelated in facilitating Plaintiff's sex and labor trafficking from which she suffered substantial and ongoing harm. Defendants are vicariously liable for the acts and omissions of their onsite manager Shreesh Tiwari, who pled guilty to trafficking Plaintiff at Defendants' Budgetel.

Defendants' onsite manager Shreesh Tiwari knowingly obtained the labor or services of Plaintiff A.H. by means of force, threats of force, physical restraint, or threats of physical restraint to A.H., by means of serious harm or threats of serious

harm to A.H., by means of the abuse or threatened abuse of law or legal process, or by means of a scheme, plan, or pattern intended to cause A.H. to believe that, if she did not perform such labor or services, she would suffer serious harm or physical restraint.

Defendants' onsite manager Shreesh Tiwari knowingly, in or affecting interstate or foreign commerce, recruited, enticed, harbored, provided, obtained, maintained, patronized, or solicited A.H., knowing, or in reckless disregard of the fact, that means of force, threats of force, fraud, coercion, or any combination of such means were used to cause A.H. to engage in commercial sex acts.

Defendants directly participated in A.H.'s sex and labor trafficking by knowingly benefiting, or attempting or conspiring to benefit, financially or by receiving anything of value from taking part in a common undertaking or enterprise involving risk and potential profit which Defendants knew or should have known involved the sex and labor trafficking of A.H. at the Budgetel.

Plaintiff has suffered substantial harm, including but not limited to physical, emotional, and psychological harm, as a direct, cause-in-fact, foreseeable, and proximate result of Defendants' acts and omissions and the acts and omissions of Defendants' managers, agents, and employees, including Shreesh

Tiwari. Defendants' acts or omissions, and the acts and omissions of their managers, agents, and employees, directly contributed to and were interrelated in facilitating Plaintiff's sex and labor trafficking from which she suffered substantial and ongoing harm.

At all relevant times, Defendants owed a duty to invitees at the Budgetel, including Plaintiff, to exercise ordinary care in keeping the premises and approaches of the Budgetel safe. Defendants negligently failed to protect their invitees, including Plaintiff, adequately and properly, in breach of their duty.

Defendants' violations of O.C.G.A. §§ 51-3-1, 41-1-1, 41-1-3, and 41-3-1, among other statutes, constitutes negligence per se as to Plaintiff. Plaintiff is within the class of persons these statutes were designed to protect, and her injuries are of the type that these statutes were designed to prevent.

Each of the following constitutes an independent act of negligence on the part of Defendants, one or more or all of which were a proximate cause of the injuries sustained by Plaintiff:

(a) Negligently violating O.C.G.A. § 51-3-1 by failing to use ordinary care to keep the premises safe;

(b) Negligently failing to keep the premises in a state of good repair;

(c) Negligently violating OC.G.A. §§ 41-1-1, 41-1-3, and 41-3-1 by creating

and maintaining a nuisance;

(d) Negligently failing to provide appropriate and effective security personnel during Plaintiff's sex and labor trafficking at the hotel;

(e) Negligently failing to properly inspect and maintain the premises;

(f) Negligently failing to properly train and supervise its employees regarding sex trafficking and labor trafficking and other crimes at the hotel;

(g) Negligently failing to properly retain, hire, train, and supervise said employees, including their onsite manager Shreesh Tiwari;

(h) Negligently failing to ensure business policies, systems, and security were adequately followed and implemented;

(i) Negligently failing to implement policies and procedures to prevent, identify, and deter sex and labor trafficking at the Budgetel;

(j) Negligently failing to implement policies and procedures to ensure they were not profiting from sex and labor trafficking;

(k) Negligently failing to respond to online reviews and publicly available information;

(l) Negligently failing to prevent loitering and trespassing;

(m) Negligently failing to remove loiterers and trespassers;

(n) Negligently failing to inspect, patrol, or appropriately monitor the

property;

(o) Negligently failing to provide other available security measures, personnel, and devices, such as controlled access, adequate signage, cameras, patrols, inspections, physical adjustments, and other measures available;

(p) Negligently failing to remediate a long history of crime at the Budgetel and the area nearby;

(q) Negligently failing to warn invitees of known hazards at the property;

(r) Negligently representing to invitees that the property was properly maintained and safe;

(s) Negligently continuing to operate and profit from the Budgetel despite actual and constructive knowledge of sex and labor trafficking and other criminal activity occurring on the property;

(t) Negligently failing to act as similarly situated hotel operators would in like circumstances by failing to implement reasonable measures to prevent, identify, and respond to sex and labor trafficking at the Budgetel;

(u) Negligently entrusting the operation and management of the Budgetel to agents, managers, and employees, including Shreesh Tiwari, whom Defendants knew or should have known were permitting, facilitating, and participating in sex and labor trafficking and other criminal activity on the premises;

(v) Willfully or wantonly injuring Plaintiff including but not limited to by the acts and omissions of Defendants' agents, managers, and employees, including Shreesh Tiwari; and

(w) Negligently and intentionally inflicting emotional distress on Plaintiff.

Plaintiff has suffered substantial harm, including but not limited to physical, emotional, and psychological harm, as a direct, cause-in-fact, foreseeable, and proximate result of Defendants' negligence.

Defendant falsely imprisoned A.H. in violation of her personal liberty, without legal authority, and contrary to the laws of Georgia, through the acts and omissions of their onsite manager Shreesh Tiwari and confining A.H. to the Budgetel so that she could be used for free or cheap labor at the Budgetel and perform sexual acts on Defendants' onsite manger through force, fraud, or coercion. Defendants' harboring of A.H. during her sex and labor trafficking constituted false imprisonment. At times, A.H.'s false imprisonment at the Budgetel was independent of any other aspect of her sex or labor trafficking. Plaintiff has suffered substantial harm, including but not limited to physical, emotional, and psychological harm, as a direct, cause-in-fact, foreseeable, and proximate result of Defendants' false imprisonment of Plaintiff, which deprived her of her personal liberty and directly caused her substantial and

ongoing harm, independent of and in addition to the harm she suffered as a result of her sex and labor trafficking.

The Budgetel's history of rampant crime and illegal sex activity, including prostitution and sex trafficking, created a public nuisance that caused special damages to Plaintiff, including substantial physical, emotional, and psychological harm. The illegal prostitution and sex trafficking nuisance occurring at the Budgetel had an appreciable blighting effect on the surrounding community and encouraged, idleness, loitering, vagrancy, and had a tendency to breed crime. The Budgetel constituted a nuisance per se under Georgia law because Defendants knowingly and/or negligently permitted illegal sexually related crimes to occur at the hotel, including rampant prostitution, pandering, pimping, and sex trafficking. A business that allows prostitution and sex trafficking is a per se public nuisance under Georgia law.

