IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ROME DIVISION

| | | |
|---|---|---|
| A.H., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION FILE |
| | ) | NO. 4:24-CV-00224-WMR |
| CARSON LOOP ESM, LLC d/b/a | ) | |
| BUDGETEL, and SRINIVAS | ) | |
| BOLLEPALLI, | ) | |
| | ) | |
| Defendants. | ) | |

**PLAINTIFF'S MOTION IN LIMINE ON THE INAPPLICABILITY OF THE GEORGIA APPORTIONMENT STATUTE**

A.H. sued Budgetel and Srinivas Bollepalli ("Bollepalli") under federal and Georgia law. In another motion in limine, A.H. asks the Court to hold that liability under the TVPRA is joint and several. Here, A.H. asks the Court to hold that Budgetel and Bollepalli's liability is also joint and several for A.H.'s Georgia claims. Budgetel and Bollepalli want the Court to apply the Georgia apportionment statute, O.C.G.A. § 51-12-33—perhaps to every claim, but certainly to A.H.'s Georgia claims. The Court cannot do so for three reasons.

*First*, the Supremacy Clause of the United States Constitution prevents the application of Georgia's apportionment statute in this case. Because there can only be a single award of damages, Georgia's apportionment statute directly conflicts with the TVPRA, which provides for joint and several liability, as argued in

Plaintiff's other motion in limine. Because the state law of apportionment directly conflicts with the federal law of joint and several liability—and there is no way for both laws to apply—the federal rule of joint and several liability prevails. U.S. Const. art. VI., cl. 2. That simple rule is all the Court need consider to find Georgia's apportionment statute inapplicable.

*Second*, the Georgia apportionment statute—as applicable when A.H.'s causes of action accrued—doesn't apply when one of the defendants is an LLC like Budgetel. The provision permitting non-party apportionment applies only "[w]here an action is brought against more than one person." O.C.G.A. § 51-12-33(b). The problem for LLCs like Budgetel is that they are not "persons" under the apportionment statute, which applies Georgia's general definitions. The general, all-purpose definition of "person" in Georgia law "includes corporations," which Georgia law calls "artificial persons"—one of the "two classes of persons." O.C.G.A. §§ 1-2-1(a), (c), 1-3-3(14). The General Assembly has declared that the general definition of "person" (and all other "defined words") "*shall have* the meanings specified, unless the context in which the word or term is used *clearly* requires that a different meaning be used." O.C.G.A. § 1-3-2 (emphasis added). After reviewing the Code's longstanding definition of "person," the case law interpreting that definition, the General Assembly's drafting practices for *other* parts of the Code, and the apportionment statute's text itself, only one conclusion remains: the word "persons" in the

triggering clauses of § 51-12-33 does not include LLCs like Budgetel, and apportionment does not apply because this suit is not against more than one "person."

*Third*, while Budgetel presumably would like this Court to apply the current apportionment statute, doing so would be unconstitutional. The Georgia Constitution forbids retroactive laws that impair vested private substantive rights, and that's what the apportionment statute's 2022 amendment tries to do—change the law retroactively for causes of action that had accrued but on which suit had not yet been filed.

## ARGUMENT

### I. Because TVPRA liability is joint and several, the supremacy clause of the Constitution bars application of Georgia's apportionment statute to damages awarded under the federal TVPRA.

Because there can only be one award of damages in this case and Defendant argues that Georgia's apportionment statute must apply to Plaintiff's claims, there are two applications of law that are in complete conflict with each other. No party can have both apportionment *and* joint and several liability of a single injury. Fortunately, there is a longstanding rule that provides the answer to such conundrums.

The Constitution of the United States provides that "the Laws of the United States . . . shall be the supreme Law of the Land . . . any Thing in the . . . Laws of any State to the Contrary notwithstanding." U.S. Const. art. VI., cl. 2.

> Consequently, federal law may preempt state law expressly or by implication. *Arizona v. United States,* 567 U.S. 387 132 S.Ct. 2492, 2500–01, 183 L.Ed.2d 351 (2012). Although Congress's "express statement on pre-emption is always preferable, the lack of such a statement does

> not end [the] inquiry." *PLIVA, Inc. v. Mensing,* 564 U.S. 604, 131 S.Ct. 2567, 2577 n. 5, 180 L.Ed.2d 580 (2011). State law can be impliedly preempted by federal law in cases of field preemption and conflict preemption. Field preemption exists where Congress determines that a certain field must be regulated exclusively by the federal government. *Arizona,* 132 S.Ct. at 2501–02.[2] Conflict preemption, however, arises in instances where (1) "compliance with both federal and state regulations is a physical impossibility," or (2) "the challenged state law stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." *Id.* at 2501 (internal citations and quotation marks omitted). We use our judgment to determine when state law creates an unconstitutional obstacle to federal law, and "this judgment is informed by examining the federal statute as a whole and identifying its purpose and intended effects." *Ga. Latino Alliance for Human Rights v. Governor of Ga.,* 691 F.3d 1250, 1263 (11th Cir.2012) (internal quotation marks omitted) (quoting *Crosby v. Nat'l Foreign Trade Council,* 530 U.S. 363, 373, 120 S.Ct. 2288, 2294, 147 L.Ed.2d 352 (2000)).

