**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF GEORGIA**
**ROME DIVISION**

| | |
|---|---|
| A.H.,<br><br>Plaintiff,<br><br>v.<br><br>CARSON LOOP ESM, LLC d/b/a BUDGETEL, and SRINIVAS BOLLEPALLI,<br><br>Defendants. | CIVIL ACTION FILE NO.<br><br>4:24-CV-00224-WMR |

**DEFENDANTS' MOTION TO EXCLUDE**
**THE OPINION TESTIMONY OF JAMES RIVES**

COME NOW, **CARSON LOOP ESM, LLC d/b/a BUDGETEL, and SRIVINAS BOLLEPALLI** ("Defendants"), and file this Motion to Exclude the Opinion Testimony of Plaintiff's Proposed Expert Witness, James Rives. Rives should be excluded because his opinions do not meet the standard for admissibility set forth in Federal Rules of Evidence 702, 403, and Daubert v. Merrell Dow Pharm, Inc., 509 U.S. 579 (1993) and its progeny. As stated further in this motion, Rives's opinions are not based on sufficient facts and data, are not supported by reliable principles and methodologies, were not reliably applied to the facts of this case, and will not assist the trier of fact. In the alternative, Rives's opinions should be limited because they are unreliable, improper legal conclusions, cumulative evidence,

irrelevant, misleading and would be confusing to the jury. In support thereof, Defendants state as follows:

## FACTUAL INTRODUCTION

This action arises out of allegations that Plaintiff AH (hereinafter "Plaintiff"), while employed as a housekeeper at a Budgetel (hereinafter "the Budgetel") in Cartersville, GA, was subjected to sex and labor trafficking by an agent of the Budgetel who oversaw day-to-day operations, Shreesh Tiwari (hereinafter "Tiwari"). Special Agent James Rives (hereinafter "Rives") of the Department of Homeland Security was tasked with conducting an investigation into the allegations of sex and labor trafficking at the Budgetel.

Rives is expected to give expert witness in this case. On December 16, 2025, Defendants' counsel deposed Rives. (See Deposition of James Rives ("Rives depo."), attached hereto as Exhibit B.) This Motion is now before the Court seeking to exclude Rives as an expert witness, or in the alternative, limit his proffered opinions.

## ARGUMENT AND CITATION TO AUTHORITY

James Rives's proffered expert testimony and opinions should be properly excluded under Fed. R. Evid. 702, 403, and Daubert. While it is undisputed that Rives is a special agent of the Department of Homeland Security and has prior experience working with victims of sex trafficking, he lacks the knowledge,

experience and expertise to qualify him to testify as an expert on the subject. Rives relies upon unsupported speculation, mere observations, and subjective beliefs for his opinions, as opposed to reliable principles and scientific methods. For the reasons stated herein, Rives's opinions should be excluded because they fail to meet the strict standard for the admissibility of expert testimony under Fed. R. Evid. 702 and Daubert.

## I. Standard for Admissibility of Expert Testimony.

Federal Rule of Evidence 702 provides:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
>
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>
> (b) the testimony is based on sufficient facts or data;
>
> (c) the testimony is the product of reliable principles and methods; and
>
> (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702. When performing this analysis, the district court acts as a gatekeeper to ensure testimony which does not satisfy this standard is excluded. Daubert, 509 U.S. 579; United States v. Frazier, 387 F.3d 1244, 1260 (11th Cir. 2004); Allison v. McGhan Medical Corp., 184 F.3d 1300, 1311-132 (11th Cir. 1999)

(noting "the judge's role is to keep unreliable and irrelevant information from the jury because of its inability to assist in factual determinations, its potential to create confusion, and its lack of probative value"). Even though there may be overlap in the analysis, each of the prongs represents a distinct and individual element which must be satisfied. Quiet-Tech. DC-8, Inc. v. Hurel-Dubois UK Ltd., 326 F.3d 1333, 1341 (11th Cir. 2003). Plaintiff has the burden of demonstrating that the proffered expert testimony is admissible. Hall v. United Ins. Co. of Am., 367 F.3d 1255, 1261 (11th Cir. 2004); McDowell v. Brown, 392 F.3d 1283, 1298 (11th Cir. 2004). Qualifications are not the sole test of whether proffered testimony will satisfy the requirements of Fed. R. Evid. 702, as even a "supremely qualified expert cannot waltz into the courtroom and render opinions unless those opinions are based on some recognized scientific method." McDowell, 392 F.3d at 1298 (quoting Clark v. Takata Corp., 192 F.3d 750, 759, n. 5 (7th Cir. 1999)).

