**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF GEORGIA**
**ROME DIVISION**

A.H.,

Plaintiff,

v.

CARSON LOOP ESM, LLC d/b/a BUDGETEL; and SRINIVAS BOLLEPALLI,

Defendants.

CIVIL ACTION FILE
NO. 4:24-cv-00224-WMR

**PLAINTIFF'S CONSOLIDATED RESPONSE TO DEFENDANTS' MOTIONS IN LIMINE**

## INTRODUCTION

Defendants' manager trafficked Plaintiff. He's in prison for it. Still, Defendants literally ask the Court to exclude "evidence concerning the alleged trafficking of A.H. at the subject Budgetel and the related criminal investigation and conviction of her alleged trafficker, Shreesh Tiwari." [Doc. No. 103 at 1-2]. In other words, the very incidents giving rise to this lawsuit. The motions ignore altogether the fact that Plaintiff even has premises liability and negligence claims, which makes broad evidence of the "totality of the circumstances" admissible. And Defendants urge the Court to ***follow an opinion the Eleventh Circuit just vacated.*** *Id.* at 3, citing

*C.B. v. Naseeb Investments, Inc.*, 748 F.Supp.3d 1338 (N.D. Ga. Sept. 12, 2024). That's not nearly all that is wrong about Defendants' motion, just the headlines.[1]

In essence, Defendants seek to exclude *all* the evidence in this case. In doing so, Defendants pretend Plaintiff doesn't bring negligence claims in which the nature, proximity, frequency and notice of prior incidents are relevant and admissible under the totality of the circumstances. *Georgia CVS Pharmacy, LLC v. Carmichael,* 316 Ga. 718, 727–32, 890 S.E.2d 209 (2023). The broad ruling in *Carmichael* alone defeats most of Defendants' relevance arguments.

Similarly, had Defendants read the Eleventh Circuit opinion vacating *C.B.*, they would have learned that evidence of other incidents of "sex trafficking [that] took place at the Hilltop Inn," and "many incidents involving narcotics, pimps, prostitutes, and underaged girls being sold" are expressly relevant to a TVPRA

[1] Plaintiff responds to these motions in limine under the premise that they were written and prepared in good faith for this case. However, the result of that is necessarily to point out that Defendants make a number of serious misstatements and inexplicable arguments to the Court, such as asserting this is not a premises liability case (it is) and citing to the *C.B.* case as if it was good law and had not been vacated by the Eleventh Circuit just this year. In reality, the explanation for the misleading and irrelevant arguments Defendants make is that most of these motions were copied and pasted wholesale from a different case with different issues that Plaintiff's counsel was also involved in, *D.H. v. Tucker Inn, Incorporated,* No. 1:22-CV-03419-JPB, Doc. No. 184. That case did not have premises liability claims (this one does) and it was set for trial before the Eleventh Circuit vacated *C.B.* It also explains the request to keep out certain evidence about Tucker Inn, Inc. in Defendants' motion. In other words, if Defendants' motion appears to be arguing about evidence in a different case, that's because it is.

claim. *A.G. v. Northbrook Indus., Inc.*, 171 F.4th 1257, 1265, 1271-73 (11th Cir. 2026). In fact, *A.G.* vacated *C.B.* on the very points that Defendants rely on.

Defendants' motions in limine are almost uniformly wrong, at times frivolous, and should be denied.

## ARGUMENT

### I. Background

Defendants hired Shreesh Tiwari to run the Budgetel. He exercised authority over its rooms, locks, keys, workers, and daily operations. A.H. testified that Tiwari used that authority to coerce sexual acts and labor: he locked her out, withheld her belongings and vehicle title, threatened to report her drug use and jeopardize her custody of her child, and conditioned her continued housing on compliance. [Ex. 1, A.H. Dep. 21:9–23:22, 26:12–24, 184:1–185:11]. A.H. also described working for wages offset by weekly room rent. [Ex. 1, A.H. Dep. 43:17–44:24]. Her account is not one of an outside trafficker who happened to rent a room. It shows how Defendants ran their hotel and who they entrusted power to.

