# EXHIBIT 3

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ROME DIVISION

________________________________

S.T.,
Plaintiff,
v. Civil Action
CARSON LOOP ESM, LLC d/b/a File No.
BUDGETEL, and SRINIVAS 4:24-CV-00225-WMR
BOLLEPALLI,
Defendants.

________________________________

A.H.,
Plaintiff,
v. Civil Action
CARSON LOOP ESM, LLC d/b/a File No.
BUDGETEL, and SRINIVAS 4:24-CV-00224-WMR
BOLLEPALLI,
Defendants.

________________________________

P R O C E E D I N G S

THE VIDEOGRAPHER: We are now on the video record. Today's date is December 16, 2025. The time is approximately 10:25 a.m. Eastern Standard Time.

Will the court reporter please swear in the witness?

THE REPORTER: I do have a small read on that I need to do.

I am a notary authorized to take acknowledgements and administer oaths in Georgia.

Additionally, absent an objection on the record before the witness is sworn, all parties and the witness understand and agree that any certified transcript produced from the recording of this proceeding:

- is intended for all uses permitted under applicable procedural and evidentiary rules and laws in the same manner as a deposition recorded by stenographic means; and
- shall constitute written stipulation of such.

At this time, will everyone in attendance please identify yourself, and then I will

swear in the witness.

MR. RIVES: Special Agent Jim Rives. I work for Homeland Security Investigations.

MS. HOYING: Denise Hoying on behalf of the plaintiffs.

MR. SWANSON: Stephen Swanson on behalf of Defendants Carson Loop ESM, LLC and Srinivas Bollepalli in the case entitled S.T. vs. those defendants pending in the District Court for -- United States District Court for the Northern District of Georgia, case number 4:24-CV-00225-WMR

MR. O'NEAL: Jacob O'Neal for the same Defendants in the A.H. vs. Carson Loop case, which is also given on the notice of deposition.

THE REPORTER: All right.

Well, hearing no objections I will now swear in the witness.

Will you please raise your right hand?

WHEREUPON,

JAMES RIVES,

called as a witness and having been first duly sworn to tell the truth, the whole truth, and nothing but the truth, was examined and testified as follows:

THE REPORTER: All right. Well, you may proceed, Counsel.

A He did.
Q Okay. And it looks like it became apparent to you that Sri Bollepalli was not very involved, at least in the day-to-day kind of operations of checking in guests, that kind of thing.
A It did not appear so.
Q Okay. He told you, though, I believe, that -- did he -- or did he tell you that he was there approximately every other day?
A Yes, ma'am.
Q Okay. He also let you know that there was -- the hotel had instituted a 10 p.m. curfew due to the drug activity at the hotel?
A Correct.
Q Anything else of substance that he told you that day?
A I remember he was very -- of -- of substance, no. He was just concerned about why we were there. It -- it did seem like he was not familiar with the operation, 'cause he had a hard time making room keys. Had a difficult time, and he was very concerned about what his wife was going to think about the law enforcement presence at the motel.
Q Got you. All right. And did he also tell you at that time that he paid Shreesh Tiwari, as the

manager of the hotel, a salary of $3,000 a month?
A He did.
Q All right. And then the next page of this ROI talks about the search of the lobby and living area of Tiwari. Tell me what you found when you searched those particular areas.
A So there was a -- there was living quarters for Shreesh Tiwari in the lobby -- right behind the lobby. Is that what you want me to speak about or?
Q Please.
A So in there, we found documents or belongings of other people, a lot of what belonged to A.H. We found several IDs, credit cards. We found sex toys that belonged to A.H.
Q Did you also find wooden paddles?
A We did.
Q Okay. And were those in the lobby, or were those in his living quarters, or do you recall?
A I do not recall exactly where they were.
Q Okay. I did you also find a 9mm pistol in the safe?
A We did.
Q And did you also find drug paraphernalia?
A We did.
Q Okay. All right. I'm going to hand you

exchanged, your investigation only concluded that it only found its way to Tiwari's pockets; right?

MS. HOYING: Objection.

THE WITNESS: Correct.

BY MR. SWANSON:

Q Okay. You never in your investigation uncovered any allegations or proof that Mr. Bollepalli had propositioned anybody for sex, whether forced or consensual; right?

A Correct.

Q Okay. Was S.T. at the hotel when your department raided it that you recall?

A I don't recall.

Q Okay. There was -- I think in the DHS file that was produced in this case, there was -- I don't know -- lots and lots of video. Just video running all day, all night at the hotel. Do you recall having seen any of that either in your investigation or before today?

A I do.

Q Okay. Do you recall ever seeing anything involving S.T. on the video?

A I do not.

Q Her walking down the hall, her talking to Tiwari, her getting called into the back room,

investigation who received the revenue from the rooms that was received by the Budgetel?
A I did not.
Q Or ultimately, which person or entity was responsible for paying the employees? Did you look into that as part of your investigation?
A No, ma'am.
Q We looked at some of the photographs that were taken by your team, and your ROIs detail, in addition to taking photographs that you examined, computers and cell phones that you found when you executed your search warrant.
A Correct.
Q And did your -- either the things you saw when you arrived to execute the search warrant or later were revealed on phones and computers that were in the lobby, did those examinations and the information contained on the phones and the computers -- did they corroborate the witness statements that you had taken in the case?
A They did.
Q And you had talked about that, you know, A.H. had told you that she would -- he would threaten to evict her if she didn't perform oral sex on him. Did other witnesses make the same complaint?