Plaintiff will seek general non-economic damages under the TVPRA and Georgia law, including recovery for past, present, and future physical and mental harm and pain and suffering, in an amount of at least $3 million per year for the remainder of her life, based on the 1949 Mortality table. Plaintiff was 22 years old at the time of the events at issue, and per the 1949 Mortality table,

will live another 57 years, totaling $171 million, the total amount to be determined by the enlightened conscience of the jury. Defendants are jointly and severally liable for injuries arising out of her claims under the TVPRA.

Plaintiff also seeks punitive damages under the TVPRA and Georgia law in an amount to be determined by the jury. Plaintiff intends to seek punitive damages in an amount greater than $30 million.

Finally, Plaintiff will seek to recover her reasonable attorneys' fees, costs, and expenses under the TVPRA 18 U.S.C. § 1595 and O.C.G.A. §§ 13-6-11, 9-l 1-68(e), and 9-15-14.

Plaintiff reserves the right to pursue all damages under Georgia and Federal law for her injuries and Defendants' negligence and unlawful actions, including but not limited to all general, compensatory, economic, non-economic, special, consequential, general, punitive, and all other damages permissible under Georgia and Federal law.

**<u>Relevant Rules, Regulations, Statutes, Ordinances, and Illustrative Caselaw</u>**

Plaintiff relies upon the following rules, regulations, statutes, ordinances, and illustrative case law in support of her claims:

(a) 18 U.S. C. § 1589, *et. seq*. (Trafficking Victims Reauthorization Act),

(b) O.C.G.A. § 51-3-1;

(c) O.C.G.A. § 41-1-1;

(d) O.C.G.A. § 41-1-3;

(e) O.C.G.A. § 41-3-1;

(f) O.C.G.A. § 51-3-2;

(g) O.C.G.A. § 13-6-11;

(h) O.C.G.A. § 9-15-14;

(i) O.C.G.A. § 51-12.5.1;

(j) O.C.G.A. § 9-11-68(e);

(k) O.C.G.A. § 16-5-47;

(l) *Sons of Confederate Veterans v. Henry Cnty. Bd. of Comm'rs,* 315 Ga. 788 (2022);

(m) *Coleman v. State,* 64 S.E. 828 (Ga. Ct. App. 1909);

(n) *Bethany Grp., LLC v. Grohman,* 727 S.E.2d 298 (Ga. Ct. App. 2012);

(o) *Shell Oil Co. v. Diehl,* 422 S.E.2d 63 (Ga. Ct. App. 1992);

(p) *Griggs v. City of Macon,* 154 Ga. 519 (1922);

(m) *Galaxy Carpet Mills, Inc. v. Massengill,* 255 Ga. 360 (1986);

(n) *Ga. R.R. & Banking Co. v. Maddox,* 116 Ga. 64 (1902);

(o) *Bacon v. Walker,* 77 Ga. 336 (1886);

(p) *Savannah, Fla. & W Ry. Co. v. Parish,* 117 Ga. 893 (1903);

(q) *Fanning v. State,* 17 Ga. App. 316 (1915);

(r) *Brindle v. Copeland,* 145 Ga. 398 (1916);

(s) *Martin v. State,* 62 Ga. App. 902 (1940);

(t) *Thrower v. State,* 117 Ga. 753 (1909);

(u) *Birdwell v. State,* 112 Ga. App. 836 (1965);

(v) *Cotton v. City of Atlanta,* 10 Ga. App. 397 (1912);

(w) *Kessler v. State,* 119 Ga. 301 (1904);

(x) *Frazier v. State,* 93 Ga. App. 204 (1956);

(y) *Clifton v. State,* 53 Ga. 241 (1874);

(z) *Brimberry v. Savannah, F. & W Ry. Co.,* 3 S.E. 274 (Ga. 1887);

(aa) *Bord v. Hillman*, 335 Ga. App. 18, 21 (2015);

(bb) *Fielder v. Rice Const. Co.*, 239 Ga. App. 362, 366 (1999);

(cc) *Grinold v. Farist*, 284 Ga. App. 120, 122 (2007);

(dd) *Fitzgerald v. State,* 10 Ga. App. 70 (1911);

(ee) *Felder v. Rice Constr. Co., Inc.,* 522 S.E.2d 13 (Ga. Ct. App. 1999);

(ff) *Sumitomo Corp. of Am. v. Deal,* 569 S.E.2d 62 (Ga. Ct. App. 2002);

(gg) *Davis v. City of Forsyth,* 621 S.E.2d 495 (Ga. Ct. App. 2005);

(hh) *Bailey v. Annistown Rd. Baptist Church, Inc.,* 689 S.E.2d 62 (Ga. Ct. App. 2009);

(ii) *Stadterman v. Southwood Realty Co.,* 361 Ga. App. 613 (2021);

(jj) *McArthur v. Beech Haven Baptist Church of Athens,* 864 S.E.2d 189 (Ga. Ct. App. 2021);

(kk) *Doe v. Saint Joseph's Catholic Church,* 357 Ga. App. 710 (2020), *aff'd in part, rev'd in part,* 313 Ga. 558 (2022), *vacated,* 365 Ga. App. 331 (2022);

(ll) *Jane Doe v. Suresh & Durga, Inc.,* No. 20A83795-5 (DeKalb Cnty. St. Ct. May 8, 2024) (Order);

(mm) *Wasserman v. Franklin Cnty.,* 320 Ga. 624 (2025);

(nn) *Roseberry v. Studio 6 Delk Road, LLC,* No. 1:25-cv-1062-LMM, 2025 WL 4114137 (N.D. Ga. Nov. 18, 2025);

(oo) *E.M. v. Tucker Inn Inc.*, 1:22-CV-02559-WMR, 2024 WL 4005218 (N.D. Ga. July 15, 2024);

(pp) *Jane Doe No. 8 v. Royal Caribbean Cruises, Ltd.,* 860 F. Supp. 2d 1337, 1339 (S.D. Fla. 2012);

(qq) *Bates v. Seuqel Youth & Family Servs., LLC,* 2:23-CV-01063-RDP, 2025 WL 2917756, at *5 (N.D. Ala. Oct. 14, 2025);

(rr) *A.M v. Wyndham Hotels & Resorts, Inc.,* 728 F. Supp. 3d 787, 795 (S.D. Ohio 2024);

(ss) *Brown v. Gardner,* 513 U.S. 115, 119 (1994);

(tt) *U.S. v. Bhimani,* Crim. No. 3:17-cr-00324-MEM (M.D. Pennsylvania) ECF 167;

(uu) *Ricchio v. McLean,* 853 F.3d 553 (1st Cir. 2017);

(vv) *Doe #1 v. Red Roof Inns, Inc.,* 21 F.4th 714 (11th Cir. 2021);

(ww) *A.G. v. Northbrook Indus., Inc.*, 171 F.4th 1257 (11th Cir. 2026);