*Fresenius Med. Care Holdings, Inc. v. Tucker*, 704 F.3d 935, 939 (11th Cir. 2013).

Here, there is conflict preemption because it is completely impossible to apply both federal joint and several liability and any state apportionment statute. On the issue of damages and apportionment, the United States Supreme Court has held that state law should not control a federal rule of decision because "[a] single nationwide rule would be preferable to one turning on state law, and the incorporation of state law would not give due regard to the federal interest in maintaining the apportionment of responsibility Congress devised[.]" *W. Virginia v. United States*, 479 U.S. 305, 308–09, 107 S. Ct. 702, 705 (1987).

As noted in Plaintiff's motion in limine regarding joint and several liability, Congress determined (and every Court to consider the issue agrees) that joint and

several liability applies to the civil cause of action in section 1595 of the TVPRA. Thus, a single nationwide rule in such cases is also appropriate. If Georgia apportionment law applied to Plaintiff's award of damages, the award of damages is in direct conflict with federal law. Georgia law cannot trump federal law requiring joint and several liability. "[W]hen state law creates an unconstitutional obstacle to federal law," the application of federal law is the constitutionally-mandated outcome. Thus, joint and several liability—and not Georgia's apportionment statute—must apply to Plaintiff's damages in this case. *Fresenius Med. Care*, 704 F.3d at 939.

## II. The Georgia apportionment statute doesn't apply here because A.H. did not sue "more than one *person*" within that statute's meaning.

Plaintiff begins with her argument that LLCs are not "persons" within the meaning of the Georgia apportionment statute because Georgia courts generally avoid reaching constitutional questions of the case can be resolved on statutory constructions grounds. *See Dias v. Boone*, 912 S.E.2d 547, 560 (Ga. 2025).

When A.H.'s cause of action accrued, Georgia's apportionment statute applied only when "an action is brought against more than one *person*," O.C.G.A. § 51-12-33(a), (b) (emphasis added). But the word "person" has a long-understood and statutorily defined meaning under Georgia law. That meaning *excludes* LLCs. Thus, Georgia's apportionment statute does not apply—and never has applied—to LLCs.

A.H. sued Budgetel and Bollepalli. While Defendant Bollepalli is a "person"—in truth and under Georgia law generally—Budgetel is not. Budgetel is a

limited liability company. While Georgia law grants LLCs *powers* like those belonging to persons and corporations, those powers do not make LLCs "natural or artificial" persons—the "two classes of persons" Georgia law recognizes. O.C.G.A. § 1-2-1(a). Indeed, the power to sue and be sued places LLCs into a third category of litigants: "quasi-artificial persons as the law recognizes as being capable to sue." *Cravey v. Se. Underwriters Ass'n*, 105 S.E.2d 497, 500 (Ga. 1958). But "quasi-artificial persons" are not "persons"—either natural or artificial. Thus, the Georgia apportionment statute does not apply.

For starters, precedent doesn't foreclose this argument. No Georgia appellate case holds that an LLC is a "person" under Georgia's general statutory definition or an "artificial person." O.C.G.A. §§ 1-3-3(14), 1-2-1(a). Nor has any case ever held that LLCs are "persons" for purposes of § 51-12-33's triggering clauses.

That's true even though many Georgia apportionment cases involved LLCs. The Georgia Supreme Court made that plain in an apportionment case: *Alston & Bird, LLP v. Hatcher Management Holdings, LLC*, 862 S.E.2d 295 (Ga. 2021). There, the issue was the meaning of the 2005 version of subsection (b)'s triggering clause: "[w]here an action is brought against more than one person." While cases had allowed nonparty fault allocation despite only one party being sued, the Georgia Supreme Court held that "none of th[os]e cases . . . actually decided the issue," so "they do not help A&B." *Id.* at 300. The Georgia Supreme Court rested that result

on a fundamental rule about the scope of appellate holdings:

> Decisions of this Court do not stand for points that were neither raised by the parties nor actually decided in the resulting opinion, and questions which merely lurk in the record, neither brought to the attention of the court nor ruled upon, are not to be considered as having been so decided as to constitute precedents.

*Id.* at 300 (citation modified) (quoting in parenthetical *Palmer v. Georgia*, 651 S.E.2d 86, 88 (Ga. 2007)). That principle also applies here. Because no apportionment case decided what "persons" means in § 51-12-33, precedent doesn't answer that question. The answer begins with Georgia's rules of statutory construction. *Pingora Loan Servicing, LLC v. Scarver*, 30 F.4th 1086, 1091 (11th Cir. 2022).