Daubert provides four guideposts to assess the reliability of expert testimony: (1) whether the expert's methodology has been tested or is capable of being tested; (2) whether the technique has been subjected to peer review and publication; (3) the known and potential error rate of the methodology; and (4) whether the technique has been generally accepted in the proper scientific community. Daubert, 509 U.S. at 593-594; McDowell, 392 F.3d at 1298. Federal Rule of Evidence 702 imposes a firm duty upon district courts to act as gatekeepers and ensure that speculative and

unreliable opinions do not reach the jury. McGee v. Envenflo Co., 2003 U.S. Dist. LEXIS 25039 at *8 (M.D. Ga. December 11, 2003). To fulfill this gatekeeper function, the Court must "assess the reasoning and methodology underlying the expert's opinion and determine whether it is both scientifically valid and acceptable to a particular set of facts." Id. (quoting Goebel v. Denver and Rio Grande W. R.R. Co., 346 F.3d 987. 991 (10th Cir. 2003).

The FRE Advisory Committee and the Eleventh Circuit have enumerated additional factors for evaluating whether an expert's testimony meets Daubert's reliability requirements. Fed R. Evid. 702; U.S. v. Frazier, 387 F.3d 1244, 1297 (11th Cir. 2004). These include whether: (1) the testimony "grow[s] naturally and directly out of research [experts] have conducted independent of the litigation, or whether they have developed their opinions expressly for purposes of testifying"; (2) "the expert has unjustifiably extrapolated from an accepted premise to an unfounded conclusion"; and (3) "the expert has adequately accounted for obvious alternative explanations." Id. A trial court's exclusion of expert testimony is a legal determination and will not be disturbed absent abuse of discretion. Chapman v. Procter & Gamble Distrib., LLC, 766 F.3d 1296, 1305 (11th Cir. 2014). Plaintiff must prove to this Court that the testimony of Rives is admissible – that is (a) he is qualified, (b) his methodology is scientifically valid, and (c) his opinions will assist

the trier of fact is this matter. For the reasons set forth below, Plaintiff cannot satisfy this burden.

**A. Rives is not qualified to give opinions as an expert in sex trafficking.**

"Determining whether a witness is qualified to testify as an expert 'requires the trial court to examine the credentials of the proposed expert in light of the subject matter of the proposed testimony'." Atlantic Rim Equities, LLC v. Slutzky, Wolfe, and Bailey, 2006 WL 5159598, *4 (N.D. Ga. 2006). A witness can be qualified to give expert testimony by virtue of his education, training or experience, and "there is no mechanical checklist for measuring whether an expert is qualified to offer opinion evidence in a particular field." Woodward v. Wal-Mart Stores East, LP, 2011 U.S. Dist. LEXIS 95370 (M.D. Ga. 2011) (citations omitted). But an expert may not simply rely on general experience to offer any conceivable opinion. Frazier, 387 F.3d at 1261.

Rives lacks the qualifications necessary to testify as an expert in the field of sex trafficking. Specifically, Rives's education, training, and experience is insufficient to qualify him as an expert to provide testimony opinions related to sex trafficking. While Rives has served as a special agent for the Department of Homeland Security for approximately twenty years, he does not have sufficient technical or specialized knowledge obtained through research and experience on the subject of sex trafficking. Significantly, Rives admitted that while he has received

training regarding sex and labor trafficking, that training is limited to "a small block of instruction maybe within a couple days" roughly twenty years ago, conferences, and yearly virtual training. (Rives depo., 108, 109.) Plaintiff has offered no evidence Rives has ever conducted any research on the at-issue subject of sex or labor trafficking. Similarly, there is no evidence he has authored any scholarly writings on the topic of sex or labor trafficking. Instead, his only exposure to the subjects of sex and labor trafficking has been his involvement in approximately five investigations involving sex or labor trafficking throughout his tenure as a special agent. (Rives depo., 88.) Rives's limited training and experience in investigating sex and labor trafficking is wholly insufficient to qualify him to provide expert testimony on the issues at bar. His investigations have not been researched, peer-reviewed, or studied. Moreover, Rives admits that his opinions regarding the allegations that Tiwari would punish Plaintiff if she conversed with guests or employees, that Tiwari threatened Plaintiff with eviction if she would not comply with his requests for oral sex, that Tiwari groped Plaintiff, that Tiwari threatened to report her drug use to DFACS, that Tiwari told Plaintiff he was the only person in life who could help her, and that Tiwari forced Plaintiff to work long hours without pay are based solely on Plaintiff's own statements, which he relies upon as truthful without conducting an independent analysis from outside sources to confirm the accuracy of the statements. (Rives depo., 126-129.)