Defendant Srinivas Bollepalli acknowledged the hotel's management structure, his authority over its rules, and Tiwari's supervisory role. [Ex. 2, Bollepalli Dep. 38:2–23, 122:13–16]. He personally collected and reviewed police reports concerning the hotel and checked online reviews during the relevant period. [*Id*. at 30:14–31:19, 121:1–24]. He admitted never receiving or providing any trafficking-identification training. [*Id*. at 85:1–25].

## II. DEFENDANTS' MOTIONS IN LIMINE

### A. MIL Nos. 1 & 2: Other trafficking and criminal incidents are admissible under the case vacating Defendants' asserted authority.

Setting aside Defendants' first sentence asking the Court to exclude evidence of A.H.'s own trafficking and the related criminal conviction of Tiwari,[2] Defendants ask the Court to exclude evidence that, in addition to A.H., Tiwari trafficked as many as seven other witnesses in this case, at the same hotel, and in the same manner as Tiwari trafficked A.H. Defendants also seek the exclusion of the other types of crime rampant at the Budgetel.

The "other victims" Defendants want excluded are the women a federal court ordered Tiwari to repay as victims of his offense and relevant conduct, [Doc. No. 75-2, Ex. C ¶ 23], and whose photographs were on Defendants' business computers in the manager's office. [Doc. No. 76-4, Ex. I ]; Ex. 2, Bollepalli Dep. 118:4–119:24. That is not someone else's incident at someone else's hotel. It is what was stored on this hotel's equipment.

Defendants' arguments are wrong and should be denied because they are based on bad law. Defendants' statement that knowledge of Plaintiff's specific trafficking is the only requirement and that the trafficking of others is not relevant is

[2] This sentence is unsupported by any argument and Plaintiff assumes that perhaps this was written in error. As it is unsupported by any argument, it should be denied.

based on an opinion, *C.B.*, that was vacated by the Eleventh Circuit in March of this year. *See A.G.*, 171 F.4th 1257. And in fact, it was vacated on the very position Defendants ask this Court to adopt. *Id.* at 1270 ("The plain language of § 1595(a) does not support *Red Roof*'s requirement that a victim asserting a beneficiary claim must prove a defendant's knowledge that the common enterprise engaged in a TVPRA violation *as to the victim*.").

Instead, the Eleventh Circuit went on to find not only other trafficking incidents relevant, but also a wide variety of other crimes as well. In addition to other trafficking incidents, the Eleventh Circuit noted evidence of other crimes such as the "many incidents involving narcotics, pimps, prostitutes, and underaged girls being sold[]." *Id.* at 1265, 1272, 1273. Here, the evidence of drugs at the hotel is especially relevant as the purchase, sale, provision, and, at times, planting of illegal drugs was a key part of the coercion that Tiwari used against A.H. and other victims.

This Court has already reached the same conclusion in another hotel sex-trafficking case. In *Does 1–4 v. Red Roof Inns, Inc.*, 688 F. Supp. 3d 1247 (N.D. Ga. 2023), the Court denied summary judgment on Georgia negligence and TVPRA claims after considering prior prostitution, guest complaints, police activity, employee observations, and management's knowledge and conduct. The Court found that prior prostitution was sufficiently similar to trafficking-related crimes to support foreseeability under Georgia law. The same evidence also bore on whether

the defendants knew or should have known that they participated in a trafficking venture. Defendants now ask this Court to exclude the same categories of evidence, most notably, the evidence of Tiwari's other trafficking victims.

The same result is true under Georgia law, which Defendants ignore entirely by not addressing negligence in any way. In *Carmichael*, the Georgia Supreme Court rejected a rigid substantially-similar-crime requirement. Instead, it held that foreseeability turns on the totality of circumstances, including the nature, proximity, frequency, and notice of prior incidents. 316 Ga. 718, 727–32, 890 S.E.2d 209.

The Georgia Court of Appeals has already applied *Carmichael* in a hotel sex-trafficking case. In *Suresh & Durga, Inc. v. Doe*, 369 Ga. App. 787, 894 S.E.2d 602 (2023), the court considered police reports, prior prostitution and drug activity, other trafficking victims, and evidence of what hotel employees knew or should have known in affirming the denial of summary judgment on the plaintiff's negligence claims. Defendants seek to exclude the very categories of evidence the Georgia Court of Appeals considered relevant in a similar case.