(xx) *Doe v. Fulton-DeKalb Hosp. Auth.,* 628 F.3d 1325, 1333-34 (11th Cir. 2010);

(yy) *U.S. v. Nilisen*, 967 F.2d 539, 542–43 (11th Cir. 1992);

(zz) *United States v. Raniere*, 55 F.4th 354, 361 (2nd Cir. 2022);

(aaa) *Noble v. Weinstein*, 335 F.Supp.3d 504 (S.D.N.Y. 2018);

(bbb) *Treminio v. Crowley Maritime Corp.*, 707 F.Supp.3d 1234, 1247–48 (M.D. Fl. 2023);

(ccc) *Piedmont Hosp., Inc. v. Palladino,* 276 Ga. 612, 614 (2003);

(ddd) *Georgia CVS Pharmacy, LLC v. Carmichael,* 316 Ga. 718 (2023);

(eee) *Georgia CVS Pharmacy v. Carmichael,* 362 Ga. App. 59 (2023);

(fff) *Sturbridge Partners, Ltd. v. Walker,* 267 Ga. 785, 786 (1997);

(ggg) *River Place at Port Royal Condo. Ass'n v. Sapp*, 358 Ga. App. 632, 636 (2021);

(hhh) *Mullinax v. Pilgrim's Pride Corp.*, 354 Ga. App. 186, 196 (2020);

(iii) *TGM Ashley Lakes, Inc. v. Jennings,* 264 Ga. App. 456, 462 (2003) (en banc);

(jjj) *Six Flags Over Ga. IL L.P. v. Martin,* 335 Ga. App. 350, 361 (2015);

(kkk) *Walker v. Aderhold Props., Inc.,* 303 Ga. App. 710, 713 (2010) (en banc);

(lll) *Wade v. Findlay Mgmt., Inc.,* 253 Ga. App. 688,690 (2002);

(mmm) *Wallace v. Boys Club,* 211 Ga. App. 534, 536 n.2 (1993);

(nnn) *Frazier v. Godley Park Homeowners Ass'n, Inc.,* 342 Ga. App. 608, 609 (2017);

(ooo) *McGarity v. Hart Elec. Membership Corp.,* 307 Ga. App. 739, 744 (2011);

(ppp) *Handberry v. Stuckey Timberland, Inc.,* 345 Ga. App. 191, 195 (2018).

## PLAINTIFF'S DAMAGES

As a proximate and foreseeable result of Plaintiff's sex and labor trafficking, false imprisonment, and Defendants' negligence, actions, and inactions, Plaintiff sustained serious physical and mental injuries, endured conscious pain and suffering, experienced mental anguish and emotional distress, experienced loss of the enjoyment of life, lost wages, and suffered other damages as will be proven at trial. Plaintiff brings each and every claim permissible under Georgia and Federal

law against Defendants for her injuries suffered in the incident at issue, and to recover for all special damages, economic losses, medical expenses, necessary expenses, pain and suffering, and all compensatory, special, actual, general, and punitive damages permissible under Georgia and Federal law.

Plaintiff seeks all compensatory, special, economic, consequential, general, punitive, and all other damages permissible including, but not limited to:

a. Personal injuries in an amount to be determined by the enlightened conscience of the jury. *See, e.g.,* O.C.G.A. § 51-12-12; *Food Lion v. Williams*, 219 Ga. App. 352 (1995).

b. Pain and suffering in an amount to be determined by the enlightened conscience of the jury. *See, e.g.,* O.C.G.A. § 51-12-12; *Food Lion v. Williams*, 219 Ga. App. 352 (1995); *Western, etc., Railroad Co. v. Young,* 83 Ga. 512, 515 (1889); *Redd v. Peters,* 100 Ga. App. 316 (1959); *Southern Railway Co. v. Jackson,* 146 Ga. 243 (1916); *Chapman v. Western Union Telegraph Co.,* 88 Ga 763 (1892)

c. Past, present, and future lost wages and earnings in an amount to be determined by the enlightened conscience of the jury. *See, e.g., Atlantic Coastline Railroad Co. v. McDonald,* 103 Ga. App. 328, 332 (1961); *Nashville, etc., Railway Co. v. Miller,* 120 Ga. 453 (1904); *Western, etc.,*

*Railroad Co. v. Sellers,* 15 Ga. App. 369 (1914); *Camilla Cotton Oil, etc., Co. v. Walker,* 21 Ga. App. 603 (1918); and A-*1 Bonding Service Inc. v. Hunter*, 125 Ga. App. 173, 180 (1971).

d. Medical expenses. O.C.G.A. §51-12-7; O.C.G.A. § 51-4-5.

e. Mental and emotional anguish and distress in an amount to be determined by the enlightened conscience of the jury. *See, e.g.,* O.C.G.A. § 51-12-12; *Food Lion v. Williams*, 219 Ga. App. 352 (1995).

f. Lost ability to labor in an amount to be determined by the enlightened conscience of the jury. *See, e.g.,* O.C.G.A. § 51-12-12; *Food Lion v. Williams*, 219 Ga. App. 352 (1995).

g. Loss of the capacity for the enjoyment of life in an amount to be determined by the enlightened conscience of the jury. *See, e.g.,* O.C.G.A. § 51-12-12; *Food Lion v. Williams*, 219 Ga. App. 352 (1995).

h. Incidental expenses in an amount to be determined by the enlightened conscience of the jury. O.C.G.A. §51-12-7.

i. Permanent injuries in an amount to be determined by the enlightened conscience of the jury. *Brush Elec. Light & Power Co. v. Simonsohn*, 107 Ga. 70, 32 S.E. 902 (1899); *Langran v. Hodges*, 60 Ga. App. 567, 4

S.E.2d 489 (1939); *Fields v. Jackson*, 102 Ga. App. 117, 115 S.E.2d 877 (1960).

j. Punitive damages in an amount to be determined by the enlightened conscience of the jury. O.C.G.A. §51-12-5.1.

k. Attorneys' fees and expenses of litigation. In the event the jury finds Defendants liable for attorneys' fees and expenses, Plaintiff will submit evidence of the amounts of each. O.C.G.A. §§ 13-6-11, 9-l 1-68(e), 9-15-14, 18 U.S.C. § 1595.

l. All special, compensatory, economic, punitive, and other damages permissible under Georgia and Federal law, and

m. Consequential damages to be proven at trial.