**A. Georgia's well-worn rules for statutory construction.**

In Georgia, statutory interpretation begins with the text because "a statute draws its meaning from its text." *A&B*, 862 S.E.2d at 299 (citation modified). "[T]he General Assembly does not enact a general intention; it enacts statutes. Statutes have words, and words have meanings. It is those meanings [courts] interpret and apply, not some amorphous general intention." *Id.* at 301 (citation modified). When searching for statutory meaning, Georgia courts "presume that the General Assembly meant what it said and said what it meant" and thus "read the statutory text in its most natural and reasonable way, as an ordinary speaker of the English language would." *FDIC v. Loudermilk*, 826 S.E.2d 116, 120 (Ga. 2019) (citation modified). Georgia courts treat as important "the common and customary usages of the words,"

including "the usual and customary meaning of terms as used in a legal context." *Id.* (citation modified).

"For context," Georgia courts "look to other provisions of the same statute, the structure and history of the whole statute, and the other law—constitutional, statutory, and common law alike—that forms the legal background" of the statute. *Loudermilk*, 826 S.E.2d at 120 (citation modified). Georgia courts also interpret statutes to avoid making "some language mere surplusage." *Id.* at 128.

**B. Georgia's general definition of "persons" applies in § 51-12-33.**

The Court's task is to construe "persons" in § 51-12-33's triggering clauses. Because the General Assembly used "persons," the presumption is that it meant "persons." *See Loudermilk*, 826 S.E.2d at 120. As will be seen, "person" has a long-understood and defined meaning under Georgia law. That meaning excludes LLCs.

The General Assembly did not define "person" in § 51-12-33, chapter 12 of title 51, or in title 51 generally. The General Assembly, however, supplies the definition in title 1: "'Person' includes a corporation." O.C.G.A. § 1-3-3(14).[1] That definition applies, the General Assembly mandates, "unless the context in which the word or term is used *clearly* requires that a different meaning be used." O.C.G.A.

[1] In Georgia statutes, "[t]he singular or plural number each includes the other, unless the other is expressly excluded." O.C.G.A. § 1-3-1(d)(6). So for the apportionment statute, there's no difference between "person" and "persons."

§ 1-3-2 (emphasis added). Also in title 1, the General Assembly classifies "persons" into "two classes"—"natural and artificial"—and clarifies that "[c]orporations are artificial persons." O.C.G.A. § 1-2-1(a), (c). This definition, classification, clarification, and interpretive principle are as old as the Georgia Code itself, finding roots in the Code of 1863.[2]

For over 150 years, the Georgia Supreme Court has used these distinctions between natural and artificial persons to determine which entities can sue or be sued. From Georgia's first Code in 1863 down to today, Georgia courts have consistently delimited "three classes of legal entities with the inherent power to sue and be sued: (1) natural persons; (2) an artificial person (a corporation); and (3) such quasi-artificial persons as the law recognizes as being capable to sue." *Clark v. Fitzgerald Water, Light & Bond Comm'n*, 663 S.E.2d 237, 238 (Ga. 2008) (citation modified). The key feature of an "artificial person" was *incorporation*, which tracks the statutory clarification that corporations are artificial persons.

Early caselaw bears this out. In 1878, the Macon Savings Bank challenged a

---

[2] *See* Code of 1863, §§ 6 (definition and interpretation provision: "The following meaning shall be given to each of the following words in all Statutes, unless a different meaning is apparent from the context: . . . 'Person' includes a corporation."), 1582 (classification and clarification: "Persons are either natural or artificial—the latter are the creatures of the law . . . —they are called corporations."). The General Assembly preserved the definition of "person," the binary classification of "person" into "natural and artificial," and the clarification that "artificial persons" meant "corporations" in every subsequent Code.

tax levied by the City of Macon. The city's charter enabled it "to levy and collect a tax" on, among others, "*all other persons exercising within the city any profession, trade or calling, or business of* ANY NATURE WHATEVER." *Mayor of Macon v. Macon Savings Bank*, 60 Ga. 133, 134 (Ga. 1878) (quoting Act of 1871–72, § 14). Whether the bank was subject to the city's tax turned on whether the bank was a "person" under the Georgia Code. Because the bank was "a corporation, chartered in 1874," it was "an artificial person" and thus subject to "all statutes which use the word 'person' as if called therein a corporation." *Id.*

The next section shows that Georgia courts excluded other entities, even those that could sue and be sued, like LLCs, from the category of "artificial person."

### C. Georgia caselaw confirms that "person" has a narrow meaning that does not reach all "entities" with the right to sue and be sued.

No Georgia case has *ever* held that the statutory class "artificial person" embraced unincorporated entities like LLCs—even if they could sue or be sued.

*Partnerships*. "A corporation is a legal person. A partnership is not." *Turnipseed v. Georgia*, 188 S.E. 403, 405 (Ga. Ct. App. 1936). In 1888, the Georgia Supreme Court held that a partnership is not a "person," even though the law gives partnerships some rights, including to sue and be sued. "Partnership is but a relation. It is not a person; it is not a legal being." *Drucker v. Wellhouse*, 8 S.E. 40, 41–42 (Ga. 1888). While "a firm or partnership is impersonal or nonpersonal, it is, for some purposes, in contemplation of law, a *quasi* person, having powers and functions

exercisable by one of the partners severally, or all of them jointly." *Id.* at 42.