To the extent that Plaintiff contends that Rives's experience related to his work with other cases of sex and labor trafficking sufficiently qualifies him to serve as an expert in this case, such position is refuted by Rives's own testimony. Specifically, Rives testified that Plaintiff was referred to the Department's victim specialist, Alia Eh-Sawi, to determine what, if any, impact Plaintiff's interactions with Tiwari had upon her. (Rives depo., 131, 132.) This referral to the specialist makes evident the fact that even Rives's employer has deemed him unqualified to ascertain any more than the plainly observable elements of this matter. Furthermore, Rives never conducted any sort of mental, psychological, or physical examination of Plaintiff throughout the course of his investigation. (Rives depo., 125, 126.) Rives even testified that he is unaware of any legal or medical definition of trauma. (Rives depo., 131.) Therefore, even if Rives had examined Plaintiff, he would be unqualified to testify about whatever harm she may have suffered.

Without proper training and education, Rives cannot rely on his general experience from unreliable interviews to qualify him as an expert on this specific topic of sex trafficking. See Frazier, 3877 F.3. at 1261. Accordingly, Defendants move to exclude James Rives from testifying as an expert witness in this case.

**B. Rives's purported opinions lack a reliable basis and were not reliably applied to the facts of this case.**

The Daubert factors listed above are intended to ensure that even witnesses who are clearly qualified provide reliable testimony and are not meant to be

exclusive or applicable to every type of expert testimony. See McDowell, 392 F.3d at 1298; Allison, 184 F.3d at 1312. An expert is entitled to rely on his experience in his field as a basis for his opinions. However, "this does not mean…that experience standing alone, is a sufficient foundation rendering reliable any conceivable opinion the expert may express." Dishman v. Wise, 2009 U.S. Dist. LEXIS 57888 (M.D. Ga. 2009) (Lawson, J) (citing Frazier, 387 F.3d at 1261). Indeed, "accepting [the expert's] experience alone as evidence of the reliability of his statements is tantamount to disregarding entirely the reliability prong of the Daubert analysis." Dukes v. State of Georgia, 428 F. Supp. 2d 1298, 1315 (N.D. Ga. 2006) (Forrester, J) (declining to find an expert's testimony reliable where the "court would need to take a leap of faith and rely on [the expert's] *ipse dixit* and assurance that his testimony is based on nationally accepted standards"). Courts are clear that when an expert is relying solely or primarily on experience, the expert "must explain how that experience leads to the conclusion reached, why that experience is a sufficient basis for the opinion, and how that experience is reliably applied to the facts." McGee v. Evenflo Co., 2003 U.S. Dist. LEXIS 25039, *18 (M.D. Ga. 2003) (Royal, J) (citing Fed. R. Evid. 702 Advisory Committee's Note); Dukes, 428 at 1315 (excluding expert testimony where the proffered expert did not "specify what experiences or what standards he relie[d] upon in making any of [his] determinations").

Here, Rives relies upon unsupported speculation, mere observations, and his subjective beliefs for his opinions as opposed to reliable principles and methods. As noted above, his general experience investigating cases of sex and labor trafficking is not enough. As provided in Dukes, supra, we must dig deeper to determine if there is any basis to support Rives's opinions and generalizations about sex trafficking. Rives testified that his investigation was conducted without the direction of any sort of published list of guidelines or standard operating procedures from the Department of Homeland Security. (Rives depo., 115.) His investigation was not reliable because he did not do any outside research to verify the information he received. Rives testified that his opinions were based almost entirely upon Plaintiff's statements alone. (Rives depo., 123.) Despite readily having access to documentation, Rives did not substantiate Plaintiff's statements regarding either the pay she received for her work at the Budgetel or what she paid for her accommodations there. (Rives depo., 123.) Likewise, despite having access to personnel, Rives did not interview any of the officers involved in law enforcement reports regarding previous responses to the subject property to assess the accuracy of said reports prior to initiating his investigation. (Rives depo., 115, 116.) Rives neglected to question Tiwari with regard to the alleged punishments, threats of eviction, or harassment to which he allegedly subjected Plaintiff. (Rives depo., 127, 128.) Rives further testified that he had deemed Tiwari to be uncredible not by any standard or criteria of credibility