Confusingly—yet notably—Defendants state that, "It is further important to distinguish this case from a premises liability claim in which evidence of other crimes on the property could be relevant because substantially similar prior criminal activity is central to that inquiry." Doc. 103 at 6. The only response to that admission is: **THIS IS A PREMISES LIABILITY CASE**. *See* Doc. 1, Complaint, at ¶¶ 44-

68, "Negligence Allegations." How Defendants could possibly not know that fact on the eve of trial is bewildering.

Because evidence of other trafficking and the many other crimes at the Budgetel are relevant and admissible under binding TVPRA law as well as Georgia negligence law, Defendants' motions should be denied.

**i. Police reports, news articles, and statistics are relevant and admissible.**

Defendants make a similar argument as to the documentary evidence, that because it doesn't mention A.H., it is irrelevant. And for the same reasons as above, Defendants' motion should be denied.

The only other basis provided for exclusion is Defendants' assertion that the evidence would be unfairly prejudicial while they ask the Court to forbid evidence bearing directly on notice, knowledge, participation, the existence of a public nuisance, and damages. That is not Rule 403 balancing. Evidence does not become unfairly prejudicial merely because it is damaging; "virtually all evidence is prejudicial or it isn't material." *Ballou v. Henri Studios, Inc.*, 656 F.2d 1147, 1155 (5th Cir. Unit A 1981).

Rule 403 does not protect Defendants from adverse proof. It protects against unfair prejudice that substantially outweighs probative value. The Rule is an extraordinary remedy used sparingly, with the balance favoring admission. *United States v. Alfaro-Moncada*, 607 F.3d 720, 734 (11th Cir. 2010); *Ballou*, 656 F.2d at

1155. The evidence of other crimes and trafficking goes directly to notice, knowledge, participation, and, as Defendants' own brief admits, to the "substantially similar prior criminal activity [that] is central to that inquiry." Doc. 103 at 6. Defendants' motions should be denied.

Finally, Defendants do not identify what statistical evidence they are referring to. Plaintiff reserves her right to respond to a more specific objection to particular evidence, should Defendants ever make such an objection.

**B. First[3] MIL No. 4: Defendants admitted guest reviews are relevant.**

Defendants contend that reviews cannot establish notice because there is no evidence anyone at Budgetel looked at them. [Doc. No. 103 at 7–8]. But, like the law Defendants cite, that's not true. Bollepalli testified that he reviewed Google guest reviews approximately once per month from the time he bought the motel through the period ending with Tiwari's arrest. [Ex. 2, Bollepalli Dep. 121:1–24]. Reviews bearing on conditions, guest complaints, prostitution, safety, or other warnings during the relevant ownership period therefore are relevant to notice under Rules 401 and 801(c)(2). Their truth, provenance, date, contents, and whether Bollepalli actually saw a particular review remain questions for an exhibit-specific foundation. Even a review posted after A.H.'s trafficking can have another

[3] Defendants' place MIL No. 3 after this MIL No. 4, and then follow MIL No. 3 with a *second* MIL No. 4.

permissible purpose if a sufficient connection is shown. The California automobile-dealer case relied on by Defendants did not involve an admission like Bollepalli's. As in the rest of their motion, Defendants don't specify any particular review they actually object to.

The unspecified news articles are similar. Bollepalli was questioned about a news article ***in which he had been interviewed*** concerning the Budgetel. [Ex. 2, Bollepalli Dep. 60:19–61:20]. Being interviewed in an article about crime at the hotel is notice of that crime, which Defendants have acknowledged is relevant in a premises liability case. [Doc. 103 at 6]. Plaintiff does not suggest that a reporter's paraphrase of an interview or a police official's quotations become self-authenticating and non-hearsay simply because Bollepalli appears in the story. His own admissible statements, their public dissemination, and whether he was on notice are distinct from using the article to prove every reported incident. That analysis requires the article and the proffer. Defendants have given the Court neither and their motions should be denied.