**Attachment "D": Defendants' Outline of the Case**

This matter concerns allegations that Plaintiff AH while employed as a housekeeper at a Budgetel in Cartersville, GA, was subjected to sex and labor trafficking by an agent of that motel who oversaw day-to-day operations, Shreesh Tiwari. Following a raid on the motel, Tiwari was criminally prosecuted and entered a guilty plea only as to labor trafficking. AH seeks a civil remedy and to hold liable the business entity which owned the motel, Carson Loop ESM, LLC, and one of Carson Loop's individual owners, Sri Bollepalli, for sex and labor trafficking pursuant to the Trafficking Victims Protection Reauthorization Act ("TVPRA"), 18 U.S.C.A. § 1595. The statute attaches liability only to those (other than the actual perpetrator) who "knowingly benefit, or attempt() or conspire() to benefit… from participation in a venture" which they "know or should have known has engaged in an act [of sex or labor trafficking]." 18 U.S.C.A. § 1595(a). AH also asserts a negligence claim on the theory that the Defendants knew or should have known that Tiwari posed this kind of risk to employees at the Budgetel and failed to warn AH or take appropriate steps to secure her safety.

The Defendants dispute that the underlying trafficking occurred and contend that, if Tiwari's underlying actions did occur, the Defendants lacked the requisite

knowledge and any material benefit, as well as took no action in furtherance of the said trafficking, and therefore are not liable under the TVPRA.

Associated Georgia law claims are that the Defendants negligently failed to warn AH of a hazard and/or failed to keep the premises safe for AH (O.C.G.A. § 51-3-1; that Tiwari's presence and actions constituted a nuisance created or maintained by the Defendants (O.C.G.A. § 41-1-1); *and* that the Defendants failed to properly comply with the human trafficking notice requirement of O.C.G.A. § 16-5-47. The Defendants dispute the negligence and nuisance claims for lack of their notice of any such risk to AH, her injuries resulting from a third-party criminal act, and lack of causation. They dispute the trafficking notice claim on grounds that the notice was posted in an area visible and accessible to employees.

Defendants deny that Plaintiff is entitled to any medical damages, because no such are documented. Defendants deny that Plaintiff is entitled to punitive damages, because the Eleventh Circuit has not ruled that such are available under the TVPRA, and the Defendants' conduct does not meet the standard for punitive damages under federal or State law.

**ATTACHMENT D-2—DEFENDANTS' ILLUSTRATIVE AUTHORITIES**

18 U.S.C.A. § 1589(a) and interpretive case law

18 U.S.C.A. § 1595(a) and interpretive case law

18 U.S.C.A. § 1595(e)(3) and interpretive case law

O.C.G.A. § 16-5-47 and interpretive case law

O.C.G.A. § 41-1-1 and interpretive case law

O.C.G.A. § 51-3-1 and interpretive case law

BMW of N. Am., Inc. v. Gore, 517 U.S. 559, 116 S. Ct. 1589, 134 L. Ed. 2d 809 (1996)

Bridges v. Poe, 155 F.4th 1302 (11th Cir. 2025)

Camelot club  Condominium Assoc., Inc. v. Afari-Opoku, 340 Ga. App. 618 (2017).

Doe#1 v. Red Roof Inns, Inc., 21 F.4th 714 (11th Cir. 2021)

Doe (L.M.) v. 42 Hotel Raleigh, LLC, 717 F. Supp. 3d 464, 473 (E.D.N.C. 2024)

Georgia CVS Pharmacy, LLC v. Carmichael, 316 Ga. 718, 722, 890 S.E.2d 209, 219 (2023)

G.W. v. Northbrook Industries, Inc., N.D.Ga.2024, 739 F.Supp.3d 1243, reconsideration denied 2025 WL 494620

K.H. v. Riti, No. 1:22-CV-3404-MHC, 2023 WL 3644224, at *3 (N.D. Ga. Apr. 17, 2023)

Martin v. Six Flags Over Georgia (II), LP, 301 Ga. 323, 328 (II), 801 S.E.2d 24 (2017)

Mullinax et al. v. Pilgrim's Pride corp., 354 Ga. App. 186 (2020)

Sumitomo Corp. of America v. Deal,  256 Ga.App. 703, 569 S.E.2d 608 (2002)

Time Warner Entertainment Co. v. Six Flags Over Georgia, LLC, 254 Ga.App. 598 (2002)

U.S. v. Pate, 84 F.4th 1196, 1202 (11th Cir. 2023).

Any and all authorities relied upon by Plaintiff, their progeny, and directly contrary or overruling case law or statutes

# ATTACHMENT "E"
# STIPULATIONS OF FACT

**The parties agree to the following factual stipulations:**

1. Use of copies in lieu of originals.

2. The parties stipulate to the authenticity (but not admissibility) of documents that were previously disclosed by the parties, Department of Homeland Security, and Georgia Bureau of Investigation, and it will not be necessary for either party to call a records' custodian to lay a foundation for those records. The parties preserve all other objections to those documents.

**Proposed by Plaintiff and Not Agreed to by Defendants**:

3. Defendants Carson Loop ESM, LLC d/b/a Budgetel and Srinivas Bollepalli have owned, managed, and operated the Budgetel in Cartersville Georgia since October 2016.

4. At all times during their ownership of the Budgetel, Defendants Carson Loop ESM, LLC d/b/a Budgetel and Srinivas Bollepalli paid hotel employees by writing payroll checks that Bollepalli signed;

5. From June of 2020 until June of 2021, Plaintiff A.H. lived at the Budgetel and was employed by Defendants as a housekeeper.

# ATTACHMENT "F-1"
# PLAINTIFF'S WITNESS LIST

**Plaintiff will have present at trial:**

1. A.H., c/o Law & Moran, 563 Spring St NW, Atlanta, Georgia.

**Plaintiff may have present at trial:**

**Likely Witnesses:**

1. Srinivas Bollepalli, c/o Hall Booth Smith, 191 Peachtree Rd NE, Suite 2900, Atlanta, Georgia;
2. Special Agent James Rives, c/o Department of Homeland Security, Homeland Security Investigations;
3. Danny Lynch, 506 Marble Street, Apartment 4, Dalton, Georgia;
4. Marlene (Margie) Hood, 5357 Groovers Landing Road SE, Acworth Georgia;
5. Brigitte Keeler, 1574 Cassville Road, Lot F, Cartersville Georgia;
6. Chrystal Reagan, 411 Travis Road, Martin Tennessee;
7. Angie Potts, c/o Law & Moran, 563 Spring St NW, Atlanta, Georgia;
8. Michelle Patton, c/o Law & Moran, 563 Spring St NW, Atlanta, Georgia;
9. Kim McDevitt, c/o Sunrise Ministries, P.O. Box 801303, Acworth, Georgia;
10. Dena Smolar, c/o New Beginnings, 1258 Greater Hope Road, Martin, Georgia;

**Unlikely Witnesses**:

Plaintiff does not anticipate calling the following witnesses, who were previously identified in depositions, exhibits, or documents exchanged during discovery, but identifies them in an abundance of caution:

11. Shreesh Tiwari, FCI Forrest City, 1400 Dale Bumpers Rd., Forrest City, Arkansas;

12. Kimberly Phillips, c/o New Beginnings, 1258 Greater Hope Road, Martin, Georgia;

13. Alexandria Towery, c/o Living Proof Recovery, 408 Shorter Avenue, Rome, Georgia.

14. Sharon Thompson, c/o New Beginnings, 1258 Greater Hope Road, Martin, Georgia;

15. Lisa Gillespie, c/o New Beginnings, 1258 Greater Hope Road, Martin, Georgia;

16. Rule 30(b)(6) Representative for Carson Loop ESM, LLC d/b/a Budgetel, c/o Hall Booth Smith, 191 Peachtree Rd NE, Suite 2900, Atlanta, Georgia;

17. Victim Specialist Alia Eh-Sawi, c/o Department of Homeland Security, Homeland Security Investigations;

18. Special Agent Chip Reagan, c/o Department of Homeland Security, Homeland Security Investigations;

19. Special Agent Renea Green, c/o Georgia Bureau of Investigations;

20. Adam Jones, c/o Georgia Bureau of Investigations;

21. Chad Patton, c/o Law & Moran, 563 Spring St. NW, Atlanta, Georgia;

22. Debbie Anderson, c/o Law & Moran, 563 Spring St. NW, Atlanta, Georgia;

23. Julies Graves, 4287 Pine Vale Rd, Gainesville, Georgia;

24. Karli Brown, 4287 Pine Vale Rd, Gainesville, Georgia;

25. Lesley Treml, 4287 Pine Vale Rd, Gainesville, Georgia;

26. Dana Parker, c/o Law & Moran, 563 Spring St. NW, Atlanta, Georgia;

27. Kelly Lammey, c/o Law & Moran, 563 Spring St. NW, Atlanta, Georgia;

28. Kayla Hudson, c/o Law & Moran, 563 Spring St. NW, Atlanta, Georgia;
29. Shandra Eller, c/o Law & Moran, 563 Spring St. NW, Atlanta, Georgia;
30. Staton Stallings, c/o Law & Moran, 563 Spring St. NW, Atlanta, Georgia;
31. Tommy Mason, c/o Law & Moran, 563 Spring St. NW, Atlanta, Georgia;
32. Roshni Patel, c/o Hall Booth Smith, 191 Peachtree Rd NE, Suite 2900, Atlanta, Georgia;
33. Vani Srinivas, c/o Hall Booth Smith, 191 Peachtree Rd NE, Suite 2900, Atlanta, Georgia;
34. Scikamel Srinivas, c/o Hall Booth Smith, 191 Peachtree Rd NE, Suite 2900, Atlanta, Georgia;
35. Sreya Srinivas, c/o Hall Booth Smith, 191 Peachtree Rd NE, Suite 2900, Atlanta, Georgia;
36. Steven Prater, 200 Pleasant Valley Road, Lot 6, Adairsville, Georgia;
37. Sherri Crisp, 23 Bellarosa Drive NW, White, Georgia;
38. Billyjack Fitzgerod, 588 Blvd. Street, Homeland, Georgia;
39. Terrie Swift, 313 Yale Road, Rome, Georgia;
40. Patricia Lowe, 21 Dogwood Drive, Cartersville, Georgia;
41. India Gravley, 191 Old River Road, Cartersville, Georgia;
42. Tonya Pinion, 200 Pleasant Valley Road, Lot 6, Adairsville, Georgia;
43. April Lipscomb, 200 Pleasant Valley Road, Lot 6, Adairsville, Georgia;
44. Katie Moore, 35 Carson Loop NW, Cartersville, Georgia;
45. Crystal Goss, 21 Cartry Lane, Cartersville, Georgia;
46. Terri Holland, 172 Olive Vine Church Road, Rydal, Georgia;

47. Timothy Stallings, 362 Jordan Road, Ballground, Georgia;
48. Samantha Freeman, 108 Nathan Circle, Apartment 3, Calhoun, Georgia;
49. Shannon Reaves, 57 Lazywater Drive, Cartersville, Georgia;
50. Tina Bryson, 149 Clear Creek Road, Adairsville, Georgia;
51. Cierra Medlin, 1991 Little Refuge Road, Waleska, Georgia;
52. Tabitha White, 35 Carson Loop NW, Cartersville, Georgia;
53. Samantha Thompson, deceased;
54. Mark Mayton, c/o Bartow County Sheriff's Office;
55. Steve Taylor, Bartow County Commissioner, c/o Bartow County Government;
56. Victor Abercrombie, c/o Bartow County Environmental Health Department;
57. Peter Olson, c/o Bartow County Government;
58. Brandon Johnson, c/o Bartow County Government;
59. Heather Woody, M.D. and all other medical providers at Northeast Georgia Physician's Group;
60. All medical providers who have treated Plaintiff at Northside-Gainesville Hospital;
61. All medical providers who have treated Plaintiff at Cartersville Medical Center/Piedmont-Cartersville;
62. Plaintiff's medical providers identified in the records, but not otherwise listed;
63. Any witnesses identified during any deposition taken in this case;
64. Any witness identified in the parties' discovery responses;
65. Any records custodian needed for authentication;
66. Any person for purposes of rebuttal; and

67. Any person for purposes of impeachment.

In addition, Plaintiff may call Department of Homeland Security Special Agent James Rives, and other investigative officers with the Department of Homeland Security and the Georgia Bureau of Investigation to provide expert testimony at trial. These investigators, special agents, and law enforcement officers investigated allegations of sex and labor trafficking at the subject Budgetel, including Plaintiff's trafficking by Defendants' manager Shreesh Tiwari, as well as other crimes. These investigators, special agents, and law enforcement officers are expected to provide opinion testimony about their investigation of crimes, including trafficking, at the subject Budgetel, including the conclusions of their investigations, as well as the known effects of sex and labor trafficking on its victims. The Georgia Bureau of Investigation's and Department of Homeland Security's investigative files have previously been produced in discovery, and Special Agent Rives has provided deposition testimony outlining his opinions. These witnesses' opinions will be based their prior knowledge, training, experience, education, and their investigation of trafficking and other crimes at the subject Budgetel.