*Unincorporated associations and societies*. Traditionally, like partnerships, fraternal societies, churches, and other unincorporated associations were not "persons." So if they tried to sue or were named as the defendant, the action was a legal nullity because they were not a "person"—either natural or artificial. This was true in a suit against Masonic lodges. *See Barbour v. Albany Lodge*, 73 Ga. 474, 476 (1884) ("Some person must be sued, either natural or artificial. No person is sued in this complaint; therefore the demurrer was good."). It was true when an unincorporated church was sued and tried to sue. *See, e.g.*, *Wilkins, v. Wardens & Vestry of St. Marks' Protestant Episcopal Church of Dalton*, 52 Ga. 351, 352–53 (1874) (holding that action against church that was not a corporation—"an artificial person created by law for specific purposes"—"cannot be sustained" because the "society" was not "authorized to sue or to be sued"); *Mut. Life Ins. Co. of N.Y. v. Inman Park Presbyterian Church*, 36 S.E. 880, 880 (Ga. 1900) (holding that "[a] suit can only be maintained by or in behalf of a natural or artificial person" and that the plaintiff, a church, "was neither" because it "was never incorporated").

*Trade names*. Historically, when Georgians conducted business under a trade name and tried to sue for relief in the name of that business rather than their own name, those actions were legal nullities. H.P. Colvard learned this when he tried to sue a railroad company. Rather than sue in his own name, Colvard sued in the name

of his affected business: Dalton Marble Works. Because Dalton Marble Works did not allege that it was a person, a corporation, or partnership, and if a partnership, did not identify all its partners, the railroad moved to dismiss. In response, the plaintiff added the words "H.P. Colvard, Proprietor" to the style. Satisfied, the justice of the peace let the case go to trial, and Colvard prevailed. The railroad appealed. The Georgia Supreme Court held that because "Dalton Marble Works" was "neither a natural person, a corporation, nor a partnership," it "could not legally institute an action" and thus "the suit was a mere nullity" incapable of being amended. *W. & A.R. Co. v. Dalton Marble Works*, 50 S.E. 978, 978–79 (1905).

These and other cases from the last 150 years show that Georgia courts assiduously policed the line between statutorily defined "persons"—both natural and artificial—and other legal entities. For an *unincorporated* legal entity to sue or be sued, the law had to grant those rights explicitly or implicitly. But even when the law did so, that *never* made the entity a "person" under Georgia's general definition or an "artificial person" under Georgia law.

### D. Georgia's LLC Act preserves the distinction between "artificial persons" and legal entities with the capacity to sue and be sued.

The General Assembly created the LLC legal entity in 1993. In doing so, the General Assembly didn't redefine "corporation" to encompass an LLC or define an LLC as a "corporation." It created a new chapter in title 14. 1993 Ga. Laws 123.

True, that Act gives LLCs "the same powers as any person has to do all things

necessary to carry out its purpose, business, and affairs." O.C.G.A. § 14-11-202. The LLC Act also contains a special definition of "person" that applies to that "chapter": "'Person' means an individual, business entity, business trust, estate, trust, association, joint venture, government, governmental subdivision or agency, or any other legal or commercial entity." O.C.G.A. § 14-11-101(19). But despite its broad powers, an LLC is not a corporation. Georgia law is clear on that.

In 2019, the Georgia Court of Appeals upheld a decision of the Georgia Public Service Commission denying Marietta Natural Gas, LLC's application for a certificate of authority to sell natural gas outside the City of Marietta. The appellate court did so because the city's charter authorized the creation of only "*non-profit corporations*." *Infinite Energy, Inc. v. Marietta Natural Gas, LLC*, 826 S.E.2d 189, 192 (Ga. Ct. App. 2019) (citation modified). The city, instead, created an LLC. That violated the city's charter—even if the Georgia Code allows a city to create LLCs to facilitate its business. *Id.* at 193. The court was clear: "While the Georgia Limited Liability Act allows an LLC to have the same powers as other persons (including individuals and other business entities), it does not confer on the City the power to create an LLC in derogation of the explicit wording of its charter, and *it does not transform MNG as an LLC into a nonprofit corporation.*" *Id.* (emphasis added).

### E. The General Assembly has long used specific, broad definitions of "person" to reach more than natural and artificial persons.

While Georgia's caselaw developed to apply a narrow reading to "person,"

the General Assembly's legislative enactments over the last 120 years reveal that when it wants the term "person" to include *unincorporated* entities, it defines "person" broadly—for a specific purpose. Here are but a few examples.