provided to him via training but rather by the quantity, not quality, of statements made against him. (Rives depo., 123, 124.) Mere observations and speculation do not constitute an expert opinion. Rives had ample opportunity to substantiate his observations in this matter but either chose not to or discredited statements he deemed unworthy.

Moreover, Rives's opinions are based on little to no objective, concrete methodologies. For example, Rives testified that his method of investigation was founded entirely upon his personal experience, experience that was limited to approximately five prior investigations involving sex or labor trafficking. Rives's methodology was dictated by neither his official training nor official investigative procedure. (Rives depo., 114, 115.) Rives's investigative methodology is not in accordance to any delineated standard at all, let alone any nationally-accepted standard. Despite this, he has been identified as an expert on the topic of sex and labor trafficking.

His methodology notwithstanding, Rives could not testify that his investigative reports underwent any sort of final, global review to certify that his investigation was properly conducted. Beyond proofreading for grammatical and spelling errors, Rives is unaware of any criteria that would have been employed in a substantive review by his supervisor, Darren Webb. Rives never discussed the

subject investigation with Webb whatsoever after its completion. (Rives depo., 113, 114.)

Rives's ad-hoc, unreviewed investigation does not amount to a reliable application to the facts of this case as required by Daubert. His knowledge of the facts of this case comes solely from the Plaintiff herself and Rives did little to nothing to attempt to verify that information or consider alternative facts or theories. Indeed, another element of the reliability test for experts includes whether "the expert has adequately accounted for obvious alternative explanations." Frazier, 387 F.3d at 1297. There is no evidence whatsoever that Rives considered alternative explanations in this case. He subjected Tiwari to minimal questioning and discredited what information he did receive from him based solely on the numerosity of others' accounts. This does not amount to an investigation rigorous enough for Rives to base any expert testimony.

Because Rives is not sufficiently qualified in the area of sex trafficking, his methods and principles are unreliable, and he failed to reliably apply methods, principles or research to the facts of this case, he should be prohibited from offering any expert testimony in this case. See Fed. R. Evid. 702; Daubert, 509 U.S. at 593-94.

**C. Rives's opinions are not relevant under the Daubert standard or Federal Rules of Evidence 702 and 403 and should be excluded.**

Under the relevance prong of this analysis, "expert testimony is relevant if it will assist the trier of fact to understand the evidence or to determine a fact at issue in the case." Ahuja v. Cumberland Mall, 821 F. Supp. 2d 1317, 1322 (N.D. Ga. 2011) (citing Allison v. McGhan Med. Corp., 184 F.3d 1300, 1309 (11th Cir. 1999)). To be helpful to the trier of fact, the testimony must "concern[] matters that are beyond the understanding of the average lay juror." Frazier, 387 F. 3d at 1262. Testimony which amounts to nothing more than factual or legal conclusions is not helpful and is properly excluded. Cook v. Sheriff of Monroe County, Florida, 402 F.3d 1092, 1113 (11th Cir. 2005); U.S. v. Masferrer, 367 F. Supp. 2d 1365, 1373 (S.D. Fla. 2005); Fed. R. Evid. 704 Advisory Committee Notes (noting "the abolition of the ultimate issue rule does not lower the bar so as to admit all opinions…[Rules 701, 702 and 403] afford ample assurances against the admission of opinions which would merely tell the jury what result to reach"). Likewise, "[p]roffered expert testimony generally will not help the trier of fact when it offers nothing more than what lawyers for the parties can argue in closing arguments." Frazier, 387 F.3d at 1262-63. Because of the powerful and potentially misleading effect of expert evidence, see Daubert, 509 U.S. at 595, sometimes expert opinions that otherwise meet the admissibility requirements may still be excluded under Rule 403. Frazier, 387 F.3d at 1263. Exclusion under Rule 403 is appropriate if the probative value of

otherwise admissible evidence is substantially outweighed by its potential to confuse or mislead the jury, see Rouco, 765 F.2d at 995, or if the expert testimony is cumulative or needlessly time consuming. Frazier, 387 F.3d at 1263.