**C. MIL No. 3: Plaintiff's damages evidence is admissible.**

Defendants actually seek to exclude Plaintiff from testifying about her own damages. *See* Doc. 103 at 10.[4] But Plaintiff doesn't need a scientific basis or training

[4] "For the same reasons—that A.H. herself is a lay witness without sufficient scientific backing to any testimony or opinions about her medical status or mental health—her testimony concerning same should be excluded as well."

to testify about her damages.

While no retained experts will testify at trial, that does not mean Plaintiff, her treating counselors, or her friends and family cannot testify about her experiences and challenges since being sex trafficked at Defendants' hotel. Plaintiff is not seeking to enter medical diagnoses regarding Plaintiff's injuries. And Plaintiff will not diagnose herself with specific medical conditions at trial. But Defendants goes much further and asks the Court to exclude Plaintiff's own testimony about *symptoms* of her injuries caused by Defendants, and the factual testimony of people who saw and interacted with Plaintiff before, during, and after she was injured at the Budgetel. That is improper.

Instead, a "[p]laintiff may testify as to her own mental suffering and her lay opinion as to its cause." *Tindall v. H & S Homes, LLC*, No. 5:10-cv-44, 2011 WL 5007827, at *6 (M.D. Ga. Oct. 20, 2011) (citing Fed. R. Evid. 701). This includes testimony that "she suffered 'depression.'" *Id.* The Eleventh Circuit has specifically upheld a plaintiff's ability to testify about her own depression and medical issues as distinct from one's "medical prognosis." *In re Mosley*, 494 F.3d 1320, 1326 (11th Cir. 2007) (allowing testimony "from personal knowledge about . . . his struggles with depression"). And the same is true of anxiety, as distinct from a medical event that requires expert testimony. *Scafidi v. B. Braun Medical, Inc.*, No. 8:22-cv-2772, 2024 WL 382397, at *4 (M.D. Fla. Feb. 1, 2024) ("While [plaintiff] certainly may

testify about any emotional anguish, anxiety, and depression she experienced after her termination, she may not testify that she suffered a stroke or 'stroke-like episode.'"). The law distinguishes between commonly understood descriptions of mental anguish and emotions and those that "present[] a technical and scientific issue that requires the specialized knowledge of an expert medical witness," such as "aneurysm" or a stroke. *Wingster v. Head*, 318 F. App'x 809, 815 (11th Cir. 2009) (aneurysm).

Under Rule 701, Plaintiff is qualified to describe her injuries up to the point where that testimony requires specialized medical knowledge. She may testify that she suffers depression and anxiety as well as use other commonly understood words to describe her emotional issues. Other fact witnesses can similarly testify about their observations of Plaintiff during the relevant time periods. Plaintiff will not diagnose herself with more specialized ailments such as PTSD.

### D. Second MIL No. 4: Photographs from the investigation at the Budgetel are admissible.

Photographs of the investigation of Tiwari for trafficking, including A.H.'s own trafficking, are admissible. Rule 901 requires sufficient evidence to support a finding that an item is what its proponent claims; it does not require A.H. to know who pressed a camera shutter. Fed. R. Evid. 901(a), (b)(1). Bollepalli was shown investigative photographs and identified Tiwari, locations on the property, the office, the safe, and business equipment. [Ex. 2, Bollepalli Dep. at 49–52, 109–113]. A.H.

can testify from personal knowledge to rooms, locks, persons, threats, the bat, and circumstances she experienced; investigators and other witnesses can identify where particular images were recovered and what they show. [Ex. 1, A.H. Dep. 69–71, 184–185]. Thus, there is ample foundation for the identified photographic evidence.

The devices are not a mystery. Tiwari's plea agreement lists them: a DVR security camera system, two Dell desktops, an Acer laptop, a Dell laptop, and the phones, all seized from 35 Carson Loop on June 29, 2021. [Doc. No. 75-2, Ex. C ¶ 24]. Bollepalli testified that the camera system, both desktops, the Acer, and the Dell laptop are his; that they were "used in the Budgetel's business"; and that he had access to and used all of them when he visited the hotel. Ex. 2, Bollepalli Dep. 118:4–120:10. So the photographs and videos came off Defendants' own business computers, kept in the manager's office behind the front desk, where Rives found them. Ex. 3, Rives Dep. 22:3–14, 138:8–21. Rives can authenticate the seizure; Bollepalli can authenticate the machines; the images themselves show A.H., Tiwari, and the Budgetel. Fed. R. Evid. 901(b)(1), (b)(4). That is not speculation. It is where the evidence was.