**ATTACHMENT "F-2"**
**Defendants' Witnesses**

Defendants WILL have at trial:

1. Srinivas Bollepalli

Defendants MAY have at trial:

1. Alexandra Towery—Living Proof Recovery—408 Shorter Ave., Rome, GA 30165
2. Shreesh Tiwari, FCI Forrest City, 1400 Dale Bumpers Rd., Forrest City, Arkansas;
3. SA James Rives , c/o Department of Homeland Security, Homeland Security Investigations
4. Persons identified by initials in Plaintiff's Interrogatories, including:
    a. M.H.., c/o Law & Moran, 563 Spring St. NW, Atlanta, Georgia;
    b. C.R., c/o Law & Moran, 563 Spring St. NW, Atlanta, Georgia;
    c. D.L., c/o Law & Moran, 563 Spring St. NW, Atlanta, Georgia;
    d. T.W., c/o Law & Moran, 563 Spring St. NW, Atlanta, Georgia;
    e. S.F., c/o Law & Moran, 563 Spring St. NW, Atlanta, Georgia;
    f. B.K., c/o Law & Moran, 563 Spring St. NW, Atlanta, Georgia;
5. Mark Mayton, c/o Bartow County Sheriff's Office;

6. Steve Taylor, Bartow County Commissioner, c/o Bartow County Government;
7. Victor Abercrombie, c/o Bartow County Environmental Health Department;
8. Peter Olson, c/o Bartow County Government;
9. Brandon Johnson, c/o Bartow County Government;
10. Angie Potts, , c/o Law & Moran, 563 Spring St NW, Atlanta, Georgia
11. Dana Parker , c/o Law & Moran, 563 Spring St NW, Atlanta, Georgia
12. Kelley Lammey , c/o Law & Moran, 563 Spring St NW, Atlanta, Georgia
13. Michelle Patton, c/o Law & Moran, 563 Spring St NW, Atlanta, Georgia
14. Kayla Hudson, c/o Law & Moran, 563 Spring St NW, Atlanta, Georgia
15. Kim McDevitt c/o Sunrise Ministries, P.O. Box 801303, Acworth, Georgia;
16. Shandra Eller c/o Law & Moran, 563 Spring St. NW, Atlanta, Georgia;
17. Staton Stallings, c/o Law & Moran, 563 Spring St. NW, Atlanta, Georgia;
18. Debbie Anderson, c/o Law & Moran, 563 Spring St. NW, Atlanta, Georgia;
19. Tommy Mason c/o Law & Moran, 563 Spring St. NW, Atlanta, Georgia;
20. All witnesses identified in Plaintiff's witness lists, unless otherwise objected to or excluded.
21. Any witnesses identified during any deposition taken in this case;

22. Any witness identified in the parties' discovery responses;

23. Any records custodian needed for authentication;

24. Any person for purposes of rebuttal; and

25. Any person for purposes of impeachment.

**ATTACHMENT "G-1"**
**PLAINTIFF'S EXHIBIT LIST**

**Likely Exhibits:**

1. 1949 Mortality table;

2. Photographs of the Budgetel;

3. Department of Homeland Security ROIs numbered DG15HR21DG0002-001 through DG15HR21DG0002-060;

4. Department of Homeland Security ROI numbered TA15HR21DG0002-001;

5. Search Warrant for the Budgetel with all Attachments dated June 22, 2021;

6. Shreesh Tiwari Guilty Plea and Plea Agreement dated June 1, 2023;

7. Photographs of the Budgetel produced by Department of Homeland Security (bates stamped Tiwari568-670);

8. Google Reviews for the Budgetel;

9. Surveillance video footage of the Budgetel produced by Department of Homeland Security;

10. Georgia Bureau of Investigation – Investigative Case Summary;

11. Clips of surveillance video footage of the Budgetel;

12. Screenshots from the surveillance video footage of the Budgetel;

13. Google Maps photographs of the Budgetel;

14. Plaintiff's records and bills from Living Proof Recovery;

15. Plaintiff's records and any bills from New Beginnings Ministry;

16. Plaintiff's graduation certificate from New Beginnings Ministry;

17. Plaintiff's records and any bills from South Georgia Potter's House for Women;

18. Plaintiff's 2024 W2s from New Beginnings Ministry;

19. Plaintiff's 2024 W2s from Worksmart, Inc.;

20. Employee paychecks produced by Defendants (bates stamped 1-30);

21. Paycheck stubs produced by Defendants (bates stamped Carson000001-Carson000536);

22. Budgetel Map of Rooms; 1st Floor;

23. Budgetel Map of Rooms; 2nd Floor;

24. Budgetel Hotel Safety Presentation;

25. W2s for Budgetel employees (bates stamped 51-66);

26. Plaintiff's letter to Tiwari;

27. Notice of Tourist Accommodation Permit Suspension;

28. Budgetel Letter to Shreesh Tiwari dated January 6, 2020;

29. Notice of Seizure and Information to Claimants;

30. August 25, 2020 – Harassment – Police Report for the Budgetel;

31. January 25, 2021 – Theft by Taking – Police Report for the Budgetel;

32. February 25, 2021 – Criminal Trespass– Police Report for the Budgetel;

33. March 20, 2021 – Assault/Battery– Police Report for the Budgetel;

34. April 9, 2021 – Trespass– Police Report for the Budgetel;

35. April 13, 2021 – Theft By Taking/Larceny– Police Report for the Budgetel;

36. April 15, 2021 – Terroristic Threats and Acts– Police Report for the Budgetel;

37. April 21, 2021 – Trespassing– Police Report for the Budgetel;

38. April 26, 2021 – Violation of Probation– Police Report for the Budgetel;

39. May 5, 2021 – Trespass– Police Report for the Budgetel;

40. May 10, 2021 – Missing Person– Police Report for the Budgetel;

41. June 3, 2021 – Aggravated Assault with Gun– Police Report for the Budgetel;

42. June 24, 2021 – Assault/Battery– Police Report for the Budgetel.

**Unlikely Exhibits**:

Plaintiff does not anticipate introducing the following exhibits but identifies them in an abundance of caution in the event they are needed:

43. Sentencing Hearing Transcript dated December 7, 2023;

44. Judgment in Shreesh Tiwari’s criminal case dated December 8, 2023;

45. Georgia Bureau of Investigation Case Report;

46. US Customs & Border Protection CAFRA Seized Asset Claim Form;

47. Election of Proceedings – CAFRA Form;

48. Affidavit of James Rives dated June 22, 2021;

49. Affidavit of James Rives dated October 12, 2021;

50. ICE Inventory Log;

51. Employment/Job Application (bates stamped Tiwari497-500);

52. US Income Tax Return – Carson Loop ESM, LLC for 2019;

53. Calls for Service to the Budgetel from January 1, 2021 to July 1, 2021;

54. Interviews of Shreesh Tiwari (3 audio files);

55. Interview of April Lipscomb;

56. Interview of Christopher Thomas;

57. Interview of Lamar Whitner;

58. Interview of Tina Bryson;

59. Interview of Stacy Sanford;

60. Interview of Tonya Pinion;

61. Interview of Shannon Reaves;

62. Interview of Sherri Crisp;

63. Interview of Samanta Freeman;

64. News Articles Related to the Subject Budgetel, including but not limited to:

a. "Families Face Uncertain Future Following Mass Motel Eviction";
b. "Owner of Bartow Motel Where 200 Evicted Hoping to Reopen by End of Year";
c. "Dozen Budgetel Residents Booked into Jail for Drug Crimes";
d. "Bartow County Sets Time Limit on Extended Stay Motel Guests";
e. "County Commissioner Approves Extended Stay Hotel Ordinance";
f. "Hundreds in Bartow Displaced Following Mass Eviction";
g. "February Targeted for Partial Budgetel Inn Reopening";

65. Defendants' Responses to Plaintiff's Requests for Admissions;

66. Defendants' Responses to Plaintiff's Interrogatories;

67. Defendants' Responses to Plaintiff's Requests for Production of Documents;

68. Any document produced by any party or non-party and exchanged among the parties;

69. Any document attached to a deposition as an exhibit:

70. Any document for impeachment purposes;

71. Any document which may be necessary to refresh a witness' recollection.

These are the exhibits for trial known to Plaintiff at the present time, but Plaintiff reserves the right to supplement this exhibit list. Opposing counsel will be given notice of any additional exhibits. Plaintiff further states that all income documents, medical records, and bills should be redacted by the parties to remove any references to insurance or lack of insurance. Plaintiff reserves the right to introduce any documentary evidence listed by Defendants. Plaintiff further reserves the right to amend her list of exhibits prior to the time of trial.