In 1906, the General Assembly enacted a Pure Food and Drug Act. In doing so, the General Assembly made "the words 'person' or 'party'" in that Act "include corporations, companies, societies and associations." Foods, Drugs, and Liquors, Adulteration or Misbranding Prohibited, 1906 Ga. Laws 83, 88 § 8.

In 1924, the General Assembly enacted the Negotiable Instruments Law and defined, for purposes of that Act, "person" as "includes a body of persons, whether incorporated or not." 1924 Ga. Laws 126, 164. That definition remained until Georgia adopted the Uniform Commercial Code in the 1960s, when more categories were added. The original UCC defined "person" to "include[] an individual or an organization," and defined "organization" to "include[] a corporation, government or governmental subdivision or agency, business trust, estate, trust, partnership or association, two or more persons having a joint or common interest, or any other legal or commercial entity." Uniform Commercial Code, 1962 Ga. Laws 156, 165.

At a special legislative session in 1937–1938, the General Assembly revised the Georgia tax code and provided "chapter definitions" for certain terms, including "person": "The word, person means an individual, a fiduciary, a partnership, an association or a corporation, including any public official or a public or municipal

corporation." Act, 1937–38 Ga. Laws 77, 79.

And *elsewhere* in title 51, specific, broad definitions of "person" appear. Take the article about abusive litigation from 1989. There, the General Assembly defines "person" as "an individual, corporation, company, association, firm, partnership, society, joint-stock company, or any other entity, including any governmental entity or unincorporated association of persons with capacity to sue or be sued." 1989 Ga. Laws 409, 411 (codified at O.C.G.A. § 51-7-80(6) and applying to that "article").

Georgia courts "presume that the legislature enacted the new statute with full knowledge of the extant body of decisional law." *Crum v. Jackson Nat'l Life Ins. Co.*, 880 S.E.2d 205, 212 (Ga. 2022) (citation modified). The General Assembly's 120-plus-year history of using broad definitions of "person" for specific purposes reveals that the General Assembly knew that Georgia courts interpreted the general definition narrowly. Perhaps more importantly, these examples of broad definitions, specifically applied, show that the General Assembly knows how to make a statute reach beyond the traditional array of "persons"; and when it wants to, it says so. In § 51-12-33, the General Assembly said nothing of the sort.

### F. The apportionment statute's context confirms that "persons" does not mean "defendants" or "parties."

Today, the apportionment statute uses "persons" in its triggering clauses. On top of those two instances, the statute uses "persons" or "person" seven more times (excluding the two times in the phrase "injury to person"). But "person"/"persons"

is not the only litigation role the statute labels. These are the other role labels with uses counted in parentheses: "the plaintiff" (6), "the judge" (1), "trier of fact" (4), "entities" / "entity" (2), "party" (3), and "nonparty" (10).

In subsection (c), the words "persons" and "person" are paired with "entities" and "entity" and separated by the disjunction "or."[3] The presumption, then, is that "persons" and "entities" comprise alternative categories unless context clearly suggests otherwise. *See Walton Elec.*, 911 S.E.2d at 568. It does not. Indeed, the statutory context reveals that the General Assembly chose myriad labels, suggesting that each label's role is different.

Several more textual clues reveal that the General Assembly did not intend for the apportionment statute to apply to every case involving an "injury to person or property"—even after the May 2022 amendment. *First*, the 2005 Act that vastly expanded the apportionment statute did not eliminate the contribution statute, O.C.G.A. § 51-12-32. *See* Tort Reform Act, 2005 Ga. Laws 1. Even now, contribution remains available in certain cases. *E.g.*, *Loudermilk*, 826 S.E.2d at 128–29 (explaining that interpreting apportionment statute to preserve joint-and-several liability for injuries caused by "concerted action" helps give "full effect" to surrounding

[3] "In assessing percentages of fault, the trier of fact shall consider the fault of all *persons* **or** *entities* who contributed to the alleged injury or damages, regardless of whether the *person* **or** *entity* was, or could have been, named as a party to the suit." § 51-12-33(c) (emphasis added).

statutes like the contribution statute). Interpreting "persons" to reach fewer than all defendants likewise gives effect to the contribution statute, which applies when joint-and-several liability exists. *See A&B*, 862 S.E.2d at 300 n.2.

*Second*, the General Assembly used "persons" rather than broader (but equally well-known) litigation words like "defendants" or "parties" in the triggering clauses, despite using "plaintiff" six times and "party" three times elsewhere in the statute. Had the General Assembly intended apportionment to apply in all cases involving "injury to person or property," the term "defendants" or "parties"—neither of which has a longstanding narrow construction under Georgia law—would have been better suited to the task. Importantly, "where the legislature uses certain language in one part of the statute and different language in another," Georgia courts "assume[] different meanings were intended." *Pandora Franchising, LLC v. Kingdom Retail Grp., LLLP*, 791 S.E.2d 786, 790 (Ga. 2016) (citation modified).