First, Rives's opinions on the general topic of sex and labor trafficking and the findings of his investigation will not assist the trier of fact in this case. Plaintiff has only alleged three causes of action in this case: negligence, statutory liability for sex trafficking under the TVPRA, and statutory liability for labor trafficking under the TVPRA. (See Plaintiff's Complaint, ¶¶ 44-91.) The elements of a TVPRA claim are the defendant (1) knowingly benefited, (2) from taking part in a common undertaking or enterprise involving risk and potential profit [i.e., participation in a venture], (3) that undertaking or enterprise violated the TVPRA as to the plaintiff, and (4) the defendant had constructive or actual knowledge that the undertaking or enterprise violated the TVPRA as to the plaintiff. Red Roof Inns, Inc., 21 F.4th at 726. Rives's opinions do not assist the trier fact in deciding any of these elements or a negligence claim. A TVPRA claim does not involve these areas which Rives seeks to provide expert testimony. Perhaps Rives's opinions would be relevant for a claim against Plaintiff's alleged trafficker, but her alleged trafficker is not a named defendant in this action. "[E]xpert testimony must be 'relevant to the task at hand'" and must "'logically advance[] a material aspect' of the case." McDowell v. Brown, 392 F.3d 1283, 1298-99 (11th Cir. 2004) (quoting Daubert, 509 U.S. at 591); see

also Butler v. First Acceptance Ins. Co., Ins., 652 F. Supp. 2d 1264, 1271 (N.D. Ga. 2009) (stating that Daubert's relevancy inquiry means that "an expert's testimony should help the trier of fact decide the case at bar.") Here, Rives's proffered opinions do no such thing because he can offer only opinions on Plaintiff's alleged trafficking, which are not at issue in this litigation. Since Rives's opinions are focused on issues that are not central to this case, his testimony has a danger to significantly mislead or confuse the jury. See Fed. R. Evid. 403.

Second, Rives's testimony and opinions do not concern matters that are beyond the scope of the average lay person, and therefore, expert testimony is not required. Frazier, 387 F.3d at 1262. Rives's role in this case was to assess Plaintiff's experience at the hotel. But the best person to explain Plaintiff's experience at the hotel is Plaintiff herself with direct and personal knowledge of such evidence. This evidence does not require an expert. See Frazier, 387 F.3d at 1262. Plaintiff was able to explain her experience throughout her deposition and she will have the same opportunity at the trial of this case. Testimony from Rives is only cumulative evidence of Plaintiff's experience, which would be far more prejudicial that probative to a jury. See Fed. R. Evid. 403. The testimony Rives could provide is not specialized information or opinions beyond the understanding of a lay person and requiring an expert witness. Instead, it is Plaintiff's self-serving testimony masquerading as an expert opinion.

Similarly, Rives cannot offer an opinion on the ultimate issue that Defendants knowingly benefitted from participation in a venture Defendants knew or should known engaged in acts in violation of the TVPRA. Rather, Rives's investigation never uncovered any monetary connection or scheme connecting Defendant Bollepalli to the alleged trafficking. (Rives depo., 91.) Any testimony to the contrary would not be based upon any reliable application of methods or principles to the facts of this case and fails to consider other available evidence. Such conclusions are wholly improper and inadmissible, especially where Rives failed to conduct a thorough review of the facts, deposition testimony, trial testimony, and discovery documents in this case.

**D. Even if Rives is qualified as an expert, his proffered opinions should be limited under Daubert and the Federal Rules of Evidence 403.**

Even if this Court finds that Rives is qualified as an expert witness, his opinions should be limited. For the reasons stated herein regarding lack of reliability and relevancy, Rives's opinions should be limited.