Admissibility does not depend on whether each pictured item was used to beat A.H. Weapons, lock mechanisms, rooms, and coercive instruments may bear on threat, fear, the Defendants' manager's authority, and the means by which the venture operated. An exhibit with no identified person, location, relevance, or chain

of authentication can be challenged individually. Defendants' attempt to exclude all photographs and all testimony about them should be denied.

### E. MIL No. 5: The government's investigation file is admissible.

The fact that A.H. disagrees with parts of the investigative file is no reason to bar its admissibility. A.H. explained in her deposition that she was frightened when investigators first approached her. [Ex. 1, A.H. Dep. 85:17–86:9]. Disagreement about a recorded statement is a classic subject for cross-examination and credibility, not grounds to exclude every observation, photograph, investigative finding, or witness from the entire investigation. Agent Jim Rives is also a fact witness to his own investigation and the raid, independent of any contested specialized opinions in Defendants' separate motion.

Nor did the government invent what the reports describe. Bollepalli testified that when agents executed the warrant "they took everything"—the hotel's clock-in and clock-out records, the hard copies kept in the office, the computers. Ex. 2, Bollepalli Dep. 69:3–11, 70:1–6, 118:4–119:24. The reports Defendants call unreliable are the government's inventory of Defendants' own records and equipment. Defendants may argue about what those records mean; they cannot call them hearsay fiction.

Investigative reports are admissible under Rule 803(8) for matters observed pursuant to a legal duty and for factual findings from legally authorized

investigations, unless the opponent establishes untrustworthiness. *Beech Aircraft Corp. v. Rainey*, 488 U.S. 153, 169–70 (1988). A particular bystander statement within a report may require its own exception if offered for its truth. Fed. R. Evid. 805; *United Techs. Corp. v. Mazer*, 556 F.3d 1260, 1278 (11th Cir. 2009). But a report may also be offered for the fact that law enforcement was called, that management learned of an incident, that officers took a described action, or that a witness received notice—not to prove every assertion reported. *United States v. Holley*, 166 F.4th 139, 148 (11th Cir. 2026). The Court should require precise objections to particular statements if Defendants actually object to any specific piece of evidence in the files. Otherwise, this motion should be denied.

**F. MIL No. 6: The shutdown of the hotel is relevant.**

Defendants paint the shutdown of the hotel as a minor health code issue. However, that is not the whole story. Bartow County Commissioner Steve Taylor was quoted as saying about the shutdown, "We've had dozens of arrests from drugs and prostitution out there, and the living conditions for those children are horrible. That's the reason for this action to take place now." Doc. No. 75-6, Ex. K. Thus, the shutdown is connected to the crime at the hotel, which goes to notice, mode of operation, lack of mistake, etc. Evidence of that incident is relevant and admissible. In fact, it makes the fact that the later trafficking happened much more egregious:

Defendants were on specific notice serious enough to warrant the closure of the motel *before* hiring Tiwari and letting him traffic numerous women at the hotel.

**G: MIL No. 7: Specific amount of damages is permitted.**

This motion in limine is made in bad faith. The information requested is included in the proposed pretrial order the parties ***jointly*** submitted. Doc. No. 95 at 63-64. Defendants know the answer to this question and signed the filing it is on with the Court. The Court should deny this motion in limine as moot.

Otherwise, Defendants seek to turn a discovery dispute into a trial advantage. This is the first time Defendants have raised an issue about any response to Defendants' interrogatories. And the question asked—to "itemize" all damages—is not a question asking for the total dollar amount of damages sought. The appropriate response if Defendants were unsatisfied with Plaintiff's answer was to meet and confer about it *two years ago*, and, if necessary, file a motion to compel during discovery. Fed. R. Civ. P. 37; L.R. 37.1(B) (requiring motions to compel to be filed within the discovery period).