## ATTACHMENT G-2

**DEFENDANTS' EXHIBIT LIST**

**The Defendants may introduce the following at trial:**

1. Photo—no pets allowed
2. Bartow County records—Plaintiff's possession of Schedule I controlled substance
3. Contract with Shreesh Tiwari
4. Photo of hallway with posted notice
5. Shreesh Tiwari criminal file
6. Photographs of the Budgetel;
7. Department of Homeland Security ROIs numbered DG15HR21DG0002-001 through DG15HR21DG0002-060;
8. Department of Homeland Security ROI numbered TA15HR21DG0002-001;
9. Search Warrant for the Budgetel with all Attachments dated June 22, 2021;
10. Shreesh Tiwari Guilty Plea and Plea Agreement dated June 1, 2023;
11. Photographs of the Budgetel produced by Department of Homeland Security (bates stamped Tiwari568-670);
12. Surveillance video footage of the Budgetel produced by Department of Homeland Security;

13. Georgia Bureau of Investigation – Investigative Case Summary;
14. Clips of surveillance video footage of the Budgetel;
15. Screenshots from the surveillance video footage of the Budgetel;
16. Google Maps photographs of the Budgetel;
17. Plaintiff's records and bills from Living Proof Recovery;
18. Plaintiff's records and any bills from New Beginnings Ministry;
19. Plaintiff's graduation certificate from New Beginnings Ministry;
20. Plaintiff's records and any bills from South Georgia Potter's House for Women;
21. Plaintiff's 2024 W2s from New Beginnings Ministry;
22. Plaintiff's 2024 W2s from Worksmart, Inc.;
23. Employee paychecks produced by Defendants (bates stamped 1-30);
24. Paycheck stubs produced by Defendants (bates stamped Carson000001-Carson000536);
25. Budgetel Map of Rooms; 1st Floor;
26. Budgetel Map of Rooms; 2nd Floor;
27. Budgetel Hotel Safety Presentation;
28. W2s for Budgetel employees
29. Plaintiff's letter to Tiwari;

30. Plaintiff's Responses to Defendant's Requests for Admissions;
31. Plaintiff's Responses to Defendants' Interrogatories;
32. Plaintiff's Responses to Defendants' Requests for Production of Documents;
33. Any document produced by any party or non-party and exchanged among the parties;
34. Any document attached to a deposition as an exhibit:
35. Any document for impeachment purposes;
36. Any document which may be necessary to refresh a witness' recollection.

These are the exhibits for trial known to Defendants at the present time, but Plaintiff reserves the right to supplement this exhibit list. . Opposing counsel will be given notice of any additional exhibits.

**ATTACHMENT "I"**

**Plaintiff's Proposed Verdict form**:

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ROME DIVISION

| | | |
|---|---|---|
| A.H., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION FILE |
| | ) | NO. 4:24-CV-00224-WMR |
| CARSON LOOP ESM, LLC d/b/a | ) | |
| BUDGETEL, and SRINIVAS | ) | |
| BOLLEPALLI, | ) | |
| | ) | |
| Defendants. | ) | |

**Verdict Form**

_______ We, the jury, find in favor of Plaintiff in the amount of

$______________________________

OR

_______ We, the jury, find in the favor of Defendants.

**Defendants' Proposed Verdict Form:**

I. Sex Trafficking

**Do you find by a preponderance of the evidence:**

a. That Shreesh Tiwari knowingly, in or affecting interstate or foreign commerce, caused A.H. to engage in a sex act on account of which something of value was exchanged?

Answer Yes or No _________

If you answered "No," please proceed directly to item II. If you answered "Yes," please proceed to the next item.

i. That Carson Loop ESM, LLC, d/b/a Budgetel, knew that Shreesh Tiwari knowingly, in or affecting interstate or foreign commerce, caused A.H. to engage in a sex act on account of which something of value was exchanged?

Answer Yes or No________

If you answered "No," please proceed directly to Item I.a.v. If you answered "Yes", please proceed to the next item.

ii. That Carson Loop ESM, LLC, d/b/a Budgetel, benefitted from those actions by Tiwari?

Answer Yes or No_________

If you answered "No," please proceed directly to Item I.a.v. If you answered "Yes", please proceed to the next item.

iii. That Carson Loop ESM, LLC, participated in a joint sex trafficking venture with Tiwari?

Answer Yes or No _________

If you answered "No," please proceed directly to Item I.a.v. If you answered "Yes", please proceed to the next item.

iv. That Carson Loop, ESM, knew or should have known that Tiwari's actions constituted sex trafficking in violation of the TVPRA?

Answer Yes or No__________

v. That Srinivas Bollepalli knew that Shreesh Tiwari knowingly, in or affecting interstate or foreign commerce, caused A.H. to engage in a sex act on account of which something of value was exchanged?

Answer Yes or No__________

If you answered "No," please proceed directly to Item II. If you answered "Yes", please proceed to the next item.

vi. That Srinivas Bollepalli benefitted from those actions by Tiwari?

Answer Yes or No__________

If you answered "No," please proceed directly to Item II. If you answered "Yes", please proceed to the next item.

vii. That Srinivas Bollepalli participated in a joint sex trafficking venture with Tiwari?

Answer Yes or No__________

If you answered "No," please proceed directly to Item II. If you answered "Yes", please proceed to the next item.

viii. That Srinivas Bollepalli knew or should have known that Tiwari's actions constituted sex trafficking in violation of the TVPRA?

Answer Yes or No__________

II. Labor Trafficking

**Do you find by a preponderance of the evidence:**

a. That Carson Loop knowingly provided or obtained the labor or services of A.H. by any of the following means:

(1) by means of force, threats of force, physical restraint, or threats of physical restraint to that person or another person;
(2) by means of serious harm or threats of serious harm to that person or another person;
(3) by means of the abuse or threatened abuse of law or legal process; or
(4) by means of any scheme, plan, or pattern intended to cause the person to believe that, if that person did not perform such labor or services, that person or another person would suffer serious harm or physical restraint.