What's more, had the General Assembly intended the apportionment statute to apply to every case involving "injury to person or property," it could have omitted any reference to the kind of defendant against whom the action is brought from the triggering clause. Here, interpreting the triggering clauses to reach all cases involving "injury to person or property" would render the limiting phrase "one or more persons" meaningless—pure surplusage. But when interpreting a statute, Georgia courts usually avoid constructions that make words or phrases meaningless or

surplusage. *See Pandora Franchising*, 791 S.E.2d at 790 (Georgia courts presume that "the legislature did not intend to enact meaningless language." (citation modified)); *Loudermilk*, 826 S.E.2d at 128 (Georgia courts "seek to avoid a construction that makes some language mere surplusage" (citation modified)).

Plus, as a statute in derogation of the common law, the apportionment statute "must be limited strictly to the meaning of the language employed, and not extended beyond the plain and explicit terms of the statute." *Couch v. Red Roof Inns, Inc.*, 729 S.E.2d 378, 383 (Ga. 2012) (citation modified).

Accordingly, the statutory text, legal history, judicial decisions, and legislative-drafting practice surrounding the meaning of "persons" all point in the same direction: the General Assembly intended "persons" in the triggering clauses of § 51-12-33 to have its traditional narrow meaning. That narrow meaning excludes *unincorporated* legal entities that can sue and be sued—like LLCs. Because LLCs like Budgetel are not "persons," the apportionment statute does not apply.

Similarly, although A.H. in this case has named one person as defendant, i.e., Srinivas Bollepalli, prior to the 2022 amendment, subsection (b) applies only when an action was brought against **more than one person.** As outlined above, Budgetel is not a person under Georgia law. Therefore, only one person has been named as a defendant in this action, Budgetel. *See A&B*, 862 S.E.2d at 302.

## III. The Georgia Constitution makes applying the current Georgia apportionment statute to A.H.'s Georgia claims unconstitutional.

On top of her TVPRA civil claims, A.H. has claims for negligence under Georgia law. This cause of action accrued when she was sex and labor trafficked at the hotel in 2020 and 2021. And that accrual imbued not only A.H. with vested rights in her cause of action but also Budgetel with vested rights in its statutory defenses, such as apportionment. *Glover v. Colbert*, 437 S.E.2d 363, 364 (Ga. Ct. App. 1993); *see Brown v. Tucker*, 788 S.E.2d 810, 821 (Ga. Ct. App. 2016) (Defendant's "apportionment claim was an affirmative defense."), *disapproved of on other grounds by Miller v. Golden Peanut Co., LLC*, 891 S.E.2d 776 (Ga. 2023). Those are vested substantive rights that the Georgia General Assembly cannot change retroactively.

For almost 175 years, the Georgia Supreme Court has recognized that the General Assembly lacks the constitutional authority to retroactively impair vested substantive rights created by statute. "A constitutional Act of the Legislature is equivalent to a contract, and when performed, is a contract executed; and whatever rights are thereby created, a subsequent Legislature cannot impair." *Franklin v. Mayor & Aldermen of Savannah*, 34 S.E.2d 506, 508 (Ga. 1945) (quoting *Winter v. Jones*, 10 Ga. 190, 196 (1851)). But the general presumption against retroactive application of legislation is deeply rooted in our Nation's history and tradition, embodying a "legal doctrine centuries older than our Republic." *S. States Chem., Inc. v. Tampa Tank & Welding, Inc.*, 888 S.E.2d 553, 560 (Ga. 2023) (citation modified).

Under the Georgia Constitution,[4] "legislation which affects substantive rights may operate prospectively only." *Daimler Chrysler Corp. v. Ferrante*, 637 S.E.2d 659, 661 (Ga. 2006) (quoting *Enger v. Erwin*, 267 S.E.2d 25, 26 (Ga. 1980)). To determine whether legislation must be applied prospectively, Georgia courts distinguish between "substantive" and "procedural" law. In this context, "substantive" and "procedural" have well-settled meanings. "Substantive law is that law which creates rights, duties, and obligations. Procedural law is that law which prescribes the methods of enforcement of rights, duties, and obligations." *Id.* (quoting *Polito v. Holland*, 365 S.E.2d 273, 274 (Ga. 1988)).[5]

In Georgia, "the legislature may not enact a statute to apply retrospectively in violation of our constitutional provision barring retroactive laws." *Hargis v. Dep't of Hum. Res.*, 533 S.E.2d 712, 713 (Ga. 2000). "Even when the General Assembly clearly provides that a law is to be applied retroactively, [the Georgia] Constitution forbids statutes that apply retroactively so as to 'injuriously affect the vested rights

---

[4] *See* Ga. Const. art. I, § I, ¶ X ("No bill of attainder, ex post facto law, retroactive law, or laws impairing the obligation of contract or making irrevocable grant of special privileges or immunities shall be passed."); *see also* O.C.G.A. § 1-3-5 ("Laws prescribe only for the future; they cannot impair the obligation of contracts nor, ordinarily, have a retrospective operation.").