Rives cannot be permitted to offer speculative factual conclusions couched as an expert opinion. Similarly, Rives should be prohibited from merely reciting Plaintiff's reported feelings and observations because the best presentation of that evidence is Plaintiff's own testimony and Rives would only be cumulatively and unnecessarily bolstering that testimony. See U.S. v. Scheffer, 523 U.S. 303, 317, 118 S. Ct. 1261 (1998) (respondent was barred from introducing expert opinion

testimony to bolster his own credibility). Further, he cannot allege a causal connection between Plaintiff's damages and the Budgetel because he was very clear in his deposition that he could not recall ever interviewing Plaintiff on what she contended the impact her interactions with Tiwari had upon her or how it affected her in any way. (Rives depo., 131.) Likewise, he cannot claim that Plaintiff suffers any psychological issues as a result of her alleged trafficking at the Budgetel because he did not perform any mental or psychological evaluations on her. (Rives depo., 125, 126.) Nor can Rives be allowed to offer opinions as to the ultimate issue of the case, especially when his investigation never uncovered any monetary connection or scheme connecting Defendant Bollepalli to the alleged trafficking. (Rives depo., 91.)

In general, while Rives may have experience investigating cases of sex and labor trafficking, he does not have proper experience, training, or education in the specific area to offer expert testimony. He should be prohibited from offering expert opinions regarding sex trafficking because he does not have the proper experience, education, and training, and has not reliably applied methods and principles to the facts of this case. Whatever generalized opinions and explanations about the case that he may offer are not issues central to this litigation and would be misleading, confusing and more prejudicial than probative for a jury to consider given that Plaintiff's alleged trafficker is not a defendant and there is no allegation that Defendant trafficked Plaintiff.

## CONCLUSION

As outlined above, Plaintiff's expert James Rives is not qualified to give expert opinions in this case as his qualifications do not correspond to the subject matter of his testimony. His opinions in this case are not based on reliable principles and methods as required under the reliability prong of the Daubert analysis, nor has he reliably applied them to the facts of this case and considered contrary evidence. Even if James Rives is offered as an expert at trial, his opinions should be limited as discussed herein. Accordingly, Defendants request this Court exclude James Rives as an expert on all issues in which Plaintiff intends for him to testify.

Respectfully submitted, this 21st day of October, 2026.

**HALL BOOTH SMITH, P.C.**
*/s/ Jacob Stalvey O'Neal*
PHILLIP E. FRIDUSS
Georgia Bar No. 277220
JACOB STALVEY O'NEAL
Georgia Bar No. 877316
*Counsel for Defendants*

191 Peachtree Street, N.E.
Suite 2900
Atlanta, GA 30303-1775
Tel. 404-954-5000
Fax: 404-954-5020
Email: pfriduss@hallboothsmith.com
Email: joneal@hallboothsmith.com

## CERTIFICATE OF COMPLIANCE

Counsel hereby certifies that this document has been prepared with one of the font and point selections approved by the Court pursuant to L.R. 5.1(C) of the Northern District of Georgia, specifically, 14 point, Times New Roman font.

**HALL BOOTH SMITH, P.C.**
*/s/ Jacob Stalvey O'Neal*
PHILLIP E. FRIDUSS
Georgia Bar No. 277220
JACOB STALVEY O'NEAL
Georgia Bar No. 877316
*Counsel for Defendants*

191 Peachtree Street, N.E.
Suite 2900
Atlanta, GA 30303-1775
Tel. 404-954-5000
Fax: 404-954-5020
Email: pfriduss@hallboothsmith.com
Email: joneal@hallboothsmith.com

**CERTIFICATE OF SERVICE**

This are to certify that on the 21st day of October, 2026, I have caused to be served upon counsel for all parties a true and correct copy of the foregoing **DEFENDANTS' MOTION TO EXCLUDE OPINION TESTIMONY OF JAMES RIVES** by filing same through use of the Court's online filing system, the CM/ECF system for the United States District Court for the Northern District of Georgia, which will serve all counsel of record.

**HALL BOOTH SMITH, P.C.**
*/s/ Jacob Stalvey O'Neal*
PHILLIP E. FRIDUSS
Georgia Bar No. 277220
JACOB STALVEY O'NEAL
Georgia Bar No. 877316
*Counsel for Defendants*

191 Peachtree Street, N.E.
Suite 2900
Atlanta, GA 30303-1775
Tel. 404-954-5000
Fax: 404-954-5020
Email: pfriduss@hallboothsmith.com
Email: joneal@hallboothsmith.com