The case cited by Defendants is a business-dispute case. Here, Plaintiff seeks damages for physical, mental, and emotional injuries—not specific past medical expenses or lost wages. "Courts have recognized, in the context of [42 U.S.C.] § 1983 actions, that emotional distress damages are, by their nature, not easily translated into a dollar amount. Consequently, the law does not provide a precise

formula by which pain and suffering and emotional distress may be properly measured and reduced to monetary value." *Wright v. City of Savannah*, No. 4:17-cv-195, 2021 WL 1603612, at *6 (S.D. Ga. Feb. 24, 2021), *report and recommendation adopted*, 2021 WL 1156625 (S.D. Ga. Mar. 26, 2021) (cleaned up). This motion should be denied as moot.

**H. MIL No. 8: Reptile statements, whatever those are.**

Defendants presumably lifted this MIL wholesale from another case involving Plaintiff's counsel, as the "Tucker Inn" reference in the motion is from a motion in limine filed in *D.H. v. Tucker Inn, Incorporated*, No. 1:22-cv-03419-JPB. Even so, the argument was wrong then and it is wrong now.

Plaintiff's counsel has not read the book to which Defendants refer, so it is difficult for counsel to respond. In any event, Plaintiff's counsel does not intend to "appeal to the survival instincts of jurors"—however that is supposedly done. Dkt. No. 103 at 14. Still, Defendants do not identify a single shred of evidence that they seek to exclude with this categorical ruling.

Defendant's MIL has another problem: it is hopelessly vague, offering no way for Plaintiff's counsel to know what they seek to exclude. Still, Plaintiff opposes this MIL because it asks the Court to exclude evidence of a potentially essential element of Plaintiff's public-nuisance claim.

Plaintiff can prove public nuisance in two ways. One is by proving that the hotel is a per se public nuisance. To do so, Plaintiff need not prove that the sex crimes at Defendants' hotel affected the surrounding community. But under common-law public nuisance, the elements include that the nuisance "invites 'idleness, loitering, vagrancy, and a tendency to breed crime and debauch the morals of the community' and has 'an appreciable blighting effect on the surrounding community.'" *Doe v. Saint Joseph's Catholic Church*, 357 Ga. App. 710, 717 (2020) (*vacated on other grounds*)).

Defendants ask the Court to "prohibit[] statements or arguments (including during voir dire) which characterize sex trafficking, and/or Defendant Tucker Inn's [sic] alleged acts or omissions, as a threat or danger to the community or the public at large." Doc. No. 103 at 15. Under the common-law path, Plaintiff's public nuisance claim *requires* Plaintiff to introduce evidence that Defendants' acts or omissions bred crime, debauched the morals of the community, and had an appreciable blighting effect on the community. Thus, Defendant's MIL must be denied because evidence of an essential element of a public nuisance claim cannot be improperly prejudicial. The Court should say that.

## I. MIL No. 9: What the hotel "should have seen" is an element of the claims.

This is another confusing argument. It seems to only argue that Plaintiff cannot introduce evidence of an industry standard to support what the hotel should

have seen. It also—and contrary even to Defendants' argument based on the vacated *C.B.* opinion—states that what the hotel should have seen is not an element of the TVPRA. Section 1595(a) expressly asks what a person "knew or should have known." *A.G.* defines constructive knowledge in terms of what reasonable care and diligence would disclose, and evaluates observable conditions, motel practices, employees' interactions, and management response. 171 F.4th 1257. Forbidding argument about what Defendants should have recognized would delete the statutory alternative to actual knowledge.

And Bollepalli did not need an employee to tell him. He testified that on his visits to the Budgetel he accessed and used the security camera system and the business computers himself. Ex. 2, Bollepalli Dep. 120:3–10. He visited about every other day. Ex. 3, Rives Dep. 21:7–10. The cameras recorded around the clock, Ex. 3, Rives Dep. 92:14–20, and the computers held images of trafficking victims, text messages between Tiwari and a victim, and the hotel's own payroll files. [Doc. No. 76-4, Ex. I]. Whether an owner who sat at those machines every other day "should have known" what was on them and in front of them is the constructive-knowledge question § 1595(a) asks and *A.G.* answers: "If [defendant] had paid attention, it would have noticed" what was happening in its own building. 171 F.4th at [1273]. Defendants cannot exclude the jury's inquiry into what their owner should have seen by labeling it a false standard.