Answer Yes or No__________

b. That Srinivas Bollepalli knowingly provided or obtained the labor or services of A.H. by any of the following means:

(1) by means of force, threats of force, physical restraint, or threats of physical restraint to that person or another person;
(2) by means of serious harm or threats of serious harm to that person or another person;
(3) by means of the abuse or threatened abuse of law or legal process; or

(4) by means of any scheme, plan, or pattern intended to cause the person to believe that, if that person did not perform such labor or services, that person or another person would suffer serious harm or physical restraint.

i. That Carson Loop ESM, LLC, d/b/a Budgetel, knew that the labor or services of A.H. were knowingly provided or obtained by any of the means stated in Item II.a.?

Answer Yes or No________

If you answered "No," please proceed directly to Item II.a.v. If you answered "Yes", please proceed to the next item.

ii. That Carson Loop ESM, LLC, d/b/a Budgetel, benefitted from the provision of A.H.'s labor by those actions?

Answer Yes or No_________

If you answered "No," please proceed directly to Item II.a.v. If you answered "Yes", please proceed to the next item.

iii. That Carson Loop ESM, LLC, participated in a joint labor trafficking venture?

Answer Yes or No _________

If you answered "No," please proceed directly to Item II.a.v. If you answered "Yes", please proceed to the next item.

iv. That Carson Loop, ESM, knew or should have known that the circumstances constituted labor trafficking in violation of the TVPRA?

Answer Yes or No__________

v. That Srinivas Bollepalli knew that the labor or services of A.H. were knowingly provided or obtained by any of the means stated in Item II.a.?

Answer Yes or No__________

If you answered "No," please proceed directly to Item III If you answered "Yes", please proceed to the next item.

vi. That Srinivas Bollepalli benefitted from the provision of A.H.'s labor by those actions?

Answer Yes or No__________

If you answered "No," please proceed directly to Item III. If you answered "Yes", please proceed to the next item.

vii. That Srinivas Bollepalli participated in a joint labor trafficking venture?

Answer Yes or No__________

If you answered "No," please proceed directly to Item III. If you answered "Yes", please proceed to the next item.

viii. That Srinivas Bollepalli knew or should have known that Tiwari's actions constituted labor trafficking in violation of the TVPRA?

Answer Yes or No__________

III. Negligence-- O.C.G.A. § 51-3-1

**Do you find by a preponderance of the evidence:**

a. That Carson Loop ESM, LLC induced or led AH to come upon the premises of the Budgetel for a lawful purpose?

Answer Yes or No________

If you answered "No," please proceed directly to Item IV. If you answered "Yes," please proceed to the next item.

b. That Carson Loop ESM, LLC knew or should have known that Tiwari's actions toward AH would occur?

Answer Yes or No________

If you answered "No," please proceed directly to Item IV. If you answered "Yes," please proceed to the next item.

c. That Carson Loop ESM, LLC, having such knowledge, failed to exercise ordinary care for the safety of AH?

Answer Yes or No________

If you answered "No," please proceed directly to Item IV. If you answered "Yes," please proceed to the next item.

d. That Srinivas Bollepalli induced or led AH to come upon the premises of the Budgetel for a lawful purpose?

Answer Yes or No________

If you answered "No," please proceed directly to Item IV. If you answered "Yes," please proceed to the next item.

e. That Srinivas Bollepalli knew or should have known that Tiwari's actions toward AH would occur?

Answer Yes or No________

If you answered "No," please proceed directly to Item IV. If you answered "Yes," please proceed to the next item.

f. That Srinivas Bollepalli, having such knowledge, failed to exercise ordinary care for the safety of AH?

Answer Yes or No________

IV. Nuisance-- O.C.G.A. § 41-1-1

**Do you find by a preponderance of the evidence:**

a. That the actions of Shreesh Tiwari constituted a nuisance?

Answer Yes or No_________

b. That the actions of Carson Loop ESM, LLC, caused a nuisance to exist?

Answer Yes or No_________

c. That the actions of Srinivas Bollepalli caused a nuisance to exist?

Answer Yes or No_________

V. Notice Posting-- O.C.G.A. § 16-5-47

**Do you find by a preponderance of the evidence:**

a. That a model notice at least 8 1/2 inches by 11 inches in size and printed in a 16 point font in English and Spanish, providing information giving individuals a method to contact the National Human Trafficking Hotline and the Statewide Georgia Hotline for Domestic Minor Trafficking, was posted on the premises?

Answer Yes or No_______

b. That the said notice was posted in a conspicuous location in clear view of the public and employees?

Answer Yes or No________

VI. Fault

We the jury find Shreesh Tiwari to be ________ % at fault.

We the jury find Carson Loop ESM, LLC to be ________% at fault.

We the jury find Srinivas Bollepalli to be ___________ % at fault.

VII. Damages

**Do you find by a preponderance of the evidence:**

a. That A.H. should be awarded damages for lost wages?

Answer Yes or No_______

If your answer is "Yes":

In what amount? $________

b. That A.H. should be awarded damages to compensate for emotional pain and mental anguish?

Answer Yes or No_____

If your answer is "Yes":

In what amount? $__________

PUNITIVE DAMAGES—BIFURCATED TRIAL

**Do you find by a preponderance of the evidence:**

I. That punitive damages should be assessed against the Defendants?

Answer Yes or No_______

If your answer is "Yes," in what amount? $___________

## CERTIFICATE OF COMPLIANCE

This is to certify that the foregoing ***Consolidated Pretrial Order*** has been prepared with one of the following font and point selections approved by the Court in L.R. 5.1. Specifically, the above-mentioned pleading was prepared using Times New Roman font of 14 point size.

Respectfully submitted,

**LAW & MORAN**

*/s/ Denise D. Hoying*
Denise D. Hoying
Georgia Bar No. 236494
Attorney for Plaintiff

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ROME DIVISION

| | | |
|---|---|---|
| A.H., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION FILE |
| | ) | NO. 4:24-CV-00224-WMR |
| CARSON LOOP ESM, LLC d/b/a | ) | |
| BUDGETEL, and SRINIVAS | ) | |
| BOLLEPALLI, | ) | |
| | ) | |
| Defendants. | ) | |

**CERTIFICATE OF SERVICE**

This is to certify that I have this day served a true and correct copy of the foregoing ***Consolidated Pretrial Order*** with the Clerk of Court using the CM/ECF system which will automatically send email notification of such filing to:

Phillip Friduss
Jacob O'Neal
Hall Booth Smith, P.C.
191 Peachtree Street, N.E.
Suite 2900
Atlanta, GA 30303

This 8th day of September, 2026.

*/s/ Denise D. Hoying*
Denise D. Hoying
Georgia Bar No. 236494
Attorney for Plaintiff

563 Spring Street, NW
Atlanta, GA 30308
(404) 814-3700