[5] Some Georgia cases treat "remedial" changes as a category that typically applies retroactively. But as the Eleventh Circuit noted, Georgia's cases usually lump "remedial" statutes in with "procedural" statutes for "convenience." *Ferrero v. Associated Materials Inc.*, 923 F.2d 1441, 1445 (11th Cir. 1991). So "substantive" or "procedural" is the right question.

of citizens.'" *Deal v. Coleman*, 751 S.E.2d 337, 343 (Ga. 2013) (quoting *Bullard v. Holman*, 193 S.E. 586, 588 (Ga. 1937)).

In 2005, the General Assembly amended the apportionment statute while making a passel of so-called "tort reform" changes. 2005 Ga. Laws 1, 15, § 12. In doing so, the General Assembly made clear that the apportionment statute's 2005 changes "apply only with respect to causes of action arising on or after the effective date of this Act, and any prior causes of action shall continue to be governed by prior law." *Id.* at 18, § 15(b). Whatever the wisdom of these changes to Georgia "substantive" law, they were at least constitutional because they applied only prospectively.

Seventeen years later, the General Assembly again amended the apportionment statute. 2022 Ga. Laws 802. This time, however, the General Assembly stated that the 2022 changes apply to causes of action filed after the Act's effective date (May 13, 2022)—regardless of whether those causes of action had already accrued. *Id.* at 802–03, §§ 2, 3. By making applicability turn on the filing date rather than the accrual date, the General Assembly exceeded its constitutional authority.

The General Assembly's 2022 changes to the apportionment statute affect the "substantive" law. The changes give Budgetel and Bollepalli an affirmative defense that they did not have in 2020 and 2021 when A.H.'s causes of action accrued: the ability to have the factfinder allocate fault for A.H.'s damages to nonparties. The 2022 changes also deprive A.H. of her right to recover completely from a single

defendant (assuming more than one proximate cause) in a case against a single person. Georgia courts have held that other statutory changes with similar effects were substantive and thus could not constitutionally apply retroactively.

**A. Offer-of-settlement statute.**

In 2005, the General Assembly added the Georgia offer-of-settlement statute to the Civil Practice Act. 2005 Ga. Laws 1, 5–6, § 5 (codified at O.C.G.A. § 9-11-68). But unlike the changes to the apportionment statute in that same Act, the General Assembly made the offer-of-settlement statute effective immediately in all cases. *Id.* at 18, § 15. The next year, the General Assembly amended the offer-of-settlement statute to make the statute available to both plaintiffs and defendants and to clarify some conditions under which a party might come to pay the opposing party's attorney's fees and costs. *See* 2006 Ga. Laws 446–47. Once again, the General Assembly made these changes effective immediately. *Id.* at 447, § 2.

In 2007, the Georgia Supreme Court held that the offer-of-settlement statute could not apply retroactively to make a plaintiff liable for the defendant's attorney's fees and expenses because the plaintiff's cause of action accrued "more than three years" before the offer-of-settlement statute existed. *Fowler Props., Inc. v. Dowland*, 646 S.E.2d 197, 199–200 (Ga. 2007). That the General Assembly "explicitly intended" the statute to have "retroactive application" was irrelevant because "the legislature may not enact a statute to apply retrospectively in violation of our

constitutional provision barring retroactive laws." *Id.* at 200 (quoting *Hargis v. Dep't of Hum. Res.*, 533 S.E.2d 712, 713 (Ga. 2000)).

**B. Collateral-benefits evidence.**

In 1987, during another spate of "tort reform" legislation, the General Assembly tried to make evidence of collateral-source payments from certain sources admissible. 1987 Ga. Laws 915, 917 § 3 (codified as O.C.G.A. § 51-12-1(b)).

In 1988, the Georgia Supreme Court examined whether this new law constituted a "substantive" change in the law. Even though the statute only made it *possible* for the jury to use the newly admissible evidence of collateral benefits to reduce the plaintiff's damages, the Georgia Supreme Court held that this "works a substantive change in the law governing collateral benefits" and thus had to be "given prospective effect only." *Polito v. Holland*, 365 S.E.2d 273, 275 (Ga. 1988).[6]

**C. Repeal of a statutory cause of action.**

In 1979, the General Assembly modernized Georgia's family and domestic relations law. 1979 Ga. Laws 466. Part of this modernization included the repeal of the statute giving husbands (but not wives) the right to sue for adultery, alienation of affections, or criminal conversation.[7] *Id.* at 496–97, § 46.

---

[6] The Georgia Supreme Court later held that this statutory change regarding the admissibility of collateral-benefits evidence was unconstitutional in tort cases. *See Denton v. Con-Way S. Express, Inc.*, 402 S.E.2d 269, 270–71 (Ga. 1991).

[7] This right of action was codified in the Code of 1863, § 2950.