This Court has already recognized that knowledge in TVPRA cases can be established through deliberate ignorance and circumstantial evidence. *Does 1–4*, 688 F. Supp. 3d at 1253–54. Bollepalli admitted that he collected and reviewed police reports concerning his hotel, yet dismissed most police calls as false. Ex. 2, Bollepalli Dep. 30:14–31:19, 64:3–19. Whether those warnings should have prompted further investigation goes directly to what Defendants knew or should have known. Defendants cannot exclude that inquiry by calling it a "false standard."

### J. MIL No. 10: Third-party statements in police reports may be admissible.

Sometimes third-party statements in police reports are inadmissible hearsay. Sometimes they are admissible for another purpose. That's why it would be useful to know specifically which police reports and statements Defendants are objecting to, to determine whether a statement is inadmissible hearsay or not. But Defendants provide no specificity whatsoever in their request.

At any rate, Plaintiff agrees that third-party statements in police reports *not* subject to a hearsay exception are inadmissible. Plaintiff will provide redacted versions of the police reports to Defendants before trial to determine if there are disagreements about what should or should not be redacted. Even if the parties cannot agree, Plaintiff asks that the Court deal with this issue at trial as specific police reports are entered into evidence.

### K. MIL No. 11: Financial condition.

Plaintiff agrees not to introduce evidence of Defendants' financial condition at trial until argument begins on punitive damages or unless Defendants open the door to such evidence. However, Defendants' financial "condition" is distinct from evidence showing the fact that Defendants profited from the trafficking of A.H. That evidence is relevant and admissible for Plaintiff's TVPRA claim as well as to the issue of motive.

### L. MIL Nos. 12 & 13: Other verdicts and prior settlement discussions.

Plaintiff has no intention to reference verdicts in other cases or prior settlement discussions at trial.

## CONCLUSION

Defendants seek the categorical exclusion of all evidence in this case. That includes evidence of the underlying trafficking, how the hotel operated, what its employees and owner knew or should have known, the economic benefits of the alleged venture, the existence of the public nuisance, and the injuries A.H. suffered. Their motions are riddled with errors and misstatements of both fact and law. The Court should deny Defendants' consolidated motions in limine and deal with any actual concrete objections at trial.

Respectfully submitted, October 28, 2026.

**ANDERSEN, TATE & CARR, P.C.**

*/s/ Jonathan S. Tonge*
PATRICK J. MCDONOUGH
Georgia Bar No. 489855
pmcdonough@atclawfirm.com
JONATHAN S. TONGE
Georgia Bar No. 303999
jtonge@atclawfirm.com
JENNIFER M. WEBSTER
Georgia Bar No. 760381
jwebster@atclawfirm.com

One Sugarloaf Centre
1960 Satellite Boulevard, Suite 4000
Duluth, Georgia 30097
(770) 822-0900 | Telephone
(770) 822-9680 | Facsimile

**LAW & MORAN**

*/s/ Denise D. Hoying*
PETER A. LAW
Georgia Bar No. 439655
pete@lawmoran.com
E. MICHAEL MORAN
Georgia Bar No. 521602
mike@lawmoran.com
DENISE D. HOYING
Georgia Bar No. 236494
Denise@lawmoran.com

563 Spring Street N.W.
Atlanta, Georgia 30308
(404) 814-3700 | Telephone
(404) 842-7710 | Facsimile

**CERTIFICATE OF COMPLIANCE**

Under Local Rules 5.1(C) and 7.1(D), I hereby certify that the foregoing filing complies with the applicable font type and size requirements and is formatted in Times New Roman, 14-point font.

ANDERSEN, TATE & CARR, P.C.

*/s/ Jonathan S. Tonge*

PATRICK J. MCDONOUGH
Georgia Bar No. 489855
pmcdonough@atclawfirm.com
JONATHAN S. TONGE
Georgia Bar No. 303999
jtonge@atclawfirm.com
JENNIFER M. WEBSTER
Georgia Bar No. 760381
jwebster@atclawfirm.com

One Sugarloaf Centre
1960 Satellite Boulevard, Suite 4000
Duluth, Georgia 30097
(770) 822-0900 | Telephone
(770) 822-9680 | Facsimile