But before that statutory repeal (years before, in this story), Charles Hauser's wife (Laura Hauser) had her affections alienated by Earl Brown—allegedly. Earl and Laura supposedly carried on an affair for several years. After their alleged affair ended and *after* the General Assembly repealed the statute giving husbands the right to sue for adultery or alienation of affections (and after Charles and Laura's divorce was final), Charles sued Earl. Unsurprisingly, Earl challenged the case's validity given the statutory repeal.

In 1982, the Georgia Supreme Court decided that Charles's case for adultery and alienation of affections could proceed to trial. In doing so, the Georgia Supreme Court held that "the important constitutional question is not when the suit was filed; it is whether Hauser's right to bring an action for alienation of affections had 'vested at the time of the repeal of this cause of action by the General Assembly.'" *Brown v. Hauser*, 292 S.E.2d 1, 2 (Ga. 1982) (quoting *Enger v. Erwin*, 267 S.E.2d 25, 26 (Ga. 1980)). Because his right vested with the accrual of his cause of action (when Earl allegedly wooed Laura away and they started an affair), Charles could take his statutory claim to the jury despite the statute's repeal before suit. *Id.*

Under the Georgia apportionment statute in effect in 2020 and 2021 when A.H.'s Georgia causes of action accrued and substantive rights vested, Budgetel and Bollepalli cannot apportion fault to any nonparty. The Georgia Supreme Court made that pellucidly plain in *A&B*. 862 S.E.2d at 301–02. The General Assembly changed

the apportionment statute the next year and tried to apply those changes to all cases filed after May 13, 2022.

But applying that change to causes of action that had accrued but had not yet been filed is unconstitutional. *Brown* makes clear that the constitutionally significant date is not the date of *filing* but the date of *accrual*. 292 S.E.2d at 2. And *Fowler Properties* makes clear that even an explicit statement of retroactive intent by the General Assembly cannot make an unconstitutional change to "substantive" law apply retroactively. 646 S.E.2d at 199–200. This Court should thus hold that Budgetel and Bollepalli's liability for A.H.'s Georgia claims is joint and several because the 2022 changes cannot apply retroactively under the Georgia Constitution.

## CONCLUSION

Because the apportionment statute doesn't apply to A.H.'s Georgia claims, A.H. asks that the Court prohibit any argument, evidence, insinuation, witness examination, comment to jurors or prospective jurors, or offer of evidence about the fault of any nonparty.

This 21st day of October, 2026.

Respectfully submitted,

**LAW & MORAN**

*/s/ Denise D. Hoying*
Peter A. Law
Georgia Bar No. 439655
E. Michael Moran
Georgia Bar No. 521602
Denise D. Hoying
Georgia Bar No. 236494
*Attorneys for Plaintiff*

563 Spring Street, NW
Atlanta, Georgia 30308
Phone: (404) 814-3700
Facsimile: (404) 842-7710
Pete@lawmoran.com
Mike@lawmoran.com
Denise@lawmoran.com

**ANDERSEN, TATE & CARR, P.C.**

*/s/ Patrick J. McDonough*
Patrick J. McDonough
Georgia Bar No. 489855
Jonathan S. Tonge
Georgia Bar No. 303999
*Attorneys for Plaintiff*

One Sugarloaf Centre
1960 Satellite Boulevard, Suite 4000
Duluth, Georgia 30097
Phone: (770) 822-0900
Facsimile: (770) 822-9680
pmcdonough@atclawfirm.com
jtonge@atclawfirm.com

## CERTIFICATE OF COMPLIANCE

This is to certify that the foregoing ***PLAINTIFF'S MOTION IN LIMINE ON THE INAPPLICABILITY OF THE GEORGIA APPORTIONMENT STATUTE*** has been prepared with one of the following font and point selections approved by the Court in L.R. 5.1. Specifically, the above-mentioned pleading was prepared using Times New Roman font of 14 point size.

Respectfully submitted,

**LAW & MORAN**

*/s/ Denise D. Hoying*
Denise D. Hoying
Georgia Bar No. 236494
Attorney for Plaintiff

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ROME DIVISION

| | | |
|---|---|---|
| A.H., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION FILE |
| | ) | NO. 4:24-CV-00224-WMR |
| CARSON LOOP ESM, LLC d/b/a | ) | |
| BUDGETEL, and SRINIVAS | ) | |
| BOLLEPALLI, | ) | |
| | ) | |
| Defendants. | ) | |

**CERTIFICATE OF SERVICE**

This is to certify that I have this day served a true and correct copy of the foregoing ***Plaintiff's Motion in Limine on the Inapplicability of the Georgia Apportionment Statute*** with the Clerk of Court using the CM/ECF system which will automatically send email notification of such filing to:

Phillip Friduss
Jacob O'Neal
Hall Booth Smith, P.C.
191 Peachtree Street, N.E., Suite 2900
Atlanta, GA 30303

This 21st day of October, 2026.

**LAW & MORAN**

*/s/ Denise D. Hoying*
Denise D. Hoying
Georgia Bar No. 236494
Attorney for Plaintiff

563 Spring Street, NW
Atlanta, GA 30308
(404) 814-3700